1  **FOLEY & LARDNER LLP**
   ONE MARITIME PLAZA, SIXTH FLOOR
   SAN FRANCISCO, CA 94111-3409
2  TELEPHONE:    415.434.4484
   FACSIMILE:    415.434.4507
3
   LAURENCE R. ARNOLD, CA BAR NO. 133715
   EILEEN R. RIDLEY, CA BAR NO. 151735
4  SCOTT P. INCIARDI, CA BAR NO. 228814
   Attorneys for Petitioners Stanford Hospital & Clinics
5  and Lucile Packard Children's Hospital

6  **WEINBERG, ROGER & ROSENFELD**
   **A PROFESSIONAL CORPORATION**
   1001 MARINA VILLAGE PARKWAY, SUITE 200
7  ALAMEDA, CA 94501-1091
   TELEPHONE:    510.337.1001
8  FACSIMILE:    510.337.1023

   VINCENT A. HARRINGTON, JR., CA BAR NO. 071119
9  BRUCE HARLAND, CA BAR NO. 230477
   Attorneys for Respondent,
10 Service Employees International Union, Local 715

11              **UNITED STATES DISTRICT COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13

14

15 **STANFORD HOSPITAL & CLINICS and**          Case No:  C-07-CV-05158-JF
   **LUCILE PACKARD CHILDREN'S**
16 **HOSPITAL**

17              Petitioners,

18              v.                                 **JOINT CASE MANAGEMENT**
                                                   **CONFERENCE STATEMENT**
19 **SERVICE EMPLOYEES**
   **INTERNATIONAL UNION, LOCAL 715**

20              Respondent.                        Judge:  Hon. Jeremy Fogel

21

22       Pursuant to Local Rule 16-9 and the Court's "Standing Order For All Judges Of The

23 Northern District Of California; Contents Of Joint Case Management Statement" (the "Standing

24 Order"), Petitioners Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the

25 "Hospitals") and Respondent Service Employees International Union, Local 715 (the "Union")

26 respectfully submit their Joint Case Management Conference Statement.

27

28

                       JOINT CASE MANAGEMENT CONFERENCE STATEMENT
                              CASE NO. C-07-CV-05158-JF

SFCA_882560.3
 SFCA_1193925.3

## I.    JURISDICTION AND SERVICE

The Court has personal jurisdiction by virtue of, Section 301 of the Labor-Management Relations Act of 1947 (hereinafter "Section 301"). 29 U.S.C. § 185. The Petition was served on the Union by personal service on October 18, 2007.

## II.    FACTS

The Hospitals and the Union (sometimes collectively referred to as the "Parties") are signatory to a collective bargaining agreement (the "Agreement") effective between January 20, 2006 through November 4, 2008. The Agreement covers certain classifications of the Hospitals' employees, including the job classification known as "Anesthesia Tech" ("Tech"). The Agreement sets forth a procedure for processing and adjusting grievances culminating in arbitration.

The Agreement contains provisions pertaining to the jurisdiction and powers of arbitrators to hear and decide grievances. Article 26.1.1 defines a "grievance" as "a claim during the term of this Agreement that the Employer has violated this Agreement . . ." Article 26.7.3 of the Agreement provides that, in the event that a grievance is taken to arbitration, "[t]he arbitrator's authority will be limited to interpreting the specific provisions of this Agreement and will have no power to add to, subtract from, or to change any part of the terms or conditions of this Agreement." Article 26.7.10 further provides that "[t]he arbitrator's authority will be limited to determining whether the Employer has violated the provision(s) of this Agreement. The arbitrator will not have jurisdiction or authority to add to, amend, modify, nullify, or ignore in any way the provisions of this Agreement, and will not make any award that would, in effect, grant the Union or the employee(s) any matters that were not obtained in the negotiation process."

Article 2 of the Agreement sets forth certain "management rights" reserved to the Hospitals under the Agreement. Among the rights specifically reserved to the Hospitals by Article 2 are the rights to "direct and assign the work force," "to abolish, create, alter or combine job classifications," "to introduce new or improved equipment, facilities or operations," and "to

SFCA_882560.3
SFCA_1193925.3

1  determine whether employees, both within and without the bargaining unit, will or will not

2  perform certain functions, duties or tasks." Article 2 further states that the Hospitals "may, in its

3  discretion, continue any current policies and practices which do not conflict with express written

4  provisions of this Agreement."

