WILLIAM A. SOKOL, Bar No. 072740
BRUCE A. HARLAND, Bar No. 230477
WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway, Suite 200
Alameda, California 94501-1091
Telephone 510.337.1001
Fax 510.337.1023

Attorneys for Petitioner
SEIU, Local 715

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL,<br><br>Petitioner,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715,<br><br>Respondents. | ) No.    5:07-CV-05158-JF<br>)<br>) **DECLARATION OF BRUCE A.**<br>) **HARLAND IN SUPPORT OF SEIU,**<br>) **LOCAL 715'S OPPOSITION TO**<br>) **MOTION TO CONTINUE DEADLINE**<br>) **TO FILE/HEAR DISPOSITIVE**<br>) **MOTION**<br>)<br>) **[Local Rules 6-1 and 6-3]**<br>)<br>)<br>) Judge: Hon. Jeremy Fogel<br>)<br>)<br>)<br>) |

WEINBERG, ROGER & ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA 94501-1091
510.337.1001

Declaration of Bruce A. Harland in Support of Local 715's Opposition to Motion to Continue
Case No. 5:07-CV-05158-JF

I, Bruce A. Harland, hereby declare as follows:

1.    I am a shareholder in the law firm of Weinberg, Roger and Rosenfeld, and am one of the attorneys representing SEIU, Local 715 in the above-entitled case.  I make this declaration upon my personal knowledge, and, if called as a witness, I could competently testify to the facts hereinafter stated.

2.    Attached as Exhibit A is a true and correct copy of a memo and report entitled, "Impact of Current Disputes Among Unions in the California Healthcare Industry."  Much of the report focuses on the Service Employees International Union ("SEIU") and its affiliates.

3.    Contrary to the Hospitals' contention that Local 715 refused to produce the Trustee of Local 715, Local 715 never refused to produce the Trustee but simply stated that the Trustee was not available on June 26, 2008 and, subsequently, offered alternative dates.  Attached as Exhibit B is a true and correct copy of an email between counsel regarding the scheduling of the Trustee's deposition.

4.    The Hospitals noticed the deposition of Gregory Pullman for July 7, 2008.

5.    Although Mr. Pullman appeared and counsel for Local 715 appeared at the deposition, the Hospitals did not appear, disingenuously claiming that counsel for Mr. Pullman stated that Mr. Pullman's deposition could not go forward on July 7.

6.    Counsel for Mr. Pullman denies that he ever had such a conversation with the Hospitals' counsel.   Attached as Exhibit C is a true and correct copy of an email between counsel for Mr. Pullman and counsel for the Hospitals regarding Mr. Pullman's deposition.

7.    On or about June 23, 2008, Local 715 produced responsive documents to the Hospitals' fifty-seven Requests for Production of Documents.

8.    On or about July 1, 2008, SEIU produced responsive documents to the Hospitals' fifty-seven Requests for Production of Documents pursuant to a subpoena duces tecum.  A true and correct copy of the email, attaching the responsive documents is attached as Exhibit D.

9.    In addition, SEIU has offered to produce "a person most knowledgeable" as to Local 715's existence.  The Hospitals have declined.  A true and correct copy of the email between

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

Declaration of Bruce A. Harland in Support of Local 715's Opposition to Motion to Continue
Case No. 5:07-CV-05158-JF

1  counsel for SEIU and counsel for the Hospitals is attached as Exhibit E.

2      10.    SEIU has offered to stipulate to the authenticity of documents involving Mr. Stern.

3  The Hospitals have declined.  A true and correct copy of the email between counsel for SEIU and

4  counsel for the Hospitals is attached as Exhibit E.

5      I declare under penalty of perjury under the laws of the United States of America and the

6  State of California that the foregoing is true and correct.  Executed this 8 day of July 2008 in

7  Alameda, California.

8

9                                    /s/ BRUCE A. HARLAND
                                     BRUCE A. HARLAND
10  117443/499141

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WEINBERG, ROGER &
ROSENFELD
A Professional Corporation
1001 Marina Village Parkway
Suite 200
Alameda, CA  94501-1091
510.337.1001

- 3 -

CALIFORNIA
**HOSPITAL**
ASSOCIATION

*Providing Leadership in
Health Policy and Advocacy*

File Code: 08-05-63

May 23, 2008

TO:         CHA Members

FROM:     Gail Blanchard-Saiger, Vice President, Labor and Employment

SUBJECT:   Impact of Current Disputes Among Unions


In the last few months, the internal union battles between United Healthcare Workers-West and the Service Employees International Union (SEIU) and between the California Nurses Association and SEIU have become increasingly public, spawning several lawsuits, claims of harassment and violence, and a multitude of accusations and counter-accusations.

Generally speaking, employers are not, and should not be, concerned with internal union matters, including internal disputes and disagreements. However, the current turmoil among unions that are prominent in the health care industry has reached such proportions it can no longer be fairly characterized as "internal" and its repercussions are beginning to impact CHA members.

CHA has prepared the attached memorandum to address some of the more significant ways in which the current situation may have an impact on hospitals. This memorandum provides an identification of issues and brief summary of recommended action. Because each hospital will face its own unique circumstances, CHA also recommends hospitals work with their labor counsel.

In June, the Hospital Association of Southern California (HASC) and the Hospital Council of Northern and Central California are holding educational seminars on this topic. For more information on these seminars, please visit the HASC website at www.hasc.org, under "Events," or the Hospital Council website at www.hospitalcouncil.net, under "Events and Programs."

If you have any questions, please contact me at (916) 552-7620 or gblanchard@calhospital.org.

