**EXHIBIT B**

```
 1  WILLIAM A. SOKOL, Bar No. 072740
    BRUCE A. HARLAND, Bar No. 230477
 2  WEINBERG, ROGER & ROSENFELD
    A Professional Corporation
 3  1001 Marina Village Parkway, Suite 200
    Alameda, California 94501-1091
 4  Telephone 510.337.1001
    Fax 510.337.1023
 5
    Attorneys for Petitioner
 6  Service Employees International Union, Local 715

 7  LAURENCE R. ARNOLD, CA Bar No. 133715
    EILEEN R. RIDLEY, Ca Bar no. 151735
 8  SCOTT P. INCIARDI, CA Bar No. 228814
    FOLEY & LARDNER LLP
 9  One Maritime Plaza, Sixth Floor
    San Francisco, CA 94111-3409
10  Telephone:   415.434.4484
    Facsimile:   415.434.4507
11
    Attorneys for Respondents
12  Stanford Hospital & Clinics and Lucile Packard Children's Hospital

13
                        UNITED STATES DISTRICT COURT
14
                       NORTHERN DISTRICT OF CALIFORNIA
15

16
    SERVICE EMPLOYEES INTERNATIONAL  ) Case No. C-08-213 JF
17  UNION, LOCAL 715,                )
                                     )
18            Petitioner,            )
                                     )
19       v.                          ) JOINT CASE MANAGEMENT
                                     ) CONFERENCE STATEMENT
20  STANFORD HOSPITAL AND CLINICS AND)
    LUCILE PACKARD CHILDREN'S        )
21  HOSPITAL,                        )
                                     )
22            Respondent.            )
                                     )
23  ─────────────────────────────────)
```

24      Pursuant to Local Rule 16-9 and the Court's "Standing Order For All Judges Of The

25 Northern District Of California; Contents Of Joint Case Management Statement" (the "Standing

26 Order"), Petitioner Service Employees International Union, Local 715 (the "Union") and

27 Respondents Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals")

28

1

1 respectfully submit their Joint Case Management Conference Statement.

## I. JURISDICTION AND SERVICE

The Court has personal jurisdiction by virtue of, Section 301 of the Labor-Management Relations Act of 1947 (hereinafter "Section 301"). 29 U.S.C. § 185. The Petition was delivered to the Hospitals without summons on January 14, 2008. The Hospitals thereafter agreed to follow the waiver of service provisions under Federal Rule of Civil Procedure ("FRCP") 4(d) once all required papers were provided to the Hospital's counsel. A Notice and Acknowledgement was sent to the Hospitals on January 28, 2008 and the Hospitals timely responded to the Petition on March 28, 2008.

## II. FACTS

**A.   THE COLLECTIVE BARGAINING AGREEMENT**

The Hospitals and the Union (sometimes collectively referred to as the "Parties") are signatory to a collective bargaining agreement (the "Agreement") effective between January 20, 2006 through November 4, 2008. The Agreement sets forth a procedure for processing and adjusting grievances culminating in arbitration.

Article 1 of the Agreement contains a "recognition clause" in which the Hospitals recognized Local 715 as the "sole and exclusive bargaining representative for the purpose of collective bargaining" of the Bargaining Unit and which provides that Local 715 is "(hereinafter referred to as "Union")."

The Hospitals recognized Local 715 as the sole and exclusive bargaining representative for purposes of collective bargaining of the bargaining unit pursuant to an order issued by the National Labor Relations Board (the "NLRB" or "Board") in Case No.: 32-RC-4504, as modified in Case No.: 32- UC- 363.

Article 20, Section 20.1 of the Agreement provides, in relevant part, that the Hospitals "may discharge or take other disciplinary action for just cause, against a non-trial Regular employee." Section 20.5 of the Agreement further provides that "[a] regular employee who has

2

completed the trial period and who has been terminated or otherwise disciplined has the right to file a grievance in accordance with Article 26."

