**EXHIBIT C**

WILLIAM A. SOKOL, Bar No. 072740
BRUCE A. HARLAND, Bar No. 230477
**WEINBERG, ROGER & ROSENFELD**
A PROFESSIONAL CORPORATION
1001 MARINA VILLAGE PARKWAY, SUITE 200
ALAMEDA, CALIFORNIA 94501-1091
TELEPHONE:   510.337.1001
FACSIMILE:   510.337.1023

Attorneys for Petitioner
Service Employees International Union, Local 715

**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3409
TELEPHONE:   415.434.4484
FACSIMILE:   415.434.4507

LAURENCE R. ARNOLD, CA BAR NO. 133715
EILEEN R. RIDLEY, CA BAR NO. 151735
SCOTT P. INCIARDI, CA BAR NO. 228814

Attorneys for Respondents
Stanford Hospital & Clinics and
Lucile Packard Children's Hospital

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715,<br><br>Petitioner,<br><br>v.<br><br>STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL,<br><br>Respondents. | Case No: C-08-215 JF<br><br>**JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |

Pursuant to Local Rule 16-9 and the Court's "Standing Order For All Judges Of The Northern District Of California; Contents Of Joint Case Management Statement" (the "Standing Order"), Petitioner Service Employees International Union, Local 715 (the "Union") and Respondents Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals") respectfully submit their Joint Case Management Conference Statement.

## I. JURISDICTION AND SERVICE

Jurisdiction of this Court is based upon 29 U.S.C. § 185; 9 U.S.C. § 4; and 28 U.S.C. § 1337. The Petition was delivered to the Hospitals without summons on January 14, 2008. The Hospitals thereafter agreed to follow the waiver of service provisions under Federal Rule of Civil

Procedure ("FRCP") 4(d) once all required papers were provided to the Hospital's counsel. A Notice and Acknowledgement was sent to the Hospitals on January 28, 2008 and the Hospitals timely responded to the Petition on March 28, 2008.

## II. FACTS

### A. The Collective Bargaining Agreement

The Hospitals and the Union (sometimes collectively referred to as the "Parties") are signatory to a collective bargaining agreement (the "Agreement") effective between January 20, 2006 through November 4, 2008. The Agreement sets forth a procedure for processing and adjusting grievances culminating in arbitration.

Article 1 of the Agreement contains a "recognition clause" in which the Hospitals recognized Local 715 as the "sole and exclusive bargaining representative for the purpose of collective bargaining" of the Bargaining Unit and which provides that Local 715 is "(hereinafter referred to as "Union")."

The Hospitals recognized Local 715 as the sole and exclusive bargaining representative for purposes of collective bargaining of the bargaining unit pursuant to an order issued by the National Labor Relations Board (the "NLRB" or "Board") in Case No.: 32-RC-4504, as modified in Case No.: 32- UC- 363. The Hospitals and the Union (sometimes collectively referred to as the "Parties") are signatory to a collective bargaining agreement (the "Agreement") effective between January 20, 2006 through November 4, 2008.

Article 3 of the Agreement, in relevant part, provides:

> All employees, within 31 days of the effective date of this Agreement, or within 31 days of their hire date, whichever comes later, will be required as a condition of continued employment to choose one of the following options:
>
> 3.1.1   Join and maintain membership in the Union;
>
> 3.1.2   Choose not to join the Union but pay to the Union a monthly service fee charge equivalent to his/her share of the costs incurred by the Union related to collective bargaining, contract administration and grievance adjustment, as determined under applicable law. The Union will advise the Employer and the employees of the amount annually, or upon request.

3.1.3 Employees who hold good faith beliefs which oppose membership in and contributions to a labor organization may choose instead to contribute a monthly sum equal to the regular monthly service fee amount to one of the following nonprofit charitable organizations, exempt from taxation under Section 501(c)(3) of the Internal Revenue Code: 1) the Lucile Packard Children's Foundation; 2) the United Way; or 3) the American Cancer Society. Such employees will be required to verify to the Union their payments to the charitable organization.

