**EXHIBIT CCC**



# SEIU.

**Stronger Together**

# Memorandum

**To:**  Affected SEIU Local Unions in California

**From:** Andrew L. Stern, International President *Andrew L. Stern*

**Re:**  IEB Decision on California Jurisdiction

**Date:** June 11, 2006

I'm pleased to announce that yesterday the SEIU International Executive Board (IEB) made a historic decision by approving a new jurisdictional plan for California local unions that will strengthen our union and help members win a better future. The decision culminated months of work by SEIU members and leaders to develop and shape the plan, which will significantly enhance the ability of our 600,000 members in California to:

- Build greater unity by creating stronger regional and statewide local unions and industry councils, which will help focus our resources and strategies on winning better contracts and improving services in our communities.

- Develop greater political strength to elect public officials and hold them accountable on issues important to SEIU members and their families.

- Unite more workers into our union to give everyone more strength to negotiate good contracts and stand up for quality services.

- Benefit from increased and improved communications so members stay informed and can participate in building a stronger union that consistently wins for our families and our future.

- Strengthen members' voices in the workplace to solve problems, raise workplace standards, and improve their working lives.

The decision to build greater power for members in California is a positive result of The New Strength Unity Plan, adopted by delegates to the 2000 SEIU International Convention. The plan in part called for creating local union structures designed to build industry and geographic strength for members. That new strength is especially important in times like these when the pressures to hold down wages and diminish important benefits – like health care and retirement – are as great as any time in memory. Jurisdictional improvements like these have been implemented successfully in many other parts of the country – in Illinois,

**ANDREW L. STERN**
International President

**ANNA BURGER**
International Secretary-Treasurer

**MARY KAY HENRY**
Executive Vice President

**GERRY HUDSON**
Executive Vice President

**ELISEO MEDINA**
Executive Vice President

**TOM WOODRUFF**
Executive Vice President

**SERVICE EMPLOYEES INTERNATIONAL UNION, CLC**

1313 L Street, N.W.
Washington, D.C. 20005

202.898.3700
TDD: 202.898.3481
www.SEIU.org

1

Massachusetts, Rhode Island, Pennsylvania, Ohio, Washington State, Florida, Michigan, Missouri, New York, and even previously in California in some instances.  These changes have helped our union pull even farther ahead of the pack in terms of our ability to make a difference in members' lives.

Eight days of hearings were conducted all across California by Hearing Officers Alice Dale and Tom Balanoff.  The hearings gave local unions and members the opportunity to present testimony and evidence on the jurisdictional questions for public service, long-term care, and property services workers, and private sector workers represented by public sector locals.  Many members and leaders participated in the hearings and offered their perspectives on these important questions.  Based on the hearings, the Hearing Officers submitted their report and recommendations to the IEB, which overwhelmingly approved the plan to strengthen the voice of members in California by consolidating local union jurisdictions.

The SEIU Constitution and Bylaws do not require a membership election to approve such jurisdictional changes.  However, because these changes will result in SEIU members uniting with members in other local unions, the IEB has called for a statewide vote of affected members changing local union affiliation. Affected members are those whose local unions would change as a result of the IEB's decision.  The IEB has called for one statewide vote because the changes are interrelated and designed to build new strength for all SEIU members directly affected by the decision.  The vote will be held once members have had enough time to digest and fully understand the changes.

**Here is a brief summary of the recommended changes:**

**In the Public Services Division,** the IEB has called for the chartering of four new regional public sector locals for local government and related workers:  a Northern local, North Central local, a South Central local, and a Southern local. These new regional public sector locals will have jurisdiction for public sector workers, public healthcare workers, including registered nurses in public facilities and private non-profits, and related workers. Existing local government public sector locals will be merged into these new regional locals.  UHW will continue to represent workers in its unit at Tuolumne General Hospital.

The **Northern Regional Public Sector Local** will have jurisdiction for public sector workers in the counties of Del Norte, Siskiyou, Modoc, Humboldt, Trinity, Shasta, Lassen, Mendocino, Tehama, Plumas, Glenn, Butte, Sierra, Lake, Colusa, Sutter, Yuba, Nevada, Sonoma, Napa, Yolo, Sacramento, Placer, El Dorado, Amador, Marin, Solano, San Francisco, Contra Costa, Alameda, San Joaquin, and Calaveras.  The IEB approved the merger into this new local of the public sector units, excluding IHSS workers, of Locals 535 (Northern workers only), 614, 616, 707, 790, 949, 1280, 1292, and 4988. In addition, the public employees represented by UHW and Local 790 who work for San Francisco International Airport should be merged into the Northern regional local.

The **North Central Regional Public Sector Local** will have jurisdiction for public sector workers in the counties of San Mateo, Santa Cruz, Santa Clara, Santislaus, Alpine, Tuolumne, Mono, Monterey, San Benito, Merced, Mariposa, Madera, Fresno, Kings, Tulare, Inyo, and Kern. The IEB has approved the merger into this new local of the public sector units, excluding those in district hospitals, of Locals 415 (also excluding IHSS workers), 535 (North Central workers only), 700, 715 (including IHSS workers), and 817 (also excluding IHSS workers).

The **South Central Regional Public Sector Local** will have jurisdiction for public sector workers in the counties of San Luis Obispo, Santa Barbara, Ventura, Los Angeles, San Bernardino, Riverside, and Orange. The IEB has approved the merger into this new local of the public sector units of Locals 347, 535 (South Central workers only), 620, 660 (excluding Los Angeles Office of Education employees), 998, and 1997 (excluding district hospital workers).

The **Southern Regional Public Sector Local** will have jurisdiction for public sector workers in the counties of San Diego and Imperial. The IEB has approved the merger into this new local of the public sector units of Locals 535 (Southern workers only) and 2028.

For **Public Sector RNs**, the IEB decisions calls on each new regional local to have dedicated staff to help coordinate and lead the nurse program work within the new public locals. Each regional local will also have a designated nurse leader with responsibility for overseeing the development and implementation of the nurse program within the local. In addition, each regional local representing RNs will have proportional representation on the steering committee/leadership group of the Nurse Alliance of California. Further, two co-chairs of the Nurse Alliance of California will be created; one co-chair reserved for a representative of public sector RNs, and the other for a representative of private sector RNs. The IEB decision strengthens the public sector RN voice at the national level by adding an additional public sector RN representative to the national Nurse Alliance of SEIU leadership group. Finally, a representative of public sector registered nurses will serve on the member advisory committee that will propose structures for the new regional public locals.

Jurisdiction for unorganized **district hospitals** will be shared by the new regional public sector locals and UHW. Authority to organize a specific facility will be submitted to the Public Services and Health Systems Divisions and will be granted based on the importance of the hospital to the division's strategic organizing plan. Organized units at district hospitals currently represented by Locals 715 and 817 will be merged into UHW.

The IEB decision grants jurisdiction to Local 99 for school **employees in the South Central region** noted above. School employees in Locals 660 and 998 will be merged into Local 99, with the exception of Los Angeles Unified School District supervisors, who will be merged into the South Central regional public local.

The IEB decision also calls for the creation of a member advisory committee to propose a structure for the new public sector locals and provide for continuity during the transition. The committee will offer its proposals to the Hearing Officers for approval before submission to me by the end of 2006. In addition, the IEB approved the creation of an archive to preserve the proud history, heritage and achievements of our existing California public sector unions.

In the **Long-Term Care Division**, a new statewide long-term care local union will be chartered. Local 434B and IHSS units in Locals 415, 614, 616, 707, 817, and 1280 will be merged into this new local. IHSS workers currently represented by Local 715 will be assigned to the North Central regional public local. UHW will retain the IHSS workers it currently represents.

The private nursing home unit represented by Local 2028 will be merged into the new long-term care local. UHW will retain the private sector homecare workers and private sector nursing home workers it currently represents. The Long-Term Care Division should recommend the appropriate vehicle for achieving coordination and growth in the private nursing home sector. The Division should grant authority to organize long-term care facilities based on local union strategic objectives and opportunities to raise standards for long-term care workers. In the future, the Division should review the current long-term care representational arrangements and propose changes in jurisdiction to me, for determination by the International Executive Board, if warranted. A broad-based member advisory committee should be established. The committee's report should be submitted to the hearing officers by December 31, 2006.

**Private Sector Hospital units** currently represented by Locals 535, 707, 715, 2028 and 4988 will merge into UHW.

In the **Property Services Division**, I shall adopt the recommendation of the Property Services Division to create a California Property Services Council, and a member advisory committee will make a proposal to the Hearing Officers on the Council's structure and activities by December 31, 2006. Local 2028's amusement division will merge into Local 1877. A new local union will be granted jurisdiction for the private university units at Stanford and Santa Clara universities. This new local will be required to participate in the Property Services Council and abide by its decisions. A higher education division will be created within the Council to promote the interests of our higher education members. Racetrack workers will continue to be housed in their current local unions until arrangements for their change of affiliation to UNITE-HERE can be completed. Private sector cemetery workers will be merged into Local 265, which should be granted jurisdiction for all such workers and greens attendants in California. Jurisdiction for public sector cemetery workers should be awarded to the North Central public local.

**Voting Process:** Pursuant to the order of the IEB that I establish a procedure for promptly presenting the realignment of local union jurisdiction to affected local unions for a vote of the affected membership, I direct that a vote take place at such time as to

insure that members receive the necessary information and have an adequate opportunity to review and discuss these changes. I will appoint an independent third party to administer and oversee the vote. Pursuant to the IEB's decision, necessary steps will be carried out to provide ample notice to members and an education period so that affected members can be fully informed about the issues they will be asked to vote on, and so that all affected members will have an opportunity to participate.

Implementation Team:   As determined by the IEB, I have appointed Secretary-Treasurer Anna Burger to oversee implementation of the IEB's decisions in this matter. Questions concerning the IEB's decision and its implementation should be directed to J.J. Johnston, California Area Director, at 213-368-7400. The Hearings Officers will retain jurisdiction to resolve disputes over the IEB's decision.

In addition, I have appointed the following SEIU local union leaders as my Personal Representatives to the new entities listed below that will be created pursuant to the IEB's decision. These Personal Representatives are charged with overseeing the process of creating the new entities and assisting with member education and outreach concerning the IEB's decision.

Mike Garcia – California Property Services Council
Tyrone Freeman – New Long-Term Care Local Union
Damita Davis-Howard – Northern Regional Public Local Union
Kristy Sermersheim - North Central Regional Public Local Union
Annelle Grajeda   South Central Regional Public Local Union
Ben Monterroso – Southern Regional Public Local Union

# Official Policy on Implementation

All Local Unions are bound to comply with the decision of the IEB, which is the highest decision-making body in the SEIU between conventions. Accordingly:

- All local unions, union officers, and assigned staff must fully cooperate in the implementation and transition process to assure that this decision is carried out in an orderly fashion that safeguards the interests of the members.

- No union funds, resources or staff may be used to oppose, interfere or undermine in any way the IEB's determination in this matter.

- No local unions whose members are voting may enter into new benefit arrangements or any contracts covering the local union, its officers and/or staff, extending beyond December 31, 2006, including but not limited to staff contracts, personal employment contracts, staff and/or officer severance, pensions or compensation, and leases, without prior notice to and review by my Personal Representative for the applicable regional local union and his or her approval that the arrangement, contract and/or lease does not undermine the IEB's decision.

**SERVICE EMPLOYEES INTERNATIONAL UNION**

|  |  |
|---|---|
| )<br>In re: SEIU Local Union Jurisdiction )<br>in California for Long Term Care )<br>Workers, Public Services Employees, )<br>Public Health Employees, Property )<br>Services Workers, and Private Sector )<br>Workers in Public Sector Locals )<br>) | **Hearing Officers:**<br>**Alice Dale**<br>**Tom Balanoff** |

## HEARING OFFICERS' JOINT REPORT AND RECOMMENDATIONS

### I.    Introduction and Procedural Background

This is a joint report and recommendations to the International Executive Board ("IEB") of the Service Employees International Union ("SEIU") concerning the jurisdiction of SEIU local unions in California for long term care workers, public services employees, public health employees, property services workers, and private sector workers in public sector locals.  The undersigned hearing officers were appointed by the SEIU Executive Committee[1] to hear this matter and render a report and recommendations concerning SEIU local union jurisdiction in California.

This proceeding commenced when International Secretary-Treasurer Anna Burger issued a Notice of Preliminary Hearing on January 30, 2006 (Ex. 2).  On February 13, 2006, Secretary-Treasurer Burger issued a notice of the schedule of hearings and procedure proposed by the

---

1   Pursuant to Article VI, Section 1(b) and Article XI, Section 6B of the SEIU Constitution and Bylaws, the IEB has delegated the appointment of hearing officers to the Executive Committee.

1

International Union (Ex. 3).[2] The notice contained six proposed rules of procedure. On February 17, 2006, a preliminary hearing was conducted in Burlingame, California, solely on the question of the schedule and procedures for the subsequent hearings on the substance of the jurisdictional questions. The purpose of that preliminary hearing was to get the views of local union leaders concerning the schedule and procedural rules proposed by the International Union. As a result of the preliminary hearing, modified rules of procedure were issued on March 13, 2006 (Ex. 8). The modified rules of procedure responded to local union comments and suggestions made at the preliminary hearing. In particular, the number of hearing days was doubled from four to eight, consecutive days of hearing were provided, the International Union was directed to establish a website to inform members about the issues involved in the jurisdiction proceeding, and one day of the hearings took the form of an audio conference with hearing locations in Sacramento, Fresno, Riverside, and San Diego.

The hearing process was designed to afford maximum opportunity for input from local union leaders and members on the jurisdictional questions. Hearings on the substantive jurisdictional issues were held on March 24 and 25 and April 27, 2006 in Los Angeles, on April 7 and 8, 2006 in Burlingame, on April 21 and 22, 2006 in San Francisco, and, via audio conference, on April 28, 2006 in Sacramento, Fresno, Riverside and San Diego. The hearings on March 24-25 and April 7-8, held by Sister Dale, dealt with local union jurisdiction for public services employees in Southern and Northern California, respectively, excluding public health

---

2 Notices were sent to the following SEIU local unions: Locals 99, 24/7, 265, 280, 347, 415, 434B, 535, 614, 616, 620, 660, 700, 707, 715, 790, 817, 949, 998, 1000, 1280, 1292, 1877, 1983, 1997, UHW 2005, 2028, 2579, 4988, and 5000 NAGE.

employees and private sector workers represented by public sector locals. Hearings on jurisdiction for long term care employees were held on April 21 and April 27. The April 21 hearing also dealt with local union jurisdiction for California State University employees. On April 22, a hearing was held on jurisdiction for Northern California public hospital workers and private sector workers represented by public sector locals. In addition, the April 22 hearing dealt with jurisdiction for employees of the State of California, and property services workers (including cemetery workers, race track employees, private sector greens attendants, private university workers, and multi-service workers). A hearing on jurisdiction for Southern California public hospital workers and private sector workers represented by public sector locals took place on April 27. The hearings held on April 21, 22 and 27 were held by Brother Balanoff. All jurisdictional issues were addressed in the April 28 hearing by audio conference, held jointly by both hearing officers. Norm Gleichman, Deputy General Counsel of the International Union, assisted us at the hearings.

