**FOLEY & LARDNER LLP**
ONE MARITIME PLAZA, SIXTH FLOOR
SAN FRANCISCO, CA 94111-3409
TELEPHONE:     415.434.4484
FACSIMILE:     415.434.4507

LAURENCE R. ARNOLD, CA BAR NO. 133715
LARNOLD@FOLEY.COM
EILEEN R. RIDLEY, CA BAR NO. 151735
ERIDLEY@FOLEY.COM
SCOTT P. INCIARDI, CA BAR NO. 228814
SINCIARDI@FOLEY.COM

Attorneys for Petitioners Stanford Hospital & Clinics
and Lucile Packard Children's Hospital

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HOSPITAL & CLINICS AND LUCILE PACKARD CHILDREN'S HOSPITAL<br><br>Petitioners,<br><br>v.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715<br><br>Respondent. | Case No:  C-07-CV-05158-JF<br><br>STANFORD HOSPITAL AND CLINICS' AND LUCILE PACKARD CHILDREN'S HOSPITALS' MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES<br><br>[FED. R. CIV. P. 56]<br><br>Date:        August 29, 2008<br>Time:        9:00 AM<br>Dept:        Ctrm. 3, 5th Floor<br><br>Judge:       Hon. Jeremy Fogel |

///

///

///

///

///

///

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................. 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................... 2

III. STATEMENT OF FACTS ................................................................................... 2

    A. The CBA Preserves The Hospitals' Management Rights And Defines The
       Conditions Under Which Employees May Earn "RHC" Pay ............................... 3

    B. The CBA Contains A "Waiver" Or "Zipper" Clause In Which The Parties
       Each Prospectively Waived Any Right To Bargain Over Matters Covered
       Or Not Covered By The CBA ............................................................................... 4

    C. The CBA Provides For Arbitration Of Grievances Arising Under The
       CBA, But Places Significant Limitations On The Authority Of Arbitrators
       Deciding Such Grievances ................................................................................... 5

    D. The Grievance And Arbitration Proceedings ...................................................... 5

    E. The Commencement Of The Instant Action ........................................................ 7

IV. DISCUSSION ...................................................................................................... 7

    A. Legal Standards Applicable To Summary Judgment Motions ............................ 7

    B. Judicial Standards Applicable To Review Of Arbitration Decisions .................... 8

    C. The Arbitrator's Award Did Not Draw Its Essence From The CBA And
       Did Not Represent A Plausible Interpretation Of The CBA ................................. 9

       (1) The Arbitrator Was Empowered Only To Interpret And Apply The
           CBA As Written, Could Not Ignore, Modify, Or Contradict It ................. 9

       (2) The Introduction And Assignment Of Spectralinks Fell Within The
           Scope Of The Hospitals' Contractual Management Rights ....................... 10

       (3) Article 9 Provides No Right To RHC Pay Based Upon Assignment
           Of Spectralinks ........................................................................................ 11

       (4) The Arbitrator's Reliance On Past Practice Contradicted The CBA ........ 12

       (5) The Arbitrator's Award Violated Article 28 Of The CBA Insofar
           As It Imposed An Obligation On The Hospitals To Bargain With
           Local 715 Before Changing RHC Policies And Practices ........................ 14

       (6) The Arbitrator Improperly Dispensed His Own Brand Of Industrial
           Justice ...................................................................................................... 14

    D. The Arbitrator's Award Exceeded The Issues Submitted By The Parties ........... 15

E.   The Arbitrator Granted Relief On Matters That Lay Beyond His Jurisdiction As Defined In The CBA .................................................. 16

      (1)   It Is For The Court, Not The Arbitrator, To Decide The Boundaries Of The Arbitrator's Jurisdiction.............................................. 17

      (2)   The Arbitrator Went Beyond The Scope Of His Jurisdiction As Defined In The CBA ............................................................ 17

      (3)   Court Review Of Substantive Arbitrability At This Time Is Appropriate Because The Issue Arose For The First Time When The Arbitrator Issued His Decision ............................................ 18

F.   Because Local 715 No Longer Exists, There Is No Party With Standing To Enforce The Award............................................................ 19

      (1)   The Status Of Local 715 ...................................................... 20

G.   This Action Was Timely Initiated Under The Applicable Federal Rules Of Civil Procedure ...................................................................... 21

V.    CONCLUSION..................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page**

3

### FEDERAL CASES

4

*Anderson v. Liberty Lobby, Inc.,*
5
    477 U.S. 242 (1986)........................................................................................7

6

*Anheuser-Busch, Inc. v. Local Union No. 744,*
7
    280 F.3d 1133 (7th Cir. 2002) ....................................................8, 15, 17, 19

8

*AT&T Technologies, Inc. v. Communications Workers Of America,*
    475 U.S. 643 (1986)....................................................................................9, 17

9

*Atkinson v. Sinclair Refining Company,*
10
    370 U.S. 238 (1962)......................................................................................17

11

*Butterkrust Bakeries v. Bakery, Confectionery And Tobacco Workers International*
    *Union, AFL-CIO, Local No. 361,*
12
    726 F.2d 698 (11th Cir. 1984) ....................................................................16

13

*California Pacific Medical Center v. Service Employees International Union, United*
    *Healthcare Workers – West,*
14
    No. C 06 4685 SC, 2007 WL 81906 (N.D.Cal. 2007)................................9

15

*Celotex Corporation v. Catrett,*
16
    477 U.S. 317 (1986)........................................................................................7

17

*Delta Lines, Inc. v. Brotherhood Of Teamsters And Auto Truck Drivers, Local 85,*
    409 F.Supp. 873 (N.D.Cal. 1976) ............................................................9, 16

18

*Doyle v. Raley's Incorporated,*
19
    158 F.3d 1012 (9th Cir. 1998) ....................................................................16

20

*Edward Hines Lumber Company v. Lumber And Sawmill Workers Local No. 2588,*
21
    764 F.2d 631 (9th Cir. 1985) ........................................................................8

22

*Ficek v. Southern Pacific Company,*
    338 F.2d 655 (9th Cir. 1964) ......................................................................17

23

*George Day Construction Company, Inc. v. United Brotherhood of Carpenters & Joiners*
24
    *of America, Local 354,*
    722 F.2d 1471 (9th Cir. 1984) .............................................................. 17-18
25

*Judsen Rubber Works, Inc. v. Manufacturing, Production & Service Workers Union*
26
    *Local No. 24,*
27
    889 F.Supp. 1057 (N.D. Illinois 1995) ......................................................18

28

-iii-

*Lorber Industries Of California v. Los Angles Printworks Corporation*,
    803 F.2d 523 (9th Cir. 1986) ...................................................................................21

*Major League Baseball Players Association v. Garvey*,
    532 U.S. 504 (2001)................................................................................................8

*Matushita Electric Industrial Company v. Zenith Radio Corporation*,
    475 U.S. 574 (1985)................................................................................................7

*Moruzzi v. Dynamics Corporation Of America*,
    443 F.Supp. 332 (S.D.N.Y. 1977) ........................................................................21

*Pacific Motor Trucking Company v. Automotive Machinists Union*,
    702 F.2d 176 (9th Cir. 1983) .............................................................................8, 14

*Pacific Northwest Bell Telephone Company v. Communications Workers Of America*,
    310 F.2d 244 (9th Cir. 1962) ................................................................................17

*Pack Concrete, Inc. v. Cunningham*,
    866 F.2d 283 (9th Cir. 1989) .............................................................................9, 15

*Phoenix Newspapers, Inc. v. Phoenix Mailers Union 752*,
    989 F.2d 1077 (9th Cir. 1993) ...............................................................................16

*S.J. v. Issaquah School District No. 4111 ("Issaquah")*,
    470 F.3d 1288 (9th Cir. 2006) ..........................................................................22, 24

