1  **FOLEY & LARDNER LLP**
   ONE MARITIME PLAZA, SIXTH FLOOR
   SAN FRANCISCO, CA 94111-3409
2  TELEPHONE:   415.434.4484
   FACSIMILE:   415.434.4507
3
   LAURENCE R. ARNOLD, CA BAR NO. 133715
   EILEEN R. RIDLEY, CA BAR NO. 151735
4  SCOTT P. INCIARDI, CA BAR NO. 228814
   Attorneys for STANFORD HOSPITAL & CLINICS and
5  LUCILE PACKARD CHILDREN'S HOSPITAL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL,<br><br>Petitioners,<br><br>vs.<br><br>SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715,<br><br>Respondent. | Case No: 5:07-CV-05158-JF<br><br>DECLARATION OF LAURENCE R. ARNOLD IN SUPPORT OF STANFORD HOSPITAL & CLINICS' AND LUCILE PACKARD CHILDREN'S HOSPITAL'S MOTIONS FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION OF CLAIMS OR DEFENSES<br><br>Date:   August 29, 2008<br>Time:   9:00 A.M.<br>Dept:   Ctrm. 3, 5th Floor<br><br>Judge:   Hon. Jeremy Fogel |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715<br><br>Petitioner and Counter-Respondent,<br><br>vs.<br><br>STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL<br><br>Respondents and Counter-Petitioners. | Case No: 5:08-CV-00213-JF<br><br><br><br><br><br><br><br><br><br><br><br>Judge:   Hon. Jeremy Fogel |

ARNOLD DECLARATION IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:07-CV-05158-JF, 5:08-CV-00213-JF, 5:08-CV-00215-JF;
5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

SFCA_1424216.4

| | | |
|---|---|---|
| 1 | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No: 5:08-CV-00215-JF |
| 2 | | |
| 3 | Petitioner, | |
| 4 | vs. | |
| 5 | STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 6 | | Judge:      Hon. Jeremy Fogel |
| 7 | Respondents. | |
| 8 | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No: 5:08-CV-00216-JF |
| 9 | Petitioner, | |
| 10 | vs. | |
| 11 | STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 12 | | |
| 13 | Respondents. | Judge:      Hon. Jeremy Fogel |
| 14 | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No: 5:08-CV-01726-JF |
| 15 | | |
| 16 | Petitioner, | |
| 17 | vs. | |
| 18 | STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 19 | | Judge:      Hon. Jeremy Fogel |
| 20 | Respondents. | |
| 21 | SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 715 | Case No: 5:08-CV-01727-JF |
| 22 | Petitioner, | |
| 23 | vs. | |
| 24 | STANFORD HOSPITAL & CLINICS and LUCILE PACKARD CHILDREN'S HOSPITAL | |
| 25 | | |
| 26 | Respondents. | Judge:      Hon. Jeremy Fogel |
| 27 | | |
| 28 | | |

I, Laurence R. Arnold, declare as follows:

1. I am an attorney at law, licensed to practice in the State of California and before this Court. I am a partner with the law firm of Foley & Lardner LLP, counsel of record for Petitioners and Respondents, Stanford Hospital & Clinics and Lucille Packard Children's Hospital (the "Hospitals"), in the above-captioned cases. I am one of the partners at the firm who is handling the above-referenced cases on behalf of the Hospitals. I have personal knowledge of the matters stated herein and, if called to do so, could and would testify of my own personal knowledge to the facts set forth below.

2. In 1998 an election conducted by the National Labor Relations Board (the "NLRB" or "Board") pursuant to the National Labor Relations Act (the "NLRA" or the "Act") was held among a unit of the Hospitals' employees (the "Bargaining Unit") to determine whether the employees wished to be represented by the labor organization then known as Service Employees International Union, Local 715, AFL-CIO ("Local 715"). A majority of the employees in the unit voted to be represented by Local 715.

3. On or around November 30, 1998, the Regional Director of Region 32 of the National Labor Relations Board ("Region 32") issued a "Certification Of Representative" in Case Number 32-RC-4504. The Certification stated that Local 715 was certified as the exclusive collective bargaining representative of the employees in the Bargaining Unit. As the Hospitals' attorney of record, I received a copy of the Certification. A true and correct copy of the Certification is attached hereto as Exhibit A.

