**EXHIBIT FFF**

IN ARBITRATION PROCEEDINGS

BEFORE HONORABLE THOMAS ANGELO, LABOR ARBITRATOR

In re: an arbitration between )
                                             )

STANFORD HOSPITAL & CLINICS )

LUCILE PACKARD CHILDREN'S )

HOSPITAL, )            **CERTIFIED COPY**
                                             )

           Complainant, )

                                             )

and                                    ) FMCS No. 070420-55892-A

                                             )

SEIU LOCAL 715, )

                                             )

           Respondent. )
_____)
                                             )

Grievance of Victor Acosta )
_____)


TRANSCRIPT OF PROCEEDINGS

PALO ALTO, CALIFORNIA

NOVEMBER 28, 2007


REPORTED BY:  JANE H. STULLER, CSR NO. 7223
(401481)

**MERRILL LEGAL SOLUTIONS**

135 Main Street, 4th Floor                               415.357.4300
w.merrillcorp.com/law San Francisco. CA 94105

PROCEEDINGS   November 28, 2007

1                  IN ARBITRATION PROCEEDINGS

2          BEFORE THOMAS ANGELO, LABOR ARBITRATOR

3

4    In re: an arbitration between )
                                   )
5    STANFORD HOSPITAL & CLINIC    )
     LUCILE PACKARD CHILDREN'S     )
6    HOSPITAL,                     )
                                   )
7                   Complainant,   )
                                   )
8    and                           )  FMCS No. 070420-55892-A
                                   )
9    SEIU LOCAL 715,               )
                                   )
10                  Respondent.    )
     _____)
11                                 )
     Grievance of Victor Acosta    )
12   _____)

13

14

15

16          TRANSCRIPT OF PROCEEDING, taken at the Law

17   Offices of Foley & Lardner, 975 Page Mill Road, Palo

18   Alto, California, commencing at 10:00 a.m., November 28,

19   2007, before Jane H. Stuller, CSR No. 7223.

20

21

22

23

24

25

                                                              2

**PROCEEDINGS   November 28, 2007**

1               A P P E A R A N C E S

2

3

4    ARBITRATOR:

5          THOMAS ANGELO
           150 Alta Vista Avenue
6          Mill Valley, California 94942
           (415) 381-1707

7

8    FOR THE CLAIMANT:

9          FOLEY & LARDNER
           BY:  LAURENCE R. ARNOLD, ESQUIRE
10              KRISTY KUNISAKI, ESQUIRE
           One Maritime Plaza
11         Sixth Floor
           San Francisco, California 94111-3409
12         (415) 434-4484

13

     FOR THE RESPONDENT:

14

           WEINBERG, ROGER & ROSENFELD
15         BY:  W. DANIEL BOONE, ESQUIRE
           1001 Marina Village Parkway
16         Suite 200
           Alameda, California 94501-1097
17         (510) 337-1007

18

     ALSO PRESENT:

19

           MYRIAM ISSAMILLA
20         VICTOR ACOSTA
           ANA GALLEGAS
21         BRIAN COFFMAN

22

23

24

25

3

PROCEEDINGS    November 28, 2007

```
1                        I N D E X
2                    INDEX OF WITNESSES
3    WITNESSES:        DIRECT        CROSS      REDIRECT
4    (None)
5
     JOINT                      MARKED FOR          INTO
6    EXHIBITS                 IDENTIFICATION      EVIDENCE
7    1    Collective Bargaining          6            49
          Agreement between Stanford
8         and SEIU
9    2    Determination letter dated     6            49
          March 14, 2007
10
     3    Grievance form from SEIU       6            49
11        signed by Stewart Jesus
          Andrade dated March 17,
12        2006
13   4    Letter from Local 715          6            49
          invoking arbitration
14
     5    Notice from Mr. Boone          6            49
15
     6    Letter dated July 10, 2007
16
     7    Step-two decision from the     6            49
17        hospital dated April 5, 2007
18
     EMPLOYER'S
19   EXHIBITS
20   1    Letter from Mr. Boone dated    22       22, *49
21        November 19
22   2    Letter dated June 18, 2007     22       22, *49
          from Mr. Arnold to
23        Ms. Chisholm
24   3    Letter from Mr. Arnold to      22       22, *49
          Mr. Angelo dated June 26,
25        2007
```

PROCEEDINGS    November 28, 2007

```
 1   EXHIBITS (Continued)
 2   4    Cover letter from William        22      22, *49
          Sokol
 3
     5    Letter from Mr. Arnold to        22      22, *49
 4        Kristy Serbershan, executive
          secretary of SEIU
 5
     6    Fax cover page accompanying      22      22, *49
 6        a letter and a document
 7   7    Letter from B. W. Smith,         22      22, *49
          trustee, to Ms. Quintel
 8
     8    Letter from Ms. Quintel to       22      22, *49
 9
          Bruce W. Smith
10
     9    Letter to Mr. Arnold from        22      22, *49
11        Ms. Chisholm
12   10   Letter dated October 5th, 2007   22      22, *49
13        from Mr. Arnold to Barbara
          Chisholm
14
     11   Letter to Ms. Chisholm dated     22      22, *49
15        October 16
16   12   November 7th letter              22      22, *49
17   13   Letter dated November 9 from     22      22, *49
          Mr. Arnold to Bruce W. Rusty
18        Smith
19
20
21
22
23
     * repeat admitted
24
25
```

Merrill Legal Solutions
(800) 869-9132

```
 1                 P R O C E E D I N G S

 2                      --oOo--

 3         (Joint Exhibit Nos. 1 through 7 were marked for

 4    identification.)

 5         THE ARBITRATOR:  On the record.  My name is

 6    Thomas Angelo.  I have been selected by the parties to

 7    hear a dispute involving Stanford Hospital and Clinics

 8    and the Lucile Packard Children's Hospital and the

 9    Service Employees International Union Local 715

10    concerning the termination of Mr. Victor Acosta.  This

11    is FMCS No. 070420-55892-A.

12         While off the record, I have provisionally

13    marked as potential joint exhibits:

14         Joint Exhibit 1, which is the Collective

15    Bargaining Agreement between Stanford and SEIU, in

16    effect at all times relevant to this dispute.

17         Joint Exhibit 2 is a determination letter dated

18    March 14, 2007.

19         Joint Exhibit 3 is a grievance form from SEIU

20    signed by Stewart Jesus Andrade dated March 17, 2006.

21         Joint Exhibit 4 is the letter from the Local

22    715 invoking arbitration in this matter.

23         Joint Exhibit 5 is a notice from Mr. Boone

24    advising me that I have been selected pursuant to the

25    procedures of the Federal Mediation Conciliation Service
```

6

PROCEEDINGS    November 28, 2007

1    to hear this dispute.

2        Joint Exhibit 6 is a letter over my signature

3    to the parties dated July 10, 2007 indicating today

4    would be the date for the hearing.

5        Joint Exhibit 7 is a step-two decision from the

6    hospital dated April 5, 2007.  It has attached -- it's a

7    two-page decision.  It has attached, apparently, the

8    invocation from the union I previously described.

9        I should also note there has been some

10   correspondence between the parties and the arbitrator

11   regarding another matter.  I'm assuming that will be

12   discussed at our next event.

13       Let me also say that the parties have agreed

14   that with respect to the dispute itself, the issues

15   would be whether the grievant was terminated for just

16   cause; and if not, what should the remedy be.

