**EXHIBIT III**

FOLEY & LARDNER LLP
R E C E I V E D

DEC 0 3 2007

**DECISION AND AWARD**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**STANFORD HOSPITAL & CLINICS,**     \*
**LUCILE PACKARD CHILDREN'S**     \*
**HOSPITAL**     \*
    **Employer,**     \*
           \*
**and**     \* **Re: Victor Acosta**
           \*   **Termination**
**SERVICE EMPLOYEES INT'L.**     \*   **FMCS #070420-55892-A**
**UNION, LOCAL 715**     \*
    **Union**     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

    **For the Employer:**   **Laurence R. Arnold, Esq.**
             **Foley & Lardner**
             **Palo Alto, California**

    **For the Union:**    **W. Daniel Boone, Esq.**
             **Van Bourg, Weinberg, Roger &**
               **Rosenfeld**
             **Alameda, California**

    **Arbitrator:**     **Thomas Angelo**
             **Mill Valley, California**

**November 30, 2007**

## SUMMARY

This case arises out of a bargaining relationship between Stanford Hospital and

Clinics/Lucile Packard Children's Hospital (hereinafter "Employer" or "Hospital") and

the Service Employees International Union, Local 715 (hereinafter "Union") and

concerns the Union's claim that the Hospital lacked just cause to terminate Mr. Victor

Acosta (hereinafter "Grievant"). The Hospital refused to participate in the hearing on the

grounds that Union counsel was not a representative of Local 715. The hearing

continued after the Hospital refused to participate.

The Hospital was advised that the hearing was going forward and that, if it elected

not to present evidence, it would fail to carry its burden of proof and the grievance would

be sustained. The Hospital was also advised that its legal position on the representational

matter could be protected if it opted to proceed on the merits, but it declined to do so

even with that assurance. The Hospital's request for a stay was denied, and the Hospital

left the hearing. Based on the Hospital's failure to substantiate the allegations contained

in the discharge notice, the grievance is sustained. The Grievant is entitled to

reinstatement and to be made whole for all wages and benefits lost. In addition, under the

circumstances presented, the Hospital shall provide interest on all wages at the statutory

rate of 10%. In accordance with the parties' stipulation, jurisdiction shall be retained to

resolve any disputes over the meaning or application of the Decision and Award.

## ISSUES PRESENTED

The parties stipulated to the following issues:

Whether the Grievant was terminated for just cause? If not, what should the
remedy be?

In addition, the parties stipulated the matter is properly before the arbitrator for resolution

and that jurisdiction may be retained to resolve any disputes over the meaning or

application of the Decision and Award.

### STATEMENT OF FACTS

On March 9, 2007, the Grievant was issued a notice of suspension pending

investigation, and on March 14, 2007, he was provided a notice of termination effective

that day. (Jt. Exh. 2). The actions were based on the Hospital's view that the Grievant

had engaged in an act of theft when he obtained some $20.00 worth of fried shrimp from

the Hospital Café. The discipline was based on the Hospital's Rules of Conduct which

provide for discharge in the event of theft.[1]/

At all relevant times the Grievant was a member of a bargaining unit represented

by the Service Employees International Union, Local 715. (Jt. Exh. 1). On his behalf the

Union filed a timely grievance on March 17, 2007. (Jt. Exh. 3). On April 5, 2007, the

Hospital issued a Step 2 decision denying the grievance. (Jt. Exh. 7). The decision was

sent to SEIU Local 715 Chief Steward Jesus Andrade, the same person who had filed the

grievance. On April 16, 2007, the Union timely advanced the grievance to arbitration.

(Jt. Exhs. 4 and 7).

On May 16, 2007, through Mr. Daniel Boone and the law firm of Weinberg,

Roger & Rosenfeld, the Union advised me of my selection to serve as arbitrator. This

selection was made through the procedures of the Federal Mediation and Conciliation

Service, which advised me of my selection by letter dated May 25, 2007, and provided

---

[1]/

As explained at hearing, the discharge notice and other documents admitted as Joint Exhibits were not
accepted for the purpose of establishing the factual validity of the allegations.

of the FMCS notification form was sent to Hospital Counsel, Mr. Laurence Arnold, and

to Mr. Boone on behalf of "SEIU / 715." On or about July 10, 2007, I forwarded

confirmation of the November 28, 2007, hearing date that had been selected by counsel.