5         9.     Article 18 of the Agreement sets forth provisions governing "work rules" and

6  states, in part, that "[t]he Employer has the right at its discretion to promulgate, alter, modify,

7  amend, rescind, and enforce work rules which are not inconsistent with this Agreement." Article

8  18 defines "work rules" as "rules promulgated by the Employer, or a particular department or

9  departments thereof, within its discretion, that regulate employees relative to and affecting their

10  employment."

11        10.    Article 28 of the Agreement is titled "waiver" and states in relevant part that

12  "[t]he Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly

13  waives the right, and each agrees that the other will not be obligated to bargain collectively with

14  respect to any subject or matter referred to, or covered in this Agreement, or with respect to any

15  subject or matter not specifically referred to or covered by this Agreement, even though such

16  subject or matter may not have been within the knowledge or contemplation of either or both of

17  the parties at the time they negotiated or signed the Agreement."

18        11.    Article 9 of the Agreement, titled "temporary assignment," governs the conditions

19  under which employees covered by the Agreement may become entitled to premium payments

20  known as "relief in higher classification" or "RHC" pay. Article 9 states in relevant part:

21

22                An employee temporarily assigned by the Employer to perform the
typical duties of a position in a higher pay grade for four (4)

23                consecutive hours or more will receive a differential of five percent
(5%) for each grade above the grade of the employee's regular

24                classification for all hours during which the employee is so
assigned (e.g., if an employee in Grade SEIU0006 is assigned to a

25                position in SEIU0008 the employee will receive a differential of
ten percent (10%)). As an exception if an employee is assigned by

26                the Employer to a position in a lead classification listed in

27                Appendix A and to perform all of the duties thereof, the employee

28                              3

will be paid a lead premium of five percent (5%) for the actual
hours worked in the lead position provided the lead position is in a
classification in a higher wage range than the employee's regular
classification or position.

On or around April 25, 2006, the Union filed a grievance (the "Grievance") alleging that the Hospitals violated Article 9 of the Agreement by refusing to pay RHC pay to techs who carried a "Spectralink" telephone ("Spectralink") in the Main Operating Room ("Main O.R.") of the Hospitals. The Grievance was submitted to Paul D. Staudohar (the "Arbitartor") for arbitration.

In its post-hearing brief to the Arbitrator, the Union argued the applicability of these contract clauses, and in favor of a "binding past practice" arising out of the implementation of Article 9. The Employer argued, *inter alia*, that the Arbitrator had no authority to consider or apply any alleged "binding past practice" and, in the alternative, that the Union had not established that there was a "binding past practice."

The Arbitrator issued a "Decision and Award" (the "Award") on July 2, 2007. In the Award the Arbitrator found that there had existed for some time under the prior Agreement a "past practice" of paying a five percent "differential wage" to Anesthesia Techs who carried the Spectralink, and that this practice continued for a period of time under the new Agreement. The Arbitrator concluded, based on the undisputed evidence, that in early 2006 Stanford ended the payment of the Spectralink differential, purportedly because such payments were not authorized by the Agreement, but without securing the Union's "consent or approval." The Arbitrator concluded that, "the Employer violated Article 9 of the collective bargaining agreement when it terminated the five percent differential to Anesthesia Techs who were assigned to carry the Spectralink telephone on shifts in the Main Operating Room. The remedy is restoration of the five percent differential and making whole of [anesthesia techs] in the Main Operating Room for lost wages. The differential will remain in effect unless and until altered by mutual agreement of the Parties."

SFCA_882560.3
SFCA_193925.3

1    The Hospitals filed the instant Petition to Vacate on October 9, 2007, less than 100 days

2    after service of the Award, which Award was dated July 2, 2007.   Service of the Petition on the

3    Union was effectuated on October 18, 2007.

4    **III.    LEGAL ISSUES**

5    The legal issue is whether the Award must be vacated under Section 301 of the Labor

6    Management Relations Act because it is invalid in that it fails to draw its essence from the

7    Agreement and/or does not represent a plausible interpretation of the Agreement.  The Hospitals

8    contend that the Award is invalid in the following respects:

9    1)  The Award ignores, modifies, and/or contradicts multiple provisions of the

10    Agreement, including Articles 2, 9, 18, 26, and 28;

11    2)  The Award decided issues that were not submitted to the Arbitrator;

12    3)  The Award decided issues that were not arbitrable under the Agreement.