GBS:
Attachment



ATTORNEYS AT LAW
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3409
415.434.4484
415.434.4507
WWW.FOLEY.COM

gmcclune@foley.com
415.984.9836
larnold@foley.com
415.984.9819
jkosela@foley.com
415.438.6447

# MEMORANDUM

CLIENT-MATTER NUMBER
112336-0122

**TO:**     CHA Members

**FROM:**   Gregory W. McClune
            Laurence R. Arnold
            Jean Kosela

**DATE:**   May 19, 2008

**RE:**     Impact of Current Disputes Among Unions in the California Healthcare Industry

---

## IMPACT ON HOSPITALS

As a result of the recent disagreements among UHW, SEIU and CNA[1], we foresee, and in fact have already seen, heightened union activity not only at hospitals that have current union representation of employees, but also at hospitals where employees are not represented by any union, or there is only limited representation. Moreover, at some hospitals where the employees are not represented and a union has previously shown an interest in organizing, there have been recent instances when another union has suddenly and unexpectedly shown an interest in organizing. It is hard to tell whether these are genuine attempts to organize or simply part of the on-going dissension among the unions and represent retaliatory acts.

For those hospitals where employees are currently represented by UHW, they should be aware that UHW's leadership, and others, have publicly expressed the belief that SEIU is planning to impose a trusteeship on UHW, whereby UHW's current leadership would be replaced with a "Trustee" who is solely responsible for the affairs and the property of UHW. We currently have no knowledge one way or another regarding SEIU's intentions and whether there is such plan. Most recently SEIU has denied that it has been planning any such action.

---

[1] A summary of the recent activity is set forth in the Background section at the end of this memorandum.

SFCA_1377923.2


**FOLEY & LARDNER LLP**

However, allegations contained in a lawsuit SEIU filed against UHW could support imposition of a trusteeship. In short, if a trusteeship is legally imposed, the trustee assumes control of the local and, in effect, steps into the shoes of the former local's leaders. Should a trusteeship be imposed on UHW, or it appears likely, we will address the ramifications at that time.

**Requests for Information**

We are aware that numerous hospitals have recently received requests for information from labor organizations and others that apparently relate to new organizing efforts and seem to arise out of the current union turmoil. We say "apparently" because some of the requests are unusual in the sense that one union is seeking information regarding employees in a bargaining unit represented by another union at a time when a collective bargaining agreement is in force and the "contract bar" doctrine would prevent the filing of a petition to represent the employees.

A hospital's obligation to respond to a union's request for information will depend on a number of factors including whether the union requesting information represents the employees about whom the information is sought, as well as whether the hospital is a private or public entity.

Where a private hospital has an existing collective bargaining agreement with employees represented by a labor organization, under the NLRA, the collective-bargaining representative has a broad right to information that relates to the employees it represents and to the working conditions in that bargaining unit. In contrast, a labor union has no right under federal labor laws to information concerning the employees of a private employer where it represents no employees and has not petitioned for an election, and only limited rights to information concerning employees outside of a bargaining unit it represents, or concerning employees in bargaining units where the employees are represented by another labor union.

In the public sector, there are somewhat different obligations. Under the Meyers-Milias-Brown Act, which covers district hospitals, unions have substantially similar rights to information as those that have been developed under the federal National Labor Relations Act, and as described above. For example, California law imposes a duty to meet and confer and exchange information and allows an employer to adopt reasonable rules for furnishing non-confidential information.

In addition, at public hospitals, the issue of what information the entity is obliged to provide to a third party is also governed by the Public Records Act, Cal. Gov. Code § 6250 et seq. Whether or not a union's request for information complies with the Public Records Act must be dealt with on a case by case basis. In certain circumstances, a public employer can and should refuse to disclose information to any third party, including a labor organization seeking to represent the employees, if that information would be classified as confidential personnel information.

2



**FOLEY & LARDNER LLP**

**Solicitation and Distribution**

In anticipation of union activity, hospitals should take the time to review their current solicitation and distribution policies to determine whether such policies are valid and compliant with the NLRA, in the case of private hospitals, or the MMBA, in the case of public hospitals.

In broad outline, healthcare employers are permitted to promulgate and enforce a no solicitation/distribution policy which:

- prohibits solicitation and distribution of literature on the premises by non-employees. Note that access rights to public entities by non-employees is arguably broader than in the private sphere.

- prohibits solicitation and distribution of literature in immediate patient care areas. "Immediate patient care areas" is a term of art developed by the NLRB and the courts in interpreting the NLRA. The current definition of "immediate patient care areas" includes operating rooms, patients' rooms, patients' lounges as well as corridors and sitting rooms on floors of a hospital housing either patients' rooms, or operating, diagnostic, treatment and therapy rooms.

- prohibits distribution of literature in work areas at all times

- prohibits solicitation and distribution of literature during work time of the solicitor/distributor and the solicitee/distributee

- a recent NLRB decision permits an employer to prohibit employees from using its email system, and other employer owned electronic communication systems, for non-work related activities.

Hospitals must ensure that their policies have been and continue to be enforced in a nondiscriminatory manner. In other words, an employer should not discipline employees for engaging in "union" activity if it has, in the past, tolerated similar conduct which was not related to a union. When determining whether enforcement was discriminatory, a recent decision by the NLRB permits an employer to "draw a line between charitable solicitations and non-charitable solicitations, between solicitations of a personal nature (e.g., a car for sale) and solicitations for the commercial sale of a product (e.g., Avon products), between invitations for an organization and invitations of a personal nature, between solicitations and mere talk, and between business-related use and non-business-related use."

**Discipline**

Given recent events, hospitals can expect that there will be an increased number of discussions about union activities among employees, and that these discussions may become heated, even confrontational. As a result, employers should also expect that individual

3



FOLEY & LARDNER LLP

employees may complain that they are being "harassed" by those supporting or opposing union activities, or managers may witness such activity.