Article 26 of the Agreement sets forth a procedure for processing and adjusting grievances culminating in arbitration. Article 26.1.1 defines a "grievance" as "a claim during the term of this Agreement that the Employer has violated this Agreement . . ." Article 26.2.1 provides that "[t]he Union will have the right to present grievances under this procedure on behalf of an individual employee, on behalf of a group of employees or on behalf of itself, as a Union grievance, as defined above. Article 26.7.3 of the Agreement provides that, in the event that a grievance is taken to arbitration, "[t]he arbitrator's authority will be limited to interpreting the specific provisions of this Agreement and will have no power to add to, subtract from, or to change any part of the terms or conditions of this Agreement." Article 26.7.10 further provides that "[t]he arbitrator's authority will be limited to determining whether the Employer has violated the provision(s) of this Agreement. The arbitrator will not have jurisdiction or authority to add to, amend, modify, nullify, or ignore in any way the provisions of this Agreement, and will not make any award that would, in effect, grant the Union or the employee(s) any matters that were not obtained in the negotiation process."

Article 28 of the Agreement is titled "waiver" and states in relevant part that "[t]he Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other will not be obligated to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered by this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed the Agreement."

**B.      THE ARBITRATION AWARD**

The Union filed the instant Petition to Confirm on or about January 10, 2008. The Hospitals timely responded to the Petition on March 28, 2008 and filed a Counter-Petition to

3

Vacate the Arbitration Award which has not yet been responded to by petitioner.

On or about March 14, 2007, the Hospitals terminated Victor Acosta, a member of the bargaining unit represented by the Union and covered by the Agreement, for allegedly engaging in an act of theft when he obtained some $20.00 worth of fried shrimp from the Hospital Café. The Union filed a grievance on Mr. Acosta's behalf on March 17, 2007. Ultimately, the Union appealed the termination to arbitration.

The Union and the Hospitals, through their respective counsel, W. Daniel Boone of Weinberg, Roger and Rosenfeld and Laurence Arnold of Foley and Lardner, selected a neutral third party arbitrator, Thomas Angelo, through the procedures of the Federal Mediation and Conciliation Service. After selecting Mr. Angelo as the arbitrator, the parties, through their respective counsel, selected November 28, 2007 as the hearing date. On July 10, 2007, Mr. Angelo confirmed the November 28, 2007 date in a letter addressed to the Hospitals' counsel and Daniel Boone of Weinberg Roger & Rosenfeld. Prior to the arbitration, the parties selected the law offices of Foley & Lardner as the location for the arbitration hearing.

On November 28, 2008, a hearing was held at the law office of Foley & Lardner before Arbitrator Thomas Angelo. At the hearing, the parties agreed to various stipulations, including the issue of the case, "Whether the employer had just cause to discharge the grievant; and if not, what is the appropriate remedy?" In addition, the parties marked and agreed to various joint exhibits. Counsel for the Hospitals then made an opening statement, suggesting that a "threshold issue" in the case involved the status of those purporting to act on behalf of the Union at the arbitration, although he conceded that such an issue was unrelated to whether or not the Hospitals terminated Mr. Acosta for just cause. Essentially, counsel for the Hospitals argued that the Hospitals were under no obligation or legal duty to participate in the arbitration of Mr. Acosta's grievance because he did not believe that the Union's counsel and Union representative had the authority to act on behalf of Local 715.

At the hearing, the Union's counsel asserted that he was appearing on behalf of SEIU, Local 715. The Arbitrator concluded that because the Union's counsel had stated his appearance

4

on behalf of the Union and no Union representative objected, and because there was no evidence suggesting otherwise, the Union's counsel was authorized to appear on behalf of the Union, and the hearing would go forward. The Hospital's counsel then stated that he would not participate in the hearing.

In response, the Arbitrator noted that if the Hospitals refused to participate in the hearing, he would be compelled to find that the Hospitals failed to prove their allegations against Mr. Acosta. The Hospitals' counsel requested that the hearing be stayed pending the "representational issue." The Arbitrator denied this request, given, among other things, the fact that a delay would be inequitable to the grievant and that the Hospitals would suffer no harm by going forward with the hearing, and in fact, by doing so, would limit its back pay liability. The Hospitals requested a stay of the proceedings, which was denied. The Hospitals refused to participate and the hearing continued *ex parte*.

On November 30, 2007, the Arbitrator issued the Award which was titled "Decision and Award."