3.1.4 Any employee covered by this Agreement who fails to comply with the provisions of this Article will, upon notice of such failure in writing from the Union to the Employer and after counseling of such employee by SEIU, be discharged or allowed to resign no later than fifteen (15) days following receipt of written request the termination of any employee whose failure to pay periodic dues, service fee or charitable contribution is attributable to pay periods in which the employee's paycheck, after all mandatory deductions and benefits contributions, is less than the sum of the dues or service fee. For purposes of this provision an employee will be deemed to be in compliance if the employee has duly tendered the specified monthly service fee, dues or charitable contribution.

3.1.5 This section (3.1.) will not take effect until ninety (90) days after the effective date of this Agreement.

3.2 DUES DEDUCTION

3.2.1. Upon receipt of a written authorization by the Employee using a form which has been mutually agreed to by the parties, the Employer will deduct and remit to the Union no less frequently than once a month the periodic dues of the Union or service fees until such time as the Employee submits written authorization. The Employer will not be responsible for deduction in any pay period in which the Employees net earnings are insufficient to cover the deduction. The Employer will also remit an alphabetical list showing the names of payees and the amounts deducted and remitted. Upon request of the Union, the Employer will meet and determine the appropriate mechanics for providing such information.

3.2.2 The Employer agrees to use its best efforts to administer this provision in an accurate and timely fashion. The Union will inform the Employer once a year of the amount of the monthly dues and the service fee under this provision. Such notice will be sent sufficiently in advance of any change in the amount(s) to allow for payroll programming of the monthly dues and service fee change. It will also be the Union's

responsibility to notify the Employees of any change in the amounts the Employees are required to pay to the Union under this provision. If, through inadvertence or error, the Employer fails to make authorized deductions, or any part thereof, the Employer will, upon receipt of written notice of thereof correct such omission or error retroactively to a maximum of one (1) month's dues or fees, as applicable. Once the funds are remitted to the designated representatives of the Union, their disposition thereafter will be the sole and exclusive responsibility of the Union. It is expressly understood and agreed that the Union will refund to the Employee any deductions erroneously withheld from an Employee's wages by the Employer and paid to the Union.

Article 26 of the Agreement sets forth a procedure for processing and adjusting grievances culminating in arbitration. Article 26.1.1 defines a "grievance" as "a claim during the term of this Agreement that the Employer has violated this Agreement . . ." Article 26.2.1 provides that "[t]he Union will have the right to present grievances under this procedure on behalf of an individual employee, on behalf of a group of employees or on behalf of itself, as a Union grievance, as defined above. Article 26.7.3 of the Agreement provides that, in the event that a grievance is taken to arbitration, "[t]he arbitrator's authority will be limited to interpreting the specific provisions of this Agreement and will have no power to add to, subtract from, or to change any part of the terms or conditions of this Agreement." Article 26.7.10 further provides that "[t]he arbitrator's authority will be limited to determining whether the Employer has violated the provision(s) of this Agreement. The arbitrator will not have jurisdiction or authority to add to, amend, modify, nullify, or ignore in any way the provisions of this Agreement, and will not make any award that would, in effect, grant the Union or the employee(s) any matters that were not obtained in the negotiation process."

Article 28 of the Agreement is titled "waiver" and states in relevant part that "[t]he Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other will not be obligated to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered by this Agreement, even though such

1  subject or matter may not have been within the knowledge or contemplation of either or both of
2  the parties at the time they negotiated or signed the Agreement."