At each in-person hearing, local leaders and members were invited to submit post-hearing materials within 14 days of the close of the hearing on each jurisdictional issue. In addition, pursuant to the March 13 order on procedural questions, the International Union established a website with information concerning the jurisdictional issues covered by the hearings and the opportunities for members to participate. Members were invited to submit comments via the website, which were collected and made a part of the record.

Each affected local union that so desired was provided the opportunity to be heard during the hearing and to submit any documents that it wished us to consider. The following locals made presentations at one or more of the hearings: 24/7, 87, 121RN, 265, 280, 347, 415, 434B,

3

535, 614, 616, 620, 660, 700, 707, 715, 790, 817, 949, 998, 1000, 1280, 1877, 1983, 1997, 2028, 2579, 4988, and UHW.  Many of the affected locals also responded in writing to the requests for information issued by the International Union in connection with the jurisdictional issues.

JJ Johnston, California Area Director, made presentations on the need for restructuring local union jurisdiction in California based on political and demographic developments and the need to grow the union in areas of the state where union density is low.  John Tanner, Assistant Director of the Public Services Division, gave the Division's views on the need to restructure public sector jurisdiction in California, including the question whether public sector locals should have jurisdiction for public health care workers.  Ian Campbell, Assistant Research Director for the Health Systems Division, gave a presentation on the Division's goals and the role of SEIU's United Healthcare Workers – West ("UHW") in the Division's plans.  David Kieffer, Director of the Long Term Care Division, and Jon Barton, Deputy Director of the Division, stated the Division's views on the best way to organize ourselves to win higher standards for home care and nursing home workers.  Eddie Iny, Assistant Director of the Property Services Division, gave a presentation on the opportunities and challenges facing property services local unions in California.  Fifty-five exhibits were entered into the record at the hearings, a transcript of the hearings was made by the court reporters, and post-hearing submissions from a number of locals and individual members were received.

The entire record was considered in the drafting of this report.  This report is the product of our collaborative efforts; however, we each concentrated on those issues covered in the respective hearings held separately by each of us.

4

**II.    The International Union's Policies on Organizing and**
**        Jurisdiction Established by the 2000 and 2004 Conventions**

Article XIV, Section 3 of the SEIU Constitution and Bylaws authorizes the IEB to

"consolidate or merge existing Local Unions under such terms and conditions as the [IEB] may

determine when in the opinion of the [IEB] the interests and welfare of the International Union

and the membership thereof will be better served by such action."

Delegates to the 2000 SEIU Convention adopted the New Strength Unity Plan ("NSUP")

to build power for SEIU members. A critical part of the NSUP was a "Jurisdiction Policy and

Procedure" set forth in the "Decide Report" prepared by the President's Committee 2000. The

Decide Report was adopted by the 2000 Convention and incorporated in the NSUP. The

Committee concluded that "industry-based jurisdiction gives local unions the best opportunity to

be recognized by the public, elected officials, industry employers and workers as the principal

voice of workers in that industry and geographic area." SEIU members have told the union

leadership that they want to be united with their co-workers doing similar work in the same

geographic area so that they can exert maximum power to improve their working conditions.

The policy of the International Union, as expressed at the 2000 Convention, is to combine

members employed in a particular industry in a manner that mirrors the structure of that industry,

minimizes fragmentation and, as a result, increases bargaining power. The focus on industry-

based jurisdiction necessarily means that employees of the same employer are to be represented

by the same SEIU local union.

In his testimony at the hearings, Brother Johnston explained that SEIU's program to

refocus and restructure the Union to build an organization that is better positioned to win higher

5

standards for SEIU members began in 1996 with the "Bold Action" program adopted at the 1996

Convention, and continued with the 2000 Convention's NSUP and the "Seven Strengths"

program adopted by the 2004 Convention delegates. Among the elements of the Seven Strengths

program are building local union strength, political strength, and industry strength. SEIU's

Policy on Jurisdiction contributes to the enhancement of all three of these strengths by fostering

local unions with the size, capacity, resources and focus to win big for SEIU members in

bargaining, and in the state capitals and Congress.

Brother Johnston testified that, in many states across the country, SEIU has consolidated

and rationalized local union jurisdiction to create more powerful local unions. In California,

Florida, Massachusetts, Connecticut, Maryland, Michigan, Missouri, Ohio, Pennsylvania, Rhode

Island, and Washington, local unions have participated in a process similar to the one now

underway in California. The results have been astounding: SEIU grew by 820,000 between

1996 and 2004.

This achievement was also due to our relentless focus on local union organizing. As part

of the New Strength Unity program, the 2000 Convention adopted a local union organizing

mandate that became Article XV, Section 16(a) of the SEIU Constitution and Bylaws. The

organizing requirement was confirmed by the 2004 Convention. That provision states:

> Every Local Union shall continue to implement an annual local
> union organizing budget equivalent to 20 percent of the local's
> budget (after payment of all per capita tax obligations), to be spent
> consistent with the principles of the applicable industry division of
> the International Union. Each industry division shall submit its
> principles and the procedures for their enforcement for approval by
> the International Executive Board no later than January 2005.

Ex. 1, p. 31.

6

As part of the implementation of this requirement, the International Union divisions require locals to submit organizing plans on an annual basis. In addition, local unions are expected to have full-time organizing directors who are responsible for drawing up the locals' organizing plans and overseeing their execution.

Further, the Seven Strengths program adopted at the 2004 Convention includes a commitment to building national strength. A component of this commitment was expressed in the United Strategy for Strength resolution adopted by the Convention. This resolution commits the International Union and local union to devoting resources, including personnel, dedicated to growing the union in areas such as the South and Southwest, where union density, and SEIU's presence, has historically been weak. Through adoption of this resolution, the 2004 Convention mandated the International Union resources be redirected from areas of traditional strength, such as California and New York, to emerging growth regions.

## III.    Political and Demographic Trends in California

Brother Johnston, Brother Tanner, and Dean Tipps, Executive Director of the California State Council, made the case for the need to reorganize local union jurisdiction in California. Tr. 1056-64. They pointed out that, notwithstanding conventional political wisdom, California is not a "safe" state for candidates who support progressive positions of importance to working men and women. The data presented by these witnesses establishes that SEIU locals are strongest in the slower-growing coastal areas of the state such as San Francisco, Santa Clara, Los Angeles, and Alameda counties. These counties readily support agendas for working Californians; however, they are losing influence due the demographic shift to inland counties such as the

7

Central Valley counties and Sacramento, San Joaquin, Kern, San Bernardino, Riverside and San Diego counties, where the political climate is much more conservative, and SEIU is much weaker. SEIU is growing in California, but we are growing in the coastal areas where population growth in stagnant.

It is vital that we hit upon a strategy to unite workers in the inland counties within the same industry. In order to be able to organize successfully on a massive scale and affect the politics of these areas in a way which benefits our members by lifting standards, we must bring to bear the resources and expertise of our successful coastal locals. Currently, the vast majority or our organizing resources are concentrated in a few coastal county locals, and are mostly absent in strategic counties where growth and political power are on the rise.

## IV.    Current SEIU Local Union Jurisdiction in California

The evidence presented at the hearing dramatically highlighted the fragmentation of SEIU local union jurisdiction by geography, industry and employer. None of the four industry divisions (Public Services, Health Systems, Long Term Care, and Property Services) are unified under the present system of local union jurisdiction in California. The testimony revealed that many locals are quite small and therefore under-resourced. In addition, a number of locals still exercise jurisdiction across industry lines.

### A.    Current Public Services Local Unions

For purposes of this report, the term "public services local unions" refers to SEIU local unions whose membership is made up primarily of local or state government workers (including

8

California State University system employees). We address separately below, in a section devoted to Long Term Care Division members, home care providers considered employees of in home supportive services ("IHSS") public authorities.

### 1.    Local government employees

According to Brother Tanner's testimony, 22 California counties have multiple public services local unions.[3] Some of these local unions have jurisdiction for workers in a single county; others exercise jurisdiction in several counties. One public services local, Local 535, represents over 30,000 social services employees in local government statewide, and has members in many counties. Local 535 also represents private sector health care workers and workers employed by publicly-funded social service agencies. Other local government workers are represented by 19 local unions of vastly different sizes and resources (excluding Local 99, which represents Los Angeles area school employees). Some public services locals represent IHSS providers, property services workers, and private health care employees. We summarize below the jurisdiction exercised by these local unions for local government workers who are not represented by Local 535.

Los Angeles County employees are represented by Local 660, which represents over 51,000 employees of Los Angeles and Orange counties. About 19,000 Local 660 members are in the public health field, including those at the Los Angles County Department of Public Health

---

3  These are the counties of Alameda, Contra Costa, Fresno, Kern, Los Angeles, Kings, Marin, Monterey, Napa, Orange, Riverside, Sacramento, San Diego, San Francisco, San Joaquin, San Mateo, Santa Barbara, Santa Clara, Solano, Stanislaus, Tulare, and Ventura.

Ingleside Hospital, Los Angles County – USC Medical Center, Rancho Los Amigos National

Rehabilitation Center, and the King/Drew Medical Center. Former Locals 434 and 787

previously merged into Local 660. Local 347 represents about 12,000 municipal workers in Los

Angeles County, most of whom work for the City of Los Angeles. Local 2028, which was

created as a result of the consolidation of former locals 102 and 1926, represents over 8,000

employees in San Diego County, and ten cities and school districts. Local 2028 also represents

stadium and arena employees, theater and convention center workers, and workers at Delmar

racetrack, who fall under the Property Services Division. In addition, Local 2028 represents

employees of a Fredericka Manor, a private sector nursing home, and Edgemore, a county owned

and operated nursing home. Employees of Riverside County, cities in the county, and special

districts are represented by Local 1997, which represents about 6,000 public workers. Twenty-

five percent of Local 1997's members are healthcare workers. Local 998, which is currently

under trusteeship, represents about 5,500 employees of Ventura County (including Ventura

County Medical Center) and various municipalities in that county, as well as workers for the

courts, special districts, and IHSS workers.

Santa Barbara local government workers are represented by Local 620, which also

represents public sector employees in San Luis Obispo county for a total representation of about

4,000. County and municipal workers in Kern, Tulare and Kings counties, including public

hospital workers at Kern County Medical Center, are represented by Local 700, which represents

over 7,000 workers. Local 700, which originally had jurisdiction limited to Kern County, is the

product of a merger with former Local 690, which had jurisdiction for Tulare and Kings counties.

Local 700 also represents employees of the San Joaquin Valley Air Pollution Control District,

which has employees who work in Bakersfield, Fresno and Stanislaus County. Local 817 represents over 5,000 workers in Monterey and San Benito counties, including city and county employees, IHSS providers, employees at Natividad Medical Center, a public hospital in Monterey County, and Hazel Hawkins Hospital, a district hospital in San Benito County.

Local government workers in Santa Clara and San Mateo counties are represented by Local 715, which represents over 26,000 employees. Some of Local 715's public sector members include employees of Santa Clara Valley Medical Center and San Mateo General Hospital. Local 715 also represents employees at El Camino Hospital, a district hospital. In addition, Local 715 has units in other SEIU divisions: private university workers at Stanford University and Santa Clara University (including Santa Clara Mission Cemetery workers), private hospital workers at Stanford and Lucile Packard Hospitals, IHSS providers, and multiservice workers employed by Bon Appetit/Compass who work at Stanford and Santa Clara universities.

Local 790 represents employees of cities, counties (including public hospitals), school districts, special districts, private non-profits, and other private sector employees (including airport service workers at San Francisco International Airport) in San Francisco, Alameda, Contra Costa, San Joaquin, and Sacramento counties. Local 790, which currently represents almost 29,000 employees, is itself the product of the mergers of former SEIU Locals 390, 400 and 22. In San Francisco, social services workers are represented by Local 535, and some public health classifications are represented by UHW. Specifically, UHW represents public health care employees at San Francisco General Hospital and the Laguna Honda public skilled nursing facility. UHW, Local 535, and Local 616 (which alone represents about 14,000 employees and

11

providers) also represent different classifications of local government workers in Alameda County, including employees at the Alameda County Medical Center. Local 616 also represents IHSS providers, employees of special districts, Head Start workers, and employees of one private non-profit. Santa Cruz local government workers, including both municipal and county employees, are represented by Local 415, which represents about 4,500 workers. Local 415 also represents IHSS providers, and is operating under a servicing agreement with Local 715. City, county school, court, special district, and child care workers in Marin County are represented by Local 949, which represents under 2,000 local government and related employees. Local 707 is an amalgamated local of about 6,000 county, special district, court, city, schools, IHSS, for-profit and non-profit contract agencies, and private sector hospitals workers, with jurisdiction in Sonoma, Mendocino and Lake counties.

Local 614 represents about 2,300 employees, including employees of Napa County, as well as employees in four cities in the county, school district employees, IHSS workers, and classified employees at Napa Community College. Local 614 has been in merger talks with Local 1280, which represents over 3,300 local government and related employees, as well as IHSS providers, in Solano County. Locals 1280 and 614 share an executive director. Local 1292 represents under 800 employees in cities, the courts, special districts, and publicly-funded private agencies in Butte, Shasta, and Siskiyou counties. Local 4988 has about 1500 members, 60% of whom work for the counties of Amador and Calaveras, cities, and special districts.

### 2.    Education and State Employees

Employees of the Los Angeles, Lynwood, Torrance and Pleasant Valley unified school districts, Head Start workers, and Los Angeles Community College employees, are represented by Local 99, which is currently under trusteeship. Local 99 represents over 36,000 employees in Los Angeles and Orange counties. Local 1983, also known as California Faculty Association, represents 23,000 teaching faculty at all 23 campuses in the California State University ("CSU") system. Non-teaching employees in bargaining units 2, 5, 7 and 9 in the system are represented by Local 2579, the California State University Employees Union, which represents over 15,000 CSU employees. Employees of the State of California in many bargaining units are represented by Local 1000, which represents over 83,000 state employees.

### B.    Current Long Term Care Local Unions

SEIU's Long Term Care Division includes IHSS providers, homecare workers employed by private agencies, private sector nursing home workers, and employees of senior living facilities. In California, SEIU represents over 200,000 homecare workers and approximately 20,000 nursing home workers. SEIU's nursing home workers are currently represented by three California local unions: Local 434B, which represents workers in 50 private nursing homes, UHW, which represents workers in 152 private nursing homes, and Local 2028, which represents workers at one private nursing home.

Homecare providers are in many different California local unions. SEIU represents IHSS providers in four types of unions. The bulk of the home care providers are represented by Local

13

434B, which represents almost 123,000 SEIU homecare members in Ventura,[4] Los Angeles and San Bernardino counties. In addition, the Local 434B leadership heads Local 4034, also called the California United Homecare Workers Union ("CUHW"). Local 434B and CUHW share the same president and secretary-treasurer. CUHW is a California homecare workers union jointly affiliated with SEIU and AFSCME pursuant to the Strength In Unity Agreement between the two international unions. Ex. 38. CUHW represents over 22,000 homecare workers in 25 counties.[5] Together, CUHW and Local 434B represent home care workers in 28 counties in Northern, Central, and Southern California. Local 434B and CUHW represent only long term care workers. Another AFSCME affiliate, the United Domestic Workers of America ("UDW"), represents about 60,000 IHSS providers in 10 counties.[6] Over 46,000 IHSS providers in nine counties[7] are represented by UHW, SEIU's statewide health care union. In addition, as noted above, Locals 715, 616, 614, 415, 707, 998, 1280 and 817 certified representatives of IHSS providers in their respective jurisdictions.[8]

---

4  Local 434B has represented the Ventura County IHSS workers under a servicing agreement with Local 998. This group recently voted overwhelmingly to join Local 434B.