*Sain v. City of Bend*,
    309 F.3d 1134 (9th Cir. 2002) ...............................................................................23

*San Diego County District Council Of Carpenters Of The United Brotherhood Of
    Carpenters And Joiners Of America v. Cory*,
    685 F.2d 1137 (1982) ............................................................................................22

*Schoenduve Corp. v. Lucent Technologies, Inc.*,
    442 F.3d 727 (9th Cir. 2006) .................................................................................15

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ...................................................................................9

*Stead Motors Of Walnut Creek v. Automotive Machinists Lodge No. 1173*,
    886 F.2d 1200 (9th Cir. 1989) .................................................................................8

*United Steel Workers Of America v. Warrior & Gulf Navigation Company
    ("Warrior & Gulf")*, 363 U.S. 574 (1960) ...........................................................17

*United Steelworkers Of America v. Enterprise Wheel And Car Corporation
    ("Enterprise Wheel")*, 363 U.S. 593 (1960)...........................................................8

-iv-

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

29 U.S.C.,
    Section 185 (Labor Management Relations Act, Section 301).....................................21, 22, 24

Federal Rules of Civil Procedure,
    Rule 3 ......................................................................................................................... 22-25
    Rule 4 ......................................................................................................................... 24-25
    Rule 4(m) ............................................................................................................. 7, 23-25
    Rule 56 ................................................................................................................................7
    Rule 56(c) ...........................................................................................................................7

## STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

California Code of Civil Procedure,
    Section 1288.............................................................................................................. 22, 24-25

**NOTICE OF MOTION AND MOTION**

TO THE RESPONDENT AND ITS ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on August 29, 2008 at 9:00 AM, or as soon thereafter as counsel may be heard by the above-entitled Court, located at 280 South 1st Street, San Jose, CA 95113, 5th Floor, Courtroom 3, Petitioners, Stanford Hospital & Clinics and Lucile Packard Children's Hospital (the "Hospitals"), will and hereby do move the Court for summary judgment or, in the alternative, summary adjudication of claims or defenses pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 56 (the "Motion"). This Motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the declarations of Laurie J. Quintel, Laurence R. Arnold, and Scott P. Inciardi, all pleadings and papers on file in this action and upon such other matters as may be presented to the Court at the time of the hearing.

**STATEMENT OF RELIEF SOUGHT**

By this Motion, the Hospitals seek an order of the Court directing that the arbitration award be vacated in whole. The Hospitals further seek an order if, and to the extent that Local 715 continues to exist and continues to demand arbitration of the underlying grievance, directing that the grievance be submitted to a new arbitrator to be selected by the parties pursuant to the grievance and arbitration provisions of the Collective Bargaining Agreement ("CBA"), and awarding the Hospitals their costs incurred in this proceeding, and such other and further relief that this Court deems proper.

**POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

In their CBA , the parties agreed that disputes as to whether the Hospitals violated the CBA may be submitted to an arbitrator, whose sole power would be to interpret and apply the CBA, and not to add to, subtract from, or modify it in any way, or ignore any provision of the CBA. In the summer of 2007, the parties submitted to Arbitrator Paul D. Staudohar the issue of whether the Hospitals violated Article 9 of the CBA by failing to award "RHC" pay to certain employees. Article 9 of the CBA does not require the payments in question, which the Arbitrator

1

implicitly recognized. Nevertheless, the Arbitrator chose not to end his inquiry with interpretation and application of the CBA, as he was required to do. Instead, he decided that there was a "past practice" between the parties that required the payment of RHC pay to the employees, and further decided that the Hospitals could not modify that practice absent the agreement of Local 715. In so doing, the Arbitrator ignored and/or altered multiple provisions of the CBA, strayed far beyond the issues submitted to arbitration by the parties, and decided issues that were not arbitrable under the CBA. For these reasons, as will be fully explained below, the Arbitrator's Award must be vacated.

## II.    STATEMENT OF ISSUES TO BE DECIDED

The issue to be decided is whether the Arbitrator's Award should be vacated because it does not draw its essence from the CBA and/or does not represent a plausible interpretation of the CBA, and/or decides issues that are not arbitrable under the CBA.

## III.    STATEMENT OF FACTS

The following facts are indisputable and material to the issues raised in the action and this Motion.

The Hospitals operate two acute care hospitals in Stanford, California. [Declaration Of Laurie J. Quintel In Support Of Motions ("Quintel Decl.") ¶ 2.] At the time of the arbitration at issue here, Local 715 was, or at least purported to be, a labor organization, which represented a bargaining unit consisting of certain employees of the Hospitals, including employees in a job classification known as "anesthesia technician" (hereinafter "tech").[1] [Quintel Decl. ¶ 3.] The

---

[1] This case has been declared related to five (5) other cases pending before this Court involving the Hospitals and Local 715. Each of those cases involve the issue of whether the Hospitals are required to arbitrate disputes arising under the CBA. (See Motions For Summary Judgment filed in Case Nos. 5:08-CV-00213 JF ("Acosta"), 5:08-CV-00215 JF ("Dues"), 5:08-CV-00216 JF ("Simien"), 5:08-CV-01726 JF ("Satuito"), and 5:08-CV-01727 JF ("Andrade").) However, in those cases, the Hospitals are contending that, at the time that demands for arbitration were made, Local 715 had effectively ceased to exist and/or that it invalidly attempted to transfer its right to represent the bargaining unit to another SEIU local. The instant case arose before the issues of Local 715's existence and representative capacity had ripened. Nevertheless, the fact that Local 715 has now ceased to exist and/or ceded its representative status impacts this case because, if Local 715 does not exist or is no longer the representative, it has no standing to enforce the Award, even if it were legitimate. Thus, the Hospitals incorporate herein by

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

parties are signatory to a collective bargaining agreement (the "CBA") effective from January 20, 2006 through November 4, 2008.  [Declaration of Laurence R. Arnold In Support of Motions ("Arnold Decl.") ¶ 4 & Exh. B.]

### A.    The CBA Preserves The Hospitals' Management Rights And Defines The Conditions Under Which Employees May Earn "RHC" Pay

In the CBA, the parties expressly preserved and delineated certain rights that are reserved to the Hospitals.[2]  Article 2 of the CBA specifically reserves to the Hospitals the right to "direct and assign the work force," "to abolish, create, alter or combine job classifications," "to introduce new or improved equipment, facilities or operations," and "to determine whether employees, both within and without the bargaining unit, will or will not perform certain functions, duties or tasks."  [Arnold Decl. Exh. B.]  Article 2 further states that the Hospitals "may, in [their] discretion, continue any current policies and practices which do not conflict with express written provisions of this Agreement."  [Arnold Decl. Exh. B.]  Article 18 of the CBA sets forth provisions governing "work rules" and states, in part, that "[t]he Employer has the right at its discretion to promulgate, alter, modify, amend, rescind, and enforce work rules which are not inconsistent with this Agreement."  [Arnold Decl. Exh. B.]  Article 18 defines "work rules" as "rules promulgated by the Employer, or a particular department or departments thereof, within its discretion, that regulate employees relative to and affecting their employment." [Arnold Decl. Exh. B.]

Article 2 also provides that the decision whether or not to continue any existing policies or practices is within the Hospitals' sole and unlimited discretion.  Specifically, Article 2 states, that The Hospitals "may, in [their] discretion, continue any current policies and practices ***which do not conflict with express provisions of this Agreement***."  [Arnold Decl. Exh. B (emphasis in original).]

---

reference the above-referenced and concurrently filed motions for summary judgment/adjudication.

[2] Within the CBA, the Hospitals are referred to collectively as the "Employer".