4. Since the certification, the Hospitals have engaged in collective bargaining with Local 715 resulting in a series of collective bargaining agreements. At all times, I have served as chief negotiator for the Hospitals. The first collective bargaining agreement negotiated between the Hospitals and Local 715 was effective between November 5, 1999 through November 4, 2001 (the "1999-2001 CBA"). The 1999-2001 Agreement was thereafter extended for one (1) year, to November 4, 2002. This extended agreement was succeeded by an agreement effective between December 19, 2002 and November 4, 2005 (the "2002-2005 CBA"). The 2002-2005 CBA was, in turn, succeeded by the current collective bargaining agreement (the "CBA"). The

1

1. CBA became effective on January 20, 2006 and is scheduled to expire on November 4, 2008. A true and correct copy of the CBA is attached hereto as Exhibit B.

5. Article 1.1 of the CBA states that the parties to the CBA are the Hospitals and "the Service Employees International Union, Local 715, AFL-CIO, CLC," also referred to in the CBA as "the Union."

6. Article 1.3 of the CBA, known as the "Recognition Clause," states that, "Pursuant to the Certification of Representative issued by the National Labor Relations Board (NLRB) in Case No. 32-RC-4504, as modified in Case No. 32-UC-363, the Employer recognizes the Union, as the sole and excusive representative for the purpose of collective bargaining" with respect to the employees in the Bargaining Unit.

7. Article 20.1 of the CBA provides that the Hospitals may discharge or otherwise discipline Bargaining Unit employees only for "just cause."

8. Article 26 of the CBA sets forth a grievance and arbitration procedure through which Local 715, on behalf of itself or a Bargaining Unit employee or employees, is entitled to challenge actions taken by the Hospitals which are alleged to violate the CBA. Grievances that are not resolved at "Step 1" or "Step 2" of the grievance may be referred to binding arbitration.

9. Since Local 715 was certified, I have represented the Hospitals in numerous arbitrations held pursuant to the collective bargaining agreements between the Hospitals and Local 715. In each of these arbitrations, Local 715 has been represented by a law firm called Weinberg, Roger & Rosenfeld (the "Weinberg Firm" or "Weinberg"). Since the certification, the Weinberg Firm has also represented Local 715 in other matters involving Local 715's representation of the Bargaining Unit.

10. Through my representation of other clients, I am aware that the Weinberg Firm represents other SEIU locals. Among these is a local currently known as Service Employees International Union, United Healthcare Workers – West ("UHW"). UHW does not represent any of the Hospitals' employees.

///
///

### Anesthesia Techs Grievance

11. In April, 2006 a grievance was filed on behalf of a group of Bargaining Unit employees known as anesthesia technicians ("Anesthesia Techs"). The Hospitals denied the grievance. Thereafter, attorneys claiming to represent Local 715 demanded arbitration of the grievance pursuant to the CBA.

12. In or around December, 2006, the Hospitals and Local 715 selected Paul Staudohar (the "Arbitrator") to arbitrate the grievance. The parties selected April 24, 2007 as the date for the arbitration hearing.

13. On April 24, 2007, the arbitration hearing was held in Palo Alto, California. I appeared on behalf of the Hospitals. Vincent A. Harrington, Jr. of the law firm Weinberg Roger & Rosenfeld appeared on behalf of Local 715.

14. During the hearing, the parties agreed to submit certain documents as joint exhibits. The parties designated the CBA Joint Exhibit 1. The parties designated the 2002-2005 CBA as Joint Exhibit 2. A true and correct copy of the 2002-2005 CBA is attached hereto as Exhibit C. The parties designated the 1999-2001 CBA as Joint Exhibit 3. A true and correct copy of the 1999-2001 CBA is attached hereto as Exhibit D. The parties designated the grievance as Joint Exhibit 4. A true and correct copy of the Grievance is attached hereto as Exhibit E. The parties designated a July 21, 2006 letter from Brian Coffman to Lourdes Arafiles as Joint Exhibit 5. A true and correct copy of this letter is attached hereto as Exhibit F. Each of the above-referenced exhibits was admitted into evidence by the Arbitrator.