17       The parties have also agreed that should we

18   proceed further today, the matter is properly before the

19   arbitrator for resolution and that all time limits and

20   requirements to the contract with respect to the

21   processing of the grievance and invocation of

22   arbitration have been satisfied.

23       And they further agree that should I issue a

24   decision, an award in this matter, I may retain

25   jurisdiction to resolve any disputes over the meaning or

7

PROCEEDINGS    November 28, 2007

1    application of the decision and award.

2        I've indicated the documents I previously

3    described are provisionally marked as joint exhibits.    I

4    won't admit them at this point in light of what I

5    understand to be a procedural matter, and I will ask if

6    the parties wish to address that question at this point.

7        MR. ARNOLD:  The Employer does.

8        THE ARBITRATOR:  Okay.  Mr. Arnold, the floor

9    is yours.

10        MR. ARNOLD:  Mr. Arbitrator, as you are aware

11    from prior conversations, there is an underlying issue

12    that is fundamental to the arbitration of this

13    grievance, a grievance challenging the termination of

14    the grievant, Victor Acosta for theft.

15        But that underlying issue has nothing to do

16    with the merits of the grievance itself.  That issue

17    involves a dispute concerning the status of individuals

18    and entities purporting to act as the representatives of

19    SEIU Local 715 and of the bargaining unit employee at

20    the Stanford Hospital and Clinics and Lucile Packard

21    Children's Hospital.

22        While that issue is unrelated to the merits of

23    the particular grievance for which you were selected, it

24    is nevertheless a threshold issue.  For if the

25    individuals and entities attempting to appear here as

8

PROCEEDINGS    November 28, 2007

1    representatives of SEIU Local 715 are not proper

2    representatives to be determined under the National

3    Labor Relations Act and Board precedent and guidance,

4    then the employer is under no obligation to meet and

5    deal with them or to participate in an arbitration in

6    which they are purporting to appear.

7          As you know, Dan Boone, counsel here for the

8    firm of Weinberg, Roger & Rosenfeld, sent you a letter

9    dated November 19, 2007 and copying me, in which he

10   purports to address the issue of representation by that

11   firm of SEIU Local 715 in these proceedings.  It is true

12   that as Mr. Boone noted in that letter, the Weinberg

13   firm participated in your selection as arbitrator in the

14   above referenced matter in May of 2007.

15         However, that selection in which he

16   participated took place prior to the appointment of a

17   trustee for SEIU Local 715 which occurred on June 8,

18   2007.  That purported trustee, Bruce Smith, in turn

19   retained Barbara Chisholm and the firm of Altshuler

20   Berzon, LLP, as counsel to him and to the purported SEIU

21   Local 715.

22         Indeed, I advised you by letter dated June 26,

23   2007 that the Employer had been informed by Ms. Chisholm

24   that she and her firm now represent SEIU Local 715.

25         With regard to Mr. Boone's letter, the Employer

9

PROCEEDINGS    November 28, 2007

1    fails to understand his fixation on compensation.

2    Employer has no interest, whatsoever, in how much

3    Mr. Boone or his firm is to be compensated for any

4    services he or that firm might render in connection with

5    this or any other matter.

6        Indeed, as you know, or as you will see upon

7    review of my letter, in my letter dated November 7, 2007

8    to Barbara Chisholm and copied to you, I do not request

9    information concerning any compensation that might be

10    received by Mr. Boone or his firm.

11        The Employer's, quote, "agenda," close quote,

12    as Mr. Boone characterizes it in this letter is to

13    determine, as is its right, whether a new valid de facto

14    transfer of representation rights from SEIU Local 715 to

15    SEIU-UHW has occurred through the device of a, quote,

16    "service," close quote, or, quote, "servicing," close

17    quote, agreement.

18        When the Employer was first informed of the

19    existence of a purported service agreement, the Employer

20    promptly rejected it by a letter to SEIU Local 715.

21        The Employer's interest then is in what entity

22    has directly retained what Weinberg, Roger & Rosenfeld

23    services, i.e., whether it was purported SEIU Local 715

24    or SEIU-UHW.

25        If it is the former, the Employer is prepared

10

1    to proceed.  If it is the latter, the Employer will not

2    proceed in a hearing in which UHW is providing the

3 ·  representation.

4         The two local unions, SEIU Local 715 and

5    SEIU-UHW, have had ample time to seek resolution of the

6    validity of the purported service agreements between

7    them since the Employer rejected that service agreement

8    in August of 2006.  That the dispute remains, and that

9    it now threatens the disposition of this grievance with

10   further delays is not the Employer's doing, but rather

11   the Union's.

12        Since it was not notified that Ms. Chisholm and

13   her firm were acting as counsel for SEIU Local 715, the

14   Employer had made repeated requests of Ms. Chisholm and

15   has also made a request to purported trustee, the only

16   two individuals who can meaningfully provide such a

17   representation at this point, for a written

18   representation that the firm Weinberg, Roger & Rosenfeld

19   is representing Local 715 directly and not pursuant to a

20   rejected service agreement with SEIU-UHW.

21        Although a written representation as to the

22   status of Weinberg, Roger & Rosenfeld should not be

23   difficult to provide if, in fact, Weinberg, Roger &

24   Rosenfeld is retained directly by Local -- by SEIU Local

25   715, the Employer has never received a response to its

11

PROCEEDINGS    November 28, 2007

1    request from either Ms. Chisholm or the trustee.

2         The Employer has filed an unfair legal practice

3    charge based upon the refusal to so do, which charge

4    remains pending.

5         Notably although Mr. Boone has, according to

6    his letter, received a copy of my letter to Ms. Chisholm

7    and thus knows the nature of the representation the

8    Employer is seeking from the trustee or counsel of

9    record, his statements both here on the record -- or off

10   the record before we went on the record -- and in his

11   November 19, 2007 letter, that his firm, quote,

12   "represents SEIU Local 715 in this case," close quote,

13   avoid answering the question since that representation

14   can either be through direct retention by SEIU Local 715

15   or through the rejected service agreement as counsel to

16   SEIU-UHW.

17        The question is not what the Employer's agenda

18   is, but rather what is the agenda of the two union

19   entities since SEIU Local 715 and its retained counsel

20   have refused to respond to our requests.

21        If SEIU Local 715 desires to have Weinberg,

22   Roger & Rosenfeld serve as its legal representative, it

23   can retain that firm and so advise the Employer.  If

24   instead, it wishes to seek enforcement of and utilize

25   the service agreement and avail itself of the services

12

PROCEEDINGS    November 28, 2007

1    of Weinberg, Roger & Rosenfeld through that vehicle, it

2    can follow the proper and only procedure for doing so,

3    which is also the very procedure called for in the

4    rejected service agreement.

5        When the service agreement was signed by the

6    two local unions, they clearly envisioned the

7    possibility that the Employer might reject the service

8    agreement, and so set forth steps to be taken in that

9    event, that procedure, if processed, the legal actions

10   necessary to its enforcement which may include filing an

11   unfair labor practice charge.

12       That same service agreement further provides

13   that if the Employer challenges or refuses to accept the

14   service agreement, which it has, SEIU Local 715 will

15   reassume and take over all representational activities

16   and responsibilities and will do so, quote, "through its

17   own staff until such matter is resolved," close quote.