(Jt. Exh. 6).

      While these events were taking place, the Hospital was engaged in a dispute

regarding the Union's representational status. Set forth below in chronological order are

the various exhibits presented by the Employer in connection with this dispute. They are

referenced here to provide context to this dispute, but I have not considered the merits of

the arguments presented.[2]/

      On August 11, 2006, Mr. Arnold received correspondence from Mr. William

Sokol, Esq., of the Weinberg firm, advising Mr. Arnold that SEIU Local 715 is the

"bargaining representative" for Hospital employees, "but is being aided by UHW [SEIU

United Heathcare Workers]." (Employer Exh. 4). Mr. Sokol attached a copy of the

Servicing Agreement. The Service Agreement recognizes Local 715's status as the "sole

and exclusive" bargaining representative for the employees at the Hospital and goes on to

provide an arrangement whereby UHW would provide "professional services" to Local

715 but Local 715 would have "ultimate responsibility for collective bargaining matters"

on behalf of the represented unit. (Employer Exh. 4).

      The Servicing Agreement provided that Local 715 would notify the Hospital in

writing of its designation of UHW employees to serve as agents of Local 715. It went on

to state that:

---

[2]/
I note this to confirm my comments at hearing that nothing contained in this opinion or my remarks at
hearing are to be considered as addressing in any fashion the merits of the representational question.

> Should the Employer challenge or refuse to accept the legitimacy of this
> Servicing Agreement, the parties will cooperate in processing the legal
> actions necessary to its enforcement. (This may include filing an unfair
> labor practice charge under the name of Local 715)...During the pendency
> of this process, Local 715 will continue to provide representation and the
> administration of all aspects of the collective bargaining agreement
> through its own staff until such matter is resolved. (Employer Exh. 4,
> paragraph 7).

On August 29, 2006, Mr. Arnold contacted Ms. Kristy Sermersheim, Executive Secretary

for Local 715, and advised her that the Hospital, after reviewing the Service Agreement,

continued to refuse to "recognize as representatives of SEIU Local 715 any personnel

from SEIU-UHW." (Employer Exh. 5).

In his letter Mr. Arnold reiterated that the Hospital would continue to recognize

"stewards appointed by SEIU Local 715." He also advised that all future

correspondence, grievances, arbitration referrals and other similar matters "from any

individuals other than Local 715 employees..." would be disregarded as "not properly

sent on behalf of Local 715." Finally, he noted the Hospital "will not participate in any

meetings or proceeding attended by persons who are employed by SEIU-UHW," and that

such persons would not be allowed access to the Hospital on behalf of SEIU Local 715.

The letter concluded that the Hospital viewed the service agreement as an unlawful effort

to change the exclusive bargaining representative.

On June 14, 2007, Stanford Hospital was notified that on June 8, 2007, Local 715

had been placed in Trusteeship and that International Trustee B.W. (Rusty) Smith was the

Trustee. He advised that all Local officers had been removed and that all representational

matters would take place under his direction. He also advised the Hospital that all

"servicing agreements" would remain in effect. (Employer Exh. 6).

Mr. Arnold then wrote to Ms. Barbara J. Chisholm, Esq. of the firm

Alshuler Berzon LLP on June 18, 2007. (Employer Exh. 2).  The letter referenced

telephonic conversations in which Ms. Chisholm reported that her firm represented the

"Trustee" appointed by SEIU International for Local 715 and that all correspondence

should be sent to her office.

On June 26, 2007, Mr. Arnold advised me that the Weinberg firm was no longer

representing Local 715 in this matter, that Ms. Chisholm was serving as legal

representative, and that he was conferring with her regarding hearing dates. (Employer

Exh. 3). On July 26, 2007, Stanford Hospital was notified that, as Trustee, Mr. Smith

was naming certain individuals as authorized Local 715 representatives. (Employer Exh.

7).