13    The Union contends that the Award is valid and enforceable because it draws its essence

14    from the Agreement, represents a plausible interpretation of the Agreement, and resolves issues

15    expressly submitted for decision by the parties, or questions reasonably determined as necessary

16    by the Arbitrator to decide the question submitted.  Further, the Union contends that the petition

17    to vacate the arbitration award is untimely because it was not filed <u>and</u> served on the Union

18    within 100 days of the date of the service of a signed copy of the Award on the Employer as

19    required by California C.C.P. § 1288(a).  Alternatively, the Union contends the petition to vacate

20    is untimely under the Federal Arbitration Act (9 U.S.C. § 12), should it be argued to apply,

21    because the notice of motion to vacate the award was not served upon either the Union or the

22    attorney for the Union "within 3 months" after the Award was filed or delivered.

23    **IV.    MOTIONS**

24    The Parties filed a joint motion for relief from the then-applicable case management

25    conference schedule in December, 2008, which motion was granted on January 4, 2008.  On

26    January 16, 2008, the Hospitals filed a motion seeking to reassign the case to the San Jose

27    District, which motion was granted on January 31, 2008.  On January 18, 2008, the Union filed

28    

SFCA_882560.3
SFCA_1193925.3

1  motions seeking to declare this case related to Case Nos C-08-0215-JCS, C-08-0213-EMC, and

2  C-08-0216-JL. By an order dated February 29, 2008, the Court declared the above-referenced

3  cases related.

4      The Parties expect that a dispositive motion (or motions) will be filed in the near future

5  seeking adjudication of all material issues in this case.

6  **V.    AMENDMENT OF PLEADINGS**

7      The Hospitals do not anticipate amending any of its pleadings, but reserve the right to do

8  so. The Parties propose a deadline for amending the pleadings of June 15, 2008.

9  **VI.    EVIDENCE PRESERVATION**

10     The evidence relevant to the issues in this case is expected to be limited to the

11  Agreement, the Award, and the transcripts, exhibits, and briefs filed in connection with the

12  arbitration proceedings and the pleadings and other documents on file in this matter. The Parties

13  have taken all necessary steps to preserve this evidence.

14  **VII.    DISCLOSURES**

15     Under Federal Rule of Procedure 26(a)(1)(E), this action is exempt from the requirement

16  of Rule 26(a) disclosures. The Parties have made arrangements for an informal exchange of

17  documents and information  (see "Discovery" below).

18  **VIII.    DISCOVERY**

19     The Parties have not conducted any discovery to date. The Parties believe and anticipate

20  that all the evidence that will be relied upon in the case is already in the possession of the parties

21  or can be exchanged informally without the need for formal discovery. The Parties have made

22  arrangements for the informal exchange of evidence to the extent that either party contends that

23  it is not in possession of relevant evidence.

24     In the absence of stipulations, or in the event that the Parties cannot reach informal

25  agreement concerning the exchange of evidence, the Parties intend to utilize formal discovery

26  procedures, including interrogatories, requests for admissions, requests for production of

27  documents, and depositions. Additionally, in the absence of a stipulation, the Union intends to

28

SFCA_882560.3
SFCA_1193925.3

1 | utilize Request for Admissions to establish the dates of the filing and service of the Petition, and
2 | the arguments presented by the parties to the Arbitrator.

3 | **IX.    CLASS ACTIONS**

4 |      Neither party has asserted any claims or defenses on behalf of a class.

5 | **X.    RELATED CASES**

6 |      Pursuant to the Court's order dated February 29, 2008, this case is related to the
7 | following cases:

8 | •    *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And*
9 |     *Lucile Packard Children's Hospital*; C-08-00213-JF

10
11 | •    *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And*
    *Lucile Packard Children's Hospital*; C-08-00215-JF
12

13 | •    *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And*
14 |     *Lucile Packard Children's Hospital;* C-08-00215-JF

15
16 |      With the exception of the above-listed cases, the Parties are not aware of any related
17 | cases or proceedings bending before another judge of this court, or before another court or
18 | administrative body.

19 | **XI.    RELIEF**

20 |      The Hospitals seek an order by this Court vacating the Award and directing the
21 | submission of the Grievance to a new arbitrator to be selected by the Parties under the
22 | procedures set forth in the Agreement, that the Court award the Hospitals' costs, and such other
23 | and further relief that the Court may deem proper.
24 |      The Union seeks an order by this Court denying the Petition to Vacate, and entering a
25 | new and different order confirming the Award, attorneys fees and costs incurred on the ground
26 | that the Petition is submitted in bad faith and is meritless, and such other and further relief that
27 | appears just and proper under the circumstances.