Employers should be cautious in disciplining employees with regard to any union activities or because of allegations of "harassment" related to union activity, whether for or against unions. The courts and the NLRB tend to tolerate a broad range of activity so long as it is linked, either directly or indirectly, to union activity. Furthermore, before imposing any discipline for any such activity, a hospital should make sure that the activity is contrary to its written policies. Finally, as discussed above, if a hospital seeks to discipline an employee for violation of its no solicitation/distribution policy it should first check that the policy has been enforced in the past in a non-discriminatory manner.

**Access**

Union representatives may claim that, under state law, they are entitled to physical access to facilities regardless of a Hospital's policies or regardless of the laws of private property and trespass. Employers should be aware that this is a complex and controversial area of the law, where state statutory provisions very likely run afoul of federal court decisions but, nevertheless, remain on the books. In addition, as noted above, the rules for public entities differ from those that apply to private entities.

The enforcement of state trespass laws varies from local jurisdiction to local jurisdiction, and some district attorneys will be more vigorous in the enforcement of property laws than others. An employer who has access issues or is threatened with "access" claims by a labor organization and who wishes to prohibit or limit access should consult with its regular counsel regarding the enforceability of property rights in its jurisdiction.

**Flyers Incorporating "Authorization Cards"**

Some Hospital employees have been receiving union generated "flyers" that, in addition to addressing the recent dispute among the unions, have included a section inviting employees who are "interested" in having a union represent them to complete and mail back a tear-off section. Although that may appear to be fairly non-controversial, in fact that could have significant consequences and are akin to the more familiar "authorization cards" commonly used by unions.

For private hospitals, if a union were to file an election petition with the NLRB such "authorization cards" could, either with or without conventional cards, be used to support an assertion that the union has at least the 30% support necessary to proceed with the election. Alternatively, if another union were to seek to intervene, such "authorization cards" may be sufficient to show the 10% necessary for the second union to participate in a hearing and get on the ballot. Even a single authorization card may be sufficient for a union to get on the ballot in some instances. Even without an election, the gathering of a substantial number of cards may be used in a corporate or media campaign.

SFCA_1377923.2



**FOLEY & LARDNER LLP**

For public hospitals, the consequences could be more serious. Under public labor laws, unions can avoid secret ballot elections altogether by submitting proof that at least 50%+1 of the employees in a bargaining unit have indicated, in writing, a desire to have the union represent them. A completed tear-off section of the flyer would likely qualify under this law.

As a consequence, employees should be advised that signing and returning the tear-off sections of these flyers could have serious legal consequences and that it may be difficult for an employee, who has second thoughts, to retract such an indication of "support." As will be seen in the next section, managers and supervisors should make themselves familiar with the consequences of employees returning such tear-off responses and be prepared to inform employees of the potential consequences. Moreover, hospitals who receive such flyers may wish to consider a communication to their employees outlining these potential consequences.

**Educating Supervisors/Managers**

The current turmoil among the unions will often be experienced most forcibly among rank and file employees who may look to their supervisors and managers for information and guidance. In addition, as noted above, disputes may arise among employees, including those in favor of unions and those opposed to unions, and also among those who are supporters of "competing" unions. It is therefore more important than ever that supervisors and managers be kept aware of what is happening in this area and the nature and origins of the disputes. It is equally important that they are clear as to what conduct and speech can and should be permitted and what can and should be prohibited.

**BACKGROUND**

The key players are the following: The United Health Care Workers-West ("UHW"), a California local union headed by Sal Rosselli, which has approximately 135,000 members and is the largest healthcare union in California; the Service Employees International Union ("SEIU"), based in Washington D.C., whose President is Andy Stern and which is the parent International Union of UHW; the California Nurses Union ("CNA"), based in Oakland, California and headed by Rose Ann DeMoro.

There are two major areas of dispute, which are probably not unconnected: (1) The growing dispute between UHW and its parent International Union, SEIU, and (2) the dispute between CNA and SEIU.

The current dissonance between the Service Employees International Union (SEIU) and its local, United Healthcare Workers-West (UHW), apparently began, or at least came to a head, as an internal disagreement over who should represent workers in the California long term care industry. In addition, Sal Rosselli, the UHW President has been publicly critical of Andy Stern, SEIU President.

In addition to the dispute between SEIU and UHW, the relationship between CNA and SEIU has become markedly more hostile over the past few months, especially after SEIU stated it was forced to cancel a March 2008 representation election at an Ohio hospital.

5

# ▪FOLEY

**FOLEY & LARDNER LLP**

Shortly before that election CNA, who was not on the ballot, sent multiple representatives to the hospital where they leafleted and urged workers to vote down what CNA described as a "company union." Most recently, picketing activities by SEIU members at a meeting attended by CNA members in Michigan resulted in chaos, physical altercations, and alleged physical injury to some attendees and picketers. Since that meeting there have been numerous accusations and counter accusations over who was responsible for the melee and, indeed, what actually happened.

Although the origins of the dispute between CNA and SEIU are not clear, the fact that CNA has aggressively moved out of California and is seeking to represent registered nurses in other states under its National Nurses Organizing Committee ("NNOC") title is likely to have caused flashpoints with SEIU locals who also represent or seek to represent registered nurses. The most recent such occurrence was in Las Vegas, where CNA petitioned for an election to supplant SEIU as the representative of the nurses in three hospitals. The results of that election are not conclusive as of this writing, and it appears that there will be a run-off election between the two unions, neither of them having achieved the necessary majority of the votes.

6

-----Original Message-----
From: Bruce Harland [bharland@unioncounsel.net]
Sent: Wednesday, July 02, 2008 7:18 PM
To: Ridley, Eileen R.
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: RE: SEIU v. Stanford Cases

Eileen,

The purpose of my email was not to start a debate, but simply explain to
you why my clients could not agree to continuing the filing date for
dispositive motions.  Obviously, you and your clients take issue with
those reasons.