On October 3, 2008, just two months prior to the Arbitration on November 28, 2008, the Union and Hospitals participated in an arbitration involving a contract issue. Although the Hospitals were represented by the same law firm and same attorney and in front of the same arbitrator as in this matter, the Hospitals did not make a single objection to participating in the arbitration hearing. In fact, the hearing went forward and the arbitrator has issued a decision which is favorable to the Hospitals; the Hospitals have not, and did not, seek to vacate that award.

C.   **THE SERVICING AGREEMENT**

In 2006, a Servicing Agreement (the "Servicing Agreement") was entered into between Local 715 and Service Employees International Union, United Healthcare Workers – West ("UHW"). The Servicing Agreement provided that UHW's staff would provide certain services to Local 715 relating to its representation of the Bargaining Unit. Specifically, section 4 of the Servicing Agreement provides that UHW is to provide "professional services to Local 715 for its

5

members at the Stanford facility" including "[r]epresentaiton in the grievance procedure and arbitration hearings." The Hospitals assert that they possess various versions of the Service Agreement which show an execution date by at least one of the parties of February 20, 2006. However, the Hospitals assert that they were not informed of the existence of the Servicing Agreement until on or about August 13, 2006, when a copy was provided to counsel for the Hospitals, Laurence R. Arnold by counsel for Local 715 William Sokol. The Hospitals assert that prior to receipt of a copy of the Servicing Agreement, the Hospitals were given various explanations for the presence of UHW employees. Upon a review of the Servicing Agreement and the circumstances surrounding the activities of Local 715 employees versus UHW employees in light of the terms of the Servicing Agreement, by letter dated August 29, 2007, Local 715 was notified that the Hospitals were rejecting the Servicing Agreement and would not deal with UHW employees purporting to act pursuant thereto. The Hospitals assert that since that date, and continuing to the present, the Hospitals have not dealt with any UHW employees claiming to be acting on behalf of Local 715, or otherwise, in any grievance proceeding, in any arbitration, or in any other collective bargaining related activity.

Section 7 of the Servicing Agreement provides that "Should the Employer challenge or refuse to accept the legitimacy of this Servicing Agreement, the parties [Local 715 and UHW] will cooperate in processing the legal actions necessary to its enforcement. (This may include filing an unfair labor practice charge under the name of Local 715)."

Commencing in August 2006 and continuing through to the present, the Hospitals and their counsel have repeatedly informed Petitioner that the Hospitals rejected the validity of the Servicing Agreement and would deal only with Local 715 and its authorized representatives -- not with representatives of UHW acting pursuant to the rejected Servicing Agreement. The Union contends that, despite allegedly rejecting the Servicing Agreement and stating that it would not deal with representatives employed by UHW, from February 2006 through October 2007, the Hospitals did in fact deal with representatives of UHW, who acted pursuant to the Servicing Agreement, in grievance meetings and at arbitrations.

Neither Local 715 nor UHW have field any action in any forum seeking the enforcement of the Servicing Agreement.

Beginning in or around early 2007, the Hospitals allege that they became aware of information that Local 715 had effectively ceased to exist and that its resources were transferred to another local, Local 521 as of March 1, 2007. In response to learning the above information, the Hospitals requested information from Local 715 seeking information relating to whether Local 715 continued to exist and, if so, the nature of its continued existence.

### D. THE TRUSTEESHIP

The Union contends that on June 8, 2007, the International Union, in which Local 715 is an affiliate, placed Local 715 under Trusteeship, pursuant to the powers of the Constitution and By-laws. The Union contends that the International President, pursant to his powers under the Constitution and By-laws, appointed Bruce W. Smith as a Trustee over the affairs of SEIU Local 715. The Union contends that, as the appointed Trustee, Mr. Smith has responsibility to manage the affairs of Local 715 until relieved by the International President. The Hospitals contend that no proper trusteeship was imposed on Local 715, and doubt its existence at the time Local 715 contends the trustee was appointed.

On June 14, 2007, Mr. Smith sent the Hospitals a letter informing it of the Trusteeship. Mr. Smith provided the Hospitals with a copy of the Trusteeship Order, and explained that all of the officers of Local 715 had been removed and that the International President had appointed vested Mr. Smith "with full authority to act on behalf of Local 715." The Hospitals contend that the letter also expressed the Trustee's reaffirmation of the rejected Servicing Agreement. The Hospitals advised the Trustee by letter dated August 1, 2007 that the previously rejected Servicing Agreement remained rejected.