**B.     The Union's Petition to Compel.**

The Union filed the instant Petition to Compel on or about January 10, 2008. The Hospitals timely responded to the Petition on March 28, 2008. Disputes concerning the claimed violation of a specific provision or provisions of the Collective Bargaining Agreement are resolved by a grievance and arbitration procedure, culminating in final and binding arbitration. In or about March 2007 and continuing to present, the Hospitals stopped remitting dues to the Union. Although the Hospitals continued to deduct dues from its employees' paychecks for the purpose of remitting the dues to the Union, the Hospitals refused to remit those dues to the Union, which the Union contends they were contractually required to do. Instead of remitting the dues to the Union or instead of stopping the deduction of dues from its employees' paychecks, the Hospitals have held the dues in a separate account until such time as it can determine what organization (if any) is lawfully entitled to the dues consistent with federal labor laws including 29 U.S.C. § 186. The Union filed a grievance protesting the Hospitals' failure to remit dues to the Union. The Hospitals have refused to arbitrate the instant dispute.

**C.     The Servicing Agreement**

In 2006, a Servicing Agreement (the "Servicing Agreement") was entered into between Local 715 and Service Employees International Union, United Healthcare Workers – West ("UHW"). The Servicing Agreement provided that UHW's staff would provide certain services to Local 715 relating to its representation of the Bargaining Unit. Specifically, section 4 of the Servicing Agreement provides that UHW is to provide "professional services to Local 715 for its members at the Stanford facility" including "[r]epresentation in the grievance procedure and arbitration hearings." The Hospitals assert that they possess various versions of the Service Agreement which show an execution date by at least one of the parties of February 20, 2006. However, the Hospitals assert that they were not informed of the existence of the Servicing Agreement until on or about August 13, 2006, when a copy was provided to counsel for the Hospitals, Laurence R. Arnold by counsel for Local 715 William Sokol. The Hospitals assert

that prior to receipt of a copy of the Servicing Agreement, the Hospitals were given various explanations for the presence of UHW employees. Upon a review of the Servicing Agreement and the circumstances surrounding the activities of Local 715 employees versus UHW employees in light of the terms of the Servicing Agreement, by letter dated August 29, 2007, Local 715 was notified that the Hospitals were rejecting the Servicing Agreement and would not deal with UHW employees purporting to act pursuant thereto. The Hospitals assert that since that date, and continuing to the present, the Hospitals have not dealt with any UHW employees claiming to be acting on behalf of Local 715 or otherwise, in any grievance proceeding, in any arbitration, or in other collective bargaining related activity.

Section 7 of the Servicing Agreement provides that "Should the Employer challenge or refuse to accept the legitimacy of this Servicing Agreement, the parties [Local 715 and UHW] will cooperate in processing the legal actions necessary to its enforcement. (This may include filing an unfair labor practice charge under the name of Local 715)."

Commencing in August 2006 and continuing through to the present, the Hospitals and their counsel have repeatedly informed Petitioner that the Hospitals rejected the validity of the Servicing Agreement and would deal only with Local 715 and its authorized representatives – not with representatives of UHW acting pursuant to the rejected Servicing Agreement. The Union contends that, despite allegedly rejecting the Servicing Agreement and stating that it would not deal with representatives employed by UHW, from February 2006 through October, 2007 the Hospitals did in fact deal with representatives of UHW, who acted pursuant to the Servicing Agreement, in grievance meetings and at arbitrations. The Hospitals deny the above contention.

Neither Local 715 nor UHW have filed any action in any forum seeking the enforcement of the Servicing Agreement.

Beginning in or around early 2007, the Hospitals allege that it became aware of information that Local 715 had effectively ceased to exist and that its resources were transferred to another local, Local 521 as of March 1, 2007. In response to learning the above information, the Hospitals requested information from Local 715 seeking information relating to whether

1  Local 715 continued to exist, and, if so, the nature of its continued existence.

**D.    The Trusteeship**

The Union contends that on June 8, 2007, the International Union, in which Local 715 is an affiliate, placed Local 715 under Trusteeship, pursuant to the powers of the Constitution and By-laws. The Union claims that the International President, pursuant to his powers under the Constitution and By-laws, appointed Bruce W. Smith as a Trustee over the affairs of SEIU Local 715. The Union claims that, as the appointed Trustee, Mr. Smith has responsibility to manage the affairs of Local 715 until relieved by the International President. The Hospitals contend that no proper trusteeship was imposed on Local 715, and doubt its existence at the time Local 715 contends the trustee was appointed.