5  CUHW represent IHSS providers in Imperial, Inyo, Tulare, Kings, Mono, Madera, Mariposa, Tuolumne, Alpine, Nevada, Sierra, Sutter, Colusa, Lake, Glenn, Butte, Plumas, Tehama, Lassen, Shasta, Trinity Humboldt, Del Norte, Siskiyou, and Modoc counties.

6  Placer, El Dorado, Stanislaus, Merced, San Luis Obispo, Kern, Santa Barbara, Riverside, Orange, and San Diego.

7  San Francisco, Fresno, Marin, Sonoma, Contra Costa, Sacramento, San Joaquin, Amador and Calaveras.

8  Locals 616, 614, 707 and 1280 operate jointly through the Joint Organizing Partnership. Local 415 is party to a servicing agreement with Local 715, and Local 998 is party to a servicing agreement with Local 434B.

14

**C.    Current Property Services Jurisdiction**

SEIU's Property Services Division includes janitors, security guards, employees of stadiums, arenas and convention centers, private higher education employees, subcontracted airport workers, and racetrack workers. The largest Property Services Division local union in California is Local 1877, which represents janitors, stadium and arena workers, convention center employees, subcontracted airport workers at all major California airports, grocery store cleaners, racetrack workers, residential building workers, cemetery workers, and employees in other allied industries. Local 24/7 represents security officers in Northern California. Local 265 represents cemetery workers and greens keepers. Locals 700, 715, and 535 also represent cemetery workers. Local 280, also called the Pari-Mutuel Employees Guild of California, represents pari-mutuel clerks throughout the state. As noted above, Locals 715, 790 and 2028 also represent small numbers of Property Services Division members.[9]

**D.    Private Hospital Workers Represented by Public Services Locals**

UHW, the product of a 2005 merger between former Locals 250 and 399, is a large local of 130,000 members with statewide jurisdiction for private sector healthcare workers in California. At the time of the merger, Local 250 had about 94,000 members, and Local 399 represented over 30,000 workers. Yet there are also several public sector locals that represent

---

9  In addition, Local 87 represents janitors in San Francisco. Local 87 was not formally included in this proceeding, but a Local 87 representative testified at the hearing on property services jurisdiction.

private sector hospital workers. Local 4988 represents wall-to-wall units at Catholic Healthcare West's ("CHW's") Mark Twain hospital in Calaveras County, and the Sutter Amador acute care facility in Amador County. Local 707 represents employees at the Sutter Santa Rosa hospital. Local 715 is the certified representative of employees at Stanford and Lucille Packard Hospitals. Local 2028 represents employees at Children's Hospital in San Diego. UHW is actually servicing employees in these facilities represented by Locals 707, 715, and 2028 pursuant to servicing agreements. Finally, Local 535 represents about 3,400 registered nurses, other professional units, and technical employees employed by Kaiser Permanente.

### E.    Representation of District Hospital Workers

District hospitals are run by the elected boards of special healthcare districts. UHW represents workers at eight district hospitals. Workers at three other district hospitals are represented by public sector Locals 817, 715, and 5000 (NAGE).[10]

### V.    Organizing Programs and Results

Despite the impressive growth in overall SEIU membership over the past decade, only a relative small percentage of that growth has been due to organizing wins. According to a submission from the Public Services Division, during the period 1998 through 2005, California public sector unions (include those representing state workers and school employees) organized just 75,161 new workers. This number includes 23,500 added in 2000 and 2004 by California

---

10  NAGE represents employees at Menifee district hospital in Riverside County.

Faculty Association, Local 1983, through an agency shop campaign and accretion of teacher aides. Among local unions whose focus is local government workers, the organizing wins for this period amounted to only 48,494 new members.

Many public sector locals are not contributing at all to our California growth, and those that are contributing are not winning at the pace needed to achieve union density in our priority services and geography. Our annual average growth per local union over the past 6 years is 368 workers. A disproportionate amount of that growth results from our current membership base: agency shop, residual and part-time worker victories. We are not organizing on pace in services that were formerly publicly-delivered and are now privately-delivered, publicly-funded such as mental health and developmental disabilities workers. Only two local unions have achieved a measure of union density in mental health services.

We are also not growing on pace in other Public Services Division priority services such as childcare. These privately-delivered, publicly-funded services are severely underfunded resulting in unreliable access and service quality and poverty level workforce wage and benefit standards.

Why are our growth numbers in the California public sector so anemic? It is true that many opportunities for growth lie in localities where existing local government local unions don't have sufficient resources to mount large-scale organizing drives. For example, the Public Services Division estimates that, in Tulare County, there are 1,800 workers, including residual public units, hospital district employees, child care centers and mental health workers, who could be organized immediately. This figure does not count an additional 1,000 developmental

17

disability community workers who could win the right to union representation in the near future given new political leadership in Sacramento. This fact further underscores the necessity to realign our jurisdiction to bring local union resources to bear in those localities of low union density.

But the geographic imbalance in our present local union structure does not fully explain the mediocre growth of our public sector local unions. Even in 2006, many public sector local unions are not "on program" with respect to SEIU's organizing mandates. For example, many of our public sector local unions are simply too small to be able to devote the resources required to fund full-time organizing directors. Thirteen of our California public sector locals represent less than 10,000 workers, and nine represent less than 6,000 public employees. The Public Services Division reports that eight local unions are not contributing to our growth goals due to lack of capacity and/or political will. To address this problem, some locals have banded together to jointly organize, in what amounts to a partial step toward consolidation. Specifically, Locals 707, 614, 1280, 1292 and 949 formed the Joint Organizing Partnership ("JOP") with Local 616. The JOP is led by Local 616's organizing director. Similarly, Local 4988 receives organizing services from Local 790 through their servicing agreement. But Locals 2028, 1997, 998, 700 and 817 do not have organizing directors.

Local 347 represents about 12,000 workers, yet it too lacks a full-time organizing director. According to the Public Services Division, the person listed as the organizing director is actually the local's fulltime political director. In addition, Local 347's organizing plan for 2006 does not comply with SEIU's organizing mandate. The Division reports that the three staff listed as organizers are actually representatives. The Division explains that, in 2005, the local

18

assigned responsibility for its organizing program to its General Counsel in order to recruit a

fulltime organizing director and staff and to develop a viable organizing program. The Division

points out that this was not done, and that, as in 2006, the three staff listed as organizers in 2005

were actually representatives.

In addition, Local 347 continues to struggle with maintaining its membership base. The

Division reports that, on April 24, 2006, the local informed its members employed by the City of

Commerce that it was withdrawing from the ballot rather than face a decertification election

challenge from the Commerce City Employees Association. Similarly, during the hearings, a

decertification challenge to Local 347 in a large unit from a public safety union affiliated with an

AFL-CIO union was only averted after the local called on the International Union for assistance.

The Division reports that there are 119 independently-represented cities in Los Angeles and

Orange counties employing over 5,000 employees for which Local 347 has no organizing plan or

dedicated resources.

Our organizing shortfalls extend beyond the Public Services Division. The goal of Health

Systems Division is to build a strong national union to change the lives of RNs and hospital

workers, to hold hospitals accountable to workers, patients, the underserved, and communities, to

improve the quality of care delivered, and to win health care for all. Assistant Research Director

Campbell testified that the biggest challenge to achieving these goals is the current low union

density in the industry. Tr. 1898-1908.

Brother Campbell submitted data showing the job we have before us in the private

hospital sector in California. Statewide, fully 78% of hospital beds are in private facilities, and

of these, 39% are in totally non-union facilities. In the markets identified as growth markets by

19

the Health Systems Division, significant percentages of non-union facilities exist. In the Fresno

County market, private hospitals make up 95% of hospital beds, and 52% of those beds are in

non-union facilities. There is also a non-union district hospital in Fresno County. In Orange

County, 93% of hospital beds are in private hospitals, of which 73% are in facilities where no

union is present. In San Diego County, private sector hospitals have 65% of the total hospital

beds in the county, and 33% of those beds are in non-union hospitals. In addition, 52% of the

district hospital beds are in non-union facilities in San Diego County. In Riverside County, 68%

of the hospital beds are in private sector hospitals, of which 35% are in non-union facilities. And

in San Bernardino County, private acute care facilities make up 84% of the hospital beds in the

county, with 59% of them located in non-union hospitals. In addition 175 of the 199 district

hospital beds in that county are in non-union facilities.

Based in part on the above data, the Health Systems Division estimates that there are

approximately 100,000 unorganized hospital and related workers in Southern California. The

Division's plans call for organizing more than 40,000 private and healthcare district healthcare

workers in California over the next four years. These are mostly professional and technical

workers. The Division is targeting district hospitals, private profit and private non-profit

hospitals in markets in Fresno, Orange, Riverside, San Bernardino and San Diego counties. For

2006, the Division's plans call for organizing 6,000 workers in private sector and district hospital

targets in California. These include workers in hospitals and related facilities in the Kaiser,

CHW, Tenet and Sutter chains and district hospitals where some of the workers are already in

unions.

UHW is the key to the Health Systems Division's organizing plans. UHW is the only local union with jurisdiction to organize private sector healthcare workers in California. And although it currently shares jurisdiction for district hospital workers with public sector unions, UHW represents employees seven district hospitals, far more than any other SEIU local union. Yet, UHW has also failed to keep pace. Since the 2005 merger of 250 with 399, UHW has only organized about 2200 hospital workers. It is plain that UHW has much further to go in organizing its current jurisdiction.

## VI.    Discussion and Recommendations

It is stating the obvious to say that the current patchwork of SEIU local union jurisdiction in California is not designed to maximize local union strength through uniting workers by industry in the most relevant geography. Rather, the current jurisdictional patterns are in large part an outgrowth of piecemeal affiliations, mergers, and special arrangements that do not reflect the current needs of SEIU members to win significant improvement in standards, preserve gains previously won, and grow the union in areas of low union density. We emphasize that such growth in not growth for growth's sake; it is vital if we are to retain the standards we have won in areas of higher union density. We simply cannot be islands of strength in a sea of weakness; we must improve standards throughout the state so that employers cannot use lower standards in the unorganized areas of the state to attack wages and benefits in the locations where we are a significant presence. And as the testimony established, we must increase out statewide clout to promote a progressive agenda and to head off efforts to block that agenda through initiatives such as Proposition 75, which we only managed to defeat by a narrow margin. As pointed out by

21

Brother Johnston, SEIU devoted substantial resources to that campaign to just to maintain the status quo. To accomplish this, we must project our strength into the eastern part of the state, where political power is migrating in step with population growth. We must also take a hard look at what the relevant geography is for each industry division, and be prepared to match our structure to that geography, irrespective of the current jurisdictional hodgepodge.

In addition, we need to take stock of the inability of many locals in their current configuration to adhere to the organizing mandates of SEIU. We think that it will take new internal structures and locals of larger size to establish properly-resourced organizing programs geared to the 21st century. Our outdated structure in California has not produced the kind of organizing results we will need to have across the state if we are to keep standards high, grow the union, and win for our members. These principles underlie our recommendations for jurisdictional realignment in California.

The imperative of creating new local organizations that are not only self-sustaining, but that can devote resources to organizes in the growth areas, also flows from the current practice, of divisions subsidizing local organizing work. Notwithstanding the United Strategy for Strength resolution adopted by the 2004 Convention, the Public Services, Property Services, and Long-Term Care Divisions are currently subsidizing organizing campaigns in California. This needs to change if we are serious about our commitment to commit resources to unionize the "red" states.

We emphasize that our California locals are already no strangers to consolidation and realignment. As detailed above, many of the local unions involved in these proceedings are themselves the products of earlier consolidations. We are recommending an intensification of

22

that process to permit SEIU to exercise the maximum leverage possible on behalf of our California members.

Because the thorniest issues we address relate to the appropriate jurisdiction for healthcare workers, we turn preliminarily to the contention made by UHW that all healthcare workers, broadly defined to include public health workers and long-term care employees, should ultimately be placed in a single local union. We do not think that the record of healthcare to date demonstrates that this is necessarily the best approach for growth. We believe that the jury is still out on the question whether, in order to raise standards and build power for our members, we need to amalgamate all of the sectors of the broadly defined healthcare world into a single entity. This has not been our uniform structure for representing members in the different sectors of the healthcare industry, and, as a matter of fact, recent jurisdictional decisions have resulted in recommendations for different structures based on different density, geography, capacity, and growth possibilities in each case. For example, although in New York all healthcare workers are in one local, it is not as a result of International Union jurisdictional decisions, but rather through voluntary mergers, except for interns and residents who are still in a separate local. Jurisdictional decisions in Illinois and Washington have resulted in sectoral structures, and there are sector-based locals in Oregon, Wisconsin, and Pennsylvania.

## A.    Jurisdiction for Local Government Employees

### 1.    Proposals for Geographic Reorganization

By memorandum dated March 17, 2006, prior to the opening of substantive hearings in this matter, the International Union circulated a concept for reorganizing public sector

23

jurisdiction in California for local government workers. Ex. 10. The proposal covered public

sector locals except Locals 99, 1000, 2579, 1983, and a future childcare local contemplated to be

jointly affiliated with AFSCME. The key element of the International Union's proposal was a

map of the state with four regions designated by ovals running from north to south. The ovals,

often referred to during the hearings as "eggs" due to their shape, represented four regional

public sector local unions that the International Union proposed be established in lieu of the

existing arrangement of 19 separate local unions. The map was more of a framework than a

precise blueprint; the four regions were generally delineated, but at the periphery of each oval

there was some ambiguity. Two counties, San Francisco and Alpine, did not appear to fall within

any of the regions, while counties at the borders of the proposed new locals, such as San Joaquin,

Kern, and Riverside, appeared in two ovals. For purposes of this decision, we refer to the four

proposed regional locals as the Northern, North Central, South Central, and Southern regional

public sector locals.

Local representatives who testified at the hearings generally recognized the need to

consolidate small local unions and reorganize public sector jurisdiction along regional lines,

although there were different views expressed about the precise makeup of regional

configurations. Locals 2028, 660, 1997, and 715 explicitly or implicitly supported the four-local

model proposed by the International Union. Local 620 proposed a fifth local to be comprised of

three coastal counties (Santa Barbara, Ventura and San Luis Obispo) plus five Central Valley

counties (Tulare, Kings, Kern, Inyo and Mono). Local 700 endorsed this proposal, but added a

ninth county, Fresno, in a post-hearing submission. At the hearing itself, Local 700 proposed an

alternative Central Valley local consisting of Kern, Kings, Tulare, Fresno, Madera, Mariposa,

Merced, Stanislaus, and possibly also San Joaquin. In addition, Local 700's Executive Director, Ward Wollesen, testified that Inyo and Mono counties, on the eastern side of the Sierra Nevada range, would logically fit with Local 700's jurisdiction. Brother Wollesen stated the local's preference to be in a local representing other Central Valley counties rather than a local headquartered in Los Angeles or San Francisco.