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

The parties agreed, and the CBA provides, that, under certain specified circumstances, employees would become entitled to compensation in excess of their normal compensation based upon the performance of particular duties. Specifically, Article 9 of the CBA provides in relevant part as follows:

> An employee temporarily assigned by the Employer to perform the typical duties of a position in a higher pay grade for four (4) consecutive hours or more will receive a differential of five percent (5%) for each grade above the grade of the employee's regular classification for all hours during which the employee is so assigned (e.g., if an employee in Grade SEIU0006 is assigned to a position in SEIU0008 the employee will receive a differential of ten percent (10%)). As an exception if an employee is assigned by the Employer to a position in a lead classification listed in Appendix A and to perform all of the duties thereof, the employee will be paid a lead premium of five percent (5%) for the actual hours worked in the lead position provided the lead position is in a classification in a higher wage range than the employee's regular classification or position.

[Arnold Decl. Exh. B.] The additional payments called for in Article 9 of the CBA are commonly referred to as "relief in higher classification" or "RHC" pay. [Quintel Decl. ¶ 5]

**B.    The CBA Contains A "Waiver" Or "Zipper" Clause In Which The Parties Each Prospectively Waived Any Right To Bargain Over Matters Covered Or Not Covered By The CBA**

Article 28 of the CBA is titled "waiver" and states in relevant part that "[t]he Employer and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other will not be obligated to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any subject or matter not specifically referred to or covered by this Agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated or signed the Agreement." [Arnold Decl. Exh. B.]

///

///

-4-

SFCA_475434.9

C.    **The CBA Provides For Arbitration Of Grievances Arising Under The CBA, But Places Significant Limitations On The Authority Of Arbitrators Deciding Such Grievances**

Article 26 of the CBA sets forth a procedure for processing and adjusting grievances culminating in arbitration.  Article 26 explicitly limits the arbitrator's authority to issue decisions under the CBA.  Specifically, Article 26.7.3 of the CBA provides that, "[t]he arbitrator's authority will be limited to interpreting the specific provisions of this Agreement and will have no power to add to, subtract from, or to change any part of the terms or conditions of this Agreement."  [Arnold Decl. Exh. B.]  Article 26.7.10 further provides that "[t]he arbitrator's authority will be limited to determining whether the Employer has violated the provision(s) of this Agreement.  The arbitrator will not have jurisdiction or authority to add to, amend, modify, nullify, or ignore in any way the provisions of this Agreement, and will not make any award that would, in effect, grant the Union or the employee(s) any matters that were not obtained in the negotiation process."  [Arnold Decl. Exh. B.]

D.    **The Grievance And Arbitration Proceedings**

On or around April 25, 2006, Local 715 filed a grievance pursuant to Article 26 of the CBA (the "Grievance").  [Quintel Decl. ¶ 6; Arnold Decl. ¶ 11 & Exh. E.]  In the Grievance, Local 715 alleged that the Hospitals violated Article 9 of the CBA by refusing to pay RHC pay to certain techs who carried a device known as a "Spectralink," a portable telephone akin to a cellular telephone.[3]  [Quintel Decl. ¶ 4; Arnold Decl. Exh. E.]  When the parties were unable to resolve the Grievance, it was submitted to Paul D. Staudohar (the "Arbitrator"), who had been selected by the parties to arbitrate the grievance.  [Arnold Decl. ¶ 12.]

A hearing was held before the Arbitrator on April 26, 2007 in Palo Alto, California.  [Arnold Decl. ¶ 13 & Exh. L.]  During the hearing, the Arbitrator heard the testimony of witnesses and received documentary evidence, including a complete copy of the CBA.  [Arnold

---

[3] During the arbitration hearing, the Union clarified the scope of the Grievance as covering only those techs who carried a Spectralink in an area of the Hospital known as the Main O.R.

SFCA_475434.9

Decl. ¶ 14-16 & Exh. B-L.]  The parties also submitted post-hearing briefs.  [Arnold Decl. ¶ 17-18 & Exh. M-N.]

On July 2, 2007, the Arbitrator issued the Award, which was titled "opinion and decision."  [Arnold Decl. ¶ 19 & Exh. O.]  The Arbitrator noted that the parties had been unable to agree upon a statement of the issue, Local 715's statement of the issue being "Whether the Employer violated Article 9 of the Agreement when it terminated the five percent differential pay to Anesthesia Techs who were assigned to carry the Spectralink telephone beginning on or about February of 2006; and if so, what is the remedy?" and the Hospitals' being "Whether or not Anesthesia Techs are entitled to receive additional pay under Article 9 of the Collective Bargaining Agreement for carrying a Spectralink phone."  [Arnold Decl. ¶ 19 & Exh. O p. 10-11.]  The Arbitrator found, however, that these two statements were essentially equivalent. [Arnold Decl. ¶ 19 & Exh. O p. 10-11.]  The Arbitrator also noted that certain portions of the CBA were "particularly relevant," and reproduced portions of Article 2, Article 9 and Article 26 in the Award.  [Arnold Decl. ¶ 19 & Exh. O p. 4-7.]  However, with the exception of Article 9, these provisions received no further mention in the Award.  [Arnold Decl. ¶ 19 & Exh. O.] The Arbitrator upheld the Grievance.  He found that there had existed an unwritten "past practice" whereby techs were paid a five percent differential for carrying a Spectralink, based in part (in the Arbitrator's view) on the increased workload that carrying the Spectralink supposedly entailed.  [Arnold Decl. ¶ 19 & Exh. O p. 14-15.]  He also found that when the Hospitals' discovered this "past practice," it was discontinued without Local 715's "consultation and consent."  [Arnold Decl. ¶ 19 & Exh. O p. 14.]  As a remedy, the Arbitrator ordered "restoration of the five percent differential and making whole of [techs] in the Main Operating Room for lost wages."  [Arnold Decl. ¶ 19 & Exh. O p. 15.]  He also stated that "[t]he differential will remain in effect unless and until altered by mutual agreement of the Parties." [Arnold Decl. ¶ 19 & Exh. O p. 15.]

///

///

SFCA_475434.9

1

### E.    The Commencement Of The Instant Action

2      The Arbitrator's Award was dated July 2, 2007.  [Arnold Decl. ¶ 19 & Exh. O.]  On

3    October 9, 2007, which was within 100 days of July 2, 2007, the Hospitals commenced the

4    instant action by filing a petition to vacate in this Court.  [Arnold Decl. ¶ 20; Dkt 1.]  Service on

5    Local 715 was effectuated on October 18, 2007, which was more than 100 days after July 2,

6    2007, but which was well within the time set forth in Rule 4(m) of the Federal Rules of Civil

7    Procedure ("F.R.Civ.P.").  [Arnold Decl. ¶ 21 & Exh. P.]

8  ## IV.    DISCUSSION

9      ### A.    Legal Standards Applicable To Summary Judgment Motions

10      Summary judgment is appropriate "if the pleadings, depositions, answers to

11   interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

12   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

13   matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of

14   informing the court of the basis for its motion and identifying those portions of "'the pleadings,

15   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16   any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*

17   *Corporation v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56).  The non-moving

18   party is not entitled to rest on the mere allegations of its pleading, but must "go beyond the

19   pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and

20   admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.*

21   at 324 (citation omitted).  Material facts "affect the outcome of the suit under the governing

22   law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  There is no genuine basis of

23   material fact if, on the record taken as a whole, a rational trier of fact could not find in favor of a

24   party opposing summary judgment.  *See Matushita Electric Industrial Company v. Zenith Radio*

25   *Corporation*, 475 U.S. 574, 587 (1985).