15. During the hearing, the Hospitals submitted certain documents as employer exhibits. A job description for the anesthesia tech position was submitted as Employer's Exhibit 1. A true and correct copy of the job description is attached hereto as Exhibit G. A one (1) page document titled "Anesthesia Tech Phone List" was submitted as Employer's Exhibit 2. A true and correct copy of the phone list is attached hereto as Exhibit G. A job description for the lead anesthesia tech position was submitted as Employer's Exhibit 3. A true and correct copy of the job description is attached hereto as Exhibit I. A two (2) page document titled "Stanford Hospital And Clinics OR Region EOC Ongoing Compliance Audit Anesthesia Workroom" was

3

1  submitted as Employer's Exhibit 4. A true and correct copy of this document is attached hereto
2  as Exhibit J. A one (1) page document titled "Malignant Hyperthermia Cart Checklist" was
3  submitted as Employer's Exhibit 5. A true and correct copy of the checklist is attached hereto as
4  Exhibit K. Each of the above-referenced exhibits was admitted into evidence by the Arbitrator.

5      16.     The proceedings at the hearing were transcribed by a certified court reporter. A
6  true and correct copy of the certified transcript of the proceedings is attached hereto as Exhibit L.

7      17.     On June 5, 2007, I mailed the original and one copy of a brief titled "Employer's
8  Brief To The Arbitrator" setting forth the Hospitals' position on the arbitration to the Arbitrator.
9  A true and correct copy of the brief that I sent to the Arbitrator is attached hereto as Exhibit M.

10     18.     On June 12, 2007, I received a copy of Local 715's brief to the arbitrator titled
11 "Union's Post-Hearing Brief To The Arbitrator" and dated June 7, 2007. A true and correct copy
12 of the document that I received is attached hereto as Exhibit N.

13     19.     On July 3, 2007, I received a copy of the decision of the Arbitrator titled "Opinion
14 And Decision" dated July 2, 2007 (the "Award"). A true and correct copy of the Award is
15 attached hereto as Exhibit O.

16     20.     On October 9, 2007, I caused a Petition To Vacate Arbitration Award to be filed
17 with the United States District Court for the Northern District of California, and the Petition was
18 filed on that date. October 9, 2007 is less than one hundred (100) days after July 2, 2007, the
19 date of the Award.

20     21.     Service of the summons and petition on Local 715 was effectuated on October 18,
21 2007. A true and correct copy of the proof of service is attached hereto as Exhibit P.

22     **Status Of Local 715**

23     22.     Beginning in 2006, after the negotiation of the CBA, I began to receive
24 information that raised questions in my mind regarding the status of Local 715.

25     23.     In March, 2006, I learned that Local 715 intended to utilize employees of UHW to
26 assist in the administration of the CBA. I further learned that UHW would be taking over
27 representation for the Hospitals. Based upon this information, the Hospitals and I sought
28 clarification as to whether Local 715 continued to represent the Bargaining Unit. The Hospitals

1  and I subsequently learned from Mr. Pullman that Local 715 continued to represent the
Bargaining Unit, but that Local 715 had entered into an agreement with UHW whereby UHW
would help service the Bargaining Unit.

24. On or around March 8, 2006 I received a letter from W. Daniel Boone of the Weinberg Firm dated March 3, 2006 regarding a grievance involving a Bargaining Unit employee named Carol Harry. The subject line of the letter states "SEIU, Local 715, Stanford Hospital & Clinics; Carol Harry – Grievance No. 2005-244." A true and correct copy of this letter is attached hereto as Exhibit Q. The matter will be described as the "Harry Grievance" herein.

25. On March 23, 2006 I sent Mr. Boone a letter responding to his letter and requesting certain information regarding the Harry Grievance. A true and correct copy of this letter is attached hereto as Exhibit R.

26. On or around March 29, 2006, I received another letter from Mr. Boone regarding the Harry Grievance dated March 28, 2006. The subject line of that letter stated "United Healthcare Workers – West (formerly SEIU, Local 715); Stanford University Hospital; Carol Harry Grievance." A true and correct copy of this letter is attached hereto as Exhibit S.

27. On April 11, 2006, I sent a letter to Mr. Boone requesting that he explain the reference to UHW "formerly SEIU, Local 715" in his March 28, 2006 letter. A true and correct copy of this letter is attached hereto as Exhibit T.