18       For reasons about which one can only speculate,

19   the parties to the proposed service agreement, the two

20   local unions, have never initiated legal action as

21   required by the service agreement to enforce the service

22   agreement against the Employer.

23       Nor has SEIU Local 715 reassumed its

24   representational responsibilities and activities through

25   its own staff.  To the contrary, the purported trustee

13

PROCEEDINGS    November 28, 2007

1    has attempted to affirm the already rejected service

2    agreement and has attempted to reappoint or affirm the

3    appointment of UHW employees as its service agents.

4    Those attempts were also rejected by the Employer.

5        The two union locals, if there even are still

6    two entities, would no doubt much prefer to circumvent

7    or avoid initiating the appropriate legal proceedings,

8    the very ones which they themselves have obligated

9    themselves to utilize in their service agreement, and

10    instead have an arbitrator -- this arbitrator make a

11    determination ancillary to an employee's grievance,

12    which determination, in effect, would enforce the

13    service agreement against the Employer over its

14    objections and despite its previous rejection of that

15    service agreement.

16        However, an arbitrator simply has no

17    jurisdiction to determine such matters of representative

18    status or to order an employer to recognize or deal with

19    an entity other than the exclusive representative, in

20    this case, a board certified representative, absent the

21    expression of a clear intention of the parties in the

22    Collective Bargaining Agreement to provide the

23    arbitrator such jurisdiction.

24        Indeed, the determination of the validity of

25    the service agreement would quite obviously not involve

14

PROCEEDINGS    November 28, 2007

1    or require an interpretation of the Collective

2    Bargaining Agreement, which agreement provides the

3    arbitrator his authority, in which agreement also

4    defines the limits of that authority to determining

5    whether a grieved action violates that agreement.

6           Rather, it involves a claim that the National

7    Labor Relations Act gives the right to SEIU Local 715 to

8    contract with another labor organization to provide

9    representational services, and that the Employer's

10   refusal to accept such a contract between the two labor

11   organizations is improper under the Act.

12          Such a claim would require the arbitrator to

13   consider the terms of the service agreement, an

14   agreement to which the Employer is not a party and by

15   which the Employer is not bound and to engage in an

16   analysis under board law to determine whether it is

17   valid and enforceable on its face.

18          It would then further require review of the two

19   local union's action under the service agreement and an

20   analysis, again, not of the provision of the Collective

21   Bargaining Agreement, but rather, of a precedent

22   developed by the board in the exercise of its exclusive

23   jurisdiction over matters relating to representative

24   status.

25          There is, of course, judicial precedent that

15

1   holds where an arbitrator makes a determination based

2   upon his view of the requirements of an enacted statute

3   or a federal agency's precedent thereunder and not on an

4   interpretation of the Collective Bargaining Agreement,

5   the arbitrator has exceeded the scope of its submission.

6          There is, of course, also argument of the

7   precedent.  So the proposition that it's not the

8   arbitrator's role, nor is it in his jurisdictional

9   authority to interpret the law or to rule on issues of

10  external law -- even if the Collective Bargaining

11  Agreement did provide that an arbitrator could make

12  determinations regarding representational status and the

13  Employer's obligation to recognize or deal with an

14  entity other than the union that is a party to the

15  Collective Bargaining Agreement, which the Collective

16  Bargaining Agreement in this case does not.

17         An arbitrator cannot make such a determination

18  in proceedings where the issue of representative status

19  is not the subject of the grievance that is before the

20  arbitrator for a decision.

21         Of course, such a grievant directly seeking to

22  enforce a service agreement to which the Employer is not

23  a party is not only outside the scope of the Collective

24  Bargaining Agreement, but it would squarely place the

25  question of representation at issue, which, again, would

16

1    be beyond the arbitrator's jurisdiction.

2            Please be assured that the Employer is ready,

3    willing and able to arbitrate this matter.  However, the

4    Employer does not and will not agree to submit the issue

5    of whether Mr. Boone and his firm and/or representatives

6    of SEIU-UHW, one of whom is present in the room today,

7    may properly serve as representatives of SEIU Local 715

8    to the arbitrator for decision.

9            And whether the Employer is even obligated to

10   appear and participate in this proceeding depends upon

11   the validity of the service agreement and its

12   application.

13           If the purported trustee of SEIU Local 715 or

14   its counsel -- excuse me --- if the purported trustee of

15   SEIU Local 715 or its counsel of record is unwilling to

16   provide the written representation requested by the

17   Employer, that Weinberg, Roger & Rosenfeld is retained

18   directly by SEIU Local 715 as its counsel and is not

19   appearing by virtue of its role as counsel for a

20   purported service agent and/or if SEIU Local 715 is

21   unwilling to provide its own staff representatives to

22   attend the hearing, rather than utilizing SEIU-UHW

23   employees, who would unquestionably be appearing

24   pursuant to purported and rejected service agreement,

25   then this matter should and must be stayed until the two

17

PROCEEDINGS    November 28, 2007

1    local unions take the steps that they agreed between

2    themselves they would take, i.e., the initiation and

3    completion of unfair labor practice proceedings on a

4    charge to be initiated by SEIU Local 715 or other legal

5    proceedings to attempt to enforce the rejected service

6    agreement.

7         And I'd like to offer some documentation

8    relating to the statement I just made.

9         The first one will be Employer's Exhibit No. 1,

10   and it is the letter from Mr. Boone to you dated

11   November 19.

12        Employer's No. 2 is a letter dated June 18,

13   2007 from me to Ms. Chisholm, counsel of record for SEIU

14   Local 715, acknowledging a conversation confirming the

15   conversation with her in which she stated that she was

16   now representing SEIU Local 715.

17        Employer's 3 is a letter from me to the

18   arbitrator dated June 26, 2007 copying Ms. Chisholm,

19   counsel of record to SEIU Local 715, confirming to you

20   what she had confirmed to me.

21        Employer's Exhibit 4 is a cover letter from

22   William Sokol of the firm of Weinberg, Roger & Rosenfeld

23   sending to me a copy of the service agreement entered

24   into between UHW and SEIU Local 715 in February of 2006.

25        Employer's 5 is a letter from me to Kristy

18

PROCEEDINGS    November 28, 2007

1    Serbershan (phonetic) executive secretary of the SEIU

2    Local 715 advising her that the service agreement was

3    rejected.

4         Employer's 6 is a fax cover page accompanying a

5    letter and a document suitable for framing, announcing

6    the trustee -- the appointment of a trustee, and the fax

7    letter was to Laurie Quintel, director employer labor

8    relations, Stanford Hospital and Clinics and Lucile

9    Packard Children's Hospital.

10        Employer's 7 is a subsequent letter from B.W.

11   Smith, trustee, to Ms. Quintel informing -- restating

12   who he believed the servicing agents to be and adding

13   another service agent to the list, all of whom are

14   employees of SEIU UHW.

15        Employer's 8 is a letter from Ms. Quintel back

16   to Bruce W. Smith, trustee, advising him that that did

17   not affect the prior rejection of the service agreement.