On August 1, 2007, the Hospital, through Laurie Quintel, Director, Employee &

Labor Relations, notified Mr. Smith that it was "unable to assess the legitimacy of your

appointment or determine precisely what it is that [Mr. Smith] would preside over [as

Trustee]. The letter went on to say that the Hospital would not recognize any SEIU-

UHW personnel as representatives of Local 715, including those already named as

representatives of Local 715. (Employer Exh. 8).

On August 24, 2007, Mr. Arnold wrote Ms. Chisholm that, although she had

stated she represented Local 715 and its Trustee, she had made no appearances on the

Local's behalf and had declined to respond to his correspondence concerning the Local.

He noted that in every prior situation Mr. Vincent Harrington, Esq., a member of the

Weinberg firm, had appeared for the "purported" purpose of representing the Local.  He

asked Ms. Chisholm to advise him whether her firm was representing Local 715 and

whether "Weinberg, Roger & Rosenfeld is providing representation for SEIU-UHW

under the 'service agreement'." (Employer Exh. 9). Ms. Chisholm apparently did not

respond, and Mr. Arnold sent a second request to her on October 5, 2007. (Employer

Exh. 10).[3]/

Ms. Chisholm responded on October 9, 2007, (a copy of that letter is not in this

record) and apparently stated she would not respond to the questions raised by

Mr. Arnold as those matters should be directed to Mr. Smith. By letter dated October 16,

2007, Mr. Arnold asked Ms. Chisholm to forward his inquiry to Mr. Smith. He also

stated that under the circumstances he would assume the firm of Weinberg, Roger &

Rosenfeld was providing services pursuant to the service agreement the Hospital had

rejected. He advised the Hospital would not "proceed to select arbitrators" and would not

"go forward on the record in any arbitration hearing" where the Weinberg, Roger &

Rosenfeld firm appears unless it received assurances the representational function was

not pursuant to the rejected Service Agreement. (Employer Exh. 11).

On November 7, 2007, Mr. Arnold wrote Ms. Chisholm, with a copy to me, to

advise her that the Hospital was "invoking and insisting on compliance" with Section

26.7.8 of the Labor Agreement. That provision states that "Arbitration hearings

conducted pursuant to this Article will be closed unless the parties mutually agree

otherwise and in advance and in writing." He advised Ms. Chisholm that the Hospital

was not agreeing to waive the provision and, therefore, "the only persons entitled to be

present in the hearing will be Victor Acosta, counsel for the parties, representatives

employed by the parties, and witnesses during the time they are testifying." (Employer

---

[3]/

In reviewing my file I discovered an October 3, 2007, letter from Mr. Sokol, with a copy to Ms. Chisholm, regarding this dispute. A copy was not served on Mr. Arnold, for reasons that are not clear. The letter states in its entirety that "This will confirm that the Weinberg Firm, not the Berzon Firm, represents SEIU Local 715 with respect to this arbitration."

Exh. 12). Mr. Boone was not provided a copy of this letter, apparently because of the

Hospital's view that it had no obligation to deal with someone not selected by SEIU

Local 715.

　　　Although not in the record, Mr. Boone responded to Mr. Arnold and me on

November 19, 2007. Therein he noted that he represents Local 715 and had participated

in the arbitrator striking process with Mr. Arnold.[4]/ He also stated that he would appear

on behalf of SEIU Local 715, as he had done in a recent arbitration case. He declined to

provide details of his representational status, but noted that he would have an SEIU

representative with him at hearing and it was not up to Mr. Arnold to "question or

challenge" the designation as "each party may designate its representative."

　　　Finally, as indicated in the record, I spoke with Mr. Arnold in advance of the

hearing and asked whether he would be interested in proceeding under "protest" so as to

have the matter heard while preserving his legal argument. He indicated he was

considering it but was not hopeful that he would agree to do so.

　　　The hearing was called to order at 10:00 a.m. on November 28, 2007 in

Mr. Arnold's offices. After agreeing on stipulations and exhibits, Mr. Arnold made a

statement regarding the Hospital's view of the case. After stating the representational

issue was unrelated to the discharge grievance, he noted the status of those "purporting to

act on behalf of Local 715" was a threshold issue. He explained that, if the

representatives are not Local 715 designees, the Hospital is under no legal duty to deal

with them or participate in the arbitration (this comment was in reference to Mr. Boone

and an SEIU representative seated in the hearing). He agreed Mr. Boone's office

---

[4]/

Mr. Arnold points out that this selection took place before the Trustee was named and the Berzon firm was
involved in this affair.

participated in the FMCS process but noted that took place before Trustee Smith made his designation of the Berzon firm as legal representatives for Local 715. He explained the Hospital's position was to ensure there was no *de facto* transfer of representational rights from Local 715 to UHW and that, if Local 715 was ready to proceed, the Hospital would participate in the hearing.