28

SFCA_882560.3
SFCA_1193925.3

1   **XII.   SETTLEMENT AND ADR**

2        The Parties believe that settlement of the case is unlikely at this point. The Parties have

3   not engaged in any ADR efforts to date, and do not believe that such efforts would be helpful at

4   this stage, as the case is likely to be resolved by motion. In the event that the parties are required

5   to select an ADR procedure, the Parties are agreeable to Early Neutral Evaluation.

6   **XIII.   CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

7        The Parties do not consent to have a magistrate judge conduct all further proceedings

8   including trial and entry of judgment.

9   **XIV.   OTHER REFERENCES**

10        The Parties do not believe that the case is suitable for reference to binding arbitration, a

11   special master, or the Judicial Panel on Multidistrict Litigation.

12   **XV.   NARROWING OF ISSUES**

13        The Parties believe that all the factual and legal issues in the case can be resolved by

14   motion.

15   **XVI.   EXPEDITED SCHEDULE**

16        As the case is likely to be resolved through a motion, the Parties do not believe that it is

17   necessary to establish an expedited schedule.

18   **XVII.  SCHEDULING**

19        The Parties believe that this case will be resolved by a dispositive motion, and propose

20   that the determination of dates for designation of experts, discovery cutoff, and pretrial

21   conference and trail be postponed until after the resolution of such motion, if necessary.

22   **XVIII. TRIAL**

23        Neither party has requested a jury trial. While the Parties believe it is very unlikely that a

24   trial will be necessary in this case, in the event that a trial becomes necessary, the Parties expect

25   the trial to last one (1) to two (2) days.

26   ///

27   ///

28

1  **XIX.    DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

2  The Hospitals have filed a "Certification Of Interested Entities Or Persons" with the

3  Court. Additionally, in accordance with the Court's Standing Order, counsel for the Hospitals

4  certifies as follows:

5  The following listed persons, associations of persons, firms,
6  partnerships, corporations (including parent corporations) or other
   entities (i) have a financial interest in the subject matter in
7  controversy or in a party to the proceeding, or (ii) have a non-
   financial interest in that subject matter or in a party that could be
8  substantially affected by the outcome of this proceeding:

9
   •        Paul D. Staudohar, served as arbitrator in the arbitration at
10 issue in this proceeding, and therefore may have a non-financial
   interest in the subject matter that could be substantially affected by
11 the outcome of this proceeding.

12 The Union has not filed a "Certification Of Interested Entities Or Persons" with the

13 Court. Additionally, in accordance with the Court's Standing Order, counsel for the Union

14 certifies as follows:

15 The following listed persons, associations of persons, firms, partnerships, corporations

16 (including parent corporations) or other entities (i) have a financial interest in the subject matter

17 in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject

18 matter or in a party that could be substantially affected by the outcome of this proceeding:

19 Bargaining unit employees who may be entitled to the benefits of the Arbitrator's award

20 reinstating the five percent differential, and making affected employees whole for any lost wages

21 arising from the employer's elimination of the differential are potential interested persons

22 affected by the outcome of this proceeding. The specific identities of those employees are

23 presently not known to counsel for the Union.

24 ///

25 ///

26 ///

27 ///

28                                         9
                 JOINT CASE MANAGEMENT CONFERENCE STATEMENT
                          CASE NO. C-07-CV-05158-JF

1

2  Dated:  March 14, 2008

3

4

5

6

7

8

9  Dated:  March 14, 2008

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOLEY & LARDNER LLP
LAURENCE R. ARNOLD
EILEEN R. RIDLEY
SCOTT P. INCIARDI


By:  _____
      EILEEN R. RIDLEY
      Attorneys for Petitioners
      Stanford Hospital & Clinics and Lucile
      Packard Children's Hospital


WEINBERG, ROGER & ROSENFELD
VINCENT A. HARRINGTON, JR.


By:  _____
      VINCENT A. HARRINGTON, JR.
      Attorneys for Respondent
      Service Employees International Union,
      Local 715

JOINT CASE MANAGEMENT CONFERENCE STATEMENT
CASE NO. C-07-CV-05158-JF

SFCA_882560.3
SFCA_193925.3