While I do not think it is necessary to continue the debate, I do wish
to address your accusation that everyone that you subpoenaed and our
firm has "conduct[ed] a coordinated strategy of stonewalling and
refusing to respond to any discovery request . . . ."  That is simply
inaccurate.  Moreover, it was completely misleading and inappropriate
for you to make such a statement to the Court today in your motion to
continue the filing date, as it is not grounded on fact or reality.

It is also inaccurate to suggest that the Court permitted discovery on
the "existence of Local 715, its representative capacity and the
handling of its resources."  I have reviewed the transcript of the
scheduling conference, and my understanding is that the Court permitted
discovery on a very narrow issue -- that is, whether Local 715 had
standing at the arbitration hearing.  (See Tr. 7:7-13; 8:21-24; 9:18-23;
10:23-25; 11:1-8, 18-24; 12:1-6.)

Now, turning to the scheduling the meet and confer process, I will be
available after noon.  However, I do have a meeting tentatively
scheduled for sometime in the late afternoon.  If you can email times
that work for you in the afternoon, I will make every effort to schedule
my meeting around the call.

If these times do not work, I would suggest an alternative approach:
that we reschedule the telephone conference for early next week, so that
I can respond to your July 1, 2008 "meet and confer" letter that you
emailed last night.  This might help focus the conversation. This will
also allow you to enjoy your vacation.  If you like this alternate
approach, then I would suggest that you give me some times and dates
that you can participate in a call next week.

I look forward to hearing from you.

Bruce


-----Original Message-----
From: Ridley, Eileen R. [ERidley@foley.com]
Sent: Tuesday, July 01, 2008 9:12 PM
To: Bruce Harland
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: RE: SEIU v. Stanford Cases


Thank you for your email.  It is unfortunate that your client has chosen
to refuse to stipulate to a continuance of the deadline to file

1

dispositive motions and we will therefore raise the issue with the Court.

There has been no delay in this action by my clients. Once the Court confirmed that discovery could be conducted during the April 25th Case Management Conference we served requests for production and subpoenas within two weeks in all six matters. That is hardly "waiting until the last minute". Your clients and your firm, however, have decided to conduct a coordinted strategy of stonewalling and refusing to respond to any discovery request by either refusing to answer or produce documents, refusing to produce witnesses for deposition (including the trustee of Local 715), and characterizing every discovery request as "harrassment". This is a designed pattern and practice that is contrary to the law and a blatent attempt to prejudice my client regarding the dispositive motions in this case. If there is any delay in this matter it has been caused by your firm's clients and their refusal to properly respond to legal discovery requests (even after being provided with requested extensions).

The discovery propounded by my clients was specifically designed to address the areas the Court permitted to be the subject of discovery - the existance of Local 715, its representative capacity and the handling of its resources. This is not requesting every document held by Local 715 but your comment underscores a major issue regarding the pending discovery - Local 715 has failed to provide complete responses and has further failed to produce responsive documents. Further, we have not noticed "scores" of depositions. We have noticed five depositions of indivduals who have direct knowledge of these issues -including the trustee of Local 715 whom you refused to produce. Again, any "delay" is solely due to your clients' conduct.

That being said, you have indicated you are available to discuss these matters on July 3, 2008. I will be on vacation but will make myself available for a call. What time works for you? Thank you.


-----Original Message-----
From: Bruce Harland [bharland@unioncounsel.net]
Sent: Tuesday, July 01, 2008 5:14 PM
To: Ridley, Eileen R.
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: RE: SEIU v. Stanford Cases

Dear Ms. Ridley,

I have talked with my client, Local 715, regarding whether or not it would agree to stipulate to continue the July 18, 2008 filing date for dispositive motions.

Unfortunately, my client does not wish to stipulate to continuing the filing date. The cases pending before Judge Fogel not only involve terminations of employees, but also issues of back pay.

For example, with respect to the petition to vacate that your client filed against the Union, every day of delay means a day that anesthesia techs do not receive the back pay that a neutral arbitrator ruled they are entitled to. The same is true for the petition to confirm that Local 715 filed, involving the termination of Victor Acosta. Further delay just means that Mr. Acosta will have to wait longer to get his job back and the back pay that he is owed, despite the fact that a neutral arbitrator has already determined that your client terminated him without just cause.

Furthermore, the primary reason that it appears that your client needs

to continue the July 18, 2008 hearing date is because your client waited
to propound 57 requests for documents to multiple parties, and to take
depositions of various individuals until the last minute.

All of the requests for documents were extremely overbroad -- both in
time and scope -- essentially asking for every single document ever
produced by Local 715.  And rather than immediately notice a deposition
of the person most knowledgeable about Local 715's standing to sue, your
client noticed depositions of scores of individuals from Washington D.C.
to California for the end of June, just weeks before the fourth of July.

Turning to the scheduling of depositions for Rusty Smith and Myriam
Escamilla, Mr. Smith is unavailable until July 14, 15, 16, and 17, 2008.

As to Ms. Escamilla, you stated in your June 23, 2008 letter that she
was noticed as a non-party, or in other words as an employee of SEIU,
United Healthcare Workers -- West.  First, service of the subpoena was
improper, as you served the subpoena to her at the Local 715 address.
Second, it is unclear what you need her to testify to, given that you
served her as a non-party.  Judge Fogel was clear in his instructions:
discovery was limited to whether or not Local 715 had standing to sue.
Mr. Smith, as the Trustee of Local 715, could certainly be deposed on
this matter.  As you are already aware, Ms. Escamilla is not available
for deposition on July 2, 2008.  However, before I offer alternative
dates for her deposition, there are various matters we need to discuss,
including service of the subpoena and the relevance of her testimony as
a non-party.

I am available to meet and confer on July 3, 2008.  You can reach me at
my office number, 510-337-1001.