E.   **NLRB PROCEEDINGS.**

On or around April 16, 2007 the Hospitals filed a charge designated case number 32-CB-6237 with Region 32 of the National Labor Relations Board ("NLRB") alleging that Local 715 was in violation of the National Labor Relations Act by its refusal to respond to the Hospitals' information requests. The Union contends that in order for the NLRB to investigate a charge against either a labor organization or employer, that labor organization or employer must exist. If the labor organization or employer does not exist, then the NLRB lacks jurisdiction.. The Hospitals contend that no investigation was undertaken by Region 32 of the question of Local 715's existence, and that Local 715 presented no evidence with respect thereto.

Throughout the existence of the collective bargaining relationship between Local 715 and the Hospitals, the law firm of Weinberg, Roger & Rosenfeld had always represented Local 715 in matter relating thereto. On or about June 18, 2007, the Hospitals learned that the Trustee had retained as counsel, Barbara J. Chisholm, of the firm of Altshuler Berzon. The Union contends that Ms. Chisholm was retained as additional counsel. According to the Hospitals, counsel for the Hospitals spoke with Ms. Chisholm by telephone on June 18, 2007, in which conversation Ms. Chisholm confirmed that she, and her firm, had been appointed counsel to the Trustee and thus were counsel to Local 715, and further confirmed that all further communications were to be directed to her. This was confirmed by counsel for the Hospitals in a letter to Ms. Chisholm that same date. The Trustee also sent a letter to the Hospitals, in December 2007, after the Hospitals' counsel refused to participate in an arbitration, notifying them that Weinberg, Roger & and Rosenfeld had always represented Local 715 with respect to grievances and arbitrations and would continue to represent Local 715 with respect to grievances and arbitrations. The Hospital contends that the letter did not state whether the representation after the Trustee's appointment was by direct retention or pursuant to the rejected Servicing Agreement.

Although Altshuler Berzon informed counsel for the Hospitals that they would be appearing at an arbitration set for July 25, 2007, and served a subpoena for documents to be

8

provided at the hearing, instead an attorney for Weinberg, Roger & Rosenfeld, W. Daniel Boone, appeared at the hearing, and, pursuant to an inquiry from counsel for the Hospitals, stated that he was appearing "on behalf of Local 715." The arbitration hearing was held on that grievance. The same thing occurred at a subsequent arbitration hearing convened on August 8, 2007. Present at these hearings (but, the Hospitals assert, not participating on the record or in the hearing) were Union Representatives employed by UHW, servicing Local 715. The Hospitals made no objection to the presence of these individuals, and fully participated in the hearings. The Hospitals assert that not long thereafter, an attorney from Weinberg, Roger & Rosenfeld, Vincent Harrington, wrote to the Hospitals requesting that they bargain with him on a change of terms of conditions which he claimed required bargaining. The Hospitals assert that they did not bargain with Mr. Harrington. Promptly thereafter, however, the Hospitals made a written request directed to Ms. Chisholm, dated August 24, 2007, for information regarding whether Weinberg, Roger & Rosenfeld was appearing directly on behalf of Local 715, or was appearing as counsel for UHW pursuant to the rejected Servicing Agreement which provided that UHW would provide professional services in arbitration hearing for Local 715. While waiting for a response, an additional arbitration occurred on October 3, 2007, at which Bruce Harland of Weinberg, Roger & Rosenfeld appeared. The arbitration took place. In fact, the parties stipulated to a number of facts, presented witnesses, and submitted post-hearing briefs. Again, present at this arbitration was a Union Representative employed by UHW, servicing Local 715. The Hospitals assert that this UHW employee did not participate in the hearing or on the record. The Hospitals did not raise any objection to her presence, and fully participated in the hearing.

The Hospitals assert that, having not heard from Ms. Chisholm in response to the August 24, 2007 request for information regarding the nature of Weinberg, Roger & Rosenfeld's appearances at these hearing, the Hospitals made a second request, by letter dated October 5, 2007 for the same information. In response to this request, Ms. Chisholm did reply, on October 9, 2007, but only to state that she would not be responding to the requests for information. In response, the Hospitals advised Ms. Chisholm, by letter dated October 16, 2007, that they would no longer select

9

arbitrators or proceed to hearing in any matter in which Weinberg, Roger & Rosenfeld was purporting to act, absent information stating that the basis upon which they were appearing was by direct retention by Local 715 and not pursuant to the rejected Servicing Agreement.