On June 14, 2007, Mr. Smith sent the Hospitals a letter informing it of the Trusteeship. Mr. Smith provided the Hospitals with a copy of the Trusteeship Order, and explained that all of the officers of Local 715 had been removed and that the International President had appointed vested Mr. Smith "with full authority to act on behalf of Local 715." The Hospitals contend that the letter also expressed the Trustee's reaffirmation of the rejected Servicing Agreement. The Hospitals advised the Trustee by letter dated August 1, 2007 that the previously rejected Servicing Agreement remained rejected.

**E.    NLRB Proceedings.**

On or around April 16, 2007 the Hospitals filed a charge designated case number 32-CB-6237 with Region 32 of the National Labor Relations Board ("NLRB") alleging that Local 715 was in violation of the National Labor Relations Act by its refusal to respond to the Hospitals' information requests. The Union contends that, in order for the NLRB to investigate a charge against either a labor organization or employer, that labor organization or employer must exist. If the labor organization or employer does not exist, then the NLRB lacks jurisdiction. The Hospitals contend that no investigation was undertaken by Region 32 of he question of Local 715's existence, and that Local 715 presented no evidence with respect thereto.

Throughout the existence of the collective bargaining relationship between Local 715 and the Hospitals, the law firm of Weinberg, Roger & Rosenfeld had always represented Local 715

7
JOINT CASE MANAGEMENT CONFERENCE STATEMENT; CASE NO: C-08-215 JF

SFCA_1370169.3

1  in matter relating thereto. On or about June 18, 2007, the Hospitals learned that the Trustee had
2  retained as counsel, Barbara J. Chisholm, of the firm of Altshuler Berzon. The Union contends
3  that Ms. Chisholm was retained as additional counsel. According to the Hospitals, Counsel for
4  the Hospitals spoke with Ms. Chisholm by telephone on June 18, 2007, in which conversation
5  Ms. Chisholm confirmed that she, and her firm, had been appointed counsel to the Trustee and
6  thus were counsel to Local 715, and further confirmed that all further communications were to be
7  directed to her. This was confirmed by counsel for the Hospitals in a letter to Ms. Chisholm that
8  same date. The Trustee also sent a letter to the Hospitals, in December 2007, after the Hospitals'
9  counsel refused to participate in an arbitration, notifying them that Weinberg, Roger & and
10 Rosenfeld had always represented Local 715 with respect to grievances and arbitrations and
11 would continue to represent Local 715 with respect to grievances and arbitrations. The Hospitals
12 contend that the letter did not state whether the representation after the Trustee's appointment
13 was by direct retention or pursuant to the rejected Servicing Agreement.
14         Although Altshuler Berzon informed counsel for the Hospitals that they would be
15 appearing at an arbitration set for July 25, 2007, and served a subpoena for documents to be
16 provided at the hearing, instead an attorney for Weinberg, Roger & Rosenfeld, W. Daniel Boone,
17 appeared at the hearing, and, pursuant to an inquiry from counsel for the Hospitals, stated that he
18 was appearing "on behalf of Local 715." The arbitration hearing was held on that grievance.
19 The same thing occurred at a subsequent arbitration hearing convened on August 8, 2007.
20 Present at these hearings (but, the Hospitals assert, not participating on the record or in the
21 hearing) were Union Representatives employed by UHW, servicing Local 715. The Hospitals
22 made no objection to the presence of these individuals, and fully participated in the hearings.
23 The Hospitals assert that not long thereafter, an attorney from Weinberg Roger & Rosenfeld,
24 Vincent Harrington, wrote to the Hospitals requesting that they bargain with him on a change of
25 terms of conditions which he claimed required bargaining. The Hospitals assert that they did not
26 bargain with Mr. Harrington.
27         Promptly thereafter, however, the Hospitals made a written request directed to Ms.
28 Chisholm, dated August 24, 2007, for information regarding whether Weinberg, Roger &