Local 715 (Santa Clara and San Mateo counties) urged that San Joaquin County be placed in the North Central regional local, while Local 790 presented testimony from San Joaquin County members who desired to remain with Local 790. Local 817 (Monterey and San Benito counties) came out in favor of a single statewide local union for public sector workers, to be achieved in phases. Under Local 817's proposal, there would be an initial consolidation of public sector local unions into two regional locals, one in the north and one in the south. The northern boundaries of San Luis Obispo, Kern, and San Bernardino counties would be the dividing line between these two proposed locals. According to the proposal, presented by Local 817 Executive Director John Vellardita, these two locals would then be merged within five to seven years to form a single statewide public sector local. Local 949 (Marin County) proposed a Northern California provisional local covering the jurisdictions currently exercised by Locals 790, 616, 707, 1280, 614, 4988, and 1292. According to Local 949 Executive Director Kris Organ, this Northern California provisional local would encompass San Francisco, Alameda, San Joaquin, Calaveras, Tuolumne, Mono, and all counties north of those counties.

Locals 535 and 616 proposed three public sector locals. Local 535 Executive Director Damita Davis-Howard's description of the proposed Northern California provisional local was similar to Local 949's proposal, and included the members serviced out of Local 535's Oakland

and Sacramento offices, including the State Bar (a statewide employer), San Andreas Regional

Center (located in the South Bay), and Valley Mountain Regional Center (located in multiple

counties including San Joaquin and Stanislaus), as well as Local 535 members serviced out of

Local 535's San Jose offices that are located in Alameda County and north of San Mateo County.

Sister Davis-Howard further testified that the Central California local include all of the

jurisdictions currently represented by Locals 415 (Santa Cruz County), 700 (Kern, Tulare and

Kings counties), 715 (Santa Clara and San Mateo counties), 817 (Monterey and San Benito

counties), plus all Local 535 members serviced out of its San Jose office, with the exceptions of

members working in Alameda County and north of San Mateo County and the regional center

employees she listed as part of the Northern California local. Local 535's proposed Southern

California public sector local would include all of the jurisdictions currently represented by

Locals 347, 620, 660, 998, 1997, 2028, and all Local 535 members serviced out of Local 535's

Pasadena, San Diego, and Santa Barbara offices. This would include the counties of Los

Angeles, Ventura, Santa Barbara, San Luis Obispo, Riverside, Orange, San Diego, Imperial, and

San Bernardino. Local 2028 Executive Director Ben Monterroso, while supporting the 4-egg

concept, testified that Orange County should be added to the jurisdiction of the southernmost

local.

 Only one local, Local 347, opposed fundamental changes to its current structure.

Representatives of Local 347, which represents about 12,000 municipal employees employed by

the City of Los Angeles and other cities in Los Angeles and Orange counties, took the position

that city workers have unique issues and interests and that city and county workers should not be

in the same local union.

26

Locals urged that various principles be adhered to in the course of our consideration of the public sector jurisdictional questions. Local 535 presented a comprehensive list of eight additional recommendations to guide SEIU during any reorganization. These were: the creation of new local unions rather than the merger of locals into existing local unions; the creation of an advisory body to assist with transition and implementation issues; ensuring operational continuity; creation of industry councils; restructuring of other SEIU bodies that support public sector locals in California; providing full employment for staff; allowing all members to vote on the hearing officers' recommendations; and preservation of the history and culture of the current public sector locals. Ex. 12. In addition, at the hearing, Sister Davis-Howard urged that, in consolidating existing local unions to create new entities, existing locals be moved in their entirety into the new locals, rather than being divided up and assigned to different regional locals. Tr. 130, 134-35.

Many of the suggestions of Local 535 were echoed by other locals. In particular, locals and members emphasized the need for members to vote on the reorganization plan, the importance of maintaining staff and offices in local communities where existing local unions maintain a presence, the necessity of honoring staff contracts, the benefits of establishing new ("provisional") local unions instead of merging locals into existing unions, and the importance of creating a member advisory committee charged with laying out democratic governance structures, dealing with dues, staffing and office location issues, and establishing statewide industry councils to bring together SEIU members doing similar work across regional locals.

27

## 2.    Proposals for Public Healthcare Workers Jurisdiction

One focus of the hearings was the question whether jurisdiction for employees in public healthcare facilities should go to public sector locals or to UHW. By "public healthcare workers" we mean employees of public hospitals, public nursing homes, and related facilities, including healthcare workers in clinics, prisons and health departments.

UHW President Sal Rosselli and other UHW representatives and members testified that, in general, public hospital workers belong in a local union focused on healthcare. Tr. 1938-78. Brother Rosselli stated that the common healthcare industry was more important than the common employer. UHW argued that hospitals form a distinct sector, with common legal requirements, managed care contracts, technology and clinical practices. UHW stressed that the care delivered and the work performed are the same in privately run hospitals as in public hospitals. UHW emphasized that, compared with other public employees, hospital workers are distinguished by the requirement for advanced education, licensing, certification and continuing education, the highly regulated environment in which they operate, exposure to toxic substances, infectious diseases, and higher rates of injuries, unique scheduling issues and unique staffing issues.

UHW noted that the counties' portion of funding was relatively small, ranging from 21.9% in San Francisco to 2.6% in San Joaquin County. UHW made the point that public sector healthcare workers identified themselves as healthcare workers first, and county workers second. Brother Rosselli pledged to bring the same high standards UHW has won for private sector hospital workers at systems like Kaiser to public hospital workers. UHW noted that many healthcare job classifications were common across the public and private sectors. UHW

28

representatives argued that UHW's knowledge of the healthcare industry and workplace issues common to all healthcare workers would be at the service of public hospital workers if they were in the same union – UHW.

While stating its general position that public hospital workers belong in UHW's jurisdiction, UHW also acknowledged that a county-by-county analysis was warranted, with the yardstick being a determination of which local could most effectively represent the interests of public healthcare members. Brother Rosselli testified that, because public healthcare workers form a substantial portion of the membership of Local 660, and because Local 660 has done an excellent job in winning high standards for its public hospital members, Local 660 should retain jurisdiction for its public hospital members. In a post-hearing submission, Brother Rosselli requested that UHW be granted jurisdiction for public hospital workers in Alameda, San Francisco, and Monterey Counties. He argued for a case-by-case approach with respect to jurisdiction for SEIU members employed by public hospitals in other counties, and for employees of all public hospitals in which SEIU currently does not have membership, including all hospitals affiliated with the University of California, in the event that AFSMCE transfers those members to SEIU at some point in the future.

Brother Vellardita, on behalf of Local 817, testified in support of UHW's position. He stated that Local 817 was not as well positioned as UHW is to win higher standards for workers at the public hospital in Monterey County. Brother Vellardita testified that Local 817 lacked the knowledge of the industry that UHW has acquired through its representation of private sector hospital workers. He emphasized that medical economics trumps the single employer – single

29

union approach because relationships with county officials cannot ultimately overcome the dictates of the healthcare industry market.

For its part, the Public Services Division took the position that public sector local unions should have jurisdiction for public healthcare workers. Tr. 1908-20. Assistant Division Director Tanner testified that placement of public hospital workers in public sector unions would promote industry strength, because public health workers and other public workers in the same community share the same employer, and community strength, because public health members work shoulder to shoulder with other public services workers to build safe and healthy communities. Brother Tanner pointed out that healthcare workers represent a substantial portion of the membership of public locals. He asserted that health services are just one of many types of services provided by county workers, including social services, public safety, property services, and transportation, none of which ought to be removed from the jurisdiction of public sector locals. He stressed that, because the county is the single employer for public healthcare workers and other employees of the county, placing these members in the public sector local is the only way to uphold the principles of "One Employer – One Union" and "Speaking with One Voice." Brother Tanner emphasized that major benefits for all county workers, including health insurance, pension, retiree medical, and vacation, tend to be the same for all workers, with the exception of public safety employees. He also stated that public sector locals will have the capacity and experience to carry out the political work at the state and federal levels that impact county government expenditures on public health needs.

The Public Services Division presentation also pointed out the practical difficulties of attempting to split off representation of public health workers from other county workers.

30

Brother Tanner explained that bargaining units for all but one county are cross-departmental. He remarked that, in unit determination decisions, the largest possible bargaining units are favored, with the goal of avoiding fragmentation and the proliferation of smaller bargaining units. Josie Mooney, Local 790's Executive Director, and other representatives and members of Local 790, echoed this proposition. Sister Mooney presented evidence that 33 job classifications in the San Francisco Department of Public Health were located in other City of San Francisco departments. Tr. 2077-78. She noted in particular Clerks, Transcriber Typists, Account Clerks, Health Care Billing Clerks, and Senior Telephone Operators, all of whom are covered by the same contract and are in the same bargaining unit whether inside or outside of the Department of Public Health (Ex. 53).

Similar testimony was given by Kristy Sermersheim, Executive Secretary of Local 715, Brother Wollesen on behalf of Local 700, Mark Kisselburg, an executive board member of Local 1997, and Annelle Grajeda and Steve Matthews, General Manager and Director of Health Operations, respectively, of Local 660. Tr. 1929-38, 2013-34, 2092-2100. Brother Matthews testified that Los Angeles County's workforce is highly integrated with many classifications of workers working in many different county departments, including the Department of Health Services ("DHS"). For example, according to Local 660, 20 of 22 Los Angeles County departments (including DHS) employ intermediate clerks, and 16 departments (also including DHS) have Warehouse Worker Aids. Nurses work in eight county departments in addition to DHS. The collective bargaining units and contracts covering these common job classifications span departmental lines. Local 660's official positions was that public healthcare units belong in public sector unions (Ex. 54).

31

Moreover, Brothers Wollesen and Kisselburg pointed out that it was unlikely that the union could unilaterally remove healthcare workers from common bargaining units with other county workers. They stressed that the counties had an interest in the makeup of the bargaining units and were unlikely to agree to the removal of these workers from the broader county units. Grace Corse, a Registered Nurse and chair of the combined Los Angeles County RN bargaining units for Local 660, testified that nurses identified with their fellow county employees and did not wish to be divided from them in a separate local union. Tr. 2039-41. She asserted that RNs benefited from the public sector locals' fight for safe staffing levels. Other health care members of Local 660 and 790 gave similar testimony. Sister Grajeda emphasized that health care members contribute greatly to the local membership as a whole, and also benefit from their unity with other county workers in the local. Brother Wollesen pointed out that the goal of creating larger, effective regional public sector locals would be undermined by removing public health workers, such as those who work for Kern Medical Center, from the public sector locals. He added that public health workers' pay and benefits are protected by the fact that they are currently inextricably linked to the pay and benefits for workers countywide.

Further, Sisters Davis-Howard, Mooney and Fran Jefferson, Executive Director of Local 616, testified that at Alameda County Medical Center, Laguna Honda Hospital, and San Francisco General Hospital, where multiple SEIU local unions represent employees of the same employer, relationships among the local unions have been difficult, and bargaining coordination has not always gone smoothly. Tr. 2084-86. Sister Mooney described two occasion on which Local 790 and UHW took opposite positions on issues being discussed with the San Francisco Department of Public Health. Sister Davis-Howard noted that, frequently, the locals were

32

obliged to call in assistance from the International Union to referee disputes among the locals during contract negotiations. Tr. 2001.

The Public Services Division also contended that public health systems constitute a separate sector, as evidenced by the fact that public hospitals have their own association, called the California Association of Public Hospitals, which is separate from the association for private hospitals. Along these same lines, the Division stressed that public health systems have a fundamentally different mission than do their private sector counterparts: to provide indigent care and psychiatric emergency care, and to serve the entire community, irrespective of ability to pay. For instance, Brother Tanner testified that public hospitals provide 85% of the indigent care in counties where they operate and serve a patient population that is 76% people of color, despite the fact the public hospitals make up only six percent of California hospitals.

### 3.    Proposals for District Hospital Jurisdiction

Another issue to be resolved in this proceeding is jurisdiction for district hospital employees. Healthcare districts were created after World War II in California to address the problem of a shortage of hospital beds in the state. Healthcare districts are governed by elected boards. Most health care districts in California are purely public. Some have a two-board, district-private structure. In one or more of these cases the public board retains majority control of the private board. A minority of the district hospitals are affiliated with chains or managed by management companies. Examples of this are Oak Valley Hospital, managed by the Catholic Healthcare West chain, and Marin General Hospital, managed by the Sutter hospital chain.

District hospitals serve as safety net providers, including significant care for uninsured and underinsured residents. Healthcare districts are the chief source of inpatient, outpatient and emergency care to rural residents and residents in agricultural, fishing, mining and timber areas. There are 47 district hospitals, of which 31 are rural. Fifteen districts have hospitals operated by private companies. Eighteen districts provide health services but do not operate hospitals.

Some district hospitals have changed their governance from public to private. However, recent conversions in control of district hospitals have been from private to public. Examples are the creation of a healthcare district to rescue Alameda Hospital,[11] the leasing of Doctors' Hospital Pinole to the West Contra Costa healthcare district, and the switch in control of Palo Verde Hospital in Blythe from LifePoint Hospitals to the Palo Verde healthcare district.

County governments play an indirect role in the operations of healthcare districts and their hospitals. Counties approve the formation of the healthcare districts and appoint the first district board. County treasurers may act as the district treasurers and assess, collect and distribute property taxes to the districts. However, the districts have their own bonding and taxing authority to finance both operations and capital. Under California law, district hospital workers are considered public sector employees. They are covered by the Meyers-Milias Brown Act, the collective bargaining law for local government workers, and participate in public pension systems.

Healthcare districts are one type of special district, but there are others. Examples of other types of special districts are sanitary districts, water districts, recreation and park districts,

---

11  It was explained at the hearing that Alameda County Medical Center has a unique governance structure that does not precisely fit the district hospital or public hospital models.

and community services districts. Public services locals represent workers at 68 special districts (not including education). Public services locals organized 11 new special districts in the past five years. There are approximately 4,300 healthcare district workers unorganized in SEIU targeted counties in California.

UHW and Local 817 argued that UHW should have jurisdiction for district hospitals. UHW emphasized that district hospitals, although nominally public, behave more like private sector hospitals and are beyond the control of local government officials. Brother Vellardita added that Local 817 did not have the expertise in representing health care workers to win the highest standards for members at the district hospital it has organized (Hazel Hawkins Hospital), and asserted that UHW would be better placed to represent those members.

The Health Systems Division did not directly address the jurisdiction issue concerning district hospitals. However, as discussed above, the Division's presentation made clear that the Division included the organization of district hospitals as part of its plan to organize the healthcare industry in California.

The Public Services Division, Local 715, and Local 1997 urged us to recommend that public sector locals be given jurisdiction for district hospitals. Sister Sermersheim stressed that public sector entities like district hospitals belong in public sector unions. In urging that public sector locals have jurisdiction for district hospitals, Brother Tanner underscored the difference between district and private hospitals in terms of mission, payer mix, and governance, and likened healthcare districts to other special districts whose employees are represented by SEIU local unions.

35

### 4.    Proposals for Southern California Education Jurisdiction

Local 99 Deputy Trustee Bill Lloyd requested that Local 99 be granted jurisdiction for education employees in the same geographical area as that covered by the South Central regional public sector local union. In a post-hearing submission, Brother Lloyd argued that the education employers form a separate sector of public employees that justifies a separate local union. Brother Lloyd stressed that Local 99 represents the lion's share of school employees in Southern California. He asserted that, with over 30,000 members, Local 99 has sufficient size to be an effective local union with adequate resources to organize more education employees and lift standards for those already represented. Brother Lloyd pointed out that, in addition to an anticipated agency shop campaign that should add 10,000 Los Angeles Unified School District ("LAUSD") Unit G workers to the ranks of fee payers or members, Local 99 is targeting LAUSD community representatives, and will focus on early education employees and workers in public and private charter schools. Brother Lloyd noted that a June ballot proposition, if passed, will make preschool available for all 4-year olds in California, and would result in thousands of new SEIU Local 99 members filling jobs that will be created by this initiative.