26   ///

27   ///

28

**B.    Judicial Standards Applicable To Review Of Arbitration Decisions**

The standards applied by courts to evaluate the validity of labor arbitrators' awards issued pursuant to collective bargaining agreements are well-established.  Such awards are afforded deference.  *Edward Hines Lumber Company v. Lumber And Sawmill Workers Local No. 2588*, 764 F.2d 631, 634 (9th Cir. 1985).  However, an arbitral award "is legitimate only so long as it draws its essence from the collective bargaining agreement."  *United Steelworkers Of America v. Enterprise Wheel And Car Corporation* ("*Enterprise Wheel*"), 363 U.S. 593, 597 (1960); *Edward Hines, supra*, 764 F.2d at 634.  Where the arbitrator issues an award that is not based upon, or is in conflict with, the collective bargaining agreement, the arbitrator is said to have "dispense[d] his own brand of industrial justice" necessitating that the court refuse to enforce the award.  *Enterprise Wheel*, 363 U.S. at 597.

A court is not permitted to overturn an arbitrator's award because its own interpretation of the collective bargaining agreement differs from that of the arbitrator.  *Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 509 (2001).  However, a court must not abdicate its responsibility to review arbitration awards by upholding a decision that pays only lip service to contractual interpretation.  Rather, courts are obliged to uphold an award only where the arbitrator's reasoning "represents a plausible interpretation of the contract in the context of the parties' conduct".  *Edward Hines, supra*, 764 F.2d at 634; *Stead Motors Of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1209 (9th Cir. 1989).  (*See also Anheuser-Busch, Inc. v. Local Union No. 744*, 280 F.3d 1133 (7th Cir. 2002) (Holding that an arbitrator "cannot shield himself from judicial correction by merely making noises of contract interpretation.").

Despite the deference normally paid to arbitral decision-making, the courts have made plain that, where an award is in direct conflict with contract language, the award cannot stand under any circumstances.  *Pacific Motor Trucking Company v. Automotive Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983) ("An award that conflicts with the contract cannot be a plausible interpretation.").

SFCA_475434.9

1   Federal courts have also recognized that an arbitrator's failure to limit his or her award to

2   the issues submitted by the parties represents an alternative and independent ground for vacating

3   the award.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 986 (9th Cir. 2001); *California*

4   *Pacific Medical Center v. Service Employees International Union, United Healthcare Workers –*

5   *West*, No. C 06 4685 SC, 2007 WL 81906 (N.D.Cal. 2007).  A court's review of whether an

6   arbitrator properly construed the scope of the issues submitted is subject to a deferential standard

7   similar to the standard that governs the arbitrator's interpretation of the collective bargaining

8   agreement itself.  *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir. 1989).

9   However, it is the parties, not the arbitrator, who decide what issues are placed before the

10  arbitrator, and where the arbitrator strays beyond those issues, his or her award is invalid.  *Delta*

11  *Lines, Inc. v. Brotherhood Of Teamsters And Auto Truck Drivers, Local 85*, 409 F.Supp. 873

12  (N.D.Cal. 1976).

13  Finally, an arbitrator has authority only to decide issues that are arbitrable in terms of the

14  scope of issues made arbitrable under the parties agreement, and in terms of the issues submitted

15  to the arbitrator for decision.  *AT&T Technologies, Inc. v. Communications Workers Of America*,

16  475 U.S. 643, 656 (1986).

17  **C.  The Arbitrator's Award Did Not Draw Its Essence From The CBA And Did**

18  **Not Represent A Plausible Interpretation Of The CBA**

19  Examination of the Arbitrator's award, compared to the CBA from which the award was

20  required to draw its essence, reveals that the award is unenforceable because it directly conflicts

21  with, and/or ignores, multiple provisions of the CBA.

22  **(1)  The Arbitrator Was Empowered Only To Interpret And Apply The**

23  **CBA As Written, Could Not Ignore, Modify, Or Contradict It**

24  Article 26 of the CBA provides that the Arbitrator's authority and jurisdiction is limited

25  to "interpreting the specific provisions of [the] Agreement" and determining whether the

26  Hospitals "ha[ve] violated the provision(s) of [the] Agreement."  [Arnold Decl. Exh. B.]  The

27  Arbitrator is specifically denied the jurisdiction and authority to "amend, modify, nullify or

28

-9-

SFCA_475434.9

1  ignore in any way" any provisions of the CBA, to "add to, subtract from, or to change" any

2  provisions of the CBA, or to "make any award that would, in effect, grant the Union or the

3  employee(s) any matters that were not obtained in the negotiation process."  [Arnold Decl.

4  Exh. B.]

5          **(2)    The Introduction And Assignment Of Spectralinks Fell Within The**

6                   **Scope Of The Hospitals' Contractual Management Rights**

7          In Article 2 of the CBA, the Parties agreed to very broad language preserving the

8  Hospitals' rights to manage and direct their operations and workforce "[*e*]*xcept only as limited*

9  *by express provisions of* [*the*] *Agreement*".  [Arnold Decl. Exh. B (emphasis in original;

10 bracketed material supplied).]  By way of illustration, Article 2 sets forth examples of rights

11 reserved to the Hospitals under the Management Rights clause.  These expressly reserved rights

12 include the right to "direct and assign the work force," "to abolish, create, alter or combine job

13 classifications," "to introduce new or improved equipment, facilities or operations," and "to

14 determine whether employees, both within and without the bargaining unit, will or will not

15 perform certain functions, duties or tasks."  [Arnold Decl. Exh. B.]

16         The introduction of the Spectralinks, and their assignment to the techs indisputably fell

17 within the scope of the management rights reserved under Article 2, a fact that Local 715 has not

18 disputed.  There is no provision of the CBA that would prohibit the Employer from introducing

19 new communication devices and assigning those devices to particular job categories, which

20 places the action under Article 2's general reservation of management rights.  Furthermore, the

21 introduction and assignment of the Spectralinks falls directly within Article 2's illustrated rights.

22 It represents direction and assignment of employees, the alteration of a job category, the

23 introduction of new or improved equipment and operations, and a determination as to whether

24 employees will or will not perform functions, duties or tasks.

25 ///

26 ///

27 ///

28

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

**(3)      Article 9 Provides No Right To RHC Pay Based Upon Assignment Of Spectralinks**

Given that all management rights are reserved to the Hospitals, except only as limited by express provisions of the CBA, and further given that the introduction and assignment of Spectralinks specifically falls within the scope of reserved management rights, the only basis upon which it would be possible to find a contractual right to RHC pay based upon the assignment of the Spectralinks (hereinafter "Spectralink RHC") would be if the right could be found in some other provision of the CBA. The provision of the CBA cited by Local 715 and the Arbitrator as creating a right to Spectralink RHC is Article 9. However, there is no plausible way to read the language of Article 9 as creating a right to RHC pay based solely upon the assignment of a Spectralink. In fact, Article 9 wholly contradicts any claim that such a right exists.

Article 9 states that there are two, and only two, ways in which an employee may become entitled to RHC pay. First, an employee may become entitled to RHC pay by performing the typical duties of a higher-graded position for at least four (4) consecutive hours. Second, an employee may become entitled to RHC pay by performing all the duties of a lead position, regardless of the amount of time spent. [Arnold Decl. Exh. B.] No other method for earning RHC pay is set forth in Article 9 or elsewhere in the CBA, making the two enumerated methods exclusive under the canon of construction known as "*Expressio unius est exclusio alterius*."

The language chosen by the parties to express the two means of earning RHC pay further demonstrates that those means are exclusive. Article 9.1 sets forth the first means for earning RHC pay (performing in a higher-graded position). It then sets forth the second means (performing as a lead) "[a]s an exception" to the rule that RHC pay is earned by performing in a higher graded position. [Arnold Decl. Exh. B.] Were the two methods set forth in Article 9.1

///

///

///

SFCA_475434.9

intended to be non-exclusive, it would not have been necessary to describe the second method as an exception to the first.[4]

In direct contradiction of the language of Article 9, the Arbitrator decided that, although Article 9 states that there are only two ways to earn RHC pay, there is actually a third way –techs working in the Main O.R. may earn RHC pay by carrying a Spectralink. With this decision, the Arbitrator improperly added to, changed, amended, and modified the CBA, all of which are forbidden under Article 26. He similarly ignored or changed the provision of Article 2 which affords the Hospitals discretion as to whether to continue existing practices. He also granted Local 715 and employees a benefit that was not obtained through the negotiation process.