28. On April 24, 2006, I sent another letter to Mr. Boone renewing my request for an explanation of the reference to UHW in his March 28, 2006 letter. That same day, I received a letter from Mr. Boone dated April 19, 2006 in which Mr. Boone acknowledged that he was "mistaken in [his] impressions" regarding the UHW/Local 715 issue. Nevertheless, his letter retained a reference to "United Healthcare Workers – West (formerly SEIU, Local 715)" in its subject line. On April 25, 2006 I sent Mr. Boone a letter confirming the receipt of his April 19, 2006 letter. True and correct copies of the above-referenced letters are attached hereto as Exhibits U, V, and W.

///

29. In mid-April, 2007, the Hospitals received a letter from William A. Sokol, an attorney of the Weinberg Firm. In that letter, which was dated April 17, 2006, Mr. Sokol stated that he was writing "on behalf of SEIU United Healthcare Workers West" with respect to a request that the Hospitals provide information to UHW on dues deducted from employees of the Hospitals "represented by UHW."

30. I responded to Mr. Sokol's letter by a letter dated April 25, 2006. In that letter, I reminded Mr. Sokol that the Hospitals' collective bargaining agreement was with Local 715, not UHW, and, as Local 715 remained the exclusive bargaining representative, the Hospitals had no obligation to provide dues-related information (or any other information) to UHW, and would not do so. A true and correct copy of the letter that I sent is attached hereto as Exhibit X.

31. Around May 30, 2006, I received a letter from Mr. Sokol. The letter was substantially similar to Mr. Sokol's April 25, 2006 letter to Ms. Quintel, but was addressed to me and claimed to request dues-related information on behalf of Local 715 rather than UHW. A true and correct copy of the above-referenced letter is attached hereto as Exhibit Y.

32. On June 7, 2006, I sent a letter to Mr. Pullman regarding the status of Local 715. The purpose of my letter was to formally notify him as a representative of Local 715 that the Hospitals would not assent to a transfer of Local 715's representation rights to another labor organization, and to request clarification of Local 715's status and the role of UHW *vis a vis* the representation of the Bargaining Unit. I sent Mr. Pullman this letter because of facts that had come to light in the previous two (2) months that caused me to question whether Local 715 remained the representative of the Bargaining Unit, and whether it continued to exist at all. These facts included the following: (1) grievances and other correspondence were sent to the Hospitals on UHW letterhead; (2) UHW personnel purportedly assigned to "assist" local 715 denied that they were working for Local 715 and instead claimed to work exclusively for UHW; and (3) Local 715 instructed the Hospitals to deal with UHW employees and that such employees were handling "all representational matters." A true and correct copy of the letter I sent to Mr. Pullman is attached hereto as Exhibit Z.

///

33. After sending the above-referenced letter, I reviewed an internal SEIU document titled "Hearing Officer's Joint Report And Recommendations," which indicated, among other things, that UHW had entered into a "servicing agreement" with Local 715.

34. On or around June 14, 2006, I received a letter from Mr. Pullman responding to my June 7, 2006 letter to him. In that letter, Mr. Pullman asserted that UHW was providing two (2) employees to "help enforce the collective bargaining agreement" and that this was "all that is happening." A true and correct copy of the letter I received is attached hereto as Exhibit AA.

35. I responded to Mr. Pullman's June 14, 2006 letter by a letter dated June 20, 2006. In that letter, I disputed that a loan of two (2) UHW employees to Local 715 was all that was happening. I reiterated my request for information on the status of Local 715 and the role of UHW. I also specifically requested a copy of any "servicing agreement" between Local 715 and UHW. A true and correct copy of the letter that I sent to Mr. Pullman is attached hereto as Exhibit BB.

36. On or around August 11, 2006, I received a letter from Mr. Sokol enclosing a three (3) page document titled "SERVICING AGREEMENT." The Servicing Agreement was signed by Sal Roselli, president of UHW (dated February 18, 2006) and Kristy Sermersheim, Executive Secretary of Local 715 (dated February 20, 2006). A true and correct copy of the letter and attached Servicing Agreement is attached hereto as Exhibit CC.