18        Employer's 9 is a letter to me from

19   Ms. Chisholm requesting that she provide a

20   representation as to the basis upon which the firm of

21   Weinberg Roger & Rosenfeld is appearing to represent

22   SEIU Local 715, and it's dated August 24th.  I'm sorry.

23        Employer's 10 is a letter dated October 5th,

24   2007, again, from me to Barbara Chisholm, counsel of

25   record for SEIU Local 715, repeating a request that --

19

PROCEEDINGS   November 28, 2007

1    provide the information and attaching a copy of the

2    August 24th letter.

3               Mark that one as 13.

4               I'm going to put 12 in right now.

5               MR. BOONE:  You're only up to 11.

6               MR. ARNOLD:  Oh, we're only up to 11.  Okay.

7               MR. BOONE:  October 5 --

8               MR. ARNOLD:  Make that one 12.

9               THE ARBITRATOR:  You better check your bill

10   here if you go 9 to 12.

11              MR. ARNOLD:  Well, I was going to substitute

12   this one, and I didn't -- and I thought I was already at

13   11.

14              THE ARBITRATOR:  Okay.  Employer No. 11?

15              MR. ARNOLD:  11 is dated October -- 11 is dated

16   October 16, and it's another letter to Ms. Chisholm,

17   again, requesting information regarding the

18   representational status.

19              MR. BOONE:  Excuse me, Larry.  You're not

20   putting in all the letters here.  She's -- there's an

21   October 9 letter that's referenced here.

22              MR. ARNOLD:  Yeah.

23              MR. BOONE:  It's -- you're just not going to

24   put it in?

25              MR. ARNOLD:  No.

20

PROCEEDINGS    November 28, 2007

1          MR. BOONE:  All right.

2          MR. ARNOLD:  I mean I can get it faxed down

3     here.  It simply says they're not going to respond to my

4     letter.

5          MR. BOONE:  I have never seen it, but --

6          MR. ARNOLD:  Okay.  That's the --

7          November 7th letter is Employer's 12.

8          I think you already have that, right?

9          MR. BOONE:  I got November 7.

10         MR. ARNOLD:  I've got it.

11         MR. BOONE:  Here's with two --

12         MR. ARNOLD:  This is -- 10 is this one.

13    October 5.

14         10 is October 5.

15         THE ARBITRATOR:  Here's an extra November 7th.

16         You're just trying to confuse me.

17         MR. ARNOLD:  How are we doing?

18         THE ARBITRATOR:  Well.

19         MR. ARNOLD:  And last, but not least --

20         THE ARBITRATOR:  This will be 13.

21         MR. ARNOLD:  13.  Employer's Exhibit 13 is a

22    letter dated November 9 from me to Bruce W. Rusty Smith,

23    the trustee, seeking from him a representation as to the

24    representational status of Weinberg, Roger & Rosenfeld.

25         And I offer these into evidence merely to

21

1    support the statement that I made to you regarding this

2    issue.

3         THE ARBITRATOR:  And are all the exhibits into

4    evidence?

5         MR. ARNOLD:  They can -- I mean, I have no

6    problem with the authenticity or the validity of them.

7    But to the extent that they seek to go into the merits,

8    I don't -- I think it's premature at this point.

9         (Employer's Exhibit Nos. 1 through 13 were

10   marked for identification.)

11        THE ARBITRATOR:  I'll tell you what, I'll admit

12   the joint exhibits with the understanding that the

13   Employer does not waive its arguments with respect to

14   the propriety of this proceeding.  They're merely in the

15   record now so that depending on how far we go, I've got

16   them.

17        I'm also admitting Employer 1 through 13 to the

18   extent they go to the issues raised by the hospital and

19   its statements on the procedural question.

20        (Employer's Exhibits Nos. 1 through 13 admitted

21   into evidence.)

22        THE ARBITRATOR:  Okay.  I'm trying to think of

23   a way I could get out of here.  I can't -- nothing comes

24   to mind.

25        So, Mr. Boone, do you have any response to any

22

1    of the positions taken by the hospital?

2        MR. BOONE:  Yes.  First, appearing on behalf of

3    SEIU Local 715, specifically Service Employees

4    International Union Local 715, the law firm of Weinberg,

5    Roger & Rosenfeld by W. Daniel Boone.

6        Mr. Angelo, Mr. Acosta was terminated March of

7    2007.  There was a timely grievance filed and processed

8    by SEIU Local 715.  The matter was referred to my

9    office.  Either I or others working with me in the

10   office, agreed that you would be the arbitrator to hear

11   and decide this matter.

12       There was communication between you,

13   representatives of my office and Mr. Arnold or

14   representatives in his office agreeing today as the

15   arbitration date; and you confirmed that by the -- your

16   July 10, 2007 letter, Joint No. 6.

17       Mr. Acosta had worked for Stanford Hospitals

18   for about seven years prior to his discharge.  He has

19   suffered unemployment since that date.  He is entitled

20   to the representation by his union.  He's entitled to an

21   arbitration where it will be up to the Employer to

22   persuade you that there was just cause for his

23   termination.

24       Secondly, by way of background, I sat across

25   the table from Mr. Arnold on two separate days in his

23

PROCEEDINGS    November 28, 2007

1    offices up the street, before they just moved, in an

2    arbitration before Arbitrator David Nevins.  I can't

3    tell you the specific dates.  I don't have them in mind

4    right now.  And I stated my appearance before Arbitrator

5    Nevins in exactly the same language that I did today,

6    and we proceeded with the arbitration.  And we submitted

7    the evidence, and we wrote briefs.  And Arbitrator

8    Nevins issued a decision on the merits of the case.

9    This was all after the dates of -- I believe any of

10   these relevant documents.

11        My office has represented SEIU Local 715 since

12   sometime before I began with the firm in January of 2000

13   -- excuse me -- January of 1979.  Our offices

14   represented SEIU when you and its predecessor locals, at

15   least, sometime before I began in January 1979.

16        THE ARBITRATOR:  Do you want a cue card to get

17   that date?

18        MR. BOONE:  Yeah.  That's why I'm having a hard

19   time wrapping my mind around that one.

20        THE ARBITRATOR:  That makes you really old, I

21   guess also not before me.

22        MR. ARNOLD:  Is that when you first started

23   practicing?

24        MR. BOONE:  No.

25        THE ARBITRATOR:  That was before SEIU was

24

1    formed.

2         MR. BOONE:  The position as -- I'll candidly

3    acknowledge to you that I have not read Employer

4    Exhibits 1 through 13.  Fortunately or unfortunately, by

5    the practice of our firm, I was assigned to advocate

6    this case on behalf of the Union.  Happily enough, I

7    have not to date been involved in the disputes that are,

8    at least, partially described in the correspondence that

9    Mr. Arnold has given you.

10         Mr. Arnold, from my hearing of it, takes two

11   directly contradictory positions.  On the one hand, he

12   says the service agreement is invalid.  No. 2, you can't

13   decide whether or not the service agreement is or is not

14   valid, and it's none of your business.  Yet he wants to

15   litigate or have certain statements made here in aid of

16   whatever that different dispute is.

17         Under -- there's nothing in the contract that

18   prohibits me from appearing here and stating that I am

19   here representing SEIU 715 with respect to this

20   arbitration.  And Mr. Arnold full well knows that that

21   is our law firm's position and that's the Union's

22   position.

23         And he, I guess, for some tactical reason

24   someplace else refuses to write letters to me or to my

25   firm, but writes to Ms. Chisholm instead knowing full

25

PROCEEDINGS     November 28, 2007

1   well that although there was a period of about a week or

2   two when Altshuler Berzon was representing, they no

3   longer are as far as I know.