He further explained that the Hospital views Local 715 and UHW as attempting to have the service agreement enforced without having to file an unfair labor practice charge as contemplated by the agreement itself. It is the Hospital's position that I do not have jurisdiction to decide the question of whether the Hospital's representational theory is correct. In this regard the Hospital contends that the validity or meaning of the service agreement is not related to the Collective Agreement and presents an issue – the right of Local 715 to contract with another union to provide services – that an arbitrator cannot address. In the Hospital's view Local 715 wants this arbitrator to determine the service agreement is valid, an issue it asserts is outside my jurisdiction under the Agreement and the submission agreement.

The Hospital asserted it was "ready to arbitrate but doesn't want to put the issue of whether Mr. Boone is properly a representative of Local 715 before the arbitrator. And whether we are obligated to appear depends on the service agreement. If a Local 715 trustee or counsel is unwilling to provide written representation from 715 rather than UHW or if 715 is not using its own reps, then this matter must be stayed until the two unions resolve this issue. It must be resolved through an unfair labor practice charge or other legal proceedings."[5]/

---

[5]/
The foregoing summary is taken from my notes as the transcript is not yet available.

Mr. Boone asserted he was present on behalf of Local 715, that he was representing Mr. Acosta in that capacity, and that his firm had participated in the process up to the point of hearing. He noted that the Grievant had been employed for some seven years, was entitled to representation by his Union, and that the Hospital bears the burden of proving its charge pursuant to the just cause standard in the Agreement and stipulation of the parties.

Mr. Boone pointed out that his firm had represented Local 715 since at least 1979, as well as other SEIU Locals not a part of UHW. He noted that he had recently been in a prior arbitration proceeding with Arbitrator Nevins where his role was not objected to by the Hospital and saw no basis for the Hospital's failure to go forward in this case. Mr. Boone also pointed out that the Hospital's position was entirely conflicted: it refused to go forward due to the terms of the service agreement but at the same time refused to allow the arbitrator to consider that agreement to determine the validity of the Hospital's claim.

Mr. Boone refused to discuss his representational role except to say he was representing SEIU Local 715 and that to say more would merely serve to aid Mr. Arnold in his representational dispute. Mr. Boone also noted that he was accompanied by an SEIU Local 715 representative.

I advised the parties that I had no intention of addressing the arguments arising out of the service agreement. I then turned to the provision of the Collective Agreement which addressed attendance at the hearing, Section 26.7.8, and which the Hospital had cited in its earlier correspondence. I concluded the clause created a procedural question as to the operation and mechanics of the hearing and it was appropriate as the duly

selected arbitrator that I determine whether the clause was violated by Mr. Boone's
appearance.

I concluded that because Mr. Boone had announced he was representing SEIU
715, because no Local 715 representative had objected to his assertion, and because there
was no evidence to suggest otherwise, he was authorized to appear on behalf of Local
715 and the hearing could go forward. I also advised Mr. Arnold that I would take
whatever steps he requested to ensure his participation in the hearing did not prejudice
any legal arguments he wished to make in other forums regarding the service agreement.
I also asked again if he would participate under protest. On behalf of the Hospital,
Mr. Arnold stated the Hospital would not participate in the hearing.

I then advised the Hospital that, if it failed to present evidence, I would be
compelled to find it had failed to prove its allegations against the Grievant since the
Hospital carried the burden of proof under the just cause standard, and thus the Grievant
would be entitled to reinstatement. I noted the joint exhibits which described the
allegations had not been submitted for the truth of the matters asserted and therefore no
proof existed to support the claimed theft. Mr. Arnold stated he understood the import of
my remarks but that the Hospital would neither participate nor otherwise remain in the
hearing. I asked whether the Hospital's position was in any way based on the absence of
witnesses, and Mr. Arnold stated it was due solely to the Hospital's interpretation of the
service agreement.