Bruce Harland

-----Original Message-----
From: Ridley, Eileen R. [ERidley@foley.com]
Sent: Tuesday, July 01, 2008 4:28 PM
To: Bruce Harland
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: RE: SEIU v. Stanford Cases

http://mm1.lettermark.net/foleylaw/card/ANCB_3.map
http://mm1.lettermark.net/foleylaw/card/ANCB_3.gif

Mr. Harland -

I have not heard further from you regarding this matter.  Please provide
your response by tomorrow morning (9 a.m.) including whether your client
will stipulate to a continuance of the filing date - otherwise we will
bring a motion before Judge Fogel to continue the date.  Thanks very
much.

Eileen

http://www.lettermark.net/emailhelp.asp?id=Foley & Lardner LLP>

3

-----Original Message-----
From: Bruce Harland [bharland@unioncounsel.net]
Sent: Monday, June 30, 2008 7:41 AM
To: Ridley, Eileen R.
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: RE: SEIU v. Stanford Cases

Eileen,

I'm out of the office and will not be back until tomorrow, Tuesday, July
1, 2008.  I will have to talk to my client about the stipulation that
you propose.  I will talk to you tomorrow.

Bruce


-----Original Message-----
From: Ridley, Eileen R. [ERidley@foley.com]
Sent: Fri 6/27/2008 4:59 PM
To: Bruce Harland
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: RE: SEIU v. Stanford Cases

http://mm1.lettermark.net/foleylaw/card/ANCB_3.map
http://mm1.lettermark.net/foleylaw/card/ANCB_3.gif


Mr. Harland:

I have yet to hear from you regarding the matters discussed below.  As
the Court has set a date for filing dispositive motions for July 18,
2008 and we have not resolved our pending discovery disputes, will you
stipulate to a continuance of the July 18, 2008 deadline?  Please
provide your response to this question and the issues raised below by
Monday, June 30, 2008.  Thank you



Eileen



http://www.lettermark.net/emailhelp.asp?id=Foley & Lardner LLP>


--------------------------------

From: Ridley, Eileen R.
Sent: Wednesday, June 25, 2008 11:20 AM
To: Bruce Harland
Cc: Arnold, Laurence R.; Inciardi, Scott P.; Kunisaki, Kristy
Subject: SEIU v. Stanford Cases



Mr. Harland:

I have not yet received a response to my letter of June 23, 2008
regarding the above cases and the depositions of Mr. Smith and Ms.
Escamilla.  We understand that you are refusing to produce Mr. Smith
for his deposition tomorrow.  Please immediately provide alternative

dates for Mr. Smith and Ms. Escamilla as these depositions must be completed soon given July 18th deadline to file dispositive motions. We would prefer not to have to seek Court intervention in this matter and look forward to resolving it soon. However, we are prepared to file a motion to compel these depositions if we cannot reach an agreement with you. We look forward to your response.

In the meantime, we have received the responses to my clients' request for production/subpoenas from your clients and believe they are insufficient and incomplete. We will address those issues by separate correspondence. However, the responses specifically include objections based upon privilege but no privilege log was provided. Please provide that log immediately. Thank you.

Eileen

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

-----Original Message-----
**From:** Norman Gleichman [mailto:Norman.Gleichman@seiu.org]
**Sent:** Monday, July 07, 2008 3:46 PM
**To:** Ridley, Eileen R.
**Cc:** Gregory P. Pullman
**Subject:** RE: Local 715 v. SHC/LPCH - Documents To Be Authenticated

Eileen, nothing in your e-mail to me of 6/26 states, or even suggests, that I ever told you Mr. Pullman was unavailable. The ONLY item we discussed was the fact that Mr. Pullman has not been a Local 715 employee since November 2006.

You are also incorrect in stating that I never provided you with available dates "in these proceedings". As you know, I provided you with two possible dates for James J. Johnston in place of President Stern, who WAS unavailable on the date specified in your subpoena. You have since insisted that you must take President Stern's deposition.

I again urge you to consider whether there are stipulations that would obviate the need for President Stern to be deposed in this matter. I feel certain that stipulations of any facts within President Stern's knowledge relevant to your litigation could be agreed to without trouble.

Norm

**From:** Ridley, Eileen R. [mailto:ERidley@foley.com]
**Sent:** Monday, July 07, 2008 6:25 PM
**To:** Norman Gleichman
**Subject:** FW: Local 715 v. SHC/LPCH - Documents To Be Authenticated

**From the Desk of: Eileen R. Ridley**

**≣FOLEY**

**FOLEY & LARDNER LLP**

| My Location | My V-card | My Bio | | www.foley.com |

The email below of July 7th was bounced back so I'm sending it again.

*Eileen*

⧉INFO

**From:** Ridley, Eileen R.
**Sent:** Monday, July 07, 2008 3:18 PM
**To:** Norman Gleichman
**Subject:** FW: Local 715 v. SHC/LPCH - Documents To Be Authenticated

Mr. Gleichman -

I'm neither confused nor cavalier. I am forwarding to you our past email correspondence. Note the last paragraph of my email of June 26th:

7/8/2008

"Finally, as discussed, we will want to depose Mr. Stern and Pullman. In particular, Mr. Stern was involved in the creation of the trust regarding Local 715 which is a subject in this matter. Again, our focus is related to the existence and representation of Local 715 and the use of its resources, Please provide us with available dates for these proceedings. Thanks very much."

You never provided available dates. I have been cooperating with you and was hopeful that that cooperation and courtesy would be mutual. If you are now refusing to abide by our discussions, we will enforce the subpoena through the Court.

*Eileen*

---

**From:** Norman Gleichman [mailto:Norman.Gleichman@seiu.org]
**Sent:** Tuesday, July 01, 2008 1:18 PM
**To:** Ridley, Eileen R.
**Subject:** RE: Local 715 v. SHC/LPCH - Documents To Be Authenticated

Dear Ms. Ridley:

I have reviewed your e-mail and the documents you have forwarded with your request that SEIU authenticate them.