Since November 28, 2007, there have been no arbitrators selected for any grievances because the Hospitals have refused to select any. The Hospitals assert that no arbitrators have been selected because the Hospitals refuse to participate in the selection of arbitrators with members of Weinberg Roger & Rosenfeld absent clarification of their representative role. Nor have there been any arbitration hearings held because the Hospitals have refused to select an arbitrator, and the Hospitals have not participated in any arbitrations on the merits of any grievances since that date. However, the Union asserts that the Hospitals and Local 715 have settled some grievances, which were scheduled to take place in the month of January 2008. The Hospitals assert that they have settled grievances filed by Hospital employee stewards with those stewards, but assert that they did not meet with or communicate with any Local 715 representative or UHW employee in that process.

The Hospitals also filed an unfair labor practice charge (32-CB-6350) for refusal to provide information regarding Local 715 and another Union, Local 521. They also filed an unfair labor practice charge (32-CB-6351) against Local 715 for refusing to provide information regarding the basis upon which Weinberg, Roger & Rosenfeld was purporting to appear on behalf of Local 715. The Union asserts that in order to prevail on these charges, the NLRB and the Hospitals must allege, among other things, that Local 715 exists, otherwise the NLRB lacks jurisdiction and there could be no violation for failing to provide information.

On or around February 28, 2008, Region 32 issued a complaint against Local 715 for failing to respond to the Hospitals' information requests based upon the three (3) above-referenced charges, which complaint is presently pending. In the complaint, it is alleged by Region 32 of the NLRB, on behalf of the Hospitals, that Local 715 exists and is a bona fide labor organization, thus giving the NLRB jurisdiction over the matter. The Hospitals assert that the complaint alleges only that Local 715 "is now, and has been at all times material herein, a labor organization within the

meaning of Section 2(5) of the Act." The Hospitals have not objected to this allegation, nor have they asked that the allegation be struck from the complaint. In its Answer to the complaint, Local 715 has admitted that it exists and is a bona fide labor organization. The Union asserts that, in order for the Hospitals to prevail on their claims, an Administrative Law Judge must not only find that the allegations involving the failure to provide information violate the NLRA, but also that Local 715 exists and is a bona fide labor organization. If the Judge were to find that Local 715 does not exist or is not a bona fide labor organization, then the charges against Local 715 would be dismissed. A hearing on the complaint has been scheduled for May 6, 2008.

The Hospitals assert that, if the NLRB prevails at the hearing, Local 715 will be ordered to produce requested information regarding its status as an ongoing organization during the time periods for which the requests were made, and regarding the basis upon which Weinberg Roger & Rosenfeld is representing the Trustee. From that information the Hospitals contend that they hope to be able to determine whether Local 715 does in fact exist and, of so, in what capacity Weinberg Roger & Rosenfeld is appearing on its behalf.

### III. LEGAL ISSUES

The legal issue is whether the Award must be confirmed under Section 301 of the Labor Management Relations Act because the Award is valid and enforceable because it draws its essence from the Agreement, represents a plausible interpretation of the Agreement, and resolves issues expressly submitted for decision by the parties, or questions reasonably determined as necessary by the Arbitrator to decide the question submitted.

The Hospitals contend that the Award is invalid in the following respects:

1) The Award ignores, modifies, and/or contradicts multiple provisions of the Agreement;

2) The Award decided issues that were not arbitrable under the Agreement;

3) The Award decided issues that were not submitted to the Arbitrator.

The Hospitals further contend that counsel purporting to appear for Local 715 flatly refused to state whether he was retained by and directly representing Local 715 or was acting pursuant to

11

the Servicing Agreement which was not binding upon and had been rejected by the Hospitals. According to the Hospitals, there were no representatives of Local 715 present at the hearing to object or assent to representation by Weinberg, Roger & Rosenfeld, rather only an employee of UHW who could only be present pursuant to the rejected Servicing Agreement. These issues were pointed out to the arbitrator, although the Hospitals stated that the Arbitrator had no authority to deal with such issues. No evidence was presented to the arbitrator to establish that the Weinberg firm was directly representing Local 715, nor was there any evidence, or even any statement, that the representative present, Myriam Escamilla, was anything other than an employee of UHW. The arbitrator agreed that he did not have jurisdiction to determine the representation issue, which, according to the Hospitals, lies at the core of the Hospitals' duty to arbitrate.