8

1  Rosenfeld was appearing directly on behalf of Local 715, or was appearing as counsel for UHW
2  pursuant to the rejected Servicing Agreement which provided that UHW would provide
3  professional services in arbitration hearing for Local 715. While waiting for a response, an
4  additional arbitration occurred on October 3, 2007, at which Bruce Harland of Weinberg, Roger
5  & Rosenfeld appeared. The arbitration took place. In fact, the parties stipulated to a number of
6  facts, presented witnesses, and submitted post-hearing briefs. Again, present at this arbitration
7  was a Union Representative employed by UHW, servicing Local 715. The Hospitals assert that
8  this employee did not participate in the hearing or on the record. The Hospitals did not raise any
9  objection to her presence, and fully participated in the hearing.
10        According to the Hospitals, having not heard from Ms. Chisholm in response to the
11 August 24, 2007 request for information regarding the nature of Weinberg, Roger & Rosenfeld's
12 appearances at these hearing, the Hospitals made a second request, by letter dated October 5,
13 2007 for the same information. In response to this request, Ms. Chisholm did reply, on October
14 9, 2007, but only to state that she would not be responding to the requests for information. In
15 response, the Hospitals advised Ms. Chisholm, by letter dated October 16, 2007, that they would
16 no longer select arbitrators or proceed to hearing in any matter in which Weinberg, Roger &
17 Rosenfeld was purporting to act, absent information stating that the basis upon which they were
18 appearing was by direct retention by Local 715 and not pursuant to the rejected Servicing
19 Agreement.
20        Despite the Hospitals' October 16th letter to Ms. Chisholm and their claims, the
21 Hospitals did appear at an arbitration on November 28, 2007; the hearing was held at the office
22 of the Hospitals' law firm. Appearing for Local 715, and stating that he was appearing on behalf
23 of Local 715, was W. Daniel Boone from Weinberg, Roger & Rosenfeld. The Union
24 Representative who appeared at the hearing was the Assistant Trustee of Local 715, Myriam
25 Escamilla, appointed by the Trustee of Local 715. Ms. Escamilla is also an employee of UHW.
26 The Hospitals assert that they were informed only after the hearing that Ms. Escamilla was
27 appointed to a position with the Trustee.
28        Since November 28, 2007, there have been no arbitrators selected for any grievances

because the Hospitals have refused to select any. The Hospitals assert that no arbitrators have been selected because the Hospitals refuse to participate in the selection of arbitrators with members of Weinberg Roger & Rosenfeld absent clarification of their representative role. Nor has there been any arbitration hearings held because the Hospitals have refused to select an arbitrator, and the Hospitals have not participated in any arbitrations on the merits of any grievances since that date. However, the Union asserts that the Hospitals and Local 715 have settled some grievances, which were scheduled to take place in the month of January 2008. The Hospitals assert that they have settled grievances filed by hospital employee stewards, but assert that they did not meet with or communicate with any Local 715 representative or UHW employee in that process.

The Hospitals also filed an unfair labor practice charge (32-CB-6350) for refusal to provide information regarding Local 715 and another Union, Local 521. They also filed an unfair labor practice charge (32-CB-6351) against Local 715 for refusing to provide information regarding the basis upon which Weinberg, Roger & Rosenfeld was purporting to appear on behalf of Local 715. The Union asserts that, in order to prevail on these charges, the NLRB and the Hospitals must allege, among other things, that Local 715 exists, otherwise the NLRB lacks jurisdiction and there could be no violation for failing to provide information.