Brother Lloyd stressed that, unlike other local government employees, school employees are not covered by the Meyers-Millias-Brown Act. Instead, school employees are subject to the provisions of the Education Code and the Educational Employment Relations Act of 1976, which established collective bargaining in California's public schools and community colleges. He noted as well the unique set of players that shape policy and funding in the educations arena, including the California Teachers Association and the California School Employees Association.

36

### 5.    Recommendations for Local Government Jurisdiction

#### a.    General Principles

The current fragmentation of local government jurisdiction and representation is simply inadequate to meet the needs of SEIU members in the 21st Century. We must be bold and recognize the need to change ourselves and our union if we expect to stay ahead of the curve as government and industry change all around us. Our 600,000 California members should provide us with greater clout in improving their lives than we have thus far been able to bring to bear on the employers and political bodies with whom we must deal. At the outset of this discussion of public sector jurisdiction, we state an overriding principle: we need larger, stronger local unions in the public sector that can focus on growing the worker voice for workers within the jurisdiction of the Public Services Division, including the 100,000 developmental disabilities workers and 40,000 mental health workers in California. These new local unions are also needed to grow our traditional public worker presence in cities and counties in the conservative, fastest-growing areas of the state. In short, we are convinced that the time for significant change is now.

Accordingly, we recommend the creation of four new local unions with jurisdiction for local government employees. We find the proposal to combine 19 local unions representing public sector employees into one or two local unions to be overly ambitious as a first step. The melding of 19 different local union cultures, personnel, collective bargaining responsibilities, and political orientations into four local unions will be a major undertaking. As Bill Steck, Executive Director of Local 707, stated, we must be careful to do the job right. It may be that, at some point in the future, it will make sense to further consolidate our California public sector locals

37

into two or even one local union.  For now, however, we recommend adopted of the "four egg" approach.

In this connection, we note that Locals 535 and 620 questioned the viability of a San Diego based local.  Tr. 132-33, 189.  It is true that a San Diego public sector local, even with the Local 535 members and jurisdiction in Imperial County, might not have the size and therefore the resources necessary to assure rapid expansion into the northern and eastern portions of the two-county area.  However, given that San Diego is the second largest city in California, and that Imperial County is slated for growth, we think that, as of now, the prospect of a Southern public sector local based in San Diego and with jurisdiction in Imperial County is worth pursuing.  As indicated below, however, we also recommend that this jurisdictional arrangement, like the others we recommend today, be revisited in the future so that a determination may be made whether these new regional public sector locals are organizing, growing, and engaging in political action at the high level we expect.

We agree with the suggestion of Brother Steck and Sister Davis-Howard to create what they each termed "provisional locals."  By this we understand them to mean that new public sector unions should be chartered, as opposed to merging existing local unions into other existing locals.  We agree that this will enhance the prospects for cooperation from all members and leaders of existing locals, and will provide a real opportunity for a fresh start in terms of developing local union structures that will meet the needs of our California members now and in the future for strong, resource-rich, democratic unions with expansive reaches into all parts of California.

38

Whether or not the creation of four regional locals leads to further consolidation along the lines proposed by Local 817, we think these new locals should closely cooperate with each other and share operations where possible. For example, the new locals may be able to realize economies of scale and improve efficient delivery of member services by jointly carrying out "back office" administrative or representational functions.

From what we have said thus far it should be clear that we do not think a stand-alone municipal workers local union such as that urged by Local 347 makes sense. Our experience in virtually every public sector union in California is that city workers and county workers are together in the same local unions, and that each group gives strength to the other. For example, Local 715 represents over 1,500 municipal workers and nearly 11,000 county workers, and Local 620 represents about 1,200 municipal workers and over 2,200 county workers. Representatives of public locals emphasized the benefits of combining the strength of municipal and county employees. Matthew Nathanson, Acting President of Local 415, testified that there are many similarities in job classifications between city and county workers. Tr. 682. He also noted that the person "who is on the City Council may be the person who is on the Board of Supervisors tomorrow."

Moreover, Local 347's own experience demonstrates that it has grown in part by merging formerly independent associations into the local union. These independent associations are far smaller than Local 347, but nevertheless decided that they could unite their strength with other public workers in a much larger organization and still retain a degree of local control. There is no reason why the same cannot be true of Local 347 itself, which will be far larger in proportion to the new South Central regional local union than the independent associations were when

39

compared with Local 347 at the time they merged into Local 347. In addition, if our recommendations are adopted, Local 347, like other public sector locals, will have a seat at the table in drawing up the structure of the new regional locals.

If our recommendations are adopted, all existing SEIU public sector local unions in California except Locals 99, 1000, 1983, 2579, and the new SEIU-AFSCME joint childcare local union, will be consolidated into new local unions. This consolidation will include a substantial portion of the members of Locals 347, 415, 535, 614, 616, 620, 700, 715, 790, 817, 949, 998, 1280, 1292, 1997, 2028, and 4988. We agree with Sister Davis-Howard that it is vital to preserve in permanent form the proud history, achievements, cultures and traditions of these SEIU local unions. Accordingly, we recommend that the International Union establish a suitable archive or similar facility whose purpose will be to memorialize this history for the benefit of current and future SEIU members and activists.

### b.     Geographic Jurisdiction

With respect to the contested questions of geographic boundaries for the new locals, we recommend as follows. Jurisdiction for San Joaquin County should be awarded to the Northern regional local union. Although that county is sometimes considered a part of the Central Valley, San Joaquin County employees are currently represented by Local 790, and to move them to the North Central local would split the public sector workers currently represented by Local 790 into two regional local unions, because the bulk of the Local 790 membership will go into the Northern local union.

Similarly, we do not think it makes sense for Kern County to be placed in the South Central local union. To do so would divide the members currently represented by Local 700 into two regional local unions, given that Kings and Tulare counties are placed in the North Central local union. Moreover, Brother Wollesen and Chuck Waide, Local 700's Supervisor of Field Services, made a convincing case that SEIU's Kern County members have much more in common with the Central Valley counties to the north than they do with the Los Angeles basin to the south. Tr. 489-91, 504-06. Besides being geographically separated from Los Angeles by the Tehachapi range, Kern County and its workers share a common culture and political orientation with Central Valley counties like Tulare and Kings.

We also do not recommend splitting up the Tri-County area identified by Walt Hamilton, Executive Director of Local 620, and Sister Davis-Howard. The Tri-County area consists of Ventura, Santa Barbara, and San Luis Obispo counties. Tr. 134, 187. Brother Hamilton testified that there is a historical tie among these counties. The central labor council covering these counties is known as the Tri-County Central Labor Council. There are also close ties between this area and Los Angeles. Los Angeles-based Local 99 has assisted Local 998, the Ventura public local, with school district bargaining. Tr. 316. Local 998's IHSS providers are being serviced by Local 434B, also headquartered in Los Angeles, and have recently voted to join that local. In addition, Local 660, another Los Angeles-based union, assisted Local 998 by training organizers and assisting with collective bargaining. Tr. 344. On the other hand, we do not perceive a strong connection between Santa Barbara and the Central Valley counties. These are some of the factors that lead us to conclude that the coastal Tri-County area is more appropriately placed in the South Central regional local.

41

In addition, we are convinced that the South Central regional local should have jurisdiction for Orange County. Orange County forms an essentially unbroken greater metropolitan area with much of Los Angeles County. Except for a small strip to the south, it is surrounded by jurisdictions that will be in the South Central local (Los Angeles, San Bernardino and Riverside counties). Locals 347 and 660, both based in Los Angeles, already represent workers in Orange County. Former Orange County Local 787 merged into Local 660 and became Chapter 787 of Local 660, with an office in the county. Tr. 344. By contrast, Local 2028, which is seeking jurisdiction for Orange County, does not represent workers in the county and has no offices there.

Finally, we recommend that Regional Center employees be assigned to the regional public local where the employees work. The particular statewide concerns of these employees can be the subject of an industry council uniting similar workers across regional lines.

We therefore recommend the following geographic jurisdiction for these four local government local unions, together with the recommended mergers of public sector workers in existing locals into each new regional entity, as detailed below. The names we use here for the new locals are for purposes of this report only and we are not recommending that the IEB adopt these particular designations.

**Northern Regional Public Sector Local:** Jurisdiction for public sector workers in the counties of Del Norte, Siskiyou, Modoc, Humboldt, Trinity, Shasta, Lassen, Mendocino, Tehama, Plumas, Glenn, Butte, Sierra, Lake, Colusa, Sutter, Yuba, Nevada, Sonoma, Napa, Yolo, Sacramento, Placer, El Dorado, Amador, Marin, Solano, San Francisco, Contra Costa, Alameda, San Joaquin, and Calaveras. We recommend the merger into this new local of the

42

public sector units, excluding IHSS workers, of Locals 535 (Northern workers only), 614, 616, 707, 790, 949, 1280, 1292, and 4988. In addition, public employees represented by UHW and Local 790 who work for San Francisco International Airport should be merged into the Northern regional local.

**North Central Regional Public Sector Local :** Jurisdiction for public sector workers in the counties of San Mateo, Santa Cruz, Santa Clara, Santislaus, Alpine, Tuolumne, Mono, Monterey, San Benito, Merced, Mariposa, Madera, Fresno, Kings, Tulare, Inyo, and Kern. We recommend the merger into this new local of the public sector units, excluding those in district hospitals, of Locals 415 (also excluding IHSS workers), 535 (North Central workers only), 700, 715 (including IHSS workers), and 817 (also excluding IHSS workers).

**South Central Regional Public Sector Local:** Jurisdiction for public sector workers in the counties of San Luis Obispo, Santa Barbara, Ventura, Los Angeles, San Bernardino, Riverside, and Orange. We recommend the merger into this new local of the public sector units of Locals 347, 535 (South Central workers only), 620, 660 (excluding Los Angeles Office of Education employees), 998, and 1997 (excluding district hospital workers).

**Southern Regional Public Sector Local:** Jurisdiction for public sector workers in the counties of San Diego and Imperial. We recommend the merger into this new local of the public sector units of Locals 535 (Southern workers only) and 2028.

Many public sector locals and members voiced their desires for a process to allow member and leader input concerning the structure of the regional locals. We agree with these concerns, and accordingly we recommend that the International President appoint a broad-based member advisory committee on the public sector reorganization. The committee should be

charged with developing a proposed structure for the regional public local unions, as well as proposed industry councils that would operate across regional lines. The committee should develop a plan for transitional continuity and governance. The committee's work should be driven by the following set of core principles:

- Regional locals should have similar structures
- Structure must facilitate growth
- Structure should dramatically increase member participation
- Structure should enable the delivery of enhanced member services
- Implementation plan should provide for new leader and staff development

We recommend that the committee's work be concluded no later than six months and that a plan be submitted to the undersigned hearing officers for review and approval prior to submission to the International President by the end of 2006.

### c.    Jurisdiction for Public Healthcare Workers

We further recommend that the new regional public sector local unions have jurisdiction for public healthcare employees, including public hospital workers and public nursing home workers. We are not persuaded that it makes sense to divide workers of a single employer into multiple local unions. Such a course would run counter to the principle we have adhered to in countless jurisdictional matters of uniting workers of a single employer in a single union to build power for our members and to enable us to speak with one voice. The mixed results we have had in San Francisco and Alameda County with multiple unions representing employees of a single public employer further suggests that we need to try another approach. By eliminating

44

fragmented local union representation of employees of the same employer, we will be able to speak with one voice on behalf of our members at these facilities.

We are not convinced that stripping out public healthcare workers from multi-department county-wide bargaining units is achievable, practicable or desirable. In fact, legal and administrative constraints on fragmentation of bargaining units could make this a risky maneuver without clear benefits to the members.

We recognize the special mission of the public health sector. We think that the public sector regional unions will be in the best position to deal with county employers on the issues facing county public health workers. Many of these issues cut across departmental lines and affect other county workers as well. We want to see a structure that permits public health care workers to fully benefit from efforts made on behalf of other county workers, and also to make their own contributions toward winning higher standards for their brothers and sisters in other departments of local government.

We are also mindful of the Herculean task the Health Systems Division has given UHW: organizing over 40,000 private sector and healthcare district employees into SEIU. Accomplishing this far-reaching goal will require tremendous resources, focus, and dedication from UHW, and falls squarely within its core jurisdiction. No other SEIU local union in California is attempting to nor has the capacity to organize private sector healthcare workers. We think that UHW needs to concentrate on this primary goal, and that our recommendation regarding jurisdiction will help it do just that.

If our recommendation is adopted, new regional public sector locals will exercise jurisdiction for public healthcare workers within their respective geographies. This includes

public healthcare workers currently represented by existing public sector local unions, and

workers currently represented by UHW at San Francisco General Hospital, Alameda County

Medical Center ("ACMC") (including the public acute and psychiatric hospital and clinics and

public nursing home), and the Laguna Honda Hospital public nursing home. These units should

be merged into the Northern regional public local. We suggest one exception to assignment of

public health members to the regional public locals. UHW represents workers at Tuolumne

General Hospital. No other SEIU local union represents workers at this hospital, and there was

no testimony offered concerning this facility. The Public Services Division should gather

information concerning Tuolumne to evaluate whether and how it fits in with the Division's

strategic goals. For the present, these workers should remain in UHW, subject to later review.

### d.    Public Sector Registered Nurses

Based on the testimony given by public sector registered nurses, we think RNs

demonstrated a strong identification with the special, public mission of the public health care

populations with whom they work, as well as an appreciation for the work of other healthcare

workers and an understanding of the significant role registered nurses can play in a unified

healthcare local union. We recommend that the new regional public sector locals have

jurisdiction for the public sector registered nurses, just as current public sector local unions like

Local 790 have jurisdiction for public sector registered nurses. We also recognize that RNs play

a critical role in leading the public health care team. Accordingly, we make specific

recommendations on RN structures both within and outside the new regional local unions.

46

We recommend that each regional local have dedicated staff to help coordinate and lead the nurse program work within the new public locals. Each regional local should also have a designated nurse leader with responsibility for overseeing the development and implementation of the nurse program within the local. We further recommend that each regional local representing RNs have proportional representation on the steering committee/leadership group of the Nurse Alliance of California. This will enable public sector RNs to have a strong voice in matters of legislation, policy, standards and bargaining that cut across regional lines. We think such representation will promote the RN identity within the public sector regional locals, including the occupational and professional issues of public sector RNs.

To ensure that public sector RNs have a significant role in the development of statewide initiatives of interest and benefit to the profession, we also recommend that two co-chairs of the Nurse Alliance of California be created, and that one co-chair be reserved for a representative of public sector RNs, and the other for a representative of private sector RNs. Due to the high density of public sector nurses in California and the critical role that California nurses play in leading on quality, patient care issues, we also recommend strengthening the public sector RN voice at the national level by adding an additional public sector RN representative to the national Nurse Alliance leadership group.

Further, we recommend that a representative of public sector registered nurses serve on the member advisory committee referenced below, so that registered nurses will have a role in the design of the regional public sector unions that will be created if our recommendations are approved.