### (4)    The Arbitrator's Reliance On Past Practice Contradicted The CBA

Implicitly acknowledging that his award found no support in the express provisions of the CBA, the Arbitrator relied on a supposed "past practice" of paying Spectralink RHC to Main O.R. techs.[5]  [Arnold Decl. ¶ 19 & Exh. O p. 11-12.]  The Arbitrator decided that this past practice was binding on the Hospitals and could not be discontinued without the "consultation and consent of the Union."  [Arnold Decl. ¶ 19 & Exh. O p. 14.]  In this respect, the Award is invalid, contradicts multiple express provisions of the CBA, and is beyond the Arbitrator's power.

The Arbitrator's finding of a binding past practice ignored and modified Article 9 because, as discussed above, it created a third means of earning RHC pay not set forth in Article 9.  The Arbitrator's finding of a binding past practice also ignored, modified and

---

[4] Treating the two methods for earning RHC pay enumerated in Article 9 as exclusive is the only plausible interpretation of the CBA.  However, even if the forms of RHC pay listed in Article 9 were not treated as exclusive, the Award would still be contrary to the CBA.  If Article 9 did allow for other means of earning RHC pay, then those other means must be in the form of unwritten policies or practices.  Article 2 states that the Hospitals are entitled to discontinue any existing unwritten policies or practices.  Therefore, there is no way under the CBA that there can exist an unwritten RHC pay policy that cannot be modified or discontinued by the Hospitals.

[5] Although the Hospitals will refer to the Arbitrator's finding of a binding past practice in this Motion, the Hospitals do not agree that there existed a fixed and established practice agreed upon by both parties so as to constitute a "past practice." The Arbitrator's finding that there was such a practice was erroneous.

-12-

1   contradicted Article 2, which, as discussed previously, provided that the Hospitals retained broad

2   management rights, including the right to introduce and assign new equipment, and that such

3   rights were limited only by "*express*" limitations set forth in the CBA.  The Arbitrator's Award

4   placed a limitation on Article 2 – that the Hospitals could not assign Spectralinks to Main O.R.

5   techs without paying them a five percent (5%) differential – which is not contained in any

6   express provision of the CBA.

7         It may be argued that it was the parties, and not the Arbitrator, who "modified" the CBA

8   through their past practice.  Such a conclusion cannot be made here because the parties expressly

9   agreed that existing practices would not be binding, and that it is in the Hospitals' discretion

10   whether (or not) to continue them.  Accordingly, language is set forth as the last sentence of

11   Article 2 of the CBA, which states that the Hospitals "may, in [their] discretion, continue any

12   current policies and practices ***which do not conflict with express written provisions of this***

13   ***Agreement***."  [Arnold Decl. Exh. B (emphasis in original).]  (The last sentence of Article 2 will

14   be referred to hereinafter as the "Policies/Practices Clause".)

15         The conclusion that necessarily follows from the Policies/Practices Clause is that it gives

16   the Hospitals the right to discontinue any and all policies and practices that may exist, or have

17   existed, without consulting or bargaining with Local 715.[6]  If the Hospitals "may" continue a

18   policy or practice on their discretion, it necessarily follows that they may also exercise their

19   discretion to decide *not* to continue the policy or practice.  To hold otherwise would be to

20   convert "may" into "must" and turn the meaning of the clause on its head.

21   ///

22   ///

23   ///

24   ///

25

26   _____

    [6] Furthermore, to the extent that a policy or practice conflicts with the CBA, the
27   Policies/Practices Clause actually requires the Hospitals to discontinue it.  It follows that an
    Arbitrator may not order the Hospitals to continue any policy or practice that conflicts with the
28   express written provisions of the CBA, as the Arbitrator's Award does.

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

**(5)    The Arbitrator's Award Violated Article 28 Of The CBA Insofar As It Imposed An Obligation On The Hospitals To Bargain With Local 715 Before Changing RHC Policies And Practices**

In the Award, the Arbitrator stated that Spectralink RHC would be reinstated and remain in effect "unless and until altered by mutual agreement of the Parties."  [Arnold Decl. ¶ 19 & Exh. O p. 15.]  Thus, the Arbitrator imposed a bargaining obligation on the Hospitals that would have to be satisfied before it could alter or discontinue an unwritten practice.  The parties agreed in Article 28 of the CBA that neither party would have any obligation to bargain with the other over any matter for the life of the CBA.  [Arnold Decl. Exh. B.]  The "waiver" set forth in Article 28 (sometimes referred to as a "zipper clause") is stated clearly and in the broadest possible terms.  The Arbitrator's decision that the Hospitals are required to bargain with Local 715 before changing or discontinuing a practice relating to RHC pay stands in direct contradiction to this language, and represents a further independent basis for concluding that the award does not draw its essence from the CBA, and is not a plausible interpretation of the CBA.

**(6)    The Arbitrator Improperly Dispensed His Own Brand Of Industrial Justice**

Federal Courts have consistently held that an arbitrator is not entitled to dispense his or her own brand of industrial justice, and is not permitted to ignore contract language in favor of his or her own sense of equity.  *Pacific Motor, supra*, 702 F.2d at 176.  Here, it is evident that the Arbitrator disregarded contract language in favor of what he perceived would be a more equitable result.  There is no language in Article 9 of the CBA indicating that entitlement to RHC pay is dependent on the difficulty or amount of work performed by an employee, or the amount of responsibility that a particular assignment entails.  Yet, the Arbitrator upheld the Grievance because, "The evidence is convincing that [techs] who have this assignment have an increased responsibility and workload.  The basis for paying the five percent differential is Article 9."[7]

---

[7] The juxtaposition of these two statements – one citing the "workload" and "responsibility" of those carrying the Spectralinks, and the other citing Article 9, which contains no reference to workload or responsibility as a basis for RHC pay is striking.  Taken together, they are

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

[Arnold Decl. ¶ 19 & Exh. O p. 14.]  The Arbitrator was not entitled to apply his own sense of justice to impose upon the Hospitals a result that was not required by the CBA, and, in fact, was contradicted by Articles 9 and 2.

### D.    The Arbitrator's Award Exceeded The Issues Submitted By The Parties

In addition to being bound by the applicable CBA, an arbitrator is also bound to decide only the issues submitted to him or her by the parties.  *Schoenduve Corp. v. Lucent Technologies, Inc.*, 442 F.3d 727, 732 (9th Cir. 2006) ("[t]he scope of the arbitrator's authority is determined by the contract requiring arbitration as well as by the parties' definition of the issues to be submitted.").  The submission of an issue for arbitration does not vest an arbitrator with the authority to issue binding decisions on other issues not submitted.  Where an arbitrator "exceeds the boundary of the submission to him, the award will be held invalid."  *Pack Concrete, supra*, 866 F.2d at 285.

In this case, the issue submitted to the arbitrator was whether techs were entitled to additional pay **under Article 9** of the CBA for carrying Spectralinks (or alternatively whether the discontinuation of such pay violated **Article 9**), and, if there was a violation of **Article 9**, what is the remedy.  [Arnold Decl. ¶ 19 & Exh. O p. 10-11.]  In essence, therefore, the Arbitrator was authorized by the parties to determine the requirements of Article 9, and to decide whether Article 9 would be violated if techs were denied RHC pay for carrying Spectralinks.  Neither party submitted the issue of whether Anesthesia Techs are entitled to Spectralink RHC based upon a "past practice"[8] or whether the Employer was required to "consult" with Local 715 prior

---

inexplicable except as an attempt by the Arbitrator to justify a decision wholly dependant on considerations external to, and in contradiction with, the CBA, by "making noises of contract interpretation."  *Anheuser-Busch, supra*, 280 F.3d 1133.