37. On or around August 17, 2006, I received another letter from Mr. Sokol enclosing another three (3) page document titled "SERVICING AGREEMENT." This copy of the Servicing Agreement was identical to the copy that was attached to Mr. Sokol's August 11, 2006 letter, except that Mr. Roselli's signature was lacking a date. A true and correct copy of the letter and attached Servicing Agreement is attached hereto as Exhibit DD.

38. On August 29, 2006, I sent a letter to Ms. Sermersheim. In that letter, I informed Mr. Sermersheim that the Hospitals were rejecting the Servicing Agreement as invalid. I also informed her that the Hospitals would continue to recognize only Local 715 as the bargaining agent of the Bargaining Unit, would treat correspondence received from UHW personnel as not properly sent on behalf of Local 715, and would not participate in meetings or proceedings

1  attended by persons employed by UHW. A true and correct copy of the letter I sent to Ms.
2  Sermersheim is attached hereto as Exhibit EE.

3    39.  On or around June 14, 2007, Ms. Quintel informed me that she received a notice
4  indicating that the International President of the Service Employees International Union (the
5  "International") had appointed Bruce W. ("Rusty") Smith as "Trustee" of Local 715.

6    40.  On or around June 18, 2007, I had a telephone conversation with an agent of
7  Region 32 of the NLRB who advised me, in connection with a pending unfair labor practice
8  charge involving the Hospitals and Local 715, that Local 715 was being represented by Barbara
9  J. Chisholm of the law firm Altshuler Berzon LLP (the "Altshuler Firm"). On June 18, 2007, I
10 contacted Ms. Chisholm by telephone to confirm her representation of Local 715. Ms. Chisholm
11 informed me that she and her firm represented the trustee appointed by the International for
12 Local 715, and, inasmuch as the trustee would stand in the shoes of the officers and directors of
13 that local, she represented Local 715. She also advised me that all future correspondence,
14 communications, or inquiries that the Hospitals, or my firm on their behalf, might direct to legal
15 counsel regarding or involving Local 715 should be addressed to her. I memorialized our
16 conversation in a letter to Ms. Chisholm, which I sent to her that same day. A true and correct
17 copy of the letter is attached hereto as Exhibit FF. To date, I have never been informed that the
18 Altshuler Firm no longer represents, or purports to represent, Local 715.

19   41.  Beginning in or around June, 2006, the Hospitals made a series of requests
20 (including my own letters to Mr. Pullman dated June 7 and 20, 2006) to Local 715 seeking
21 information pertaining to the status of Local 715. These requests culminated in a formal request
22 for information dated March 29, 2007. When a satisfactory response to this information was not
23 forthcoming, the Hospitals filed an unfair labor practice charge against Local 715 designated
24 Case Number 32-CB-6237.

25   42.  Around June 18, 2007, the Hospitals received a letter from Ms. Chisholm
26 purporting to respond to the Hospitals' formal information request. Upon reviewing the letter,
27 the Hospitals determined that the information contained in the letter was not an adequate
28 response to the Hospitals' requests. Therefore, on June 22, 2007, I sent a letter to Ms. Chisholm

8
ARNOLD DECLARATION IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT/ADJUDICATION
CASE NOS. 5:07-CV-05158-JF, 5:08-CV-00213-JF, 5:08-CV-00215-JF;
5:08-CV-00216-JF; 5:08-CV-01726-JF; 5:08-CV-01727-JF

1  to this effect. A true and correct copy of the letter is attached hereto as Exhibit GG.

2      43.    On or around June 28, 2007, Ms. Chisholm filed a charge with Region 32 of the NLRB on behalf of Local 715. A true and correct copy of the charge is attached hereto as Exhibit HH.

    44.    On June 22, 2007, Nina Kani, an associate in my office, sent a letter addressed to arbitrator David C. Nevins with copies to me and to Ms. Chisholm. The letter was in regard to a grievance involving a former Bargaining Unit employee named Joe Hayes, which was scheduled for an arbitration hearing on July 10, 2007. The letter advised Mr. Nevins that the Weinberg Firm was no longer representing Local 715 and that Ms. Chisholm was now Local 715's counsel. A true and correct copy of this letter is attached hereto as Exhibit II.