4          So I'm here.  I'm stating the appearance on

5   behalf of the Union.  Present with me is a union

6   representative.  Whether, to use the language, I am

7   retained directly or through a service agreement is

8   really not part of the proceedings here.

9          I'm not quite sure I understand why it's of

10  significance to Mr. Arnold to have me state one way or

11  the other, but he seems to think it's important; and for

12  that reason, I'm not going to do it because I'm not here

13  to aid in whatever tactical moves are being made by Mr.

14  Arnold in aid of some other proceedings which either

15  have been filed or he wants the Union to file.

16         We're here for an arbitration under a

17  Collective Bargaining Agreement.  The statement of the

18  appearance is here.  These are all authorized

19  representatives of the Union or an attorney from my

20  office, and Mr. Acosta, the grievant, and there's

21  nothing inconsistent in the contract with our

22  appearance.

23         So I'm asking that you rule that you are -- the

24  matter is before you and you're going to proceed.  That

25  completes my statement.

26

PROCEEDINGS    November 28, 2007

1          THE ARBITRATOR:  Thank you.

2          MR. ARNOLD:  I'd like to respond briefly.

3          THE ARBITRATOR:  Go ahead.

4          MR. ARNOLD:  As I stated in my statement to

5     you, Mr. Arbitrator, we don't disagree that Mr. Acosta

6     has a right to file a grievance, has a right to have his

7     grievance arbitrated.  That's -- we fully agree with

8     that.

9          The fact is that where the Employer does have

10    rights is, it has the right to insist that the

11    representation is proper representation.  And that as

12    Mr. Boone stated, Mr. Acosta is being represented by

13    SEIU Local 715.  I did not introduce the documents that

14    I introduced earlier for the purpose of attempting to

15    litigate the dispute in this forum.

16          To the contrary, my view is that it cannot be

17    litigated in this forum.  It must be litigated in

18    another forum, to wit, before the National Labor

19    Relations Board.

20          If you look at, and I don't remember which

21    Employer's exhibit it is, the service agreement, as I

22    stated, the service agreement very specifically provides

23    and contemplated that the Employers may reject it and

24    very specifically provides what steps the two unions are

25    to take if it is rejected, which is to file appropriate

27

PROCEEDINGS    November 28, 2007

1   legal proceedings in the name of SEIU Local 715,

2   including an unfair labor practice charge before the

3   National Labor Relations Board, and for Local 715 to

4   take over once again the representation of the employee

5   through the use of its own staff.

6           I don't know for what reason Mr. Boone will or

7   will not make the statement.  If it's just because I

8   want him to and he doesn't want to, well, that's -- he

9   can have his own reasons.

10          But, what we cannot be forced to do in these

11  proceedings are to proceed with representatives who are

12  not direct representatives of SEIU Local 715.  Absent a

13  decision and order of the board upholding the validity

14  of the service agreement, upholding its application, in

15  fact, and ordering us to deal with the service agent

16  SEIU UHW.

17          MR. BOONE:  I get it.  I get it.

18          THE ARBITRATOR:  I think the word is "eureka."

19          MR. BOONE:  This is an attempt to say -- if I

20  say direct, then he says, okay, it's got to be 715.  And

21  715 is in trusteeship, and they don't have any

22  employees; therefore, they can't provide representation.

23  Therefore, we get rid of the union and we have no union.

24          MR. ARNOLD:  I don't --

25          MR. BOONE:  That's what it's all about.  I get

28

PROCEEDINGS   November 28, 2007

1  it.  Thank you.

2        MR. ARNOLD:  It's not under my control whether

3  SEIU Local 715 has employees or doesn't have employees.

4        MR. BOONE:  That's exactly right.  It's none of

5  your business as to whether I'm appearing, whether I'm

6  paid, whether I'm not paid, who in here is the Union and

7  who the Union has designated to appear.  That's exactly

8  right.  It's none of your business.  We are here stating

9  that representation.

10        MR. ARNOLD:  That's --

11        MR. BOONE:  We will fulfill the duty of our

12  representation of the Union, and that is our concern.

13  Just like you contract out management of Stanford, I

14  can't question that.

15        MR. ARNOLD:  You can't question that,

16  unfortunately.  Under the National Labor Relations Act,

17  we can and have the right to question representative

18  status.

19        MR. BOONE:  And that's where you go.

20        MR. ARNOLD:  We have the right to reject the

21  service agreement, unless the board enforces it.  And we

22  have rejected it, and absent the representations and --

23        MR. BOONE:  Then take it up there.  Take it up

24  there.

25        MR. ARNOLD:  It's not us -- it's not a charge

29

PROCEEDINGS   November 28, 2007

1    for us to file.

2         MR. BOONE:  You've already filed a charge.  You

3    said you filed a charge.

4         MR. ARNOLD:  That was a refusal to provide

5    information.

6         MR. BOONE:  Okay.  Well, we're here to do an

7    arbitration.

8         THE ARBITRATOR:  Let me ask -- let me make

9    couple of comments and ask a question.

10         First, of course, I haven't read 90 percent of

11    the information that's been provided, so I'm -- I'm in a

12    more difficult strait probably than anybody else here.

13         But let me ask Mr. Arnold a question we talked

14    about the other day in our phone conversation should be

15    a part of the record, I guess.

16         Would the Hospital be willing to proceed on the

17    basis of a special appearance or under protest if I were

18    to order the hearing go forward with prejudice to its

19    future legal agreements?

20         MR. ARNOLD:  No.

21         THE ARBITRATOR:  Okay.

22         MR. ARNOLD:  Let me just -- there's one other

23    thing I didn't address in Mr. Boone's statement.  He

24    stated that the letter from you to -- to him and to me,

25    or to people in our respective offices, setting a date

30

PROCEEDINGS    November 28, 2007

1    for the arbitration hearing occurred after all these

2    other documents that have been submitted to you.  That's

3    not correct.

4         We have been seeking and continuing to seek

5    information from the trustee and from counsel of record,

6    and we've never been informed of any change in counsel

7    of record from Altshuler Berzon.  And you can look at

8    the dates of the documents themselves.  They occur and

9    have occurred up until and including this month in

10   attempts to obtain information from the Union or its

11   counsel of record.

12        THE ARBITRATOR:  All right.  Let me ask a more

13   practical question.

14        The grievant has been off the rolls now for

15   eight months, something like that.  At some point, I

16   suspect no matter what this argument is all about, his

17   case will be heard either today or at some other point

18   in time.

19        From his standpoint, as Mr. Boone has

20   represented, he's unemployed.  It's important to him to

21   get this thing heard as soon as possible.  From the

22   hospital's standpoint, it's a continuing potential

23   liability, we're just adding to any back pay that might

24   be warranted if -- when this case is heard if he

25   prevails.

31

PROCEEDINGS    November 28, 2007

1              I'm not sure I understand what we gain by not

2      having the hearing today just to resolve this issue and

3      resolve the grievant's situation and go forward.

4              What is it that we are protecting in the long

5      run?

6              MR. ARNOLD:  We are protecting our right to say

7      that we are not going to deal with UHW through a

8      rejected service agreement.  There are appropriate

9      procedures --

10              THE ARBITRATOR:  Right.

11              MR. ARNOLD:  -- for trans -- to transfer of

12      representation rights.  There are appropriate procedures

13      to enforce the service agreement, and they've had since

14      August 29, 2006 to initiate -- those could have been

15      complete by now.