In the course of these remarks Mr. Arnold requested the hearing be stayed
pending the outcome of the representational issue. I denied the request on the grounds
that any stay would require postponing the hearing for a year at least and likely longer,

appeals were taken after the administrative decision. I concluded that to subject the

Grievant to such a long delay would be inequitable. In this regard I noted the Grievant

had not been employed since his discharge eight months earlier and would be further

harmed by an extended delay. I also stated that the Hospital suffered no harm whatsoever

by going forward with the hearing and in fact, by doing so, it would limit its back pay

liability in the event its case was found to be without merit.

After I directed the Hospital to proceed with its case a brief break was provided,

after which the Hospital advised me that it would not participate further in the hearing.

The Union advised that in light of the Hospital's decision it would rest and asked that I

grant the grievance, reinstate the Grievant and make him whole for all wages and benefits

lost, with appropriate interest. Based on the foregoing record, the following findings and

conclusions are warranted.

## DISCUSSION

Initially it is appropriate to address the Hospital's request for a stay of these

proceedings. I follow the general rule that a party has the right to a continuance upon a

showing of good cause. In this case the Company did not provide good cause to stay the

proceedings, nor could it proffer any equitable reason why the request should be granted.

In this regard I specifically asked whether the basis for the request concerned the

unavailability of a witness, and the Company stated its witnesses were all available. I

have granted continuances where a party's witness is unavailable, personally or by

telephone, and the testimonial information was crucial enough to warrant a delay. Here,

the Hospital had no such difficulty and in fact confirmed the sole reason for its request

for a stay related to its desire to have another forum resolve the representational question.

It warrants repeating that the Grievant's discharge occurred some eight months prior to hearing and he has remained unemployed during that period.[6]/ Clearly he had a right to expect his grievance would be arbitrated in accordance with the time frames contemplated by the Agreement, so that he would know one way or another how best to proceed with his life. The Company, however, had no basis to predict when the representational issue would be litigated or in what forum. It would not be unusual to have the matter linger for years before a final resolution. During this period the Grievant would remain in a twilight zone of employability, unable to have a chance to clear his name and reputation and suffering the economic consequences of his discharge but without a timely just cause hearing.

Conversely, the Hospital would suffer no harm by going forward with the hearing. Its participation in the hearing would not adversely impact its legal argument for a variety of reasons, not the least of which is that it was being directed to do so by an arbitrator. It conceded early in the hearing that the Grievant's discharge was unrelated to the representational issue, and it specifically removed that issue from the submission. Thus there was no risk of having an adverse ruling on the representational issue by engaging in an evidentiary hearing on the discharge. Nor did the Hospital offer any equitable reason to grant the stay.

---

[6]/
This is not surprising since his termination was for alleged theft and prospective employers are often reluctant to consider applicants with a background that includes theft. Worse, prospective employers also express some hesitancy to hire someone who might return to the primary employer after prevailing in an arbitration hearing.

13

Moreover, the Hospital advanced no explanation as to why it went forward with a prior discharge case but was unwilling to do so in this case.[7] It is not necessary to speculate as to the reason for this inconsistent behavior. The fact that it has engaged in the arbitration process in some cases but not in others underscores the lack of any equitable reason to grant the stay request here.

Finally, as I pointed out at hearing, the Hospital was actually foregoing a potential benefit by seeking a stay. Had the hearing taken place, it would have determined whether the discharge was for cause. If not for cause, back pay liability would have ended with the award. If a stay were granted and the Hospital had to await a long delay before learning its discharge was without cause, its liability would significantly increase.

For all of the foregoing reasons the request for a stay was properly denied.[8]

The next question concerns my findings that Section 26.7.8 of the Agreement presented a procedural issue and that the clause was satisfied. The provision addresses the process by which the arbitration hearing is to take place and specifies that it will be "closed." The Employer argued in advance of this hearing that this clause limits attendance to, *inter alia*, Local 715 and its legal counsel. It also agrees the representational dispute implicating this clause has nothing to do with the substantive merits of the Grievant's discharge. Indeed, by its stipulation as to the question of "just cause" the Hospital essentially concedes there is no substantive arbitrability issue present,

---

[7]

Interestingly, on October 3, 2007, I served as arbitrator for these same parties in a contractual dispute, where the Local was represented by the Weinberg law firm and no objection was raised by the Hospital.