First, I wish to reiterate SEIU's position, stated in SEIU's objection dated May 27, 2008, that the subpoenas do not comply with Rule 45(c) of the Federal Rules of Civil Procedure. As I understand it from your communications to date, the Court in this matter has permitted discovery on the narrow question of the existence of Local 715. You have not supplied me with the Court's discovery order, but I assume you have accurately described it.

It is well settled that no formal structure or financing arrangement is required to meet the definition of "labor organization" under the National Labor Relations Act. Thus, a group of employees can constitute a labor organization without officer elections or elected officials, membership meetings, a dues structure, or a set of bylaws. All that is required is employee participation for the purpose of dealing with employers over wages, hours, or terms and conditions of employment. *See, e.g., Sahara Datsun v. NLRB,* 811 F.2d 1317 (9th Cir. 1987); *Polaroid Corp.* 329 NLRB 424 (1999).

Against this backdrop, your subpoena goes far beyond the narrow area of inquiry open to you concerning the issue of the existence of Local 715. As just one example, the identity of the counsel selected to represent Local 715, a subject of the Hospitals' requests for production nos. 1, 20 and 21, is completely irrelevant to the question whether Local 715 exists. Without limitation, the same is true regarding financial transactions regarding Local 715, other SEIU local unions, or SEIU. See request nos. 19, 22-27, 56-57. In sum, these subpoenas constitute an obvious fishing expedition having nothing whatever to do with the question of Local 715's existence.

The subpoenas are also unduly burdensome, in violation of the Federal Rules. The requests are so broadly worded that they would require virtually every piece of written communication to Local 715 to be produced. See, without limitation, request nos. 5, 7, 8, 9 and 10. In this connection, you are advised that SEIU does not maintain a central filing system where documents are uniformly and systematically maintained according to subject matter or other categories. Instead, files and records are kept separately in SEIU's numerous separate departments and regional offices, as well as by individual staff members within those departments. The record retention policies, protocols and categories, if any, used in those separate departments and regional offices are not necessarily compatible. Additionally, a significant volume of SEIU files are not readily accessible because they have been boxed and transferred to an outside archive. Accordingly, the requests detailed herein and similar requests would require SEIU to spend countless hours locating and combing through thousands of separate, uncatalogued files maintained in separate Departments and offices, as well as to retrieve and review files boxed and stored in the outside archives, simply to determine whether they contain any material falling within the scope of the subpoena. This search would have to be performed manually. The expense to the SEIU in personnel time and archives retrieval charges would be enormous. The subpoena imposes a substantial additional burden on the SEIU in that its personnel would be precluded from carrying out the essential business of SEIU while deployed in the document search demanded by the Hospitals.

The sweeping scope of the subpoenas would force SEIU to divulge SEIU and its members communications on all issues,

deliberations, and other activity protected by the First Amendment, including but not limited to SEIU's and its members exercise of the right to freedom of association and freedom of speech. Moreover, while the subpoenas would force the SEIU to mount an expensive, time-consuming records search, that effort will yield little, if any relevant material given the definition of labor organization under the NLRA.

Furthermore, as indicated in SEIU's objection, SEIU does not have custody of much of the documentation your subpoena seeks. I repeat that SEIU is not a party to these actions, and under the Labor Management Reporting and Disclosure Act is not the same labor organization as its affiliated local unions.

Nevertheless, without waiving its stated objections to the subpoenas, in an effort to reach agreement on issues raised by the subpoenas, SEIU further responds to your request as follows:

SEIU is agreeable to stipulating to the authenticity of the following documents:

     Order of Emergency Trusteeship dated June 8, 2007
     Form LM-15 Trusteeship Report
     Memorandum from Andrew L. Stern re: trusteeship of Local 715, dated June 8, 2007
     Notice of Hearing signed by Anna Burger dated July 12, 2007
     Memorandum from Andrew L. Stern re: IEB Decision on California Jurisdiction dated June 11, 2006

SEIU is unable to stipulate to the authenticity of the following documents for the reasons given:

     Letter from B.W. Smith to Laurie Quintel dated December 19, 2007. This letter was purported issued by Local 715, and Local 715 is the entity that would be in a position to authenticate this document.
     Letter from B.W. Smith to Laurie Quintel dated February 12, 2008. See comment above.
     Hearing Officers' Joint Report and Recommendations. The version you sent to me is unsigned.

Without waiving SEIU's previously stated objections to your subpoena, SEIU is producing herewith the following additional documents that are covered by the subpoena:

     Signed Hearing Officers' Joint Report and Recommendations dated June 9, 2006
     Order of Reorganization signed by Andrew Stern dated January 2, 2007
     Hearing Officer's Report on Local 715 trusteeship dated August 13, 2007
     Letter from Kristina Sermersheim to Andrew Stern dated June 4, 2007
     Letter to Bruce Smith from Andrew L. Stern dated June 8, 2007
     Letter to Clarence Dodge from George E. Fairchild dated March 2, 1972
     Letter to Bruce Smith from Anna Burger dated August 23, 2007
     Servicing Agreement between Local 715 and UHW
     Form LM-15 Trusteeship Report May 2008

SEIU will further stipulate that the hearing officers' reports attached hereto were duly approved by the SEIU International Executive Board.

With respect to taking President Stern's deposition, I am advised that President Stern will be out of the country between July 9 and July 20, and will not be available prior to his departure. However, I can make his assistant James J. Johnston available in his place. Mr. Johnston recently served as SEIU California Area Director and is currently Director of Union-Wide Programs. By virtue of holding these positions, Mr. Johnston is knowledgeable about the existence of Local 715. Mr. Johnston is available on July 10 and 11. Our preference would be July 10. Please note that Mr. Johnston may only be questioned on the narrow issue about which I understand the Court has permitted discovery: the existence of Local 715.