## IV.   MOTIONS

The Parties expect that a dispositive motion (or motions) will be filed seeking adjudication of all material issues in this case. Said motions are likely to be filed after completion of discovery regarding Local 715's existence and the nature of the Weinberg firm's representation.

## V.   AMENDMENT OF PLEADINGS

The Union does not anticipate amending any of its pleadings, but reserves the right to do so. The Parties propose a deadline for amending the pleadings of June 20, 2008.

## VI.   EVIDENCE PRESERVATION

The evidence relevant to the issues in this case is expected to include to the Agreement, the Servicing Agreement, the Award, correspondence between the parties, the transcripts, and joint exhibits filed in connection with the arbitration proceedings and the pleadings and other documents on file in this matter. Further, the Hospitals have written to Petitioner asking that all evidence regarding Local 715 (and its relationship and communications with Local 521 and UHW), including without limitation, all information regarding its financial resources, its representation and its website, be preserved. The Hospitals anticipate significant discovery regarding these materials and the issues regarding the existence of Local 715, the use of Local 715's resources by third

parties, and the nature of Local 715's representation by counsel. The parties represent that they have taken steps to preserve such evidence.

### VII. DISCLOSURES

Under Federal Rule of Procedure 26(a)(1)(E), this action is exempt from the requirement of Rule 26(a) disclosures. The Parties have made arrangements for an informal exchange of some documents and information. However, the Hospitals believe that the materials described in Section VI above should be disclosed and will be the subject of discovery (see "Discovery" below).

### VIII. DISCOVERY

The Parties have not conducted any discovery to date. The Parties believe and anticipate that all the evidence that will be relied upon in the case is already in the possession of the parties or can be exchanged informally. The Parties have made arrangements for the informal exchange of some of evidence to the extent that either party contends that it is not in possession of relevant evidence. However, the Hospitals anticipate that discovery will be required regarding the information referred to in Sections VI and VII above including depositions, requests for production, interrogatories and requests for admission. The Union believes that this matter can be resolved through dispositive motions and without the need of signficant discovery. To that extnent, the Union would request the court limit discovery.

### IX. CLASS ACTIONS

Neither party has asserted any claims or defenses on behalf of a class.

### X. RELATED CASES

Pursuant to the Court's order dated February 29, 2008, this case is related to the following cases:

- *Stanford Hospital And Clinics And Lucile Packard Children's Hospital v. Service Employees International Union, Local 715*; C-07-5158 JF

- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-00215-JF

- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-00216-JF

The Union also contends that this case is related to the following two (2) cases, which the Union has filed in this Court, but which have not been served on the Hospitals.

- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-01727-HRL

- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-01726-RS

With the exception of the above-listed cases, the Parties are not aware of any related cases or proceedings pending before another judge of this court, or before another court or administrative body.

## XI. RELIEF

The Union seeks an order by this Court confirming the Award, attorneys' fees and costs incurred on the ground that the Petition is submitted in bad faith and is without merit, and such other and further relief that the Court may deem just and proper.

The Hospitals seek an order by this Court dismissing this action for want of a plaintiff, or, alternatively, an order vacating the Award rendered by the Arbitrator on November 30, 2007, and staying further arbitration proceedings until such time as the representative status of Local 715, the validity of the Servicing Agreement, and the status and capacity of the Weinberg Firm are resolved by the agency with exclusive jurisdiction to do so, that this Court award the Hospitals their costs incurred in this proceeding, and that this Court award such other and further relief that this Court

deems proper.

## XII. SETTLEMENT AND ADR

The Parties believe that settlement of the case is unlikely at this point. The Parties have not engaged in any ADR efforts to date, and do not believe that such efforts would be helpful at this stage, as the case is likely to be resolved by motion. In the event that the parties are required to select an ADR procedure, the Parties are agreeable to Early Neutral Evaluation.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

## XIV. OTHER REFERENCES

The Parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

Petitioner believes that all the factual and legal issues in the case can be resolved by motion. The Hospitals believe that some issues may be resolved by way of motion but that, ultimately, this matter will need to be tried.