On or around February 28, 2008, Region 32 issued a complaint against Local 715 for failing to respond to the Hospitals' information requests based upon the three (3) above-referenced charges, which complaint is presently pending. In the complaint, it is alleged by Region 32 of the NLRB, on behalf of the Hospitals, that Local 715 exists and is a bona fide labor organization, thus giving the NLRB jurisdiction over the matter. The Hospitals assert that the complaint alleges only that Local 715 "is now, and has been at all times material herein, a labor organization within the meaning of Section 2(5) of the Act." The Hospitals have not objected to this allegation, nor have they asked that the allegation be struck from the complaint. In its Answer to the complaint, Local 715 has admitted that it exists and is a bona fide labor organization. The Union asserts that, in order for the Hospitals to prevail on their claims, an Administrative Law Judge must not only find that the allegations involving the failure to provide

information violate the NLRA, but also that Local 715 exists and is a bona fide labor organization. If the Judge were to find that Local 715 does not exist or is not a bona fide labor organization, then the charges against Local 715 would be dismissed. The Hospitals assert that, if the NLRB prevails at the hearing, Local 715 will be ordered to produce requested information regarding its status as an ongoing organization during the time periods for which the requests were made, and regarding the basis upon which Weinberg Roger & Rosenfeld is representing the Trustee. From that information, the Hospitals contend that they hope to be able to determine whether Local 715 does, in fact, exist and, if so, in what capacity Weinberg Roger & Rosenfeld is appearing on its behalf. A hearing on the complaint has been scheduled for May 6, 2008.

### III. LEGAL ISSUES

The Union believes that the legal issue is whether the Hospitals are obligated, and thus should be compelled, to arbitrate the Union's grievance protesting the employer's failure to turn over to SEIU, Local 715 dues monies withheld from bargaining unit members, and whether the Hospitals are obligated to pay attorneys' fees because of its outright refusal to arbitrate the grievance.

The Hospitals contend that they have no obligation to arbitrate the Union's grievance because:

1] Local 715 has either ceased to exist;

2] The Servicing Agreement has been rejected and there is no basis for representation of the Union through that agreement by UHW;

3] Local 715 has acted in contradiction of the Collective Bargaining Agreement; and

4] Local 715 has improperly permitted third parties access and/or control of its resources.

The Hospitals further contend that counsel purporting to appear for Local 715 have refused to state whether they were retained by and directly representing Local 715 or are acting pursuant to the Servicing Agreement which was not binding upon and had been rejected by the Hospitals.

According to the Hospitals, there remains the issue of the proper representation of Local 715 as well as the authority to arbitrate the issues between the parties. Determination of the

threshold issue regarding representation is at the core of any arbitration. However, the question is outside any power of an arbitrator under the Agreement as the issue was and is for the NLRB to determine. The Union does not believe there is any question or issue of representation.

### IV. MOTIONS

The Parties expect that a dispositive motion (or motions) will be filed seeking adjudication of all material issues in this case. Said motions are likely to be filed after completion of discovery regarding Local 715's existence and the nature of the Weinberg firm's representation.

### V. AMENDMENT OF PLEADINGS

The Union does not anticipate amending any of its pleadings, but reserves the right to do so. The Parties propose a deadline for amending the pleadings of June 20, 2008.

### VI. EVIDENCE PRESERVATION

The evidence relevant to the issues in this case is expected to include to the Agreement, the Servicing Agreement, the Award, correspondence between the parties, the transcripts, and joint exhibits filed in connection with the arbitration proceedings and the pleadings and other documents on file in this matter. Further, the Hospitals have written to Petitioner asking that all evidence regarding Local 715 (and its relationship and communications with Local 521 and UHW), including without limitation, all information regarding its financial resources, its representation and its website, be preserved. The Hospitals anticipate significant discovery regarding these materials and the issues regarding the existence of Local 715, the use of Local 715's resources by third parties, and the nature of Local 715's representation by counsel. The parties represent that they have taken steps to preserve such evidence.