### e.    Ancillary Public Sector Jurisdiction

47

In addition to their core jurisdictions, public sector local unions also represent employees of private sector employers, such as bookstores, contracted national park employees, and non-public airport workers (other than contracted airport workers and security personnel), that don't fall into any of the SEIU industry divisions. Locals 535 and 790 are examples of public local unions with such members. We recommend that the regional public sector unions retain jurisdiction for these ancillary units.

### 6.    Jurisdiction for Private Non-Profit Agency Employees

Consistent with our recommendation that the new regional public services local unions absorb the jurisdiction for public sector workers from existing public sector local unions, we also recommend that the new regional locals have jurisdiction for employees of publicly-funded private non-profit agencies. Such agencies are prevalent in the delivery of services to developmentally disabled and mental health clients. The new regional local unions should also have jurisdiction for privately-funded non-profit agencies that deliver social services, such as Planned Parenthood and the Red Cross.

### 7.    Jurisdiction for District Hospital Employees

The evidence regarding district hospitals demonstrated that they are a true hybrid. Although district hospitals are clearly public entities, they often behave like private sector hospitals. County government does play a role in the establishment and operation of district hospitals, but that role is limited. Some healthcare districts hire a private company or chain to manage the district hospital; other district hospitals are directly managed by elected boards. And

48

some even have a combination of public and private governance. To make matters even less clear, several hospitals have passed from private to public governance, or vice versa. District hospital workers confront many of the same challenges as other hospital workers, but this does not further the claims of either the public sector locals or UHW, because both represent, and will continue to represent, hospital workers.

We believe that the evidence does not warrant a blanket grant of jurisdiction to either public sector locals or UHW for organizing unorganized district hospitals. Instead, we recommend that UHW and the public sector locals share jurisdiction for the unorganized district hospitals, and that a case-by-case approach govern the award of specific organizing rights, with the right to organize a particular district hospital determined by division strategic growth goals in the area. We further recommend that proposals to organize particular district hospitals be submitted to the directors of both the Public Services Division and the Health Systems Division for approval. Any disagreement between the divisions regarding a grant of organizing rights with respect to a district hospital should be resolved by the International President.

Division strategic organizing imperatives are less significant with respect to El Camino district hospital in Santa Clara County and Hazel Hawkins district hospital in San Benito County, both district hospitals that have already been organized. While the case is a close one, we recommend that, on balance, the private-sector behavior of these two district hospitals argues for UHW to represent the members at El Camino and Hazel Hawkins, and that merger with UHW would strengthen the hand of these workers given their particular circumstances. As discussed above, workers at Alameda County Medical Center should be merged into the Northern regional public local.

49

### 8.    Jurisdiction for School Employees

We agree with Local 99 and Local 535 that Local 99 is large enough to be a self-sustaining local union focused on the education sector.  In addition, we recommend that Local 99 be granted jurisdiction for all education employees in the same geographic area covered by the recommended South Central regional public sector local, namely, Los Angeles, Ventura, Santa Barbara, San Luis Obispo, San Bernardino, Riverside, and Orange counties.[12]

We think that the particular statutes and policies governing education in California make a separate schools local feasible in Southern California.  By "education employees," we mean Head Start, K-12, county office of education, and community college employees.  With one exception (noted below), all such employees represented by current public sector local unions in the counties listed above should be merged into Local 99 as soon as feasible.  These include employees of the Santa Monica school district and the Los Angeles County Office of Education currently represented by Local 660, Pleasant Valley School District workers in Local 998, and Ventura Community College members represented by Local 535.  Due to legal restrictions on school employees and supervisors being in the same certified union, jurisdiction for LAUSD school supervisors represented by Local 347 should be transferred to the new South Central regional public local.

---

12   In his post-hearing submission, Brother Lloyd requested jurisdiction for Kern County education employees.  However, if our recommendations are adopted by the IEB, the South Central public local will not have jurisdiction for Kern County.  Accordingly, Local 99 should not have jurisdiction for Kern County school employees.  Rather, these employees should be in the jurisdiction of the North Central regional local.

**9.    Jurisdiction for Employees of the State of California
and the California State University System**

In contrast to the multiplicity of local unions representing local government workers, only

one SEIU local union, Local 1000, represents employees of the State of California. Accordingly,

we have no occasion at this time to recommend any changes. We note that Local 1000 needs to

adhere to the 20% organizing budget mandate set forth in the SEIU Constitution and Bylaws. In

this connection, Local 1000 should submit an organizing plan to the Public Services Division for

approval.

Local 1000 is an affiliate of the California State Employees Association ("CSEA") along

with Local 2579, which represents classifications of non-faculty employees of the CSU system.

The CSU system is governed by an independent Board of Trustees. Tr. 1119. At the hearing on

CSU jurisdiction, Local 2579 President Pat Gantt requested jurisdiction for private sector

employees of CSU foundations. Tr. 1115. Brother Gantt testified that there are nearly 35,000

employees working for 80 foundations throughout the CSU system. Half of the foundations are

student-run, and those account for 7,500 employees. Fifteen hundred employees are performing

work substantially similar to bargaining unit work being performed by CSU employees. Yet,

only 70 foundation employees are currently represented.

We agree that it makes sense for Local 2579 to have jurisdiction for the CSU foundation

employees, except for jurisdiction already granted to SWU, provided that Local 2579 develops

and submits to the Public Services Division for approval a detailed plan for implementing the

20% organizing budget requirement. This plan should be submitted jointly by Local 2579 and

California Faculty Associates, Local 1983, the SEIU local union that represents CSU teaching faculty.

Both Local 1983 and Local 2579 represent CSU employees across the state.  Some of the CSU campuses are far from urban centers.  Accordingly, we recommend that these two CSU locals intensify their coordination and cooperation to the maximum extent possible.  We recommend that, wherever possible, Locals 1983 and 2579 coordinate bargaining and share office space and staff.  Ultimately, we think that these two locals, representing employees of the same employer, should voluntarily discuss maximizing coordination.

### B.    Jurisdiction for Long-Term Care Workers

#### 1.    Proposals for Long-Term Care Reorganization

##### a.    The Statewide Model

According to the testimony of Brothers Kieffer and Barton on behalf of the Long-Term Care Division, local elected leaders in the Division from across the country have concluded that long-term care is a distinct industry within healthcare uniquely dependent on state Medicaid programs for funding.  Tr. 1121-36, 1979-91.  Therefore, the Division believes that the most logical geographical model for organizing and collective bargaining strength in the Long-Term Care Division is a single statewide local union for long-term care workers in each state.

Brothers Kieffer and Barton stressed that it is important to concentrate members' political power at the state level because the state Medicaid program is the most important funding stream for long-term care workers.  They added that uniting all employees of statewide and national nursing home chains and homecare entities is best done in a single statewide local union.  The

52

Division representatives emphasized that large scale organizing and bargaining campaigns require large scale resources, and that overcoming wage and benefits variations within a state is best accomplished by unified statewide approaches.

Brothers Kieffer and Barton explained that, in California, there are 90,000 unorganized nursing home workers, 70,000 unorganized home health care workers, and 46,000 unorganized employees of assisted living facilities and comprehensive care campuses. Uniting these 206,000 long-term care workers into SEIU will require focus, concentration, resources, and speaking with one voice.

The Division presentation highlighted SEIU's organizing successes among long-term care workers. Over the last decade, long-term care representation in California grew from less than 10,000 members to almost 240,000.[13] Of these, Local 434B organized at least 107,000 and UHW organized at least 43,000. In 2005, SEIU organized 18,710 new long-term care workers in California. Local 434B organized 18,494 of those new members, and UHW organized 292. In 2005, Local 434B and the Division devoted considerable resources to achieve that result. Future organizing is tied to the private sector in nursing homes, homecare agencies and senior housing – sectors that are still subject to state politics.

Brothers Kieffer and Barton pointed out that the nursing home industry is a national and statewide industry. There are 1185 nursing homes in California. Twenty-two firms control 450 facilities and most operate in both Northern and Southern California. Multi-facility operators run 90% of the state's nursing home facilities. Many of the largest California operators are also the

---

13  This corrected figure was supplied in a post-hearing submission from the Division.

53

largest national companies that bargain with other SEIU locals in other states. SEIU bargains with most statewide operators at a statewide table.

The Division believes that nursing home membership growth requires a statewide strategy. SEIU is engaging in joint political work with a majority of the large chains to help the industry win more funding to enable raising standards for industry workers. Through such statewide efforts we have won organizing rights at 120 facilities, with 50 organized to date. Our work on accountability campaigns is statewide in scope. And Medi-Cal, the California Medicaid program, pays nursing home fees for 65% of all nursing homes residents.

In homecare, county-based strategies were initially important in organizing the industry and setting standards. However, today, county-based strategies are less important in organizing and contract bargaining, based on three factors: 1) Medicaid funding decisions are made in Sacramento, 2) IHSS public authorities are now mandated, and 3) all IHSS workers are organized. Between 1999 and 2004, our political successes in Sacramento have reduced the county share of IHSS funding from 66% to 17.5%, and increased the state share from 0 to 32.5%.

The Division explained that a county-based strategy will not address IHSS wage disparity across the state. The highest paid IHSS workers earn $3.75 an hour more than the lowest paid IHSS workers for doing exactly the same work. Wage variations for nursing home CNAs is $5.83 per hour. Yet Medicaid is the biggest funder for IHSS workers and nursing home workers, and is controlled in Sacramento. And wage standards for IHSS workers cannot be explained by the alignment of county bargaining. Whether or not the same local union represents IHSS providers and county employees, wage rates are determined by the poverty rate and local labor rates.

Brothers Kieffer and Barton asserted that the collective political strength of the union statewide is what is most important in addressing current and future challenges in homecare and nursing homes. These two facets of the industry are inextricably linked, according to the Division. They are part of the continuum of long-term care and share the same Medicaid funding source which is controlled at the state and federal levels. Brothers Kieffer and Barton asserted that battles for future growth in the industry must be fought at the state level, including defending the Medicaid program from repeated assaults by politicians, influencing state contracts with managed care organizations that contract with long-term care providers, and using our political strength to increase the pace of organizing in nursing homes and senior housing. According to the Division, for a local union to efficiently and effectively manage statewide issues and strategies, long-term care members should be its sole priority, providing a single voice representing long-term care members across the state.

Local 434B supports the concept of a single local union with jurisdiction for all long-term care workers in California. Tr. 1344-94, 2102-27. Local 434B President Tyrone Freeman testified that Local 434B understands the particular needs and concerns of long-term care workers because it represents only long-term care workers in California. Brother Freeman stressed that Local 434B is already a statewide union, representing nearly 180,000 long-term care workers in every geographic area of the state. Brother Freeman agreed with the Division testimony that a statewide strategy will be necessary as we move to address the needs of long-term care workers at the bargaining table and in Sacramento. He cited a 2002 court ruling that IHSS "is a comprehensive program, comprehensively regulated by the state." He pointed out that SEIU local leaders representing homecare workers have endorsed a united strategy by signing the

55

California Homecare Council agreement providing for a unified approach to bargaining standards and legislative initiatives. Brother Freeman chairs the Council. He also detailed the many programs offered by Local 434B designed solely for long-term care workers, such as a scholarship program, a housing corporation, and various training programs.

In post-hearing submissions, Sister Jefferson, on behalf of Local 616, supported the statewide model advanced by the Long-Term Care Division and the Division's rationale for that model.    Sister Jefferson concluded that only Local 434B, as the SEIU local union with the largest long-term care membership and a statewide presence, is in a position to carry out the statewide model. Local 616 stated that, in the event immediate consolidation of all long-term care members into Local 434B is not feasible, those IHSS workers in public sector local unions should be consolidated with Local 434B now, and UHW's long-term care units should be merged after a transition period. UHW and Locals 707, 817, 715, and 1280 opposed a statewide model that would unite all long-term care workers in Local 434B.

### b.    The North/South Model

On behalf of UHW, Brother Rosselli stated that, in principle, a single local union representing all healthcare workers, including long-term care employees, was the preferred model. Brother Rosselli argued that long-term care workers are healthcare workers, and therefore all California long-term care workers should be united in UHW. However, acknowledging the complexity of the issue, Brother Rosselli proposed that UHW be granted jurisdiction for all IHSS workers and nursing home workers in Northern California, and that Local 434B be granted jurisdiction for these workers in Southern California. Tr. 1256-64. UHW

56

further proposed that it be granted jurisdiction for all private sector homecare workers in the state.

In proposing a partnership between UHW and Local 434B, Brother Rosselli emphasized the successes realized by both local unions on behalf of long-term care workers. Brother Rosselli stressed that Local434B and UHW were already working together in the nursing home sector with coordinated bargaining, political work, and organizing support, and in the homecare sector in the California Homecare Council and the California United Homecare Workers Union. He pointed out that, together, UHW and Local 434B have organized and represent the vast majority of unionized long-term care workers in California. Brother Rosselli further asserted that UHW and Local 434B have the resources, depth of industry knowledge and vision necessary to address the challenges of the future. He detailed UHW's plans to organize private sector home health workers, nursing home workers, and employees of senior living facilities. In a post-hearing submission, Brother Rosselli presented additional materials and arguments in favor of a UHW-434B partnership in the representation of convalescent workers. The North/South model was also endorsed by Local 817. Tr. 1184-85, 1195. Local 616 opposed the North/South model

### c.    The Public Sector Model

Several public sector locals advanced the proposition that all jurisdiction for homecare workers should be granted to the new public sector locals. Under this scenario, homecare workers represented by UHW and Local 434B would be assigned to the new regional locals, as would homecare workers currently represented by existing public sector locals. In addition, the regional public sector locals would have responsibility to organize the private sector non-hospital

57

owned homecare agencies. Ex. 34. In support of this approach, Sister Sermersheim, on behalf of Local 715, testified that counties continue to play an important role in the determination of wages and benefits for homecare workers. Tr. 1208-31. She argued that the county is the employer of record for both traditional county employees and IHSS workers. She maintained that counties contribute to the funding of IHSS programs, and that the county must pay 50% of the cost of raising IHSS workers' wages beyond $10.50 per hour and healthcare benefits higher than $.60 per hour, whereas the state pays zero. Sister Sermersheim pointed to the important gains made by public locals on behalf of homecare workers. She added that county unions have the political clout at the county level to increase standards for IHSS workers. Local 715 Vice President Christine Walters requested that, if the Local 715 IHSS workers could not stay in a public sector local, they preferred to merge with UHW. Tr. 1250.

Local 1280 Executive Director Art Grubel supported the public sector model in additional comments filed following the hearings. Brother Grubel stressed that, until the state takes over administration of the IHSS program, a county-by-county approach will yield more results for our IHSS members. He stated that, based on political obstacles to achieving state administration through legislation or the initiative process, and expected opposition from advocates for the elderly and the disabled, state administration of the homecare program is unlikely to be achieved anytime soon. Locals 415 and 707 also support the public sector model. Tr. 1204-08, 1325-32, 1343.

As an alternative, Brother Grubel identified what he termed a "modified status quo" approach. Under this concept, UHW and Local 434B would continue to represent homecare workers in the counties where they already have jurisdiction. The new regional public sector

locals would absorb homecare jurisdictions from the existing public sector unions currently representing homecare workers in each region. UHW and Locals 434B, 616 and 817 oppose the public sector union option.