[8] Although Local 715 did make arguments based upon past practice at the hearing and in its post-hearing brief, it conspicuously declined to include past practice as a basis of the Grievance, either in the Grievance form or in its statement of the issue at the hearing.  Had it done so, the Hospitals would have had the opportunity to raise the objection that Local 715 was attempting to submit an issue that was not arbitrable under the CBA.  However, the parties submitted only the issue of whether techs were entitled to Spectralink RHC under Article 9, and the Arbitrator was limited by that submission even if it would have been proper to consider a past practice argument had Local 715 submitted that as an issue (which it would not have been).

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

1    to discontinuing Spectralink RHC. Yet, the Arbitrator chose to determine the "existence of a

2    past practice" that had been terminated "without the consultation and consent of the Union."

3    [Arnold Decl. ¶ 19 & Exh. O p. 14.]

4        When the Arbitrator discovered, as he evidently did[9], that the CBA as written did not

5    require the payment of Spectralink RHC, he was required to stop his inquiry. *Butterkrust*

6    *Bakeries v. Bakery, Confectionery And Tobacco Workers International Union, AFL-CIO, Local*

7    *No. 361*, 726 F.2d 698, 700 (11th Cir. 1984) (holding that once the arbitrator made a finding on

8    the issue submitted, "his authority came to an end."). His decision to proceed to consider other

9    issues that were not submitted renders the Award invalid.

10       The Arbitrator further exceeded the issues submitted by considering the issue of whether

11   the Hospitals should have to bargain with Local 715 before discontinuing the past practice of

12   paying Spectralink RHC. This was an issue he was not authorized to reach at all because it was

13   not submitted to him. *Delta Lines, supra,* 409 F. Supp. at 876 (the fact that the arbitrator was

14   authorized to make findings on the submitted issue, "is no argument that he was vested with

15   authority to decide every issue for which that finding had significance."). [10]

16   **E.    The Arbitrator Granted Relief On Matters That Lay Beyond His**

17   **         Jurisdiction As Defined In The CBA**

18       In the Grievance, Local 715 raised the arbitrable issue of whether the discontinuation of

19   Spectralink RHC violated Article 9 of the CBA. The Arbitrator, however, chose to go beyond

20

21   [9] This finding is implicit in the Arbitrator's decision. Certainly, had Spectralink RHC been
     required by Article 9 there would have been no reason for the Arbitrator to (improperly) rely

22   upon a past practice to modify the CBA.

23   [10] Furthermore, to the extent that the Arbitrator's decision that the Hospitals are required to
     bargain with Local 715 before discontinuing Spectralink RHC is based on the Arbitrator's view

24   of the requirements of the National Labor Relations Act, the decision is invalid. The Arbitrator's
     sole purpose is to interpret and apply the CBA. He has no authority to enforce federal labor

25   laws. *Doyle v. Raley's Incorporated*, 158 F.3d 1012, 1015 (9th Cir. 1998) ("if an arbitral
     decision is based upon the arbitrator's view of the requirements of enacted legislation, rather

26   than on an interpretation of the collective bargaining agreement, the arbitrator has exceeded the
     scope of the submission and the award will not be enforced.") (internal punctuation omitted);

27   *Phoenix Newspapers, Inc. v. Phoenix Mailers Union 752*, 989 F.2d 1077, 1079 FN1 (9th Cir.
     1993).

28

-16-

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

1   that issue and decide a variety of non-arbitrable issues, including whether the CBA was modified

2   by a past practice, and whether the Hospitals should be obligated to bargain with Local 715

3   before modifying a policy or practice.  Because these issues were not arbitrable under the CBA,

4   the Arbitrator's decision must be vacated.

5              **(1)    It Is For The Court, Not The Arbitrator, To Decide The Boundaries**

6                       **Of The Arbitrator's Jurisdiction**

7              It is a well-settled principle that the issue of whether a collective-bargaining agreement

8   creates a duty for the parties to arbitrate the particular grievance, known as substantive

9   arbitrability, is an issue for judicial determination.  *AT&T, supra, 475 U.S. at 656*; *Pacific*

10  *Northwest Bell Telephone Company v. Communications Workers Of America*, 310 F.2d 244,

11  247-248 (9th Cir. 1962).  It is fundamental that "arbitration is a matter of contract and a party

12  cannot be required to submit to arbitration any dispute which he has not agreed to so submit."

13  *AT&T, supra*, 475 U.S. at 648-649; *United Steel Workers Of America v. Warrior & Gulf*

14  *Navigation Company* ("*Warrior & Gulf*"), 363 U.S. 574, 582 (1960).  In deciding whether the

15  parties have agreed to submit a particular grievance to arbitration, the court is not to evaluate the

16  merits of the grievance, but is merely required to determine whether the parties agreed to

17  arbitrate the matter.  *AT&T, supra*, 475 U.S. at 649-650;  *Atkinson v. Sinclair Refining Company*,

18  370 U.S. 238, 241-242 (1962).

19             **(2)    The Arbitrator Went Beyond The Scope Of His Jurisdiction As**

20                      **Defined In The CBA**

21             "[A]n arbitrator's jurisdiction is rooted in the agreement of the parties."  *George Day*

22  *Construction Company, Inc. v. United Brotherhood of Carpenters & Joiners of America, Local*

23  *354*, 722 F.2d 1471, 1474 (9th Cir. 1984); *Ficek v. Southern Pacific Company*, 338 F.2d 655,

24  657 (9th Cir. 1964).  Federal courts have held that where the parties have negotiated an

25  agreement containing both a narrow arbitration clause and a zipper clause, and the relevant

26  contractual provisions are not ambiguous, the arbitrator exceeds the scope of his jurisdiction

27  when he or she issues an award based on past practice.  *See Anheuser-Busch, Inc. v. Local Union*

28

-17-

SFCA_475434.9

1  *No. 744*, 280 F.3d 1133 (7th Cir. 2002); *Judsen Rubber Works, Inc. v. Manufacturing,*

2  *Production & Service Workers Union Local No. 24*, 889 F.Supp. 1057 (N.D. Illinois 1995)

3  (vacating an arbitrator's award that "drew its essence" from past practice, noting that "the

4  arbitrator did not even take the opportunity to consider whether the agreement contained clear

5  and unambiguous language.")

6       Here, the parties' CBA expressly limits the Arbitrator's jurisdiction to interpretation of

7  the specific provisions of the CBA and determination of whether the Employer has violated

8  specific provisions of the CBA, and forbids an award that would grant the union a matter that

9  was not obtained through bargaining.  Yet, this is exactly what the Arbitrator did.  The Arbitrator

10 ignored the unambiguous terms of the CBA, and issued an award that purported to grant relief on

11 matters that lay beyond the scope of his jurisdiction as defined in the CBA, in violation of

12 multiple express provisions of the parties' CBA.[11]

13      **(3)**     **Court Review Of Substantive Arbitrability At This Time Is**

14                **Appropriate Because The Issue Arose For The First Time When The**

15                **Arbitrator Issued His Decision**

16      Although issues of substantive arbitrability are normally raised and decided prior to

17 arbitration, it is appropriate for the Court to rule on the issue at this time.  Under appropriate

18 circumstances, a party may be found to have waived its right to object to the substantive

19 arbitrability of a grievance, for example by submitting both the merits of the dispute and the

20 question of jurisdiction to the arbitrator for decision.  *George Day Construction, supra*, 722 F.2d

21 at 1476.  In this case, however, no waiver of the right to challenge substantive arbitrability

22 occurred, as the question of the Arbitrator's jurisdiction was not raised by either party at any

23 point during the proceedings.  Indeed, it would not have been possible for the Hospitals to have

24 challenged the substantive arbitrability of the Grievance prior to the issuance of the Award.  The

25

26 ───────────────────

27 [11] Additionally, as discussed previously, the Arbitrator chose to decide issues that were not
submitted to him by the parties, rendering the Award invalid (and also meaning that those issues
were not arbitrable).  The issue to be decided, as stated by each of the parties, was limited solely

28 to the requirements of Article 9.