    45.    On or around July 2, 2007, I received a copy of a letter dated June 29, 2007 addressed to Mr. Nevins from Ms. Chisholm in which Ms. Chisholm advised that Jeffrey B. Demain and Stacey Leyton of the Altshuler Firm would be appearing in the Hayes arbitration. Also on or around July 2, 2007, I received from Mr. Demain an arbitral subpoena seeking documents relating to the Hayes arbitration. A true and correct copy of the referenced letter and subpoena are attached hereto as Exhibits JJ and KK.

    46.    On or around July 3, 2007, I received a letter from Mr. Demain in which he indicated that Vin Harrington and Andrea Laicona from the Weinberg Firm would appear on behalf of Local 715 in the Hayes arbitration hearing. A true and correct copy of this letter is attached hereto as Exhibit LL.

    47.    In each arbitration proceeding that was held between the Hospitals and Local 715 since the beginning of June, 2007, attorneys from the Weinberg Firm have appeared claiming to represent Local 715.

    48.    On August 1, I sent a letter to Ms. Chisholm containing a second formal information request to Local 715. The letter sought information on employees, officers, and assets of Local 715 for the months of April, May, and June, 2007. A true and correct copy of the letter I sent to Ms. Chisholm is attached hereto as Exhibit MM.

///

49. Although Ms. Chisholm had confirmed on June 18, 2007 that she represented Local 715 through its trustee, I observed that, since that date, on every occasion when attorneys purportedly appeared on behalf of Local 715, those appearances were made by attorneys from the Weinberg Firm, and not by any attorney from the Altshuler Firm. Specifically, Weinberg Firm attorneys continued to appear at arbitration proceedings between the Hospitals and Local 715. Weinberg Firm attorney Vincent A. Harrington, Jr. also purported to be representing Local 715 in connection with a demand for collective bargaining. Additionally, Since June 18, 2007, Ms. Chisholm had declined to respond to my letters directed to her. In light of the foregoing, I sent Ms. Chisholm a letter on August 24, 2007. In that letter, I asked Ms. Chisholm to advise whether the Altshuler Firm represented Local 715, and, if so, whether the Weinberg Firm was providing representation to Local 715 pursuant the Servicing Agreement between Local 715 and UHW. A true and correct copy of this letter is attached hereto as Exhibit NN.

50. By October 5, 2007, I had not received a response to my August 24, 2007 letter. Therefore, on October 5, 2007, I sent Ms. Chisholm another letter requesting that she respond to my August 24, 2007 letter. A true and correct copy of the letter is attached hereto as Exhibit OO.

51. On October 8, 2007, I sent a letter to Ms. Chisholm informing her that the Hospitals had received no response to their second information request and requesting that the information be provided no later than Friday, October 19, 2007. A true and correct copy of the letter is attached hereto as Exhibit PP.

52. On or around October 9, 2007, I received a letter from Ms. Chisholm in which she indicated that she would not be responding to my letters of August 24, 2007 and October 5, 2007. A true and correct copy of the letter I received is attached hereto as Exhibit QQ.

53. On October 16, 2007, I sent a letter to Ms. Chisholm responding to her letter of October 9, 2007. I indicated that, to the extent that Ms. Chisholm's refusal to respond to my letters of August 24 and October 5, 2007 was due to a belief on her part that the requests in those letters should have been directed to Mr. Smith, she should forward the letters to him for response. I also indicated that, in view of her refusal to clarify the capacity in which the Weinberg Firm was providing representation to Local 715, the Hospitals could only assume that

the Weinberg Firm was acting as counsel to UHW and providing representation to Local 715 pursuant to the Servicing Agreement. As the Hospitals had previously rejected the Servicing Agreement, I indicated that the Hospitals would no longer select arbitrators or go forward on the record in any arbitration proceeding in which the Weinberg Firm appeared, absent assurances that the Weinberg Firm was appearing directly on behalf of Local 715, and not pursuant to the Servicing Agreement. A true and correct copy of my letter is attached hereto as Exhibit RR.