16              THE ARBITRATOR:  I've got -- one of the

17      Employer's letters talked about a contract clause that

18      talks about the appropriate people for --

19              MR. BOONE:  26.7.8 on page 66 of Joint Exhibit

20      No. 1.

21              THE ARBITRATOR:  26.7.

22              MR. ARNOLD:  8.

23              THE ARBITRATOR:  In the copy I've got it's .8

24      says -- I'm having trouble as I get older reading these

25      things only because the font apparently shrinks in the

                                                                    32

PROCEEDINGS     November 28, 2007

1   dark.

2          It says (reading):  "Arbitration hearings

3          conducted pursuant to this Article will be

4          closed unless the parties mutually agree

5          otherwise in advance and in writing."

6          That's not the one that was cited to me

7   earlier.  The one that was cited to me earlier was --

8          MR. ARNOLD:  No.  I think it's -- oh, that's

9   right.

10          THE ARBITRATOR:  Oh, that's right.  Well, there

11   was one that talked about -- oh, that was your

12   paraphrasing.  You're discussion --

13          MR. ARNOLD:  Right.

14          THE ARBITRATOR:  -- of it later.

15          I'm sorry.  Okay.  That is the one.

16          If I'm looking at that clause trying to decide

17   if we've got a problem -- it seems to me I've got on the

18   Union side of the table people who are representing that

19   they're here on behalf of 715, the Union; and here's

20   Mr. Boone on behalf of 715, the Union.

21          And I've got a pile of documents that shows 715

22   filed the grievance, processed the grievance and booked

23   arbitration on the grievance, selected me to be the

24   arbitrator.  And I don't see where I need to go back

25   behind that to question whether or not 715 is here.

33

1          Now, maybe somebody else is here in spirit or

2     otherwise, but if 715 is here and there's no protest to

3     Mr. Boone appearing in their behalf, I'm not sure why

4     I'm supposed to go behind that and make any decisions

5     for purposes of this hearing.

6          What the story is down the road or the big

7     question, I am perfectly happy not to try to decide

8     that.  I agree with you, you don't want me to.  I don't

9     want it.  I'm -- I'm -- I don't know what Mr. Boone's

10    view is, but it doesn't matter.  I'm with you on that.

11    I don't think I can decide whether that's service

12    agreement or whatever has been going on between the

13    parties is or is not appropriate or has been violated or

14    whether anybody has a duty or no duty to file a UFE.

15         But for purposes of this hearing, based on what

16    I know, 715 is here.  That's what the contract calls

17    for.  They've got Mr. Boone as their attorney.  He's

18    made that representation, as I say, without protest.  I

19    think that on the basis of the contract, under that

20    clause, we've got everybody here.

21         MR. ARNOLD:  I can't disagree more.  He has

22    typically declined to state that he's here directly on

23    behalf of SEIU Local 715.  And, in fact, we strongly

24    believe -- and further evidenced by the fact that seated

25    next to him on his right is a SEIU-UHW representative --

34

PROCEEDINGS    November 28, 2007

1    that he is, in fact, here representing 715 through the

2    vehicle of a rejected service agreement.

3         For you to decide that for purposes of this

4    proceeding, you're going to go forward and treat him as

5    a representative of Local 715 is, in effect and in fact,

6    deciding that that service agreement is valid and

7    enforceable; and we think that's not for you to decide

8    directly or indirectly.

9         And if they would like it decided, they can

10   today file a charge -- could have months ago filed a

11   charge and have chosen not to do so for whatever reason.

12        THE ARBITRATOR:  You took me further than I

13   ruled.  I'm not saying that Mr. Boone is here on behalf

14   of 715 UHW.  I'm not saying the service agreement is

15   valid.  I'm not saying any of that.

16        All I'm saying is that based on what I see and

17   what I've heard, I've got 715 in the room.  I have --

18   and they may have -- I don't know what exactly their

19   circumstances are, but I have a representation that we

20   have a 715 rep here.  Nobody is objecting to Mr. Boone

21   being present.

22        As far as I can see for purposes of getting

23   this thing moving, 715 is here.  The contract clause is

24   not violated.  I make -- and I want to make it clear on

25   the record, my ruling does not go in any way, shape or

PROCEEDINGS    November 28, 2007

1    form, nor should it be cited, to go to the question of

2    the validity of this service agreement or the overall

3    representational status of 715 UHW.

4              But for purposes of this hearing, I'm not going

5    to go behind the representations of the people of the

6    party that they are here on behalf of 715.  I don't find

7    -- that I have the authority or the need or it's even

8    appropriate to do so.

9              MR. ARNOLD:  We're not asking you to find.

10   We're asking you simply to stay the proceedings until

11   they take appropriate steps.

12             THE ARBITRATOR:  Well, you know, there's

13   occasions where, of course, I'll stay the procedures,

14   where, for example, important witnesses are not around

15   or anything else.  But in this case, to stay the

16   proceedings would mean that somebody would in effect

17   have to file the charge, either the Employer or -- to

18   the service agreement, something on the Union's side.  I

19   don't know what the board's processing time would be for

20   charges these days.

21             But what we're doing is telling the grievant

22   that his case would not be heard for, I would dare say,

23   over a year from now.  That seems to me to be too much

24   of a burden to put on the grievant's shoulder who, after

25   all, has done nothing other than pay dues, been a member

36

1    of the union and sought to have his rights under the

2    contract litigated.

3           And now we're saying let's stay unemployed for

4    another month or find some other job while we go to a

5    board that takes a long time; and if it does render a

6    decision, may wind up in court and God knows where else.

7           You know, some of us have had experiences --

8    probably everybody here has had experience dealing with

9    the board.  And to await a board decision seems to me to

10   be way too long.

11          And as far as I'm concerned, that's too much --

12   too much of a burden on the grievant, so it would be

13   unfair to stay it.  And frankly, I don't see that

14   staying it harms anybody.  It does not harm the

15   Employer's legal position because I think I've made it

16   pretty clear that I'm not ruling on the underlying legal

17   issue that's floating around.

18          I'll make it very clear that I would be willing

19   to direct the Employer to proceed at this point over its

20   objections so that Mr. Boone, to the extent it occurs to

21   him to do so, cannot say that you agreed to proceed in

22   this thing in light of your legal position.  I don't see

23   any harm to the Employer by going forward now.

24          I'm assuming that you -- as you said earlier,

25   that you're ready to go if you have to, and I don't --

37

PROCEEDINGS    November 28, 2007

1    it's hard for me to understand, weighing the harm

2    between proceeding now and having a stay, how the

3    Employer is in any way harmed in this.

4           MR. ARNOLD:  That would -- under that theory,

5    that's always the case, and we just continue on; and we

6    raise the objection, and the arbitrator says what's the

7    harm, go ahead and arbitrate.

8           THE ARBITRATOR:  Well, I don't know if that's

9    the case in every situation.  I don't know what other

10   arbitrators would say, but we're in an equitable forum.

11   I'm supposed to look at equity.  In this case the equity

12   of the stay doesn't follow the Employer's side at all

13   'cause I don't see any harm to your legal position by

14   going forward.