[8]

The Hospital commented at hearing that the equitable issues I addressed, especially concerning the Grievant's situation, would always resolve in favor of an employee. In addition to my response at hearing I must note that I have granted requests for stays in cases where an employee's discharge was to be heard, notwithstanding the impact on the employee. In those cases the Employer's request was supported by good reasons related to the objective of insuring a fair and complete hearing would ensue.

14

since it has agreed by contract and stipulation that the propriety of the Grievant's

termination is the kind of contractual question that is subject to arbitration.

I recognize the Hospital's position is that it views the representational status of

Local 715 as a "substantive" issue. However, that argument is separate from the

procedural question presented by Section 26.7.8, since it explains why the contractual

clause comes into play but not how it must be resolved. Clearly the question of whether

the provision is satisfied is capable of being resolved based on the circumstances of a

given case, without regard to the Hospital's representation argument.

It is correct, of course, that it would be helpful to address the Hospital's

representational issue, but it is not necessary that I do so. Moreover, the Hospital

specifically placed that question outside my authority. Nonetheless, my obligation is to

consider whether the clause has been violated because it has considerable procedural

relevance to the arbitration process itself.

As the Employer notes, the clause describes who can be present at a hearing.

Stated otherwise, it defines who can present a case, including the presentation of

documentary and testimonial evidence, the making of objections, addressing procedural

questions and all the other procedural attributes of a hearing. The clause applies to every

arbitration case regardless of whether it is contractual or disciplinary in nature. In my

view it is purely a "procedural question." The circumstances that prompted the Hospital

to raise this clause are not material to a determination as to whether the procedural

requirements of the clause have been met. Rather, I must evaluate whether the

circumstances demonstrate more probably than not that the clause has been satisfied.

This type of procedural determination is properly within my authority.  <u>John Wiley &</u>.

<u>Sons v. Livingston</u>, 376 U.S. 543 (1964).

     Turning to my determination as to whether the clause was satisfied, I must note

again that the Hospital has insisted that I not address its representational argument

because that matter is not before me.  As the Union noted at hearing, this is somewhat of

a contradictory position since the Hospital argues that I cannot consider its

representational argument but at the same time argues that I should accept its legal

argument as correct and conclude that Mr. Boone is not the SEIU Local 715

representative.  Whatever the merits of the Hospital's argument, the circumstances

existing at the hearing persuade me that Section 26.7.8 was fully complied with.

     At hearing SEIU 715 had a representative present along with Mr. Boone.

Mr. Boone stated more than once that he was representing Local 715, that his firm had

historically done so, and that Mr. Boone himself had represented the Local within the

recent past.  The SEIU representative did not correct any of these statements and voiced

no objection to Mr. Boone's representations.

     The Hospital presented no evidence to suggest Mr. Boone's claims were

inaccurate or overstated.  There is to be sure some background information that for some

period of time the Local was represented by the Altshuler Berzon firm, but all indications

in this record indicate that relationship has ended.  For example, the Weinberg firm has

regularly been appearing on behalf of Local 715, a fact noted in the Hospital's

correspondence; it has represented the Local in two recent arbitrations; and there has

been no objection from the Trustee, let alone communication from Ms. Chisholm, to

suggest the Weinberg firm is not representing Local 715. Against this information the

Hospital has offered nothing other than suspicion and supposition to support its position.

My conclusion as to Mr. Boone's status is based on the record, the events at

hearing and the logical conclusion to be drawn from the Weinberg firm's representational

activities in the recent past. Accordingly, SEIU 715 was properly represented by

Mr. Boone, and Section 26.7.8 was fully complied with at the hearing.[9]/

The Hospital's decision to remove itself from the hearing was therefore not

justified. It had a number of options available besides refusing to participate in the

hearing, including the production of testimony going to the Section 26.7.8 issue or

proceeding with a continuing objection to my procedural ruling. Instead and

notwithstanding that it had witnesses and arguments available for a hearing on the merits,

it elected to forego the presentation of evidence concerning the discharge.