With respect to Greg Pullman, you seemed surprised when I advised you that has been an International Union employee since November 2006. Yet Mr. Pullman testified to this in his deposition which the Hospitals took on March 22, 2007, at which he answered questions related to the 2006 SEIU reorganization in California. It would plainly be improper, oppressive and vexatious to depose Mr. Pullman again on the same issue. Please let me know specifically why the Hospitals seek to depose Mr. Pullman.

Yours,

Norman M. Gleichman
Deputy General Counsel

**From:** Ridley, Eileen R. [mailto:ERidley@foley.com]
**Sent:** Thu 6/26/2008 2:47 AM
**To:** Norman Gleichman
**Subject:** FW: Local 715 v. SHC/LPCH - Documents To Be Authenticated

Mr. Gleichman:

Per our conversation this week attached are documents we would request your client to authenticate which include the following:

## June 9, 2006 Hearing Officers' Joint Report And Recommendations


## June 11, 2006 memo from Andrew Stern to Affected SEIU Local Unions in California regarding the IEP decision on California jurisdiction

## June 8, 2007 notice of appointment of trustee signed by Andrew Stern

## June 8, 2007 memo from Andrew Stern to officers and members of Local 715 regarding appointment of trustee

## July, 2007 Form LM-15 (Trusteeship Report) signed by Andrew Stern and Anna Burger.

July 12, 2007 Memo from Anna Burger, International Secretary-Treasurer titled "Notice Of Hearing Appointment Of Hearing Officer And Rules Of Procedure."

## December 19, 2007 letter from B. Smith to L. Quintel reflecting copy sent to Norm Gleichman

## February 12, 2008 letter from B. Smith to L. Quintel reflecting copy sent to Norm Gleichman


In addition, we need to have your client respond to the requests presented by the subpoena (obviously, if there are no responsive documents we will need a verified statement to that effect). Further, we are aware there are likely documents retained by your client which are responsive to the requests but are not included in the above request for authentication. In order to expedite this process, please let us know the quantity of responsive documents your client has. While your client's response was due on Monday, we have agreed to an extension of time. However, we will need a response by early next week.

Finally, as discussed, we will want to depose Mr. Stern and Pullman. In particular, Mr. Stern was involved in the creation of the trust regarding Local 715 which is a subject in this matter. Again, our focus is related to the existence and representation of Local 715 and the use of its resources, Please provide us with available dates for these proceedings. Thanks very much.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not

intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.

**Subject:** FW: Local 715 v. SHC/LPCH - Documents To Be Authenticated

-----Original Message-----
**From:** Norman Gleichman [mailto:Norman.Gleichman@seiu.org]
**Sent:** Tuesday, July 01, 2008 1:18 PM
**To:** eridley@foley.com
**Subject:** RE: Local 715 v. SHC/LPCH - Documents To Be Authenticated

Dear Ms. Ridley:

I have reviewed your e-mail and the documents you have forwarded with your request that SEIU authenticate them.

First, I wish to reiterate SEIU's position, stated in SEIU's objection dated May 27, 2008, that the subpoenas do not comply with Rule 45(c) of the Federal Rules of Civil Procedure. As I understand it from your communications to date, the Court in this matter has permitted discovery on the narrow question of the existence of Local 715. You have not supplied me with the Court's discovery order, but I assume you have accurately described it.

It is well settled that no formal structure or financing arrangement is required to meet the definition of "labor organization" under the National Labor Relations Act. Thus, a group of employees can constitute a labor organization without officer elections or elected officials, membership meetings, a dues structure, or a set of bylaws. All that is required is employee participation for the purpose of dealing with employers over wages, hours, or terms and conditions of employment. *See, e.g., Sahara Datsun v. NLRB*, 811 F.2d 1317 (9th Cir. 1987); *Polaroid Corp.* 329 NLRB 424 (1999).

Against this backdrop, your subpoena goes far beyond the narrow area of inquiry open to you concerning the issue of the existence of Local 715. As just one example, the identity of the counsel selected to represent Local 715, a subject of the Hospitals' requests for production nos. 1, 20 and 21, is completely irrelevant to the question whether Local 715 exists. Without limitation, the same is true regarding financial transactions regarding Local 715, other SEIU local unions, or SEIU. See request nos. 19, 22-27, 56-57. In sum, these subpoenas constitute an obvious fishing expedition having nothing whatever to do with the question of Local 715's existence.

The subpoenas are also unduly burdensome, in violation of the Federal Rules. The requests are so broadly worded that they would require virtually every piece of written communication to Local 715 to be produced. See, without limitation, request nos. 5, 7, 8, 9 and 10. In this connection, you are advised that SEIU does not maintain a central filing system where documents are uniformly and systematically maintained according to subject matter or other categories. Instead, files and records are kept separately in SEIU's numerous separate departments and regional offices, as well as by individual staff members within those departments. The record retention policies, protocols and categories, if any, used in those separate departments and regional offices are not necessarily compatible. Additionally, a significant volume of SEIU files are not readily accessible because they have been boxed and transferred to an outside archive. Accordingly, the requests detailed herein and similar requests would require SEIU to spend countless hours locating and combing through thousands of separate, uncatalogued files maintained in separate Departments and offices, as well as to retrieve and review files boxed and stored in the outside archives, simply to determine whether they contain any material falling within the scope of the subpoena. This search would have to be performed manually. The expense to the SEIU in personnel time and archives retrieval charges would be enormous. The subpoena imposes a substantial additional burden on the SEIU in that its personnel would be precluded from carrying out the essential business of SEIU while deployed in the document search demanded by the Hospitals.