## XVI. EXPEDITED SCHEDULE

The Parties do not believe that it is necessary to establish an expedited schedule.

## XVII. SCHEDULING

The Union believes this case can be resolved by a dispositive motion. The Hospitals believe that portions of this case may be resolved by a dispositive motion. The Hospitals propose that the Court permit preliminary discovery be conducted and set a further case management conference in order to determine of dates for designation of experts, discovery cutoff, and pretrial conference and trial after the resolution of dispositive motions, if necessary. While the Union does not believe that discovery is necessary in this matter, as the issue before the Court is whether or not the Hospitals have agreed to arbitrate this particular dispute with the Union pursuant to the parties' CBA, the Union requests that any preliminary discovery be severly limited.

## XVIII. TRIAL

The Hospitals believe that a trial in this matter will be necessary because they believe that dispositive motions will resolve only some issues in this matter. In the event that a trial becomes necessary, the Hospitals expect the trial to last approximately ten (10) days. The Union does not believe that a trial is necessary, as the issue before the Court is simply whether or not the Hospitals have agreed to arbitrate this particular dispute with the Union pursuant to the parties' CBA. The Union, therefore, believes that dispositive motions can resolve all issues in this matter; but that if a trial is necessary, the Union expects a trial to last approximately one (1) to three (3) days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The Hospitals have filed a "Certification Of Interested Entities Or Persons" with the Court. Additionally, in accordance with the Court's Standing Order, counsel for the Hospitals certifies as follows:

> The following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

16

- Thomas Angelo, served as arbitrator in the arbitration at issue in this proceeding, and therefore may have a non-financial interest in the subject matter that could be substantially affected by the outcome of this proceeding.

The following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

Victor Acosta is an interested person affected by the outcome of this proceeding because he lost wages and benefits arising from unjust termination.

Dated: April 21, 2008

        WEINBERG, ROGER & ROSENFELD
        A Professional Corporation

        By: _____
        WILLIAM A. SOKOL
        BRUCE A. HARLAND
        Attorneys for Petitioner
        SEIU, Local 715

Dated: April 21, 2008

        FOLEY & LARDNER LLP

        By: _____ /SPI/
        LAURENCE R. ARNOLD
        EILEEN R. RIDLEY
        SCOTT P. INCIARDI
        Attorneys for Respondents

17

## Yardley, Susan E.

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Monday, April 21, 2008 4:27 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 5:08-cv-00213-JF Service Employees International Union, Local 715 v. Stanford Hospital and Clinics and Lucile Packard Children's Hospital Joint Case Management Statement |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available.*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from by Arnold, Laurence entered on 4/21/2008 4:27 PM and filed on 4/21/2008

| | |
|---|---|
| **Case Name:** | Service Employees International Union, Local 715 v. Stanford Hospital and Clinics and Lucile Packard Children's Hospital |
| **Case Number:** | 5:08-cv-213 |
| **Filer:** | Service Employees International Union, Local 715 |
| | Stanford Hospital and Clinics and Lucile Packard Children's Hospital |
| **Document Number:** | 31 |

**Docket Text:**
**JOINT CASE MANAGEMENT STATEMENT filed by Service Employees International Union, Local 715, Stanford Hospital and Clinics and Lucile Packard Children's Hospital. (Arnold, Laurence) (Filed on 4/21/2008)**

**5:08-cv-213 Notice has been electronically mailed to:**

4/21/2008

Laurence R. Arnold     larnold@foley.com

W. Daniel Boone     courtnotices@unioncounsel.net

Bruce A. Harland     courtnotices@unioncounsel.net, bharland@unioncounsel.net

Scott Powers Inciardi     sinciardi@foley.com, syardley@foley.com

Eileen Regina Ridley     eridley@foley.com, tschuman@foley.com, wdelvalle@foley.com

William A. Sokol     courtnotices@unioncounsel.net

**5:08-cv-213 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** G:\Winsaves\Larry Arnold\Stanford\Acosta USDC Action\Joint Case Management Conference Statement.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=4/21/2008] [FileNumber=4323809-0]
[5e177bef804fefcec124e5282e30f663673209910987b273dcb38ecf073e4ba2122a3f
e910082ba7501bf32158656e22a4bbb1442130681110664b227555021d00]]