### VII. DISCLOSURES

Under Federal Rule of Procedure 26(a)(1)(E), this action is exempt from the requirement of Rule 26(a) disclosures. The Parties have made arrangements for an informal exchange of some documents and information. However, the Hospitals believe that the materials described in Section VI above should be disclosed and will be the subject of discovery (see "Discovery" below).

## VIII. DISCOVERY

The Parties have not conducted any discovery to date. The Parties believe and anticipate that all the evidence that will be relied upon in the case is already in the possession of the parties or can be exchanged informally. The Parties have made arrangements for the informal exchange of some of evidence to the extent that either party contends that it is not in possession of relevant evidence. However, the Hospitals anticipate that discovery will be required regarding the information referred to in Sections VI and VII above including depositions, requests for production, interrogatories and requests for admission. The Union believes that this matter can be resolved through dispositive motions and without the need of significant discovery. To that extent, the Union would request the court limit discovery.

## IX. CLASS ACTIONS

Neither party has asserted any claims or defenses on behalf of a class.

## X. RELATED CASES

Pursuant to the Court's order dated February 29, 2008, this case is related to the following cases:

- *Stanford Hospital And Clinics And Lucile Packard Children's Hospital v. Service Employees International Union, Local 715*; C-07-5158 JF
- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-00213-JF
- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-00216-JF

The Union also contends that this case is related to the following two (2) cases, which the Union has filed in this Court but which have not been served on the Hospitals.

- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-01727-HRL
- *Service Employees International Union, Local 715 v. Stanford Hospital And Clinics And Lucile Packard Children's Hospital*; C-08-01726-RS

With the exception of the above-listed cases, the Parties are not aware of any related

cases or proceedings pending before another judge of this court, or before another court or administrative body.

## XI. RELIEF

The Union seeks an order by this Court compelling arbitration, attorneys' fees and costs incurred on the ground that the hospital has refused to arbitrate in bad faith, and such other and further relief that the Court may deem just and proper.

The Hospitals seek an order by this Court dismissing this action for want of a plaintiff, or, alternatively, an order staying further arbitration proceedings until such time as the representative status of Local 715, the validity of the Servicing Agreement, and the status and capacity of the Weinberg Firm are resolved by the agency with exclusive jurisdiction to do so, that this Court award the Hospitals their costs incurred in this proceeding, and that this Court award such other and further relief that this Court deems proper.

## XII. SETTLEMENT AND ADR

The Parties believe that settlement of the case is unlikely at this point. The Parties have not engaged in any ADR efforts to date, and do not believe that such efforts would be helpful at this stage, as the case is likely to be resolved by motion. In the event that the parties are required to select an ADR procedure, the Parties are agreeable to Early Neutral Evaluation.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties do not consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.

## XIV. OTHER REFERENCES

The Parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

Petitioner believes that all the factual and legal issues in the case can be resolved by motion. The Hospitals believe that some issues may be resolved by way of motion but that, ultimately, this matter will need to be tried.

## XVI. EXPEDITED SCHEDULE

The Parties do not believe that it is necessary to establish an expedited schedule.

## XVII. SCHEDULING

The Union believes this case can be resolved by a dispositive motion. The Hospitals believe that portions of this case may be resolved by a dispositive motion. The Hospitals propose that the Court permit preliminary discovery be conducted and set a further case management conference in order to determine of dates for designation of experts, discovery cutoff, and pretrial conference and trial after the resolution of dispositive motions, if necessary. While the Union does not believe that discovery is necessary in this matter, as the issue before the Court is whether or not the Hospitals have agreed to arbitrate this particular dispute with the Union pursuant to the parties' CBA, the Union requests that any preliminary discovery be severely limited.