### 2.    Recommendations for Long-Term Care Workers

There is no doubt that the long-term care sector is a distinct industry. Institutionally, SEIU has recognized the unique attributes and requirements of this industry and its workers through the establishment of a Long-Term Care Division, separate from the Health Systems Division, which encompasses acute care and related facilities. The record persuasively demonstrates that the long-term care industry is characterized by state and national employers and that a statewide strategy is imperative if we are to effectively deal with the key industry players on behalf of current and future members. The record also establishes beyond dispute that all facets of the industry – homecare, skilled nursing care, and senior living – are linked as part of the continuum of supportive services for the infirm, with related workplace issues, employee skill sets, payer mixes and clients who go from one setting to another. We are convinced that, to raise standards for long-term care workers, a unified approach on the statewide level is the optimum choice. No other option has the prospect of successfully addressing the current county-by-county disparities that exists among California homecare workers. Along with the Division, Local 434B, the SEIU local union with the largest contingent of long-term care workers, agrees that uniting long-term care workers in one union makes the most sense. The North/South approach not only violates this concept; but, by the logic of UHW's single healthcare union model, the entire Southern California hospital membership of UHW would need to be moved to Local

59

434B. This would essentially undo the consolidation of Locals 399 and 250 that was just completed in 2005.

The county-based model of homecare work made sense when we were organizing the IHSS public authorities, and when county funding for IHSS providers was paramount. Now that all California IHSS workers are in unions, and state funding has become dominant, the county-by-county approach no longer meets the needs of our homecare membership.

SEIU locals have already taken steps in the direction of unifying our approach to the organization and representation of California long-term care workers. For example, as members of the Joint Organizing Partnership, Locals 707, 614, 1280 and 616 already pool their resources. In addition, through the California Homecare Council, local unions representing homecare workers coordinate bargaining strategies, uphold standards, determine policy goals, attempt to speak with one voice to coalition partners, and jointly plan legislative strategies. However, we need to go much further in unifying our efforts if we hope to realize our goals of organizing and lifting up all California long-term workers.

Accordingly, we think that, ideally, uniting long-term care workers in one union makes the most sense. We also believe that, to really win for long-term care workers, that local union should focus solely on the particular needs of those workers.

In proposing a structure for representation of long-term care workers, we are mindful of the principles enunciated by Sister Davis-Howard concerning the benefits of beginning anew with newly-chartered unions that can organize themselves along the most effective lines, irrespective of the old bureaucratic structures of our existing unions. Sister Davis-Howard's request that we recommend the creation of new local unions, rather than the merger of SEIU-

60

represented units into existing local unions, focused on the question of how we can best reorganize our public sector jurisdictions in California. However, we find her concerns equally applicable to the long-term care setting. We therefore recommend that a new local union be chartered to focus solely on our long-term care members.

We turn now to the question of the precise plan of consolidation for this new local union. Our recommendations are as follows: First, homecare workers currently represented by Local 434B and our existing public sector unions should be merged into the new long-term care local, with one exception.

The exception we recommend concerns the North Central regional local union. That proposed local has a large geography stretching from San Mateo, Santa Cruz and Monterey counties in the west to Mono and Inyo counties in the east, and from Stanislaus and Tuolumne counties in the north to Kern County in the south. The placement of all IHSS workers in this geography in a long-term care local would leave this local with the smallest membership base by far among the three regional locals with significant geographical sweep: according to the estimates of the International Union, the North Central regional local would have under 35,000 workers, compared with over 51,000 in the Northern region and 91,000 in the South Central region. The Southern region would have less than the North Central region, but the Southern region has a compact geography encompassing just two counties: San Diego and Imperial. We are concerned that, given the extensive territory to be covered and the increased number of collective bargaining agreements to be negotiated by the North Central local, the projected membership without homecare workers may not be sufficient to assure growth and representation at the levels we expect.

61

Accordingly, we recommend that, for the present, the IHSS workers currently in Local 715 be placed in the North Central regional local union, which would bring the anticipated membership in that local up to about 45,000. Based on these recommendations, the IHSS units in Locals 415, 434B, 614, 616, 707, 817, and 1280 should be merged into the new long-term care local union.

Second, the private nursing home units represented by Locals 434B and 2028 should be consolidated with this new long-term care local. Third, all private sector homecare workers represented by Local 434B should change their affiliation to the new long-term care local union. Fourth, Local 415's unit of Sunshine Villa workers should be merged into the new local. If this recommendation is adopted, we will have two local unions representing nursing home workers in the state: the new long-term care local union and UHW.

We further recommend that, for the present, UHW continue to represent its current private sector homecare workers, IHSS workers and nursing home workers. This recommendation is based on the large number of nursing home and IHSS workers currently represented by UHW and the difficulties that would be posed by removing these members from UHW.

If this recommendation is adopted, we will have three local unions representing homecare workers in the state: the North Central regional public local, the new long-term care local, and UHW. We recognize that this determination may not be the optimum solution in the long run. While three locals representing homecare workers is an improvement over the current fragmented structure, by its very nature this structure is not as compatible with the notion of speaking with one voice as a single long-term care local union would be. For this arrangement to

62

work well, the locals should closely coordinate their homecare activities within the California
Homecare Council. The Long-Term Care Division should propose to the International President
any changes in the structure of the Council which the Division deems advisable in light of the
changed makeup of the Council resulting from our recommendations.

Our recommendation with regard to representation of private nursing home workers will,
if adopted, result in two unions representing SEIU nursing home members: the new long-term
care local and UHW. As with the recommended homecare representation model, this split
representation approach is less conducive to speaking with one voice than would be the case with
a unified structure. To address these concerns, we recommend that the Long-Term Care Division
determine the appropriate vehicle to foster coordination and growth. One possible approach
could be the creation of a unity council for private sector nursing home workers. Article VIII,
Section 1(f) of the SEIU Constitution and Bylaws, adopted at the 2004 Convention, empowers
the International President to require coordinated bargaining and contains new language
authorizing industry divisions to propose to the International President structures, procedures and
financing for coordinated bargaining.

The homecare council and any structure developed for coordination of our efforts on
behalf of nursing home workers should take the lead in advancing coordinated bargaining,
legislative, and political goals for SEIU's California long-term care members. We recommend
that the locals with nursing home and long-term members be part of the appropriate council or
other body and be required to abide by decisions and participate in programs of these vehicles of
coordination.

63

Rather than recommending a grant of exclusive jurisdiction to the new long-term care local, UHW, or the North Central public sector local, we propose that authorization to organize long-term care facilities be determined by the Division, subject to approval by the International President. These determinations should be based on the locals' organizing strategies and the ability to win higher standards for our long-term care members in a given location. We recommend that, pending issuance of the Division's organizing plan for California long-term care workers, local unions be required to submit specific organizing proposals to the Division for approval, and that all organizing proceed in the name of the International Union.

We further recommend that the effectiveness of this reorganization be evaluated by the Division in the future to determine what changes may be warranted. The Division's analysis should focus on the success of the existing model in 1) helping to raise standards for homecare workers 2) helping to organize the long-term care industry, broadly defined, and 3) permitting UHW and the North Central regional public local to organize their core jurisdictions of private sector healthcare workers and public sector workers, respectively.

Consistent with our recommendations for public sector jurisdiction, we recommend a process for development of the structure of the new long-term care local. Accordingly, we recommend that the International President appoint a member advisory committee on long-term care reorganization. The committee should be charged with developing a proposed structure for the new long-term care local. The committee should develop a plan for transitional continuity and governance. The committee's work should be driven by the following set of core principles:

- Structure must facilitate growth
- Structure should dramatically increase member participation

64

- Structure should enable the delivery of enhanced member services

- Implementation plan should provide for new leader and staff development

We recommend that the committee's work be concluded no later than six months and that a plan be submitted to the undersigned hearing officers for review and approval prior to submission to the International President by the end of 2006.

### C.    Jurisdiction for Private Hospital Workers Represented by Public Locals

Local 4988's private hospital units are in chains whose employees elsewhere in the state are represented by UHW. UHW plainly has the expertise, leverage and chain-wide strategies to win for these workers. Local 4988 requested that its relationship with Local 790 remain unchanged. However, if our recommendations are approved, Local 790 will be merged into a new regional local union. Accordingly, we recommend that Local 4988's private sector healthcare units merge into UHW. In addition, the affiliation of private healthcare units represented by Locals 707, 715, and 2028 should be changed to UHW as soon as feasible.

Local 121RN, which represents about 7000 private sector nurses and professionals in Southern California, seeks jurisdiction for Kaiser nurses and professionals in Southern California currently represented by Local 535. Tr. 1992-96. However, not all of Local 535's Kaiser units are in Southern California, and one is a unit of technical employees. We therefore recommend that Local 535's Kaiser units be merged into UHW as soon as feasible. UHW already represents SEIU members in the Kaiser system and is the principal SEIU local union in the Kaiser bargaining council. As such, it is the logical local union to exercise jurisdiction for these Kaiser employees.

65

## D.    Jurisdiction for Property Services Division Members

On behalf of the Property Services Division, Brother Iny described the trend across SEIU toward consolidation of smaller local unions into larger unions focused solely on property services members. In New York City, Locals 32E, 531, 54 and 2 merged into Local 32BJ in March 2001. In 2005, Local 36 (Philadelphia) merged into Local 32BJ. And in 2006, Local 82 (Washington, D.C.) united with Local 32BJ. Working together in New York City has recently led to displaced worker protection, card check and neutrality for Brooklyn waterfront redevelopment, coordinated bargaining and the maintenance of fully paid health insurance for New York City members, and growing the union by 4,000 including suburban markets like New Jersey. In Chicago, Locals 25, 73 and 236 merged into Local 1 in 1999. In 2002, Local 1 merged with Local 50 (St. Louis), Local 96 (Kansas City), and the property services part of Local 150 (Wisconsin). Working together in Chicago has recently led to health insurance for suburban and contracted public sector security, and organization and increased standards for suburban contracted school janitors, helping to raise standards for public sector cleaners. In addition, property services members in Local 79 (Detroit), Locals 508 and 585 (Pennsylvania), and Locals 47 and 85 (Cleveland) have united in Local 3, a tri-state property services local.

Mike Garcia, President of Local 1877, testified that we are not at the point yet in California of being able to unite all property services workers in a single local union. Instead, as the next step toward uniting California property services workers, Brother Garcia and the Division proposed the creation of a California Property Services Council to bring together all California property services local unions to facilitate coordinated bargaining, help plan and implement strategic organizing campaigns, and enhance communications among local unions

66

representing similar employees. Local 265 supported this proposal. We agree that a California

Property Services Council makes sense, and recommend that, pursuant the Division's

recommendation and the International President's authority under Article VIII, Section 1(f) of the

SEIU Constitution and Bylaws, such a Council be created with sufficient resources to carry out

these objectives. The Council should be organized along industry sector lines so that the

concerns and needs of the different occupational and employer-based groups within the Property

Services Division can be addressed by leaders and members in those groups.

We recommend that the International President adopt the following plan recommended

by the Division. Within six months of the IEB's decision in this matter, the locals, together with

property services units from other locals, should confer and agree to a structure and plan of

action for the Council. This plan should be submitted to the undersigned hearing officers by the

end of 2006 for approval and submission to the International President. We recommend that

Locals 1877, 24/7, 265, 280, the Los Angeles security local, and the private university group be

required to participate in the Council.

As noted above, Local 2028 has an amusement division that includes stadium and arena

employees, theater and convention center workers. These workers should be in a Property

Services Division local union. Accordingly, we recommend that these units be consolidated with

Local 1877 as soon as feasible.

In the higher education sector, the Property Services Division has members (in-house and

contracted) at dozens of colleges and universities around the country. Examples are Harvard,

USC, Stanford, New York University, and the University of Chicago. In California, Local 1877

also represents workers at the University of San Francisco, UC Davis, UC Berkeley, UC Irvine, Cal State Sacramento, and San Jose State.

At the hearings and in post-hearing submissions, the United Stanford Workers chapter of Local 715 proposed two alternative jurisdictional arrangements for workers at Stanford and Santa Clara universities. First, the chapter proposed that a charter be issued to a new local union covering those two universities with jurisdiction to organize university workers throughout the state. In the alternative, the chapter suggested that the Stanford workers be united with UHW, which is servicing the Stanford and Lucile Packard Hospitals and which, if this report is approved by the IEB, will soon be granted jurisdiction for the employees of those facilities. The chapter's requests were based in part on the feeling of those testifying that university workers were not part of the core jurisdiction of SEIU and did not fit into neatly into any of the division-based local unions.

Although there have been unification discussions between representatives of the Stanford chapter and Local 1877, it appears to us that an interim step toward eventual merger should be the chartering of a new local union with jurisdiction for workers employed by Stanford and Santa Clara universities. We recommend that this new local be required to participate in the Property Services Council and the development of its structure and plans, and to abide by the Council's requirements. The Council should create a higher education division that will focus resources on organizing and winning higher standards for higher education workers.

With respect to SEIU's racetrack members, testimony from Local 280 President Richard Castro made it clear that SEIU and UNITE-HERE are currently in discussions to unite SEIU's racetrack members with the gaming industry workers represented by UNITE-HERE. We agree

68

that UNITE-HERE is the logical place for SEIU's racetrack members. Until these discussions are completed and the racetrack members change their affiliation to UNITE-HERE, we recommend that they be housed in their current local unions (Locals 2028, 1877 and 280), participate in the Property Services Council, and abide by the Council's requirements. In the event that the change in affiliation to UNITE-HERE takes longer than anticipated, Local 2028's racetrack workers should be merged into Local 1877.

We recommend that Local 1877 have jurisdiction for subcontracted San Francisco International Airport ("SFO") employees and such workers represented by other locals should be merged into Local 1877. Any remaining employees located at SFO, whether employed by the airport directly or by ancillary employers located there, should be assigned to the Northern public local.

California cemetery workers in SEIU are spread among five local unions. Cemetery workers form a recognized occupational group within the Property Services Division. The current fragmentation of cemetery worker representation is antithetical to the New Strength Unity approach of uniting workers with similar jobs in single union. Consolidating the power of cemetery workers will give us the opportunity to organize the many non-union cemetery and country club operations identified by Local 265 in its extensive post-hearing submission.

The first step toward uniting cemetery workers will be to reduce the number of locals representing workers in the field. Accordingly, we recommend that all private sector cemetery workers in Locals 1877, 535 and 715 be merged into Local 265, which represents cemetery and country club workers exclusively. Local 265 should also be granted jurisdiction for unorganized private sector cemetery workers and green attendants. Jurisdiction for public sector cemetery

workers currently represented by Locals 700 and 715 should be awarded to the North Central regional public local.[14]   Local 265 should participate in the Property Services Division Council and abide by its requirements.


### E.    Jurisdiction for Multiservice Workers

Local 715 represents approximately 200 employees of Bon Appetit/Compass, a food service company, in two bargaining units at Stanford and Santa Clara universities. We recommend that Service Workers United, a union of multiservice workers jointly affiliated with SEIU and UNITE-HERE, have jurisdiction for these workers. Our recommendation is consistent with the testimony of Sister Sermersheim.


## VII.    Further Recommendations and Implementation

We believe we should reorganize ourselves to enable SEIU in California to grow, to exercise enhanced political and bargaining power, and thereby win higher standards for our members. Accordingly, we further recommend that the jurisdictions of our California local unions be reviewed in the near future. The yardstick for measuring the success of the jurisdictional models we are recommending today should be growth and higher standards. As part of this review, locals should be held accountable for fulfilling SEIU's organizing mandate. In this connection, we think that the International President should immediately appoint a

---

14   Local 700 represents workers at two district cemeteries in Bakersfield, whose employees are considered public employees; Local 715 represents employees at one public sector and one private sector cemetery.