-18-

1  Grievance, on its face, alleged a violation of Article 9 of the CBA, which was clearly an

2  arbitrable issue.  [Arnold Decl. Exh. E.]  Likewise, while they worded their statements of the

3  issue differently, counsel for Local 715 and the Hospitals agreed at the hearing that the issue

4  focused upon the nature of  the requirements of Article 9 and/or whether it was violated.  [Arnold

5  Decl. ¶ 19 & Exh. O p. 10-11.]  It was only when the Award issued that the Hospitals learned

6  that the Arbitrator had chosen to stray beyond the limits of his jurisdiction and to consider, and

7  purport to decide, issues that were not arbitrable, and were not submitted for decision.

8  Accordingly, the Hospitals are entitled to challenge substantive arbitrability at this time.

9         Federal courts have held that they will prevent parties from undermining collective

10  bargaining agreements in bad faith by disguising non-arbitrable grievances through artful

11  drafting.  *Collins Radio, supra*, 317 F.2d at 217-218; .  *Radio Corp. of America, supra*, 414 F.2d

12  at 896 ("[t]he Union cannot by couching its grievance in language of a contract construction

13  problem prevent the court from carrying out its duty.").  Local 715 was not entitled to couch the

14  issue as being the interpretation of Article 9 and then seek to arbitrate the issue of a past practice

15  that does not fall within the provisions of that article.  It follows that the Arbitrator may not issue

16  an award based upon a nonarbitrable matter simply because a facially arbitrable grievance has

17  been submitted to him or her, creating "an escape hatch through which he could dispense his

18  own brand of industrial justice."  *Anheuser-Busch*, supra, at 1145.  That is precisely what has

19  happened here.

20     **F.    Because Local 715 No Longer Exists, There Is No Party With Standing To**
              **Enforce The Award**

21

22         On or around March 1, 2007, Local 715 ceased to exist, and its former membership,

23  functions, and assets were transferred to other local unions, who are not party to the CBA.

24  Because the grievance at issue in this case was submitted and moved to arbitration prior to that

25  time, the Hospitals did not challenge Local 715's existence and representative status in their

26  Petition to Vacate.[12]  Nevertheless, because Local 715 has ceased to exist, and/or has abandoned

27

28  ─────────────────
    [12] These issues have been raised, and are more fully briefed in the Hospitals concurrently filed

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

its representative status, neither it, nor any party claiming to act on its behalf would have

standing to enforce the award were it valid (which it clearly is not).

### (1)    The Status Of Local 715

In 2006, Service Employees International Union ("SEIU" or the "International")

developed and eventually adopted a plan to reorganize existing SEIU local unions in California.

[Declaration of Scott P. Inciardi In Support Of Motions ("Inciardi Decl.") Exh. T; Quintel Decl.

¶ 23 & Exh. K.]  The plan called for the former members, functions, and assets of Local 715 to

be split up and merged into new or existing local unions.  [Inciardi Decl. Exh. T; Quintel Decl.

Exh. K.]  Most of the former Local 715 was to be absorbed into a union known as "Local 521."

However, representation of the Hospitals was to be assigned to a local union known as "UHW."

[Inciardi Decl. Exh. T; Quintel Decl. Exh. K.]

Local 715 and UHW had already entered into a "Servicing Agreement" which called for

UHW to provide certain "professional services" to Local 715 at no cost.  [Arnold Decl. ¶ 36 &

Exh. CC.]  However, as of March, 2006, when the Servicing Agreement became effective,

employees of UHW began carrying out all the functions formerly performed by Local 715.  The

Hospitals were told to direct all correspondence to UHW employees.  [Quintel Decl. ¶ 9 & 14 &

Exh. C.]  UHW requested information from the Hospitals for the express purpose of processing

the dues remitted by the Hospitals.  [Quintel Decl. ¶ 17 & Exh. E.]  UHW employees submitted

grievances, and attempted to bargain with the Hospitals.  [ Quintel Decl. ¶ 15 & Exh. D.]  Greg

Pullman, Local 715's staff director, informed the Hospitals that UHW employees were "handling

*all representation matters* for SEIU Local 715."  [Quintel Decl. ¶ 20 & Exh. H. (emphasis

supplied).]

In January, 2007, the International ordered Local 715 to commence the "reorganization"

of its operations into Local 521 and UHW as soon as practicable.  [Inciardi Decl. Exh. U.]

Around that time, Local 715 announced on its website that it was "in the process of transitioning

---

motions for summary judgment/adjudication  in the five (5) other related cases currently before
this Court.  The Hospitals herein incorporate those motions by reference.

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

1   to our new Local 521." [Quintel Decl. ¶ 30 & Exh. P.] After March 1, 2007 Local 715's website

2   was taken down, and Local 521's website reported that it had absorbed Local 715 and its former

3   assets. [Quintel Decl. ¶ 23 & Exh. R & X.] At the same time, UHW's website stated that it now

4   represented the Hospitals' employees. [Quintel Decl. ¶ 34 & Exh. S.] Between January, 2007,

5   and June, 2007 the Hospitals received no communications with any person claiming to be an

6   employee of Local 715. [Quintel Decl. ¶ 49.] In June, 2007, the International purported to

7   appoint Bruce Smith as the "trustee" of "Local 715." [Inciardi Decl. Exh. Z; Quintel Decl. ¶ 48

8   & Exh. FF.] However, to date, the Hospitals have still received no communications from anyone

9   claiming to be an employee of Local 715. The only communications have come from the

10  purported trustee, and from attorneys who have refused to state whether they represent Local 715

11  directly, or whether they are retained by UHW and are acting pursuant to the rejected Servicing

12  Agreement. [Arnold Decl. ¶ 49-53 & Exh. NN-RR.]

13          To the extent that Local 715 is seeking to enforce the Award, no such enforcement can be

14  granted because that organization ceased to exist after March, 2007, or thereabouts.[13] Local 715

15  is the only organization that the Hospitals were obligated to recognize, and which had standing

16  under the CBA. *Moruzzi v. Dynamics Corporation Of America*, 443 F.Supp. 332, 336-337

17  (S.D.N.Y. 1977); *Lorber Industries Of California v. Los Angles Printworks Corporation*, 803

18  F.2d 523, 525 (9th Cir. 1986) (The obligation to arbitrate "may not be invoked by one who is not

19  a party to the agreement")

20          **G.    This Action Was Timely Initiated Under The Applicable Federal Rules Of**

21                  **Civil Procedure**

22          The Hospitals anticipate that Local 715 will argue that this Action was not timely

23  commenced under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185).

24  Congress did not enact a statute of limitations for actions under Section 301. Therefore, federal

25

26  _____

27  [13] In its answer to the Hospitals' petition, Local 715 requested that the court to enforce the
    Award. However, because Local 715 did not file a counter-claim seeking affirmative relief, this

28  request was improper and should be disregarded.