54. On October 17, 2007, I executed two (2) unfair labor practice charges against Local 715. The first charge, designated Case No. 32-CB-6350 alleged that Local 715 violated Section 8(b)(3) of the NLRA by refusing to provide information concerning the nature of the representational services provided by the Weinberg Firm. The second charge, designated Case No. 32-CB-6351 alleged that Local 715 violated Section 8(b)(3) of the NLRA by refusing to provide information relating to its status and viability. True and correct copies of the charges in Case No. 32-CB-6350 and Case No. 32-CB-6351 are attached hereto as Exhibit SS and Exhibit TT respectively.

55. On or around October 18, 2007, I received a letter from W. Daniel Boone of the Weinberg Firm in which he demanded that the Hospitals arbitrate seven (7) listed grievances. A true and correct copy of the letter is attached hereto as Exhibit UU.

56. Pursuant to the Hospital's position that it would refuse to deal with the Weinberg Firm in arbitration proceedings pending clarification of its representative capacity, I declined to respond to Mr. Boone's letter. However, on November 5, 2007, I sent a letter to Ms. Chisholm to which Mr. Boone's letter was attached explaining the Hospitals' position regarding the grievances. A true and correct copy of that letter is attached hereto as Exhibit VV.

57. In late, 2007, I used my computer's internet browser to access the website of SEIU Local 521 at http://www.SEIU521.org. On that website, I located an electronic version of a document titled "SEIU Local 521; Dues Receipts of the year of 2007", a true and correct copy of which is attached hereto as Exhibit WW. On line 73 of the document, the heading "UHW & L1877" appears. Below that heading, appear subheadings, which include "Dues – Santa Clara University," "Dues – Standford (sic)," "Dues – SLAC," and "Dues – USW Hospitals." "SLAC"

1 is an acronym commonly used to refer to the Stanford Linear Accelerator Center. "USW" is an acronym used to refer to United Stanford Workers, which is the name of the local chapter of Local 715 that comprised, among others, the Bargaining Unit employees of the Hospitals. Following the subheading "USW Hospitals" (row 78) there are no dues reported except for the month of September, 2007. In September, 2007, the document reports the receipt of dues in the amount of $21,949. The last remittance of dues to Local 715 made by the Hospitals before they discontinued such remittances was made on or around March 8, 2007 and was in the amount of $21,949.35.

58. In late, 2007, I used my computer's internet browser to access the website of SEIU Local 521 at http://www.SEIU521.org. On that website, I located an electronic version of a document titled "SEIU Local 521; Financial Statement – For the month of November 2007", a true and correct copy of which is attached hereto as Exhibit XX. At line 56 of that document appears the heading "UHW & L1877 ADMIN EXPE." The corresponding row shows monthly payments made by Local 521 to UHW and SEIU Local 1877 for each month from March through November, 2007 totaling $885,611. UHW and Local 1877 were SEIU locals with which Local 715 entered into agreements calling for UHW and Local 1877 to service the Hospitals' Bargaining Unit, and the Stanford University and Santa Clara University units, respectively.

59. In late, 2007, I used my computer's internet browser to access the website of SEIU Local 521 at http://www.SEIU521.org. On that website, I located an electronic version of a document titled "Executive Board Meeting Minutes; Selma, California; April 20, 2007," a true and correct copy of which is attached hereto as Exhibit YY.

**Acosta Arbitration**

60. In April, 2007, Jesus Andrade, a union shop steward, demanded that the Hospitals arbitrate a grievance filed on behalf of Victor Acosta, which the Hospitals had denied (the "Acosta Grievance"). Thereafter, Thomas Angelo was selected as arbitrator. W. Daniel Boone of the Weinberg informed Mr. Angelo of his selection in a letter dated May 16, 2007, a true and correct copy of which is attached hereto as Exhibit ZZ.

///

61. Mr. Angelo confirmed his selection in a letter dated July 10, 2007, a true and correct copy of which is attached hereto as Exhibit AAA.

62. On June 26, 2007, I informed Mr. Angelo that the Weinberg Firm was no longer representing Local 715, and that Local 715's new counsel was the Altshuler Firm. A true and correct copy of the above-referenced letter is attached hereto as Exhibit BBB.

63. On November 7, 2007, I sent Ms. Chisholm a letter on the subject of the Acosta Grievance. An arbitration hearing on the grievance was scheduled for November 28, 2007. In my letter, I reminded Ms. Chisholm that the Hospital would refuse to participate in arbitration proceedings in which the Weinberg Firm made an appearance unless they received assurances that the Weinberg Firm was appearing directly on behalf of Local 715. A true and correct copy of the letter I sent is attached hereto as Exhibit CCC.