15          There are -- I understand the technical claim

16   you're making, that you would be forced to deal with

17   someone you suspect is not the proper representative of

18   -- under the certification of the contract and

19   everything else.

20          But on the other hand, that is a philosophical

21   problem.  It's not, in the long run, harmed by having

22   the hearing.  In any event, if we were to have the

23   hearing or, as I going -- we are going to have the

24   hearing, and if the Hospital does not carry its burden,

25   then the Hospital actually benefits by having the case

PROCEEDINGS    November 28, 2007

1    now because back pay would be cut off if that's the

2    appropriate recommend -- I don't know the circumstances,

3    except that there's a theft apparently.

4        If the grievant is reinstated, made whole, your

5    liability is cut off.  If we have a stay and we go

6    forward, your liability continues to run if you

7    ultimately were to lose the case, so you benefit in that

8    standpoint.

9        And from a legal standpoint, I don't see any

10   harm to your position.  In terms of the legal arguments,

11   I understand your -- what I'm calling the philosophical

12   position.

13       So my view is that the appropriate parties are

14   here and that we should proceed to the merits of this

15   dispute, and I'll allow the Employer a standing

16   objection to the proceeding if you wish to proceed at

17   this point.

18       MR. ARNOLD:  Why don't we go off the record.

19       THE ARBITRATOR:  I was going to say why don't

20   we go off the record.  You guys can all confer and do

21   whatever you want to do.

22       Why don't we take 10 minutes.

23       Larry, would 10 minutes do you?  15?

24       MR. ARNOLD:  Let's start with 10.

25       THE ARBITRATOR:  Start with a month.

39

PROCEEDINGS    November 28, 2007

1          MR. ARNOLD:  Start with 10.

2          THE ARBITRATOR:  Let's take 10 minutes.

3          (Recess.)

4          THE ARBITRATOR:  On the record.

5          Is the Employer prepared the give an opening

6     statement?

7          MR. ARNOLD:  The Employer is not prepared to go

8     forward.  The Employer does not believe that it's

9     obligated in any way to participate in the arbitration

10    under these circumstances.

11         MR. BOONE:  Well, if the Employer chooses not

12    to proceed, then it has -- we're asking that you

13    proceed, and if and when the Employer leaves, then we

14    will go ahead with the hearing and make appropriate

15    arguments and presentation of evidence as necessary.

16    This is clearly some nature of a procedural question.

17    And under the authority of Toyota of Berkeley v

18    Automobile Salesman's Union Local NO. 1095, 834, Fed

19    Second 7151 a Ninth Circuit decision of 1987, an award

20    that you issue when the Employer refuses to participate

21    in a matter that is properly noticed and the parties are

22    present is a valid award.

23         And that may or may not have to get litigated,

24    but under that authority, it's clear to me that the --

25    you are authorized, in fact, directed by the Collective

40

PROCEEDINGS     November 28, 2007

1   Bargaining Agreement to proceed with all the provisos

2   that you've made, and that's the request that we make of

3   you.

4           THE ARBITRATOR:  Well, let me ask the Employer

5   a couple of things.

6           First of all, is your disinclination to proceed

7   at this time based in any way on the unavailably of

8   witnesses or some other problem such as that?

9           MR. ARNOLD:  It's based upon the fact that we

10  do not believe we have proper representatives on the

11  other side.

12          THE ARBITRATOR:  Okay.  Well, here's -- let me

13  tell you how I view this.  Let me make sure we're all

14  clear on what's going on.  As I've already indicated, I

15  think we have the proper representatives here based on

16  the contract language I cited in my understanding of who

17  is present.  And I think it's appropriate to go forward,

18  and I'm directing that we go forward at this time.

19          If the Employer doesn't go forward, then, as

20  Mr. Boone indicates, if he put on -- well, frankly, if

21  the Employer doesn't go forward, it's the Employer's

22  burden of proof.  I would have no choice at that point

23  but to conclude the Employer did not meet its burden of

24  proof and sustain the grievance, issue an award to that

25  effect 'cause of -- and Mr. Boone can put on evidence or

PROCEEDINGS    November 28, 2007

1    not as he wishes.

2           But if the Employer is not putting on any case

3    at all, having the burden -- I don't see that I would

4    have any choice even if he puts on evidence in support

5    of the grievance, whatever the grievance defense is.

6           And I don't want to do that, frankly.  My -- my

7    view is that this whole process was started so that the

8    parties could get an efficient timely method of

9    resolving disputes, getting their issues taken care of

10   and going forward.  I want to do that.

11          I hate ex parte hearings.  I hate it more than

12   anything else, and I try and avoid it and I urge parties

13   who don't want to participate, to participate and go

14   forward.  And I've done everything I think I can do, and

15   I'm willing to do more if you think it's necessary to

16   ensure that your legal rights in any future proceeding

17   are protected.

18          You're here not of your own choice.  You're

19   here at my direction.  You've -- you have to proceed,

20   and I try to make it clear that the downside for not

21   proceeding is going to be that this grievance would be

22   sustained.  You have the employee back at work.  There's

23   probably a lot -- if you're to appeal that decision,

24   there'll be more litigation, more time, more expense.

25          My understanding of the law in this matter is

42

1    that at this point, as Mr. Boone indicates, I'm directed

2    by the contract to proceed with this hearing in light of

3    my ruling on the procedural matter, and I agree.  I

4    think it is more of a procedural matter than anything

5    else and, therefore, my bailiwick.

6            You know, I would urge that you reconsider that

7    position in light of these comments and participate in

8    the proceeding since apparently you have witnesses here

9    and you're ready to go.

10           MR. ARNOLD:  Well, we absolutely disagree that

11   this is just a procedural matter.  It's a fundamental

12   issue of we agreed that we would grieve and arbitrate

13   with SEIU Local 715 as the exclusive representative.  We

14   have been advised in writing several times, as you'll

15   see in the documents; that, in fact, they are not doing

16   it; that UHW is doing it as service agents.  We've

17   rejected the service agreement.  Unless and until the

18   service agreement is upheld, then they're not -- it's a

19   matter that there aren't appropriate parties present to

20   even proceed.

21           And we understand -- although there are joint

22   exhibits in there that set forth the basis for the

23   termination.  So I suppose someone is going to have to

24   get up and say they're not true.  I mean, I understand

25   what you're saying, that you're going to rule against

43

PROCEEDINGS    November 28, 2007

1   us, but it's -- it will require further --

2           THE ARBITRATOR:  Further litigation.

3           MR. ARNOLD:  Yes, it will.

4           THE ARBITRATOR:  Well, let me note just to make

5   sure that we're all clear, with respect to the joint

6   exhibits and employer exhibits that are admitted,

7   they're admitted not because the assertions contained

8   therein are true.  I mean, I've just quickly reviewed

9   the discharge letter.  There's some claims made in there

10  by what was obscene and -- what was not obscene -- what

11  was seen.  It will change the nature of the charge I

12  suspect.  What was seen.  What the grievant may have

13  said or not said or anything like that, I'm taking that

14  as the letter that was issued, but not as to the truth

15  of those matters.  So I don't want anybody to think I've

16  got some evidence in here at this point.  I've got some

17  documents.

18          So if the Employer is not going to present a

19  case -- let me correct something, again, that you've

20  suggested.  The Employer doesn't have to leave.  You

21  said that when the Employer leaves, you're going to put

22  your case on.  The Employer can simply rest and remain

23  if it so wishes.