By doing so, the Hospital left me no choice but to proceed *ex parte*. I urged the

Hospital not to do so and attempted to fashion some sort of arrangement whereby a full

hearing could take place, but the Hospital was undeterred despite knowing the hearing

would go forward and despite knowing that the grievance would be sustained. While I do

not fully understand the Hospital's rationale for leaving the hearing, it is not necessary

that I consider anything beyond what happened. The hearing was properly noticed; all

parties were present; the grievance was stipulated to be free of defects; the parties

---

[9]/

I do not believe it necessary or appropriate to look behind the assertions of the Union's representatives that they appeared on behalf of Local 715. Since the Hospital's representation theory was not before me, there was no reason to conduct such an inquiry; and, in construing the Agreement, I am guided by the well-settled rule that neither party may control who will be the representative of the other party. General Electric v. NLRB, (2nd Cir. 1969), 412 F.2d 512; Caribe Steel Co. 313 NLRB 877 (1994); Kay Provision Company, 203 NLRB 706 (1973).

stipulated I had jurisdiction to hear the matter; the Hospital had its witnesses available to

testify on the merits; and, based on a single procedural ruling, the Hospital opted to

abandon the hearing.  Under the circumstances I was obligated to continue the hearing in

the absence of the Hospital.[10]/

It is black letter law that in a discharge case an employer carries the burden of

proof.  While arbitral views vary on the *quantum* of proof necessary to carry this burden,

the uniform understanding of a just cause provision is that the burden to prove such cause

existed rests with the Employer.[11]/  Here the Hospital alleged the Grievant engaged in

theft when he was found carrying some shrimp under suspicious circumstances.  It is the

Hospital that had to prove these allegations are true.  Moreover, it is the Hospital that had

the duty to go forward so as to allow the Grievant the opportunity to "confront" his

accuser during the hearing.

The Hospital provided no proof whatsoever to substantiate these charges although

it apparently had witnesses available for the purpose.  Having opted not to put on any

evidence, the Grievant's presumption of innocence was wholly unrebutted.  This relieved

the Union of having to present evidence in the Grievant's defense since no derogatory

evidence had been presented.

Given the Hospital's decision to leave the hearing without presenting evidence on

the merits, I am compelled to find there was not just cause for the Grievant's termination.

Whatever the circumstances that led to the Hospital's conclusions, they were not

---

[10]/

When the Hospital left the room I directed the Court Reporter to remain on the record for the duration of
the proceedings.  Except for one moment when Mr. Arnold re-entered the hearing room to discuss the
status of the Union witnesses, all further proceedings were conducted on the record.

[11]/

Typically an employer must prove a disciplinary case by a preponderance of the evidence.  Often, however,
"theft" cases require "clear and convincing" evidence given the stigmatizing effect of the charge.
Regardless of which standard is considered here, the Hospital did not meet either one.

described by witnesses. The hearsay information in the record is not probative evidence,

and therefore no evidence of wrongdoing exists.

The Grievant shall be reinstated to his former position. He shall be made whole

for all wages and benefits lost as a result of the suspension and subsequent termination.

The record reveals the Grievant has not been employed since his removal, so there does

not appear to be an offset against his wages. In addition the Hospital shall correct the

Grievant's personnel records to remove all references to the allegations of misconduct

and the disciplinary actions that flowed from those allegations. Finally, under the

circumstances of this case the Grievant is entitled to interest on his lost wages, at the rate

of 10%.

Pursuant to the stipulation of the parties jurisdiction shall be retained to resolve

any disputes over the meaning or application of the Decision and Award.

Stanford Hospital and
SEIU Local 715
Victor Acosta

## AWARD

1. The grievance is sustained.
2. The Grievant shall be reinstated to his former position without loss of seniority and shall be made whole for all wages and benefits lost.
3. The Grievant shall be entitled to 10% interest on his lost wages until such time as he is reinstated and made whole.
4. Jurisdiction shall be retained to resolve any disputes over the meaning or application of the Decision and Award.

November 30, 2007

Thomas Angelo