The sweeping scope of the subpoenas would force SEIU to divulge SEIU and its members communications on all issues, deliberations, and other activity protected by the First Amendment, including but not limited to SEIU's and its members exercise of the right to freedom of association and freedom of speech. Moreover, while the subpoenas would force the SEIU to mount an expensive, time-consuming records search, that effort will yield little, if any relevant material given the definition of labor organization under the NLRA.

Furthermore, as indicated in SEIU's objection, SEIU does not have custody of much of the documentation your subpoena seeks. I repeat that SEIU is not a party to these actions, and under the Labor Management Reporting and Disclosure Act is not the same labor organization as its affiliated local unions.

Nevertheless, without waiving its stated objections to the subpoenas, in an effort to reach agreement on issues raised by the subpoenas, SEIU further responds to your request as follows:

7/8/2008

SEIU is agreeable to stipulating to the authenticity of the following documents:

    Order of Emergency Trusteeship dated June 8, 2007
    Form LM-15 Trusteeship Report
    Memorandum from Andrew L. Stern re: trusteeship of Local 715, dated June 8, 2007
    Notice of Hearing signed by Anna Burger dated July 12, 2007
    Memorandum from Andrew L. Stern re: IEB Decision on California Jurisdiction dated June 11, 2006

SEIU is unable to stipulate to the authenticity of the following documents for the reasons given:

    Letter from B.W. Smith to Laurie Quintel dated December 19, 2007. This letter was purported issued by Local 715, and Local 715 is the entity that would be in a position to authenticate this document.
    Letter from B.W. Smith to Laurie Quintel dated February 12, 2008. See comment above.
    Hearing Officers' Joint Report and Recommendations. The version you sent to me is unsigned.

Without waiving SEIU's previously stated objections to your subpoena, SEIU is producing herewith the following additional documents that are covered by the subpoena:

    Signed Hearing Officers' Joint Report and Recommendations dated June 9, 2006
    Order of Reorganization signed by Andrew Stern dated January 2, 2007
    Hearing Officer's Report on Local 715 trusteeship dated August 13, 2007
    Letter from Kristina Sermersheim to Andrew Stern dated June 4, 2007
    Letter to Bruce Smith from Andrew L. Stern dated June 8, 2007
    Letter to Clarence Dodge from George E. Fairchild dated March 2, 1972
    Letter to Bruce Smith from Anna Burger dated August 23, 2007
    Servicing Agreement between Local 715 and UHW
    Form LM-15 Trusteeship Report May 2008

SEIU will further stipulate that the hearing officers' reports attached hereto were duly approved by the SEIU International Executive Board.

With respect to taking President Stern's deposition, I am advised that President Stern will be out of the country between July 9 and July 20, and will not be available prior to his departure. However, I can make his assistant James J. Johnston available in his place. Mr. Johnston recently served as SEIU California Area Director and is currently Director of Union-Wide Programs. By virtue of holding these positions, Mr. Johnston is knowledgeable about the existence of Local 715. Mr. Johnston is available on July 10 and 11. Our preference would be July 10. Please note that Mr. Johnston may only be questioned on the narrow issue about which I understand the Court has permitted discovery: the existence of Local 715.

With respect to Greg Pullman, you seemed surprised when I advised you that has been an International Union employee since November 2006. Yet Mr. Pullman testified to this in his deposition which the Hospitals took on March 22, 2007, at which he answered questions related to the 2006 SEIU reorganization in California. It would plainly be improper, oppressive and vexatious to depose Mr. Pullman again on the same issue. Please let me know specifically why the Hospitals seek to depose Mr. Pullman.

Yours,

Norman M. Gleichman
Deputy General Counsel

**From:** Ridley, Eileen R. [mailto:ERidley@foley.com]
**Sent:** Thu 6/26/2008 2:47 AM
**To:** Norman Gleichman
**Subject:** FW: Local 715 v. SHC/LPCH - Documents To Be Authenticated



Mr. Gleichman:

Per our conversation this week attached are documents we would request your client to authenticate which include the following:

June 9, 2006 Hearing Officers' Joint Report And Recommendations
[]

June 11, 2006 memo from Andrew Stern to Affected SEIU Local Unions in California regarding the IEP decision on California jurisdiction

June 8, 2007 notice of appointment of trustee signed by Andrew Stern

June 8, 2007 memo from Andrew Stern to officers and members of Local 715 regarding appointment of trustee

July, 2007 Form LM-15 (Trusteeship Report) signed by Andrew Stern and Anna Burger.

July 12, 2007 Memo from Anna Burger, International Secretary-Treasurer titled "Notice Of Hearing Appointment Of Hearing Officer And Rules Of Procedure."

December 19, 2007 letter from B. Smith to L. Quintel reflecting copy sent to Norm Gleichman

February 12, 2008 letter from B. Smith to L. Quintel reflecting copy sent to Norm Gleichman
[]

In addition, we need to have your client respond to the requests presented by the subpoena (obviously, if there are no responsive documents we will need a verified statement to that effect). Further, we are aware there are likely documents retained by your client which are responsive to the requests but are not included in the above request for authentication. In order to expedite this process, please let us know the quantity of responsive documents your client has. While your client's response was due on Monday, we have agreed to an extension of time. However, we will need a response by early next week.

Finally, as discussed, we will want to depose Mr. Stern and Pullman. In particular, Mr. Stern was involved in the creation of the trust regarding Local 715 which is a subject in this matter. Again, our focus is related to the existence and representation of Local 715 and the use of its resources, Please provide us with available dates for these proceedings. Thanks very much.

The preceding email message may be confidential or protected by the attorney-client privilege. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party.

Internal Revenue Service regulations require that certain types of written advice include a disclaimer. To the extent the preceding message contains advice relating to a Federal tax issue, unless expressly stated otherwise the advice is not intended or written to be used, and it cannot be used by the recipient or any other taxpayer, for the purpose of avoiding Federal tax penalties, and was not written to support the promotion or marketing of any transaction or matter discussed herein.