## XVIII. TRIAL

The Hospitals believe that a trial in this matter will be necessary because they believe that dispositive motions might resolve only some issues in this matter. In the event that a trial becomes necessary, the Hospitals expect the trial to last approximately ten (10) days. The Union does not believe that a trial is necessary, as the issue before the Court is simply whether or not the Hospitals have agreed to arbitrate this particular dispute with the Union pursuant to the parties' CBA. The Union, therefore, believes that dispositive motions can resolve all issues in this matter; but that if a trial is necessary, the Union expects a trial to last approximately one (1) to three (3) days.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

There are no persons, firms, partnerships, corporations, or other entities known by either party to have either a financial interest in the subject matter in controversy or in the party to the proceeding, or any other kind of interest that could be substantially affected by the outcome of the proceeding.

| | | |
|---|---|---|
| 1 | Dated: April __, 2008 | WEINBERG, ROGER & ROSENFELD<br>A Professional Corporation |
| 2 | | |
| 3 | | By: _/s/ Bruce A. Harland_ |
| 4 | | WILLIAM A. SOKOL<br>BRUCE A. HARLAND |
| 5 | | Attorneys for Petitioner<br>SEIU, Local 715 |
| 6 | | |
| 7 | Dated: April 21, 2008 | FOLEY & LARDNER LLP |
| 8 | | |
| 9 | | By: _Eileen Ridley /SPI/_ |
| 10 | | EILEEN R. RIDLEY<br>LAURENCE R. ARNOLD<br>SCOTT P. INCIARDI |
| 11 | | Attorneys for Respondents<br>Stanford Hospital & Clinics and Lucile Packard Children's Hospital |

Yardley, Susan E.

| | |
|---|---|
| From: | ECF-CAND@cand.uscourts.gov |
| Sent: | Monday, April 21, 2008 4:29 PM |
| To: | efiling@cand.uscourts.gov |
| Subject: | Activity in Case 5:08-cv-00215-JF Service Employees International Union, Local 715 v. Stanford Hospital and Clinics and Lucile Packard Children's Hospital Joint Case Management Statement |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available.*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from by Arnold, Laurence entered on 4/21/2008 4:29 PM and filed on 4/21/2008

| | |
|---|---|
| **Case Name:** | Service Employees International Union, Local 715 v. Stanford Hospital and Clinics and Lucile Packard Children's Hospital |
| **Case Number:** | 5:08-cv-215 |
| **Filer:** | Service Employees International Union, Local 715<br>Stanford Hospital and Clinics and Lucile Packard Children's Hospital |
| **Document Number:** | 20 |

Docket Text:
**JOINT CASE MANAGEMENT STATEMENT filed by Service Employees International Union, Local 715, Stanford Hospital and Clinics and Lucile Packard Children's Hospital. (Arnold, Laurence) (Filed on 4/21/2008)**

**5:08-cv-215 Notice has been electronically mailed to:**

4/21/2008

Laurence R. Arnold    larnold@foley.com

Bruce A. Harland    courtnotices@unioncounsel.net, bharland@unioncounsel.net

Scott Powers Inciardi    sinciardi@foley.com, syardley@foley.com

Eileen Regina Ridley    eridley@foley.com, tschuman@foley.com, wdelvalle@foley.com

William A. Sokol    courtnotices@unioncounsel.net

**5:08-cv-215 Notice has been delivered by other means to:**

William Daniel Boone
Weinberg Roger & Rosenfeld
1001 Marina Village Pkwy
Ste 200
Alameda, CA 94501-1091

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** G:\Winsaves\Larry Arnold\Stanford\Local 715 Dues USDC Action\Joint Case Management Conference Statement.pdf
**Electronic document Stamp:**
[STAMP CANDStamp_ID=977336130 [Date=4/21/2008] [FileNumber=4323830-0]
[83199c8e913dc94909d81a2cb3f07553eda9051a560aa8c2b81bf3c77b83a41c0e628
87bfbbb84d9fb97f00e4b91d0f957035128ae2f88f1adeb8edee1d8d98a]]

4/21/2008