California area-wide public sector organizing director, with responsibilities across local union lines, to work with our California public locals on their growth strategies during the implementation of the IEB's decision. The organizing director should also work with the other division locals and the International organizing leadership to best coordinate all division growth plans in California.

If our recommendations are adopted, we will have created powerful local unions able to focus significant resources on organizing, bargaining, and politics. Existing structures within which much of our California political work is currently done will need to be re-examined. That re-examination should take place immediately following the submission of the public sector, property services, and long-term care structure and implementation plans, with a view to instituting a new political program structure in California as soon as possible after the submission of the plans. Accordingly, we further recommend that, nine months from the date of the IEB's decision in this matter, the charter of the California State Council be revoked and a new State Council constitution be developed and approved by the new array of locals and the International Union. Then, the State Council should be re-chartered.

We recognize, and we ask the California leaders of our local unions to recognize, that establishing this or any jurisdictional framework is simply a first step toward energizing our organizing programs, changing workers' lives, strengthening our political action, enhancing member mobilization, and generally unleashing the power of SEIU, its members, and coalition partners. For our work in California to succeed the way we want it to, local leaders in the state must step up to the plate and come to agreement on a common agenda. We hope that, by leaving

71

behind the local structures and jurisdictions of the past, California's SEIU leaders will have a clear path to forging common ground, unencumbered by past disagreements.

We also agree with the many statements made during the hearings that the reorganization should include a process for membership voting. We recommend that a vote take place on proposed changes in members' affiliation. Although a membership vote on jurisdictional changes is not required by the SEIU Constitution and Bylaws, which vests the International Executive Board with the authority to determine jurisdiction, we think a vote on member movement into new local unions would be appropriate. We recommend that such a vote take place after the IEB's decision in this matter. We further recommend that the International Union implement a program of education and outreach to members concerning all facets of the reorganization plan. This program should allow members the opportunity to learn about the reorganization plan, make comments, ask questions, and register concerns.

We recommend that the International President issue a timetable and rules governing the vote at the appropriate time. Those rules should deal with the voting method, eligibility issues, approval requirements, and related matters. While we think it would be inappropriate for the hearing officers to attempt to settle all of those details in this report, we do recommend that, based on the comprehensive scope of the reorganization we propose today, a pooled vote among affected members is needed of locals. By "affected members," we mean members whose local union affiliation will change if our recommendations are adopted. We have attached a list of membership groups by local eligible to vote under this proposal. A piecemeal approach, either unit by unit or local by local, would be incompatible with our interrelated jurisdictional recommendations. For example, with respect to the proposed regional locals, the approval or

72

disapproval by a single local or series of units could alter the relative balance among the locals that we seek to achieve with these recommendations. Similarly, inconsistent outcomes among locals could leave members outside of all existing or proposed local unions.

In addition, we recommend two additional voting processes for members who change their affiliation to newly-chartered locals. We believe these members should vote on any new permanent constitutions and bylaws for their locals that may be developed and proposed. Members should also vote on regular officers of new locals once the provisional periods for these locals have concluded. The International President should determine the appropriate schedule for such votes.

As we noted above, our phenomenal growth over the past decade has been no accident. Rather, we think it is in part the result of the decisions made by SEIU Conventions to reorganize our union to maximize opportunities for growth and raising standards for members. Our Policy on Jurisdiction was approved by the 2000 Convention to guide that reorganization, and has been implemented in a number of reorganizations across the nation. Our recommendations today flow directly from that Policy. We believe that our recommendations are the right approach for our members and for SEIU in California. It is vital that our California local unions fully cooperate in the implementation of any IEB decision on California jurisdiction. Accordingly, we recommend that, in implementing the IEB's decision in this matter, the International President be guided by policies adopted for implementing previous IEB decisions concerning local union jurisdiction.

We further recommend that the Secretary-Treasurer or her designee oversee the implementation of the IEB's decision in this matter. Finally, we recommend that the undersigned hearing officers retain jurisdiction in these proceedings to resolve disputes arising from this

report and recommendations, to review and approve structures and plans presented by the member advisory committees for the new regional public locals, the new statewide long-term care local, and the property services council, and to review the California jurisdictional arrangements in the near future.

## IX.    Summary and Conclusion

In the public sector, we recommend the chartering of four new public sector local unions with jurisdiction for public services members in the state on a geographic basis. Existing public sector local unions should be merged into the new locals, based on geography, as detailed herein. The International Union should create an archive to preserve the history and achievements of our current California public sector locals. A broad-based member advisory committee should be established to propose a structure for the new local unions and a plan for continuity during the transition. The member advisory committee proposals should be submitted to the hearing officers for approval and submission to the International President by December 31, 2006. The new regional public locals should have jurisdiction for public sector healthcare workers. Public healthcare units currently represented by UHW should be merged into the appropriate regional public sector local, except for UHW's unit at Tuolumne General Hospital. The regional public locals should also assume the jurisdiction for private non-profit agencies, and for ancillary units that the current public sector units already represent.

The regional public sector locals should also have jurisdiction for public sector RNs. Each regional local should have dedicated staff for the RN program and proportional representation on the steering committee of the Nurse Alliance of California. In addition, public

74

and private sector RN co-chair positions should be created to head the Nurse Alliance of California. Further, a public RN representative position should be added in the national Nurse Alliance leadership group. Public RNs should have representation on the membership advisory committee for the public sector locals.

Jurisdiction for unorganized district hospitals should be shared by the new regional public sector locals and UHW. Authority to organize a specific facility should be granted based on the importance of the hospital to the division's strategic organizing plan. Organized units at El Camino and Hazel Hawkins district hospitals should be merged into UHW.

Local 99 should be awarded jurisdiction for all school employees in the same geographical area as that assigned to South Central regional local union. School employee units in existing public sector locals in this territory should be merged into Local 99. Jurisdiction for LAUSD school supervisors should be granted to the South Central regional public sector local.

A new statewide long-term care local union should be chartered. Local 434B and IHSS units in Locals 415, 614, 616, 707, 817, and 1280 should be merged into this new local. IHSS workers currently represented by Local 715 should be assigned to the North Central regional public local. UHW should retain the IHSS workers it currently represents.

The private nursing home unit represented by Local 2028 should be merged into the new long-term care local. UHW should retain the private sector homecare workers and private sector nursing home workers it currently represents. The Long-Term Care Division should recommend the appropriate vehicle for achieving coordination and growth in the private nursing home sector. The Division should grant authority to organize long-term care facilities based on local union strategic objectives and opportunities to raise standards for long-term care workers. In the future,

75

the Division should review the current long-term care representational arrangements and propose

changes if warranted. A broad-based member advisory committee should be established. The

committee's report should be submitted to the hearing officers by December 31, 2006.

Private sector hospital units currently represented by Locals 535, 707, 715, and 2028

should be merged into UHW.

The International President should adopt the recommendation of the Property Services

Division to create a California Property Services Council, and a member advisory committee

should make a proposal to the hearing officers on the Council's structure and activities by

December 31, 2006. Local 2028's amusement division should be merged into Local 1877. A

new local union should be granted jurisdiction for the private university units at Stanford and

Santa Clara universities. This new local should be required to participate in the Property

Services Council and abide by its decisions. A higher education division should be created

within the Council to promote the interests of our higher education members. Racetrack workers

should continue to be housed in their current local unions until arrangements for their change of

affiliation to UNITE-HERE can be completed. Private sector cemetery workers should be

merged into Local 265, which should be granted jurisdiction for all such workers and greens

attendants in California. Jurisdiction for public sector cemetery workers should be awarded to

the North Central public local. Local 715's unit of multiservice workers should be merged into

Service Workers United.

California public sector jurisdiction should be reviewed in the near future based on

growth and standards. The charter of the California State Council should be revoked within nine

months of the date of the IEB's decision so that a new structure based on the reorganized local

76

union jurisdictions can be established and a new charter issued. A pooled vote of affected
members should take place regarding members' changes of local union affiliations, pursuant to a
timetable and rules issued by the International President. The hearing officers should retain
jurisdiction to resolve disputes and review and approve structures and plans proposed by member
advisory committees. A statewide public sector organizing director position should be
established during the transitional period. Finally, the Secretary-Treasurer or her designee should
oversee implementation of the IEB's decision.

Respectfully submitted,

Alice Dale
Hearing Officer

Tom Balanoff
Hearing Officer

Dated: June 9, 2006

77

## VOTER ELIGIBILITY

## CALIFORNIA MEMBERSHIP AFFILIATION CHANGES

**Members in units whose local union affiliation will change pursuant to the IEB decision may vote.**

**ELIGIBLE:**

- All members of Locals 347, 415, 434B, 535, 614, 616, 620, 660, 700, 707, 715, 790, 817, 949, 998, 1280, 1292, 1997, 2028, and 4988

- All public hospital members and other public sector members of UHW, except UHW members at Tuolumne General Hospital

- All cemetery worker members of Local 1877



**Stronger Together**

ANDREW L. STERN
International President

ANNA BURGER
International Secretary-Treasurer

MARY KAY HENRY
Executive Vice President

GERRY HUDSON
Executive Vice President

ELISEO MEDINA
Executive Vice President

TOM WOODRUFF
Executive Vice President

SERVICE EMPLOYEES
INTERNATIONAL UNION
CTW, CLC

1800 Massachusetts Ave NW
Washington DC 20036

202.730.7000
TDD: 202.730.7481
www.SEIU.org

**NOTICE OF HEARING**
**APPOINTMENT OF HEARING OFFICER**
**AND RULES OF PROCEDURE**

**TO:  All Former Officers, Former Members of the Executive
Board, and Members of Service Employees International
Union, Local 715**

At the request from the officers and Executive Board of Service
Employees International Union Local 715, and after determining that an
emergency situation existed in the local, International President Andrew Stern
appointed Bruce "Rusty" Smith as Trustee who took immediate charge and
control of the affairs of Local 715, effective June 8, 2007.  This action was
taken pursuant to the International President's express authority under Article
VIII, Section 7 of the International Constitution and Bylaws.

Pursuant to the Trusteeship order and in accordance with Article VIII,
Section 7(a) and (f) of the International Constitution, the International
Executive Board has appointed Marc Earls, a member of the International
Executive Board, as hearing officer.

The hearing will be conducted at the following time and place:

**DATE:**      **Tuesday, July 24, 2007**

**TIME:**      **4:30 p.m.**

**PLACE:**     **SEIU Local 521 Redwood City Office
891 Marshall Street
Redwood City, CA  94063**

The hearing will address the facts that served as the basis for
imposition of the emergency trusteeship as well as facts pertaining to whether
the trusteeship should continue.  All members of Local 715 have the right to
appear at this hearing and to present testimony and other evidence through
witnesses and/or documents and to state their position on the need for a
continued trusteeship.

The International President imposed the emergency trusteeship at the
request of the officers and Executive Board of Local 715 and after determining
that the facts demonstrated the existence of the following which required an
immediate trusteeship to safeguard the members' interests:

1. Local 715 is in the process of shifting members and resources to other SEIU
   local unions and thus experiencing difficulties in performing its collective
   bargaining duties.

2.  At this point, many members of Local 715 have moved into Local 521 in accordance with the International Executive Board's June 2006 decision on California Jurisdiction. However, Local 715 still retains collective bargaining responsibilities on behalf of the remaining members including the representation of employees at Stanford Hospital and Clinics/Lucille Packard Children's Hospital. As a result of this reorganization, the Hospital has taken the position that Local 715 no longer exists and has threatened, by its actions, to deprive Local 715 members at Stanford Hospital of their collective bargaining rights.

3.  This situation and the significant decline in Local 715's membership and resources have impaired the Local's ability to operate as contemplated by its constitution and bylaws.

For the reasons stated above and the request from Local 715 officers and Executive Board for imposition of an emergency trusteeship, International President Andrew L. Stern has determined that placing Local 715 under trusteeship is the best means of preventing disruption of contracts, assuring that the Local performs its duties as collective bargaining representative, protecting the interests of the membership, and otherwise carrying out the legitimate objects of the International Union.

Upon the conclusion of the hearing, the hearing officer will make a report and recommendation to the International Executive Board, orally or in writing, including a recommendation as to whether the trusteeship imposed upon Local 715 should be continued. The International Executive Board will thereafter render its decision on the hearing officer's report and recommendation.

## STATEMENT OF PROCEDURES FOR TRUSTEESHIP HEARING

The following procedures will be in effect for this hearing:

1.  The hearing will be informal. The rules of evidence will not apply. The hearing officer may set reasonable time limits on the presentation of evidence and may make any other rulings he deems appropriate to assure an orderly and fair hearing.

2.  Unless otherwise approved by the hearing officer, only members of Local 715, designated spokespersons for the Trustee, the court reporter, assigned International staff, and staff assigned by the Trustee, may attend the hearing. A non-member may testify on a specific issue only if called as a witness by a participant, and only during his or her testimony. All persons attending the hearing shall sign in on a sign-in sheet.

3.  The court reporter will take down a complete record of what is said in the hearing to assist the hearing officer in making his recommendation. This

2

will serve as the formal transcript of this hearing. No other recording device will be permitted. Anyone who wants a copy of the transcript will need to make arrangements with the court reporter.

4.  The Trustee may make a presentation or designate a spokesperson for presentation of reasons why the trusteeship was properly imposed and should be continued. The former administration of Local 715 may, if it wishes, designate a spokesperson for the presentation of its position on the trusteeship.

5.  Each spokesperson shall be allowed an opportunity to give an opening statement at the commencement of the hearing, and a summation of their presentations at the conclusion of the hearing.

6.  The spokesperson for the Trustee shall present his or her witnesses and evidence first. The spokesperson, if any, for the former administration of Local 715 shall present his or her evidence next. Reasonable opportunity for rebuttal shall be allowed at the discretion of the hearing officer. After each witness has spoken, he or she may be questioned by the opposing spokesperson, if any. The hearing officer or his counsel may question any of these witnesses and may allow the spokespersons additional opportunities for questioning the witnesses.

7.  Thereafter, members and former members of Local 715 who are present may briefly present their views. The hearing officer may limit the time for such presentations. Members wishing to speak shall so indicate on the sign-in sheet and on a 3 x 5 card. Each such person shall identify himself or herself at the beginning of the presentation. Only the hearing officer or his counsel may question any of these speakers.

8.  In the event that any spokesperson intends to offer written materials, sufficient copies shall be presented to enable the spokesperson for the opposing side, if any, to review the materials.

9.  The hearing officer may consider written submissions from the members and former members of Local 715. Any such submissions shall be identified at the hearing.

10. The hearing officer may leave the record open for a period of time following the close of the hearing for the receipt of supplemental materials.

11. Following the closure of the record, the hearing officer will make a written report and recommendation to the International Executive Board, which has the final authority to issue a decision on the trusteeship in this case.

3

Dated in Washington, D.C. this 12th day of July, 2007.


Anna Burger
International Secretary-Treasurer

cc.    Andrew L. Stern, International President
       Bruce "Rusty" Smith, Trustee
       Marc Earls, Hearing Officer
       John Ronches, Assistant to International Secretary-Treasurer
       JJ Johnston, California Area Director
       Norm Gleichman, Deputy General Counsel

4