-21-

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

1    courts borrow the limitations period from the analogous state statute of limitations, which, in a

2    case such as this one where a party seeks to vacate an arbitrator's decision, is California Code of

3    Civil Procedure § 1288 ("CCP § 1288").  *San Diego County District Council Of Carpenters Of*

4    *The United Brotherhood Of Carpenters And Joiners Of America v. Cory*, 685 F.2d 1137, 1142

5    (1982).  CCP § 1288 states in relevant part that "A petition to vacate an award or correct an

6    award shall be served and filed not later than 100 days after the date of the service of a signed

7    copy of the award on petitioner."

8        Local 715 will likely argue that, because CCP § 1288 states that a petition filed under

9    state law must be both filed and served within 100 days of service of the award, a federal Section

10   301 action to vacate an arbitrator's award also must be both filed and served within 100 days in

11   order to be timely.  The Court must reject any such argument because the Ninth Circuit has

12   already ruled that, where a state statute of limitations is used to supply a federal cause of action

13   with a limitations period, the state limitations period is borrowed only for the purpose of

14   supplying the time in which to commence the action under Rule 3 (i.e. the time in which to file

15   the complaint or petition).  Federal rules continue to govern the time in which to effectuate

16   service, and any state service rules are disregarded, even if they are contained in the borrowed

17   state statute of limitations.  *See, S.J. v. Issaquah School District No. 4111 ("Issaquah")*, 470

18   F.3d 1288 (9th Cir. 2006).

19       In *Issaquah*, the plaintiff filed suit under the federal Individuals With Disabilities In

20   Education Act ("IDEA").  That Act did not contain a statute of limitations at the time, so the

21   court borrowed the statute of limitations from the Washington State Administrative Procedure

22   Act ("WAPA").  That statute stated that "A petition for judicial review of an order shall be filed

23   with the court and served on the agency, the office of the attorney general, and all parties of

24   record within thirty days after service of the final order."  Although the plaintiff filed his IDEA

25   action within thirty days, he conceded that he did not serve the defendant until after the thirty

26   days.  The district court concluded that the action was untimely.  The Ninth Circuit reversed.

27   ///

28
STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

The defendant argued that, because the WAPA statute of limitations combined the time period for filing and service, a federal action borrowing that statute of limitations was timely only if both filing and service were accomplished within thirty days.  The Ninth Circuit held that "Rule 3 of the Federal Rules of Civil Procedure controls when an action which arises under federal law is 'commenced' for purposes of tolling the statute of limitations borrowed from state law."  *Id*. at 1289 (*Citing Sain v. City of Bend*, 309 F.3d 1134 (9th Cir. 2002)).  Rule 3 states in its entirety that "A civil action is commenced by filing a complaint with the court."  F.R.Civ.P. 3.  After the filing of a complaint under Rule 3, federal procedural rules govern the action, at least where there is a federal rule to apply.  In the case of the time in which to serve a complaint, there is a federal rule to apply – Rule 4(m), which provides a time limit for service of process of 120 days after filing.  F.R.Civ.P. 4(m).  Therefore, the federal rule governing service of process governs, rather than the language relating to service in the borrowed state statute of limitations.  In sum, the Ninth Circuit held that, where it is necessary to use a state statute of limitations to supply a period within which a federal action must be commenced within the meaning of Rule 3, only the time period within which the complaint must be filed is borrowed.  State law service requirements, even if they are contained within the borrowed state statute of limitations, are disregarded.

The court rejected the defendant's argument that the rule against borrowing state law service requirements should be limited to particular types of federal actions, holding to the contrary that the rule "extends to all federal causes of action for which state statutes of limitations must be borrowed."  *Id*. at 1292.  The defendant also argued that, where a state statute of limitations "represents a substantive decision on the state's part that service is integral to the repose fostered by the statute of limitations," federal courts should not "unravel" the service requirement from the limitations period.  *Id*. at 1292.  The Ninth Circuit also rejected this argument, concluding,

> Rule 3 governs the commencement of federal causes of action using borrowed state statutes of limitations. This means there is no gap to fill and no basis for resorting to state law to determine when

-23-

SFCA_475434.9

1

the action is commenced. As [the plaintiff's] action was commenced under Rule 3 within the thirty-day period of

2

limitations when he filed his complaint in federal district court, the corollary is that Rule 4 controls service of process.

3

* * *

4

[T]here is no deficiency of federal law on questions concerning the relation among filing, service, and the period of limitations,

5

because Rule 3 covers commencement of civil actions and Rule 4 covers service of process.

6

* * *

7

Therefore, we hold that a federal court borrowing a state's time period for filing suit brought under federal law should not also

8

borrow the state's time limits for serving the complaint.

9

*Id.* at 1293.

10

The *Issaquah* decision is controlling in this case. There is no meaningful difference

11

between the borrowed statute at issue in *Issaquah* and the one at issue here, both of which set

12

forth a filing deadline coupled with a coextensive service deadline. Both *Issaquah* and the

13

present case involve a federal cause of action filed within the borrowed filing deadline, and

14

served in accordance with F.R.Civ.P. 4(m), but after the service deadline stated in the borrowed

15

statute. *Issaquah* plainly holds that under such circumstances, the action is timely because Rule

16

4(m), not the state law filing deadline, governs service of process.

17

Any argument advanced by Local 715 that the holding of *Issaquah* does not extend to

18

Section 301 actions borrowing the CCP § 1288 limitations period must be rejected as

19

inconsistent with the Ninth Circuit's holding in that case. The Ninth Circuit made plain (in

20

response to a similar argument advanced in that case) that its holding applies to "*all* federal

21

causes of action for which state statutes of limitations must be borrowed." *Issaquah, supra,*

22

470 F.3d at 1292 (emphasis supplied). Likewise, any argument that the service deadline from

23

CCP § 1288 should control, rather than Rule 4(m) on the grounds that CCP § 1288's service

24

requirement is integral to a policy supporting the statute has already been categorically rejected

25

by the Ninth Circuit in *Issaquah*.

26

In order to fill a gap in federal law – the absence of a time period within which a Section

27

301 action to vacate an arbitrator's decision must be commenced for the purposes of Rule 3 – the

28

STANFORD AND LPCH'S MOTION FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NO. C-07-CV-05158-JF

SFCA_475434.9

1  100-day time period set forth in CCP § 1288 is borrowed.  This action was timely commenced

2  under Rule 3 when the Hospitals filed the Petition within that 100-day time period.  Service of

3  the Petition was governed by Rule 4, not CCP § 1288.  The Petition was served well within the

4  time set forth in Rule 4(m).  Therefore, this action was timely filed and served and should be

5  decided on the merits.

6  **V.**     **CONCLUSION**

7         In this case, the Arbitrator was empowered to decide the issue of whether Article 9 of the

8  CBA required the Hospitals to pay Spectralink RHC to Main O.R. techs.  The Arbitrator

9  implicitly concluded (correctly) that Article 9, as written, did not create an obligation to pay

10  Spectralink RHC.  This was all he was empowered to do.   His decision to reach a different result

11  by improperly ignoring and/or changing parts of the CBA, and to decide issues that were neither

12  submitted to him nor within his power to decide renders his decision invalid.  Therefore, as a

13  matter of law, Petitioners respectfully submit that the Arbitrator's Award must be vacated in

14  whole.  Further, to the extent that Local 715 continues to exist and continues to demand

15  arbitration of the underlying grievance, this Court should issue an order directing that the

16  grievance be submitted to a new arbitrator to be selected by the parties pursuant to the grievance

17  and arbitration provisions of the CBA.

18

19  Dated:  July 18, 2008                     FOLEY & LARDNER LLP
                                              LAURENCE R. ARNOLD
20                                            EILEEN R. RIDLEY
                                              SCOTT P. INCIARDI
21

22

23                                            By: /s/ _____
24                                                  EILEEN R. RIDLEY
                                                    Attorneys for Petitioners
25                                                  Stanford Hospital & Clinics and
                                                    Lucile Packard Children's Hospital
26

27

28