64. On November 9, 2007, I sent a letter to Mr. Smith, the purported trustee of Local 715 requesting clarification of the representative role of the Weinberg Firm. A true and correct copy of my letter is attached hereto as Exhibit DDD.

65. On or around November 19, 2007, I received a letter from Mr. Boone addressed to myself and Thomas A. Angelo, the arbitrator in the Acosta matter. Mr. Boone indicated that he intended to appear at the arbitration hearing on the matter, but declined to state whether he was appearing on behalf of Local 715 directly. A true and correct copy of this letter is attached hereto as Exhibit EEE.

66. On November 28, 2007, I appeared on behalf of the Hospitals at the arbitration hearing on the Acosta matter. Mr. Boone also appeared along with a woman named Myriam Escamilla. Ms. Escamilla was known to me as a representative and employee of UHW. During the hearing, I restated the Hospitals' position that they would refuse to go forward on the record in any arbitration proceeding in which the Weinberg Firm appeared unless the Hospitals were provided with assurances that the Weinberg Firm representative was appearing directly on behalf of Local 715 and not pursuant to the rejected Servicing Agreement. When Mr. Boone refused to give adequate assurances, I refused to proceed to the merits and absented myself. A true and correct copy of the transcript of proceedings from the November 28, 2007 hearing is attached

1  hereto as Exhibit FFF.

2       67.    At the outset of the arbitration hearing, before Mr. Boone refused to state the basis upon which he was appearing, certain exhibits were introduced and accepted into evidence. The Hospitals and Mr. Boone agreed to submit seven (7) exhibits as joint exhibits. The CBA was introduced as Exhibit 1. True and correct copies of Joint Exhibits 2-7 are attached hereto as Exhibit GGG. The Hospitals also introduced thirteen (13) exhibits as employer exhibits. True and correct copies of Employer Exhibits 1-13 are attached hereto as Exhibit HHH. All of the above-referenced Joint and Employer Exhibits were received into evidence.

        68.    On December 3, 2007, I received Mr. Angelo's "Decision And Award" in the Acosta matter, which was dated November 30, 2007. A true and correct copy of the above-referenced document is attached hereto as Exhibit III.

        69.    In July, 2007, I obtained a report from the website of the United States Department of Labor (the "Department of Labor") titled "Form LM-2 Labor Organization Annual Report" ("LM-2") filed by Local 715 for the period January 1, 2005 to December 31, 2005. A true and correct copy of the report is attached hereto as Exhibit JJJ.

        70.    In April, 2008, I obtained from the Department of Labor website an LM-2 report filed by Local 715 covering the period January 1, 2006 to December 31, 2006. A true and correct copy of the report is attached hereto as Exhibit KKK.

        71.    On or around February, 28, 2008, Region 32 of the NLRB issued an "Order Consolidating Cases, Consolidated Complaint And Notice Of Hearing" on the three charges filed by the Hospitals against Local 715 for failing to provide requested information on its status and legal representation. A true and correct copy of the above-refernecd document is attached hereto as Exhibit LLL.

        72.    On May 6, 2008, a hearing was held before Administrative Law Judge John J. McCarrick (the "ALJ") on the issue of Local 715's failure to respond to information requests. To date, the ALJ has not issued a decision on the case.

        73.    On or around April 25, 2008, Local 715 filed a charge with Region 32 of the NLRB alleging that the Hospitals refused to deal with an assistant to Local 715's "trustee" and a

shop steward. On or around June 27, 2008, the Region issued a notice that it was dismissing Local 715's charge. In the notice, the Regional Director noted that, the Region had requested that Local 715 provide it with information on the continued existence of Local 715 and produce Ms. Sermersheim so she could give an affidavit, but that Local 715, after requesting additional time, produced neither the information nor Ms. Sermershim. Therefore, Local 715's charge was dismissed. A true and correct copy of the notice issued by Region 32 is attached hereto as Exhibit MMM.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on this 17th day of July, 2008 in San Francisco, California.

_____
LAURENCE R. ARNOLD