24          And since the Employer does not wish to put on

25  a case, I'll ask if the Union wishes to make an opening

1    statement on merits?

2        MR. ARNOLD:  Actually, we don't intend to

3    participate, so --

4        THE ARBITRATOR:  You don't want to participate

5    at all?

6        MR. ARNOLD:  No.

7        THE ARBITRATOR:  Okay.

8        MR. ARNOLD:  We do want a transcript.

9        THE REPORTER:  Thank you.

10       THE ARBITRATOR:  Okay.  Let me -- Larry, before

11   you leave, let me just say we won't go off the record at

12   this point until the hearing is concluded just because

13   of the ex parte situation we're in.  I don't want there

14   to be any question that we go off the record and talk

15   about secret stuff and go back on the record.  So from

16   here on out; no matter what, we're on the record.

17       MR. BOONE:  Okay.  Let the record reflect that

18   Mr. Arnold, Ms. Kunisaki and the Employer HR director

19   Hoffman have all left the room.  Present and remaining

20   are the Union participants and the grievant.

21       Mr. Angelo, given your very clear statements to

22   the Employer that if they leave, they will have

23   presented no evidence in support of the discharge by

24   well-established principles of arbitral precedent when

25   the Collective Bargaining Agreement provides that a

PROCEEDINGS    November 28, 2007

1  represented employee may be discharged for just cause,

2  and that's exactly what the Collective Bargaining

3  Agreement says at Article 20, Section 20.1 at page 4 of

4  Joint No. 1.  The just cause standard applies.  The

5  Employer has stipulated that that is the proper issue

6  before you.  The -- the Employer has stipulated that the

7  grievance is properly before you for final and binding

8  award.

9         MR. ARNOLD:  I have one brief question.  You

10  subpoenaed a number of witnesses -- up until as late as

11  last evening you served subpoenaed and you expect -- do

12  you want them still to come?

13         MR. BOONE:  I think the answer to that is no,

14  Mr. Arnold.  But let me just finish this statement and

15  then we'll come out and make specific arrangements.

16         MR. ARNOLD:  Okay.  Well, they're either on

17  their way or getting ready to leave or whatever, but I

18  just --

19         THE ARBITRATOR:  Do you want to go off -- well,

20  do you want me to violate my prior ruling and go off the

21  record so you can have a conversation as to what you

22  want to do?

23         Let's go off the record briefly.

24         (Discussion off the record.)

25         THE ARBITRATOR:  Okay.  On the record.

46

PROCEEDINGS    November 28, 2007

1        Mr. Boone has stepped outside for just a moment

2    and he is now back, I assume taking care of witness

3    issues that have been subpoenaed.

4        And you had indicated the Employer had agreed

5    the issue is just cause.  The grievance is properly

6    here.

7        MR. BOONE:  The Employer has the burden of

8    going forward and the burden of proof to establish the

9    allegations set forth in the determination notice by

10    presenting direct evidence.  The Employer has chosen not

11    to present any evidence.  The Employer has been informed

12    by you that if it chooses not to participate, that you

13    will find that it has not carried its burden of proof;

14    that the grievance will be sustained and that you will

15    order that Mr. Acosta be reinstated with back pay.

16        You, both before the break and after the break,

17    urged the Employer not to take this action.  And despite

18    the clear statements, including the fact that you don't

19    think the Employer's position is -- would be prejudiced

20    by proceeding with the case, and despite the fact that

21    the Employer offered no representation of any prejudice

22    that would be served by it if it proceeded, counsel and

23    representatives of the Employer have walked out of this

24    hearing.

25        On behalf of the Union, I ask that you issue an

47

1    award that recites these critical facts, specifically

2    your reliance upon Section 26.7.8 and the findings you

3    have made in relation to that section; and that you

4    issue an award sustaining the grievance ordering that

5    Mr. Acosta be reinstated to his previous position

6    without loss of seniority, and that he be ordered made

7    whole for all loss of pay and benefits.

8          Given the particular facts of the case and

9    given what I think we can only anticipate is some legal

10   challenge to your ruling, which may go on for a long

11   time to Mr. Acosta's prejudice economically, as well as

12   his family and his economic well-being, I ask that you

13   order that there be an award of interest on the back pay

14 . and benefits; that that interest be set at the amounts

15   -- in the amount dictated by California Civil Code

16   Section 3287, which I believe is 10 percent interest;

17   and that that award of interest be in place and

18   enforceable up until the time that the back pay and

19   benefit order is satisfied.

20         As to all of these remedies, again, pursuant to

21   stipulation, I ask that your award specifically state

22   that you retain jurisdiction to resolve any disputes

23   concerning the meaning, application or implementation of

24   the award.

25         I don't believe that it's necessary for the

48

PROCEEDINGS    November 28, 2007

1   Union to present evidence given the statements that you

2   made on the record.  But I do say, for the record, that

3   the Union grieved this termination.  It is the position

4   of the Union that there was not just cause for the

5   termination; that there was no theft.  But it is not

6   necessary for us to put any evidence in the record given

7   the absence of any presentation of testimony or

8   documents entered for the truth of the matter stated.

9        So with that, on behalf of the Union, we submit

10   this case for your decision unless there are any other

11   questions that you wish to raise.

12        THE ARBITRATOR:  I don't believe so.  It may be

13   appropriate to have on the record now as to whether

14   you're aware, Mr. Boone, if grievant has had any outside

15   employment for the time that's elapsed since his

16   termination.

17        (Witness and counsel confer privately.)

18        MR. BOONE:  Mr. Acosta does not have any

19   interim income as I understand it.

20        THE ARBITRATOR:  Okay.  Well, let me note that

21   I have admitted eight joint exhibits, 13 employer

22   exhibits.

23        (Joint Exhibit Nos. 1 through 7 and Employer's

24   Exhibits 1 through 13 admitted into evidence.)

25        THE ARBITRATOR:  And I'm assuming, Mr. Boone,

49

PROCEEDINGS    November 28, 2007

1    that you're not going to push to make any further

2    arguments in this matter and the issue is submitted as

3    you've indicated?

4         MR. BOONE:  That's correct.

5         THE ARBITRATOR:  Okay.  Let me just note for

6    the record that I believe that it's unfortunate the

7    Employer has not put on its case here.  As I told

8    Mr. Arnold prior to his departure, I hate ex parte

9    hearings.  And I understand the principles that he was

10   asserting, but, as I will note in my opinion, I don't

11   think there was any harm as a practical matter to any

12   aspect of his legal assertions.  I will note that in the

13   record.

14        I thank the parties for -- well, I thank the

15   Union for its participation and the court reporter for

16   sticking around for this long and arduous proceeding and

17   declare this phase of the proceedings closed.

18        Thank you.

19        (Time:  3:10 p.m.)

20

21

22

23

24

25

50

CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

I, JANE STULLER, hereby certify that I am a
Certified Shorthand Reporter; that I reported in
shorthand writing the foregoing matter at the time
and place therein stated; that the foregoing pages
are a full, true and complete transcript of my said
shorthand notes and is a full, true and correct
record of the proceedings had in said matter at said
time and place.

Dated: December 13, 2007.

*Jane H. Stuller*

JANE STULLER
Certified Shorthand Reporter
California License #7223